2010); *In re Saba Enters., Inc*, 421 B.R. 626, 648 (Bankr. S.D.N.Y. 2009); *In re Enron Corp.*, 357 B.R. 32, 51 n. 22 (Bankr. S.D.N.Y. 2006); *In re Payroll Express Corp.*, 2005 WL 3789326 *2 (Bankr. S.D.N.Y. July 28, 2005); *Am Equities Group, Inc. v. Ahava Dairy Prods. Corp.*, 2004 U.S. Dist. LEXIS 6970 (S.D.N.Y. Apr. 23, 2004). Indeed, less than a year ago, in *Hydrogen, supra*, 431 B.R. at 346, Chief Judge Gonzalez of the Bankruptcy Court clearly stated the expansive holding of *Gaston:* "Bankruptcy courts adjudicating a state law claim should apply the choice of law rules of the forum state in the absence of federal policy concerns." (Emphasis supplied.)

Moreover, the general and expansive import of *Gaston* has been recognized in myriad areas in the over 40 cases in this Circuit that have cited it. *See, e.g., Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 549 F. 3d 137, 142 (2d Cir. 2008); *Empire HealthChoice Assur., Inc. v. McVeigh*, 396 F. 3d 136, 140 (2d Cir. 2005); *Bush v. MONY Life Ins. Co. of Am.*, 2008 WL 4874137 *4 (D. Conn. Nov. 10, 2008); *Ely Lily Do Brasil, Ltda. v. Federal Exp. Corp.*, 2005 WL 2312547 *3 (S.D.N.Y. Sept. 21, 2005); *Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 239 F. Supp. 2d 322, 326 (S.D.N.Y. 2002); *In re PSINet Inc.*, 268 B.R. 358, 376 (Bankr. S.D.N.Y. 2001).[16]

---

[16] Additionally, *Gaston* was not a radical change in the law. *See e.g. In re Overmyer Co., Inc.*, 12 B.R. 777, 784 (Bankr. S.D.N.Y. 1981.)

S-49

Notwithstanding this overwhelming authority, and contrary to its position below that *Gaston* in fact applied (A-483-484), Statek asks this Court to ignore *Gaston*'s plain holding. Statek makes four attempts to distinguish *Gaston*. None has merit.

### A.   *Gaston* Is Not Limited to Adversary Proceedings.

First, Statek argues that *Gaston* should be limited to cases involving adversary proceedings brought by the debtor and not applied to proofs of claim filed against the debtor by creditors. However, there is nothing in *Gaston* which supports this distinction. On the contrary, in deciding *Gaston*, this Court expressly relied on the reasoning of *Merritt, supra*, 839 F. 2d at 206, where the Fourth Circuit held that the bankruptcy court should apply the forum's choice of law rules to the state law questions before it relating to the trustee's objection to the creditor's claim. By applying the reasoning of this "claims allowance" authority to the adversary proceeding before it, *Gaston* rejected the very distinction Statek tries to make.

Statek seeks to rely on *In re Teligent Inc.*, 324 B.R. 479, 489 (S.D.N.Y. 2005), where the Court referred to *Gaston* in a parenthetical as "discussing choice of law in an adversary proceeding." However, *Teligent*'s dicta does not reflect any

25

common understanding that *Gaston* is limited to adversary proceedings.[17] Indeed, *Gaston* has been applied in the context of claims disallowance proceedings. *See e.g. Worldcom, supra*, 2006 WL 3782712 at * 8, n. 3; *Rolling Thunder, supra*, 348 B.R. 803, 809; *In re Dow Corning, supra*, 419 F.3d at 548 (citing *Gaston* in case involving objection to a claim originally brought as plenary action).

Significantly, in *In re Hess*, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009); *In re Brill* 318 B.R. 49, 53 (Bankr. S.D.N.Y. 2004); and *In re Greig* 2005 WL 3783836 at *3 (Bankr. S.D.N.Y. 2005), the courts applied New York's statute of limitations to disallow claims filed against the estate, precisely the situation here.[18]

Statek also asserts that neither party here has identified a case in this circuit where *Gaston* was followed where the creditor had already filed a case in another forum prior to the Bankruptcy. This too is entirely irrelevant because there is nothing in *Gaston* or in the many decisions in the last nearly 10 years citing it which supports applying a different rule in such a situation. It is more to the point

---

[17] In *Teligent*, the Court held that the result before it would be the same whether a federal or state choice of law analysis would apply to the preference action before it, a creature of the Bankruptcy Code. Its parenthetical statement about *Gaston*, therefore, was only dicta.

[18] Further, the difference between adversary proceedings and claim objections on which Statek relies is without substantive significance. Coudert's objection to Statek's claim could have been commenced as an adversary proceeding. Fed. R. Bankr. P. 7001. Further, the Court below, treated this matter by the same rules as would apply to an adversary proceeding. (SPA-79.)

S-51

that _Statek_ has failed to produce a single case in this Circuit where _Gaston_ was not followed in the situation posited.

And, in fact, _Gaston_ has been applied by other courts to claims allowance proceedings where the creditor had a pre-existing plenary action. _See In re Global Indus. Techs Inc._, 333 B.R. 251, 260 (W.D. Pa. 2005) (applying the conflict of laws principles of the forum state of the bankruptcy court, Pennsylvania, including its borrowing statute, where debtor objected to a claim originally asserted in Kentucky state court and removed to the Eastern District of Kentucky.); _In re Jafari_, 378 B.R. 575 (Bankr. W.D. Wis. 2007) (applying the choice of law rules of the bankruptcy court's forum, Wisconsin, to disallow the claims first asserted in Nevada); _In re Dow Corning, supra_, 419 F.3d at 548.[19]

Statek cannot overcome all these authorities and argue that _Gaston_ should not apply based only on its allegation that its Connecticut Action "had a life" prior to the Bankruptcy and "involved extensive motion practice and discovery." (Statek Br., p. 24) Even if this were a relevant concern, it is clear that, despite any limited discovery that might have occurred there, Statek's Connecticut action did not "have a life," but was on life support from virtually the moment it was filed.

---

[19] _Jafari_ was reversed, 385 B.R. 262 (W.D.Wis. 2008), _aff'd_ 569 F.3d 644 (7th Cir. 2009), on the ground that the Bankruptcy Court erred in not finding that Wisconsin's substantive law applied. Neither appeals court held that the choice of law rules of Nevada, where the casinos' claim had originally been filed, should apply, as Statek insists should be done in this case.

S-52

Indeed, three months after it was commenced, Coudert filed a pre-answer motion
to dismiss which was (conditionally) granted.  In deciding that motion, the
Connecticut Court made clear that far from "having a life" in Connecticut, the
action had little connection to the state and was still vulnerable to a jurisdictional
motion.  (*See*, p.7, *supra*.)

**B.   Statek's Baseless Claim of Prejudice Does Not Support Limiting Gaston.**

    1.   Statek cannot distinguish *Gaston* on its facts.

Second, Statek argues that *Gaston* is distinguishable because Statek, it
claims, unlike the Erkins in *Gaston*, was a pre-petition creditor who was disadvan-
taged by the bankruptcy filing and the application of the forum's choice of law
rules.

Statek again offers no authority supporting its effort to distinguish *Gaston*
on this basis and its argument ignores the reality that choice of law decisions often
disadvantage one party or the other.  The fact that Coudert's bankuptcy filing may
have impacted on Statek's Claim is not unique and provides no basis for the
rejection of *Gaston*.  As Statek's own authority, *Jafari, supra*, fully recognized
while applying *Gaston*:

> Many creditors find the validity or enforceability of their
> claims adversely impacted by the timing of a debtor's
> bankruptcy petition, and the creditors' failure to reduce
> their claims to judgment... is not a far cry from the plight
> of other creditors whose claims are judged by their status
> as of the petition date.

S-53

*Id.* at 591, n. 17.[20]

In any event, Statek's claim to have been "more prejudiced" than the Erkins is simply incorrect.

The Erkins, the law firm clients in *Gaston*, were Idaho citizens, who mistakenly did not challenge the exercise of jurisdiction over them by the New York Bankruptcy Court presiding over the bankruptcy of the law firm, Gaston & Snow, in the belief that bankruptcy jurisdiction over them was based on minimum contacts with the United States, rather than with New York. 243 F. 3d at 602. It seems clear that they would never have consented to jurisdiction over them by a New York state or federal court absent the bankruptcy. Indeed, the Erkins actively sought, albeit unsuccessfully, to have the debtor's adversary proceeding against them and their counterclaim, which surely related to pre-petition claims, transferred to the federal court in Idaho whose substantive law both parties agreed would apply and where the nearly $4 million claim against them for fees and pre-judgment interest would have been time barred under Idaho's limitations period.

Nonetheless, this Court applied the logic of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938), and held that the forum's choice of law principles must be applied pursuant to which the substantial claim against the Erkins was

---

[20] Of Course, *Gaston* has been applied so as to prejudice debtors as well as creditors. *Kaiser, supra*, 2010 WL 3271198 at * 5.

29

timely. Thus, the Erkins were every bit as disadvantaged as Statek by the application of forum law.

Statek's further attempt to distinguish *Gaston* by painting the Erkins as having more voluntarily participated in the Bankruptcy Court proceedings is not only irrelevant as a matter of law, it is nonsense. The Erkins were before the Bankruptcy Court and prejudiced because of a mistake they made; here as set forth at length above (pp. 6-10, *supra*), Statek agreed to have its Claim first mediated in, and then determined by motion, in the Bankruptcy Court.

2.   Transfer cases under 28 U.S.C. §1404 are entirely inapt.

Unable to distinguish *Gaston,* Statek argues that, to avoid prejudicing it, the Courts below should have disregarded *Gaston* and followed the cases which hold that the law of the transferor state should be applied following a transfer under 28 U.S.C. §1404.

This argument, too, must be rejected. Indeed, the fundamental flaw in this argument is obvious: the Connecticut District Court dismissed the Connecticut Action and expressly declined to transfer it to New York. (A-1192, 1207.)[21] *Van Dusen v. Barack*, 376 U.S. 612 (1964) and *Ferens v. John Deere Co.*, 494 U.S. 516 (1990), on which Statek relies, simply do not apply where, as here, the action is

---

[21] Statek's argument is also defeated by the fact that the Bankruptcy Court ruled on Statek's Claim and not on its plenary action. (*See SPA-5; SPA-48.*)

dismissed rather than transferred on forum *non conveniens* grounds. *Mopex, Inc. v. Am. Stock Exch.*, 2002 WL 342522 at * 5, 6 (S.D.N.Y. Mar. 5, 2002); *Caribbean Wholesales & Serv. Corp. v. US JVC Corp.*, 855 F. Supp. 627, 632 (S.D.N.Y. 1994). This is so because the rationale of *Van Dusen* and *Ferens,* to protect the plaintiff's choice of forum does not apply where, as here, venue is improper in the "transferor" court. *Forlastro v. Collins*, 2007 WL 2325865 at *2 (S.D.N.Y. Aug. 14, 2007).

Notwithstanding that it ultimately modified its ruling, the Connecticut District Court's dismissal of Statek's complaint clearly reflects how inappropriate Statek's choice of forum was and how the cases under §1404 therefore simply do not apply. In *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955), the Supreme Court distinguished between cases transferred under §1404(a) and cases dismissed on forum *non conveniens* grounds as here:

> The forum non conveniens doctrine is quite different from Section 1404(a). That doctrine involves the dismissal of a case because the forum chosen by the plaintiff is <u>so completely inappropriate and inconvenient that it is better to stop the litigation in the place where it was brought</u> and let it start all over again somewhere else. (Emphasis supplied.)

This action is not analogous to the cases under 28 U.S.C. §1404 for the additional reason that, as noted above, the Connecticut District Court did not reach Coudert's meritorious jurisdictional motion which the court stated raised

31

S-56

substantial issues for decision. (A-1180.)  Where the putative transferor court

lacks personal jurisdiction over the defendant, the transferee court is not obligated

to apply the transferor's law. *Poe v. Budget Rent-a-Car Sys., Inc.*, 2008 WL

2725803 at * 3 (D. Virgin Islands July 11, 2008); *Mopex, supra*, 2002 WL 342522

at *5; *McTyre v. Broward Gen. Med. Ctr.*, 749 F. Supp. 102, 108 (D. N.J. 1990).

Further, *Ferens* and *Van Dusen* do not apply because any transfer of Statek's

Connecticut Action would likely have been pursuant to 28 U.S.C. § 1412, which

provides for the transfer from one district court to another of a case involving a

bankruptcy debtor and not under 28 U.S.C. § 1404.  In such a case, the New York

federal court would have been bound to apply the law of the transferee, New York,

and not Connecticut law.

In *Kaiser, supra*, debtor's plenary state court malpractice action was

transferred from the District of Columbia, where its claim was timely, to the

Delaware Bankruptcy Court, where it was not timely, under 28 U.S.C. §1412, and

the debtor/plaintiff, like Statek here, asserted that, under *Van Dusen*, the law of the

transferor court should apply.[22]  The Court rejected this argument holding:

---

[22] The Debtor's malpractice case against its attorney in *Kaiser* was originally filed
in the Superior Court for the District of Columbia, then removed to the District
Court there, and finally transferred to the Bankruptcy Court pursuant to 28 U.S.C.
§1412. *In re Kaiser Group Int'l, Inc.*, 421 B.R. 1 (Bankr. D.D.C. 2009). *Kaiser*,
of course, refutes Statek's supposition (Statek Br., p. 42, n. 16) that *Van Dusen v.*
(Continued)

32

> The Court concludes that *Van Dusen* is not applicable here because this case is not a diversity case and its presence in federal court is not an 'accident.' As the D.C Bankruptcy Court found, the proceeding here fits within this Court's "arising in" jurisdiction and by extension within federal question jurisdiction... Accordingly, because the Court has federal bankruptcy as well as federal question jurisdiction over the instant action, the Court concludes that the choice of law rule of the transferee state, Delaware, apply.

2010 WL 3271198, at *5. Thus, debtor's action was dismissed as untimely. The same result would apply here. Requiring the law of the transferee to apply to cases transferred under §1412 insures that all claimants in a bankruptcy are treated equally. This policy is fully apt here and supported by applying *Gaston*.

Acknowledging that the doctrine of *Van Dusen and Ferens* does not apply here, as it must, Statek nonetheless argues that its action was "effectively transferred as a result of the Bankruptcy Court's decision to rule on the proof of claim." (Statek Br., p. 28.) However, there is <u>no</u> authority for this new doctrine of "effective transfer" and nothing in those cases supports the wholesale rejection of precedent sought by Statek.

Nor do the policies underlying *Van Dusen* and *Ferens* support Statek's argument. Those cases stand for the proposition that the actions of the <u>transferor</u>

---

(Continued)
*Barack*, 376 U.S. 612 (1964) and *Ferens v. John Deere Co.*, 494 U.S. 516 (1990) apply to transfers under 28 U.S.C. §1412.

S-58

court in transferring the case before it for reasons of convenience and economy requires the <u>transferee</u> court to apply the transferor's law to protect the plaintiff's venue choice. Here, Statek argues that <u>its</u> own actions in placing its Claim before the purported <u>transferee</u> court (i.e. the Bankruptcy Court) requires the transferee court to apply the law of the putative <u>transferor</u> court, Connecticut, which refused to transfer the action. Applying the rationale of *Van Dusen* and *Ferens* in this way is nothing more than an invitation to impermissible forum shopping.

*McTyre, supra*, is on point. There, plaintiff commenced suit in New Jersey, where its claim would be timely, against defendants, who were not subject to personal jurisdiction there. Defendants sought dismissal of the case and plaintiff sought to have it transferred to Florida, where there was personal jurisdiction over defendants. Because the claims would have been untimely there, plaintiff further asserted that upon transfer, New Jersey's statute of limitations should continue to apply. The court rejected this argument, dismissed the action, and held that the policy of *Ferens*, which would protect the plaintiff's forum choice was not applicable. The court noted that following *Ferens* to require Florida — where the claim would be barred — to apply the statute of limitations of New Jersey — where there was no basis for jurisdiction — would be inappropriate because it would "…<u>allow plaintiffs to bootstrap an otherwise defeated claim by selecting the most</u>

S-59

<u>favorable law from any of the fifty states and transfer it to a federal court in which jurisdiction can be maintained.</u>" 749 F. Supp. at 108 (emphasis supplied).

This is precisely the case here. In a blatant attempt at forum shopping, after waiting nine years to pursue Coudert, Statek commenced suit in Connecticut, the one place where it (allegedly) hoped its case still might be timely, even though the forum was entirely inconvenient, had little connection with the claims raised, and there was likely no jurisdiction over Coudert. Statek now wants its case to be treated as if it had been transferred to New York and wants the Court to be instructed to apply Connecticut law. The interests identified in the "transfer" cases, do not advance Statek's position and the above authorities instruct that Statek cannot succeed. Rather, the policy underlying *Kaiser* to treat all claimants in bankruptcy the same by applying the law of the transferee state is far more apt and is fostered by the holding in *Gaston*.[23]

3.   <u>Statek voluntarily participated in the Bankruptcy.</u>

<u>Third</u>, Statek attempts to distinguish *Gaston* by arguing that the Erkins voluntarily participated in the Bankruptcy and Statek was forced to do so. Even if this had legal significance, which it does not, as set forth above at length, <u>this is</u>

---

[23] The Bankruptcy Court properly found that there was absolutely <u>no</u> indication whatsoever that Coudert's choice of New York for its filing – where it had been headquartered for over 150 years – was improperly motivated in any way. (SPA-32; *see also* SPA-6.)

35

simply not so.  The Erkins were in the Bankruptcy Court by mistake; Statek

intentionally charted its course there.  For example, Statek settled both its motions

for relief from the automatic stay by accepting less than the relief it sought, agreed

to mediate its Claim in New York, and agreed to have Coudert's motion (and its

aborted cross-motion) heard there.  Thus, Statek chose to place this dispute firmly

in the hands of the Bankruptcy Court.

　　　4.　　Statek cannot distinguish Gaston on policy grounds.

　　　Fourth, Statek states that the "most important" distinction is that in *Gaston*

the Court preserved a claim.  However, Statek offers no authority for its apparent

argument that choice of law issues should be determined based on which side will

prevail.  Of course, they should not.  While Statek complains that the Disallowance

Order resulted in a decision not on the merits, it is absolutely not correct that such

a ruling is against public policy.  Rather, it is well settled that motions to dismiss

stale claims are entirely appropriate and serve a salutary purpose of repose.  *See,*

*e.g., Brill, supra,* 318 B.R. at 53, 59 ("A challenged claim will not be allowed by

the bankruptcy court if the claim is barred by the applicable statute of limitations"

and recognizing that "[i]t is true that the application of a statute of limitations can

have rigid and sometimes harsh results.  The need for finality necessitates this

rigidity."); *Greig, supra,* 2005 WL 3783836 *3; *see also* SPA-6 (Statek's argument

"would do away with motions based on the running of limitations").

36

Statek also claims that the application of *Gaston* by the Courts below is contrary to the public policy in favor of predictability. This claim is based on a misunderstanding of that policy. The issue is not whether Statek was surprised that Coudert would file for bankruptcy and as a result Statek's Claim would be subject to the law of a different jurisdiction. (Statek Br., p. 31.) (And it is dubious to say the least that after waiting nine years to pursue Coudert and doing so at a time when it knew the <u>New York based firm was already in dissolution</u> (A-9, ¶4), and then agreeing to have its Claim determined by the Bankruptcy Court, that Statek truly was surprised that the timeliness of its Claim would be considered under New York law.) Rather, the issue is whether, as a whole, predictability is served by a uniform rule applying the principles of *Erie* to state law based issues heard under the bankruptcy jurisdiction of the federal courts. Plainly that policy is served by the uniform application of *Gaston* regardless of its result in any given case. *See also Ins. Co. of N. Am. v. ABB Power Generation*, 91 N.Y.2d 180, 668 N.Y.S.2d 143 (1997) (application of New York's borrowing statute enhances the interest in predictability since it treats all defendants the same).[24]

---

[24] Also entirely irrelevant is Statek's repeated claim that the Court should take note of the fact that its Claim <u>might</u> be covered by Coudert's insurer. There is no support in the law for the proposition that the presence of a non-party insurance carrier provides a basis for disregarding *Gaston*. Indeed, it is well settled that the existence of insurance is irrelevant to the merits of a claim. *See, e.g.*, Fed. R.

(Continued)

37

*Gaston* is clear, applicable and binding here.  Statek has failed to distinguish it or provide any basis for ignoring its holding.  The Courts below properly relied on it and disallowed Statek's Claim.

## POINT II

### STATEK'S RELIANCE ON OTHER COURT'S RULINGS PROVIDES NO BASIS FOR DISREGARDING *GASTON*

Although it is unable to distinguish *Gaston,* Statek nonetheless argues that there are "more relevant" cases dealing with motions to disallow claims which the Court should have adhered to rather than applying the clear holding in *Gaston.* Statek further asserts that those cases allow the Bankruptcy Court to "use its equitable powers to achieve" a just result.  (Statek Br., p. 32.)  This argument, essentially a rehash of the arguments refuted above, must be rejected for at least three reasons.

First, Statek's argument merely reiterates it prior meritless contention, disposed of above, that *Gaston* should be limited to adversary proceedings.

Second, the cases on which Statek seeks to rely pre-date *Gaston,* were expressly distinguished by *Gaston,* and/or are from out-of-circuit courts that take a

_____

(Continued)
Evidence 411.  It seems that Statek is arguing that it is appropriate to "stick the carrier."  Of course, it is not.

different approach to choice of law issues than the one adopted by this Court in *Gaston*.

Third, even if this Court were to find that the Bankruptcy Court erred in following the plain holding of *Gaston* and should not have applied New York's choice of law rules as expressed in its borrowing statute, Statek is incorrect in asserting that the alternative empowers the Bankruptcy Court to make a freewheeling choice of law determination based on a conclusion as to what is fair. Indeed, far from creating the predictability which Statek claims it seeks, it is difficult to imagine a rule of law that would inject more uncertainty into the legal system.

In essence, Statek argues that under *Vanston*, *supra*, 329 U.S. 156, 162-63, the Bankruptcy Court had the power to determine the motion to disallow Statek's Claim under equitable principles. Statek's analysis of *Vanston*, however, was expressly rejected by the Supreme Court in *Raleigh*, *supra*, 530 U.S. 15, a case mentioned only in a footnote and a parenthetical by Statek. There the Supreme Court explained that its statement in *Vanston*, relied on by Statek, that the court determines what claims are to be allowed under equitable principles, refers to the ordering of valid claims and the distribution of assets and not to the validity of claims in the first instance, which is at issue here. 530 U.S. at 24, 120 S. Ct. at

39

1957. The *Raleigh* Court's decision also disposes of Statek's assertion that

equitable considerations should prevail:

> But the scope of a bankruptcy court's equitable power
> must be understood in the light of the principle of
> bankruptcy law discussed already, that the validity of a
> claim is generally a function of underlying substantive
> law. <u>Bankruptcy courts are not authorized in the name of
> equity to make wholesale substitution of underlying law
> controlling the validity of creditors' entitlements, but are
> limited to what the Bankruptcy Code itself provides.</u>

530 U.S. at 24-25; 120 S. Ct. at 1957 (emphasis supplied).  In short, *Raleigh* not

only reiterates that state law, and not federal law, applies to issues underlying

claims in bankruptcy, but it additionally recognizes that that law cannot simply be

disregarded in the name of equity as Statek proposes.  *See also* 11 U.S.C.

§502(b)(1) (Court shall allow a claim unless it is "unenforceable ... under

applicable law").[25]

Just as Statek's reliance on its discredited analysis of *Vanston* must

ultimately fail, so must its efforts to rely on other cases which it claims interpreted

*Vanston* to "free them from *Erie* handcuffs." (Statek Br., p. 33.) These cases pre-

date *Gaston* or were decided in Circuits that have taken a different approach.

---

[25] *Vanston* is also distinguishable on its facts.  The inequity the Court found there
was that, as a result of the order of the Bankruptcy Court prohibiting the Debtor
from making mortgage payments, the Debtor became liable under the mortgage for
interest on interest.  The Court held that under those circumstances, as a matter of
federal law, allowing the mortgagee to collect double interest would be unfair to
the remaining creditors.

S-65

Thus, while Statek correctly quotes the Wisconsin Bankruptcy Court in *Jafari, supra,* 378 B.R. 575, as in turn quoting *Vanston,* it misleadingly states that the quote reflects the Court's holding. It does not; the *Jafari* court reached the same result as this Court in *Gaston* and only one page after the language cited by Statek, stated:

> While *Vanston* notes that a bankruptcy court's claims process is not definitively controlled by the *Erie* doctrine, the Supreme Court did not mandate the wholesale creation of federal conflict rules. Instead, *Vanston* appears to illuminate a simple principle: namely, that in instances where a significant federal policy dictates a result, the bankruptcy court is not bound to adopt a contradictory state law. <u>However, to the extent no such federal policy exists, determining which claims are "valid and subsisting obligations against the bankrupt at the time a petition is filed" is handled by reference to state law... In those cases where state law provides the rule of decision, the *Erie* doctrine – and by extension, the *Klaxon* rule regarding the application of state conflict of laws provisions – should apply.</u>

378 B.R. at 588 (emphasis supplied).

The *Jafari* Court also noted the Supreme Court's clarification of *Vanston* in *Raleigh, supra*:

> Indeed, in *Raleigh* the Supreme Court itself seemed to approve a limited reading of *Vanston* when it rejected the notion that the allowance of claims is automatically a federal matter, observing that "*Vanston*, in fact, concerned distribution of assets, not the validity of claims in the first instance.... *Erie*...<u>must be applicable in the claims process as well</u>, at least whenever a claim is predicated upon state law rather than federal law, or

41

> where no overriding federal policy dictates a different
> result. *Gaston & Snow*, 243 F.3d at 607.

*Id.* at 589, n. 15 (emphasis supplied).

Nor may Statek rely on *In re Prof'l Investors Ins. Group., Inc.*, 232 B.R. 870 (Bankr. N.D. Tex. 1999), or *Ovetsky, supra*, 100 B. R. 115. Both are out-of-circuit decision that pre-date *Gaston*. In addition, contrary to Statek's assertion that both cases are more applicable because they involve the issue of claims allowance *Prof'l Investors* involved both an objection to a claim and an adversary proceeding.[26] Similarly, in *Ovetsky*, the Court was faced with both a claims disallowance and an adversary proceeding and chose to address the statute of limitations defense in the context of the objection to the proof of claim only to ease the appeal process from its ruling. 100 B.R. at 116. Thus, the procedural posture in which the issue was presented in *Ovetsky* was without substantive import.[27]

In addition, and in any event, *Ovetsky* is entirely irrelevant on the facts. There, the court found that the forum of the bankruptcy court had no relation to the claim. Here, New York has such a connection to Statek's claim that Statek itself sought to have its Connecticut action transferred here and stated that the Southern

---

[26] In addition, the choice of law discussion in *Prof'l Investors*, 232 B.R. at 883, was only dicta and its interpretation of *Vanston* is put into question by the Supreme Court's subsequent decision in *Raleigh, supra*.

[27] In any event, as set forth above, there is no basis for limiting *Gaston* to adversary proceedings. (*See* Point IA, *supra*.)

S-67

District of New York was an appropriate alternative forum. (A-1192; A-1207; A-196-97, ¶¶ 8,9.). Indeed, the Bankruptcy Court properly found that it was neither extraordinary nor unjust for New York law to apply, given, among other things that Coudert had been headquartered in New York for 150 years and the lead attorney representing Statek worked out of the New York office for some period of time. (SPA-35-36.)

Similarly, while Statek accurately quotes the court in *Global Indus., supra,* 333 B.R. 251, as noted above (p. 27), it entirely misses the crux of the court's decision there. While the court spoke of *Vanston* and cases that rely on its dicta in determining to apply a federal choice of law analysis, it also spoke of *Gaston* and its clear holding that the bankruptcy court applies the conflict of law principles of the forum state. 333 B.R. at 256. Significantly, in a fact pattern nearly identical to that presented here, the *Global Indus.* court <u>applied the choice of law principles of the forum.</u>

It is also difficult to understand Statek's reliance on *In re SMEC, Inc.,* 160 B.R. 86, 89-91 (M.D. Tenn. 1993), whose reasoning this Court <u>expressly rejected</u> in *Gaston,* 243 F.3d at 606. Indeed, while Statek seeks to rely on *Segre's, supra,* 258 B.R. 547, that case, not only <u>pre-dates</u> *Gaston,* but is based on an adoption of the reasoning in *SMEC,* rejected by *Gaston,* and on *Vanston,* distinguished by this Court in *Gaston,* and limited by the Supreme Court in *Raleigh.*

43

Moreover, the decision in *Segre's* was based on that court's determination that following the law of the forum would somehow be "subversive of uniformity." *Id.* at 552.  However, *Gaston* expressly held that this supposed interest in uniformity is insufficient to support the creation of federal common law to displace state law choice of law principles.  243 F.3d at 606.[28]

Statek concludes that *Vanston*, *Segre's* and *Ovetsky* are good law and have not been interpreted as overruled by *Gaston*.  However, *Vanston* was properly explained by the Supreme Court in *Raleigh* and provides no support for reversing any of the orders below.  *Ovestky* is an out of circuit decision which is distinguishable in any event.

As for the alleged continued vitality of *Segre's,* in the nine years since its decision, it has not been cited by any court in this Circuit other than the Connecticut Bankruptcy Court in *In re Stanwich Fin. Servs. Corp.*, 317 B.R. 224, 228 n. 5 (Bankr. D. Conn. 2004), where the Court <u>followed</u> *Gaston,* and <u>expressly</u>

---

[28] The court in *Segre's* also was concerned about the possibility of forum shopping by the debtor.  As noted above, there is no basis for any such concern here. Statek's assertion that the District Court did not address its arguments based on *Vanston, Segre's* and *Ovetsky* (Statek Br., pp. 20, 32), is in error as the Court expressly noted and rejected Statek's argument, based on those cases, that *Gaston* was distinguishable.  (SPA-5-6.)

44

S-69

<u>declined</u> to follow *Segre's*. Plainly, *Segre's* has <u>no</u> vitality after this Court's decision in *Gaston*.[29]

Statek has failed to demonstrate that *Gaston* should have been abandoned by the Courts below.

## POINT III

## THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION

Statek next argues that the Bankruptcy Court should have ignored the plain and dispositive holding of this Court in *Gaston* and instead exercised its equitable power to preserve Statek's claim by applying the Connecticut statute of limitation either because it was the "original law of the forum" or under a federal choice of law analysis. (Statek Br., p. 38).

Initially, Statek overstates the Bankruptcy Court's equitable authority. Because *Gaston* is controlling, the Court is "not authorized in the name of equity to make wholesale substitution of underlying law." *Raleigh, supra*, 530 U.S. at 24-25.

---

[29] As noted above, there is no basis for following any distinction the court in *Stanwich* may have been attempting to draw between adversary proceedings and claims disallowance proceedings. Further Statek's cannot rely on the <u>out-of-circuit</u> decision in *In re Friedlander Capital Mgmt. Corp.*, 411 B.R. 434, 442-43 (Bankr. S.D.Fla. 2009), to argue that *Segre's* is still good law in this Circuit.

45

Further, Statek cannot meet its heavy burden to demonstrate that the Bankruptcy Court's alleged failure to exercise any equitable power to apply Connecticut law was reversible. In order to prevail, as noted above, Statek must demonstrate that the Bankruptcy Court abused its discretion. *Kalikow, supra*, 602 F.3d 82, 91; *Wireless Data, supra*, 547 F.3d 484, 492; *Flanagan, supra*, 503 F. 3d at 179. It cannot.

"[A]buse-of-discretion review . . . is a second, more complicated, species of deferential appellate review. When a district court is vested with discretion as to a certain matter, it is not required by law to make a particular decision. Rather, the district court is empowered to make a decision-of its choosing-that falls within a range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001); *see also In re Global Vision Prods., Inc.*, 2009 WL 2170253, *3 (S.D.N.Y. July 14, 2009) ("[t]he bankruptcy court will have abused its discretion if no reasonable man could agree with [its] decision."); *In re Delphi Corp.*, 2009 WL 803598, *2 (S.D.N.Y. Mar. 24, 2009).

There is no basis for even alleging that the Bankruptcy Court's decision was outside the range of permissible decisions or was one with which no reasonable

S-71

man could agree.  In fact, the Bankruptcy Court did not abuse its discretion in any way and its decisions were entirely correct.[30]

Statek asserts that the Bankruptcy Court should have deferred to Statek's venue choice and applied the "original law of the forum."[31]  However, as this Court noted in *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001), the degree of deference to be afforded the plaintiff's choice of forum varies depending on whether the plaintiff sued in the forum where it resides and on the degree of connection between the forum and the claim.

Here Statek, a California corporation with its principal place of business in California (A-9-10, A-389; A-403-406), did not commence suit where it resided. Further, as demonstrated above, its action had so little connection with the forum that the Connecticut District Court dismissed the action on forum *non conveniens* grounds and stated that "plaintiff's choice of forum should not be given significant weight in part because Connecticut has very little connection to the claims raised in the present complaint." (A-1203.)

---

[30] Statek's claim that a District Court in New York would have applied Connecticut law if there had been a transfer of Statek's Connecticut Action there (Brief, p. 39), is not only wholly speculative, but it is patently incorrect given the serious questions about whether there was jurisdiction over Coudert in Connecticut and the holding in *Kaiser, supra*, 2010 WL 3271198 *5.

[31] Statek's further argument that Connecticut law would apply under a federal choice of law analysis should have been conducted is refuted at Point IV, *infra*.

47

Statek's filings are also instructive.  Statek's complaint alleged that it was a California corporation with its principal place of business there, that Coudert was a New York partnership, and that the individual attorneys involved resided in England.  (A-9, ¶ 2-7.)  Other papers alleged that Coudert represented Statek in Europe (A-99, ¶¶ 8, 10) or in New York (A-196, ¶¶ 8-9); that Statek did not transact business in Connecticut (A-481-482; A 529-531), or maintain an office there after Mr. Vendel took over the company in 1996 (*id.*); and that "[w]hen Statek commenced this action in 2005, almost ten years [after Mr. Vendel took control], it certainly was not transacting business" in Connecticut.  (A-482-83.)  Indeed, Statek stated that England is "the place where the relationship between Coudert and Statek was centered."  (A-487.)

Most significantly, Statek's Amended Complaint <u>does not</u> allege venue in the Connecticut District Court pursuant to 28 U.S.C. §1391(a)(1), whereby venue is based on the residence of the defendants, or to §1391(a)(2), whereby venue is based on the allegation that "a substantial part of the events or omissions giving rise to the claim occurred."  Statek relies only on 28 U.S.C §1391(a)(3), which applies where defendant is subject to personal jurisdiction and there is no other district in which the action may be brought.  (A-390, ¶ 10.)  In other words, when filing its Amended Complaint, <u>even Statek could not allege that Connecticut had a substantial relationship to the underlying claim.</u>

48

In fact, it seems clear that venue did not lie in Connecticut. Not only was Coudert likely to be found not subject to personal jurisdiction there but Connecticut was not the only district in which the action could be brought. Certainly, at the very least, it is difficult to take seriously Statek's assertion that its forum choice is entitled to any deference.[32]

Statek also reiterates its claim (without citation) that the Bankruptcy Court abused its discretion by not abandoning *Gaston* so as to save Statek's claim and serve the "important public policy" of having cases determined on their merits. Even assuming *arguendo* only that Statek's claim would have been timely in Connecticut (and it would not have been), Statek's argument simply ignores the equally important policy of repose, of not allowing stale claims to proceed, and of not wasting precious judicial resources.

Statek also repeats its assertion, disposed of above, that Connecticut law should apply to insure that Statek is not prejudiced by Coudert's bankruptcy. This claim too is based only on Statek's dubious assertion that Connecticut law should apply to preserve its claim. (*See* p. 36 , *infra.*) In any event, as noted above,

---

[32] For all the reasons set forth above, Statek may not rely, as it seeks to again, on *Van Dusen* and *Ferens*. *Toy Biz Inc. v. Centuri Corp.*, 990 F. Supp. 328 (S.D.N.Y. 1998), relied on by Statek, involves the inapt situation of two pending plenary actions arising from the same basic facts. The *Toy Biz* Court ultimately ruled that the first filed action should proceed where commenced.

creditors are routinely prejudiced by bankruptcy filings. *See*, *Jafari*, 378 B.R. 575, 591 n. 17. This fact does not provide a basis for overturning *Gaston*.

Nor does *Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914 (1979), advance Statek's position. The Court there was not dealing with choice of law issues. Rather, that case stands for the proposition that a creditor's claim is determined by state law: "Congress has generally left the determination of property rights in the assets of the bankrupt's estate to state law." 440 U.S. at 54, 99 S.Ct. at 918. The *Butner* Court did not hold that creditors must be protected from the impact of bankruptcy filings. Rather, it reached a result that is not outcome determinative but, like *Gaston*, leaves the issue to state law.[33]

Finally, Statek states: "[w]hile strictly speaking, this case was not transferred from the District of Connecticut to the Southern District of New York, we can think of no reason why the equitable reasons for that rule [i.e. of *Van Dusen* and *Ferens*] should not apply in the present context." (Statek Br., p. 42.) In fact, the reasons, all discussed in detail above, are myriad. For example: (i) the Court in *Gaston* established a clear legal rule that plainly governs this matter pursuant to which the decisions below were correct; (ii) the Courts below ruled on Statek's

---

[33] Statek also overstates the holding in *In re Cutler-Owens Int'l Ltd.*, 55 B.R. 291, 294 (S.D.N.Y. 1985). The language quoted by Statek was dicta. The Court held that the debtor was entitled to raise the door-closing statute as a defense and left it to further proceedings to determine if the defense should be upheld.

S-75

Claim and not on its plenary action and did so after Statek charted its course in the Bankruptcy by settling its applications for relief from the automatic stay so as to present its Claim to the Bankruptcy Court for mediation and then decision; and (iii) Statek's Connecticut Action <u>did not belong in Connecticut and was not properly venued there</u>. Moreover, it was <u>dismissed</u> because there was virtually no connection between the forum and the claim and the Connecticut District Court acknowledged that there was likely no jurisdiction over Coudert there.

The real potential for unfairness here is not to Statek. Rather, it would be unfair to require Coudert to defend this action, which Statek concedes would be time barred in New York and California (Statek's state of incorporation), and which would likely, according to the Bankruptcy Court's dicta, be time barred in England (SPA-40-41), because of the <u>possibility</u> that Connecticut – which has no connection with the facts underlying this action, whose court dismissed the action, and where the case had barely begun – would apply its own statute of limitations in such a way as to preserve the claim against a party over whom that Connecticut court may have no personal jurisdiction.

Statek has entirely failed to meet its heavy burden to demonstrate that the Bankruptcy Court abused its discretion and committed clear error in refusing to ignore *Gaston* instead of adopting Statek's subjective (and objectively unreasonable) view of what is "equitable."

51

## POINT IV

### NEW YORK LAW WOULD APPLY UNDER A FEDERAL CHOICE OF LAW ANALYSIS

Statek next argues that if the Courts below performed a federal choice of law analysis, Connecticut's statute of limitations would apply. Statek argues that the Bankruptcy Court erred in stating, in dicta, its view that such an analysis would not call for the application of Connecticut law. As an initial matter, there is no basis in law requiring a federal choice of law analysis and this argument is precluded by *Gaston*. In any event, Statek is wrong. The Bankruptcy Court below properly found that Connecticut law would not apply under a federal choice of law analysis.

The Bankruptcy Court's analysis was based on §142 of the Restatement, which Statek conceded below was the appropriate analysis. (SPA-34.) In particular, the Bankruptcy Court held that under §§6 and 142 of the Restatement, the forum, New York, would apply its own statute of limitations barring the claim. (SPA-34-36.)

Further, even if a federal choice of law analysis should have been conducted, based, not on the Restatement factors, but on which jurisdiction had the most significant relationship with the action, there still was no error in failing to apply the Connecticut statute of limitations.

The Bankruptcy Court properly found that Connecticut <u>did not</u> have the most significant relationship with the action. (SPA-36.) The Court noted that

52

"neither side has made a case for Connecticut law applying under an interest analysis." (*Id.*)  Indeed, it is difficult to imagine how Statek could hope to sustain its argument that Connecticut had the most significant relationship with this dispute after the Connecticut District Court itself stated that Connecticut has virtually no interest in the dispute.  As demonstrated above, Statek has repeatedly conceded that its action has no connection to Connecticut let alone the "most significant contacts."

At the very least, New York would have as much, if not more of an interest in this action that Connecticut.  As the Bankruptcy Court recognized, Coudert was a New York headquartered law firm and the partner in charge of the Statek representation was, at least for some period of time, resident in New York.  (SPA-35-36.)[34]

Statek simply has not established that, under any circumstances, Connecticut's statute of limitations should apply.

---

[34] Statek previously argued that England was the jurisdiction with the most significant relationship with the action and that a federal choice of law analysis would call for the application of the <u>English and not</u> the Connecticut statute of limitations.  (A-450.)  In Statek's own words:  "Here England clearly has a far greater interest in regulating the conduct of English solicitors than Connecticut has in protecting California citizens who engage overseas lawyers."  (A-485.)  The Bankruptcy Court agreed.  (SPA-28.)  Statek may not rely on Coudert's statement that "New York has no nexus with the alleged facts underlying the claim..."(A-367.)  That statement was clearly in the context of its showing that the cause of action did not accrue in New York for purposes of the borrowing statute.

S-78

## POINT V

## CONNECTICUT'S STATUTE OF LIMITATIONS WOULD NOT BE APPLIED BY THE CONNECTICUT DISTRICT COURT AND STATEK'S CLAIM WOULD NOT BE TIMELY THEREUNDER

Statek's appeal is also defeated by its failure to demonstrate that

Connecticut's statute of limitations would have been applied by even the

Connecticut District Court.  In fact, the emerging trend of the law in Connecticut,

recognized by *Phillips v. Scott*, 446 F. Supp. 2d 70 (D. Conn. 2006), is that the law

of the forum is not automatically applied but, rather,

> is for courts to "select the state whose law will be applied
> to the issue of limitations by a process essentially similar
> to that used in the case of other issues of choice of law."
> Connecticut courts have turned to § 142 of the
> Restatement (Second) of Conflicts of Law which outlines
> a test similar to the most significant relationship test...

446 F. Supp. 2d at 83, n. 25 (citations omitted).  In *Phillips*, the Connecticut

District Court determined, based on the Restatement factors, that the California,

and not the Connecticut, statute of limitations should apply.  These very factors

were considered by the Court below which determined that the principles

embodied in those provisions would call for the application of New York's statute

of limitations which would bar Statek's claim.  (SPA-26-28.)[35]

---

[35] In opposing the motion to disallow its Claim, Statek characterized the approach
by which a court applies its state's statute of limitations merely because it is

(Continued)

54

S-79

In any event, Statek's Claim would be barred even under Connecticut law.
Connecticut General Statutes § 52-577 provides that "[n]o action founded upon a
tort shall be brought but within three years from the date of the act or omission
complained of." The three year limitation period "begins with the date of the act
or omission complained of, not the date when the plaintiff first discovers an
injury." *DeCorso v. Watchtower Bible and Tract Soc'y*, 46 Conn. Super. 386, 394,
752 A.2d 102, 108 (Conn. Super. Ct. 2000) (emphasis supplied); *Piteo v. Gottier*,
112 Conn. App. 441, 445 (Conn. App. Ct. 2009); *Collum v. Chapin*, 40 Conn. App.
449, 451-52 (Conn. App. Ct. 1996). Here, Statek's cause of action against
Coudert began to run in 1996 when it is alleged to have failed to turn over all
relevant documents. The Connecticut statute of limitations (like New York's)
expired in 1999, six years before Statek brought suit, and this is so even if Statek
did not have actual knowledge of the alleged wrongful acts which, in any event, it
did. *See, Sanborn v. Greenwald*, 664 A.2d 803, 812 (Conn. App. Ct. 1995); *Dixon
v. Evans*, 2008 WL 1948071 *2, n. 2 (Conn. Super. Ct. Apr. 22, 2008).

Statek argues that Coudert's alleged "continuing course of conduct" tolled
the statute. This doctrine is available if there is later wrongful conduct relating to

---

(Continued)
deemed procedural, as a "rigid and long-outdated characterization of the nature of
statutes of limitations." (A-494.)

S-80

the original wrong or a continuing special relationship between the parties. Neither was present here.

Statek states that the later wrongful conduct can be found in Coudert's subsequent production of documents to Statek in 2002, 2004, 2008 and 2009. In other words, Statek argues that when Coudert acted in conformity with its alleged obligations to Statek it was engaged in "wrongful conduct." This is not and cannot be the law.

Further, Coudert's alleged failure to provide all files in 1996, was not part of a continuing course of conduct, but was a "single omission and not an ongoing or recurring wrongful act." *Bellemare v. Wachovia Mortgage Corp.*, 94 Conn. App. 593, 609, 894 A.2d 335, 345 (Conn. App. Ct. 2006), *aff'd*, 284 Conn. 193, 198 (2007).[36]

Nor can Statek demonstrate that there was a continuing "special relationship" between the parties sufficient to toll the statute. This relationship would have to have lasted until at least November 5, 2002 (three years before Statek commenced suit) in order to save Statek's Claim. In light of the history between

---

[36] The rules of professional conduct which Statek cites for the proposition that Coudert had a continuing obligation to produce files do not have any bearing on the statute of limitations issue. *See also Long Island Sav. Bank, FSB v. Aaron*, 225 A.D.2d 776, 777, 639 N.Y.S.2d 850 (2d Dep't 1996) (no breach of duty where attorney failed to timely turn over files after it was terminated).

S-81

the parties, it seems almost impossible to accept that Statek truly believes that the relationship lasted as late as November 5, 2002.

Clearly, the January 15, 1996 letter terminated the attorney client relationship and if it didn't, the subsequent patent distrust demonstrates that at the very least, there was a *de facto* termination of the relationship precluding the tolling of the statute. *See, L.F. Pace Constr., Inc. v. Simko*, 2007 WL 4686485 at *6 (Conn. Super. Ct. Dec. 7, 2007). Certainly, Statek would be entirely unable to meet its burden to demonstrate that the attorney-client relationship lasted into 2002. *Id.*

This is borne out by reference to the policy behind the continuing course of conduct doctrine, which is similar to the continuing representation doctrine, on which Statek notably does not seek to rely. In *Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 795 A.2d 572, 581 (Conn. App. Ct. 2002), the court explained that the continuing representation doctrine was adopted to avoid the "illogical requirement of the occurrence rule which compels clients to sue their attorneys although the relationship continues and there has not been and may never be any injury...The attorney-client relationship is maintained and speculative malpractice litigation is avoided."

In other words, the tolling doctrine seeks to protect the parties' special relationship and let it work its way out to see if any "wrong" could be corrected to

57

avoid injury. This policy is absolutely not implicated here. There was no on-going relationship between Statek and Coudert to protect and the alleged wrong had already been done in 1996. The entire theory of Statek's case is that it needed the files in 1996 when it asked for them and by the time it got them in 2002 it was allegedly too late. The alleged "wrong," which Statek was well aware of, could not be corrected. There was no reason why Statek could not, or could not have reasonably been expected to, bring suit long before 2005. It had nothing to "wait for." In truth, it was "busy elsewhere" chasing Johnston and Spillane. That, however, provides no basis for tolling the statute of limitations. Even under Connecticut law, Statek's claim would have been time barred.[37]

---

[37] Coudert denies emphatically that it breached any duty or obligation to Statek. *Jones v. Comm'r*, 129 T.C. 146 (2007), relied on by Statek, is an entirely inapt tax court case dealing with the issue of whether an attorney may make a charitable donation of his case files. In *Vanliner Ins. Co. v. Fay*, 98 Conn. App. 125, 140 (Conn. App. Ct. 2006), the Court found a continuing wrong where the agent continued to represent the plaintiff. It is irrelevant here and Statek cannot rely on it to collapse the separate criteria of a continuing relationship and later wrongful conduct.

S-83

### Conclusion

For all the foregoing reasons it is respectfully submitted that the decisions

below should all be affirmed.

Dated:  New York, New York
         January 28, 2011

                     STERN TANNENBAUM & BELL LLP


                     By:/s/ David S. Tannenbaum
                         David S. Tannenbaum
                         Karen S. Frieman
                     380 Lexington Avenue
                     New York, New York 10168
                     (212) 792-8484
                     *Attorneys for Appellee Development*
                     *Specialists, Inc.*

/32312

59

S-84

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate

Procedure, the foregoing brief is in 14-Point Times Roman proportional font

and contains 13,999 words and thus is in compliance with the type-volume

limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate

Procedure.

Dated: New York, New York
      January 28, 2011

                    STERN TANNENBAUM & BELL
                    LLP


                    By:  /s/ David S. Tannenbaum
                         David S. Tannenbaum
                         Karen S. Frieman
                    380 Lexington Avenue
                    New York, New York 10168
                    (212) 792-8484
                    *Attorneys for Appellee Development*
                    *Specialists, Inc.*

{00032775.DOC v}

| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
|---|---|---|---|
| | ) | ss.: | **BY OVERNIGHT EXPRESS** |
| COUNTY OF NEW YORK | ) | | **MAIL** |

I, Antoina Coston, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

**On January 28, 2011**

deponent served the within: **Brief for Appellee Development Specialists, Inc., Plan Administrator for Coudert Brothers LLP**

upon:

**Edward J.M. Little**
**Lisa A. Cahill**
**Hughes Hubbard & Reed LLP**
**Attorneys for Appellant Slatek Corporation**
**One Battery Park Plaza**
**New York, New York 10004**
**(212) 837-6000**

the address(es) designated by said attorney(s) for that purpose by depositing **2** true copy(ies) of same, enclosed in a postpaid properly addressed wrapper in a Post Office Official Overnight Express Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

This document was also submitted via the CM/ECF Case Filing System. All counsel of record in this case are registered CM/ECF users. Filing and service were performed by direction of counsel.

**Sworn to before me on January 28, 2011**

*Maryna Sapyelkina*
Notary Public State of New York
No. 01SA6177490
Qualified in Kings County
Commission Expires Nov. 13, 2011

**Job # 234014**

**S-86**

10-2723-bk
Statek Corp. v Development Specialists, Inc. (In re Coudert Bros. LLP)

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2010

(Argued: April 29, 2011)                    Decided: February 28, 2012)

Docket No. 10-2723-bk

IN RE COUDERT BROTHERS LLP,

*Debtor.*

STATEK CORPORATION,

*Appellant,*

-*v.*-

DEVELOPMENT SPECIALISTS, INC., PLAN ADMINISTRATOR FOR COUDERT BROTHERS LLP,

*Appellee.*

Before:

NEWMAN, CALABRESI, HALL, *Circuit Judges.*

Appellant Statek Corporation ("Statek") appeals from an order of the United States

District Court for the Southern District of New York (Hellerstein, *J.*), affirming the order of the

United States Bankruptcy Court for the Southern District of New York (Drain, *J.*) disallowing its

claim against the bankruptcy estate of Coudert Brothers LLP ("Coudert") and affirming the

1

denial of Statek's motion to reconsider the bankruptcy court's order. The bankruptcy court

should have applied the choice of law rules of the State of Connecticut, where Statek's pre-

bankruptcy action against Coudert had been commenced, and not the choice of law rules of New

York State, where the bankruptcy court is located.

> VACATED AND REMANDED.
>
> ───────────────
>
> EDWARD J.M. LITTLE, (Lisa A. Cahill, *on the brief*), Hughes Hubbard & Reed LLP, New York, New York, *for Appellant*.
>
> KAREN S. FRIEMAN, (David S. Tannenbaum, *on the brief*), Stern Tannenbaum & Bell LLP, New York, New York, *for Appellee*.
>
> ───────────────

HALL, *Circuit Judge*:

Appellant Statek Corporation appeals from an order of the United States District Court

for the Southern District of New York (Hellerstein, *J.*), affirming the order of the United States

Bankruptcy Court for the Southern District of New York (Drain, *J.*) disallowing its claim against

the estate of Coudert in *In re Coudert Brothers LLP*, Case No. 06-12226 (Bankr. S.D.N.Y.) and

affirming the denial of Statek's motion to reconsider the bankruptcy court's order.

The bankruptcy court should not have applied the choice of law rules of New York, the

state in which it sits, but instead the choice of law rules of Connecticut, where Statek filed its

pre-bankruptcy action seeking damages that later constituted its claim against the bankruptcy

estate. Although the case was not technically transferred under 28 U.S.C. § 1404(a), the

practical effect of filing a proof of claim in the bankruptcy court was to transfer the case from

Connecticut federal court to New York federal court. Extending the well-established rule of *Van*

*Dusen v. Barrack*, 376 U.S. 612 (1964), and *Ferens v. John Deere Co.*, 494 U.S. 516 (1990), we

2