71

1  really was the client and what was really asked of Coudert and

2  all that sort of thing, which would come out in a trial or in

3  discovery and then on summary judgment.

4         MS. FRIEMAN:  We also think there's major issues as

5  far as foreseeability and damages and things like --

6         THE COURT:  Okay.  But all of that --

7         MS. FRIEMAN:  -- if what they're talking about is a

8  negligence claim.

9         THE COURT:  But here we're just on a 12(b)(6).  So

10  the issue is -- I mean I'll give you more time to brief this

11  issue if you think it's worth doing on the issue of whether

12  paragraph 36 sets forth, you know, a negligence claim for a

13  motion to dismiss basis.

14         MS. FRIEMAN:  Well, let me not turn down any offer

15  and say that I will look into it and tell you it tomorrow by

16  the --

17         THE COURT:  Well, no, because I usually rule from the

18  bench, that's the --

19         MS. FRIEMAN:  Oh.  In that case I'll sit down.  Thank

20  you.

21         THE COURT:  All right.  Okay.  All right.  All right.

22  I'll take about five minutes and I'll be right back.

23         [Court recessed from 12:13 p.m. to 12:28 p.m.]

24         THE COURT:  All right.  I have before me an objection

25  to a proof of claim, Claim No. 239, submitted by Statek

72

1   Corporation in this Chapter 11 case.  The objection is brought

2   by the plan administrator under the debtor Coudert Brothers

3   LLP's Chapter 11 plan, which was confirmed some time ago and

4   gives the administrator the authority to object to proofs of

5   claim.  The claim was originally filed on behalf not only of

6   Statek but also Technicorp International II Inc.  However,

7   since that time I permitted the stay to be lifted, the

8   automatic stay to be lifted for the claimants to amend the

9   complaint against Coudert Brothers that underlies the proof of

10  claim and that was attached to the proof of claim.  That

11  amended complaint deleted Technicorp International II Inc. as a

12  plaintiff so that at this point Statek Corporation would be the

13  only claimant.

14        As a proceeding involving the allowance or

15  disallowance of claims, this is a core proceeding under 28 USC

16  §157(2)(b).  A claim objection is a contested matter under the

17  bankruptcy code; however, as I informed the parties to this

18  proceeding last week, given the nature of the claim I have

19  incorporated under Rule 9014 the adversary proceedings rules to

20  this claim objection.  More specifically, I am treating this

21  claim objection as a motion to dismiss under Federal Rule

22  12(b)(6) which is incorporated by Bankruptcy Rule 7012.

23        The parties had previously agreed to go to mediation

24  on this claim, and I was informed after the mediation

25  apparently had proceeded for some time that they believed that

73

1   certain issues that are addressed in this particular objection

2   were issues that the parties believed should be addressed now

3   and that the Court's review of those issues might well assist

4   them in the successful completion of the mediation.   That

5   request also led me to treat this particular proceeding that's

6   in front of me as one that I should decide under Rule 12(b)(6)

7   in that it's clear that the parties have not completed

8   discovery and that it would be extraordinary and I think

9   improper to go beyond the 12(b)(6) framework in that context.

10          The Court when considering a motion to dismiss under

11  Federal Rule of Civil Procedure 12(b)(6) must assess the legal

12  feasibility of the complaint, in this case the claim, and not

13  weigh the evidence that might be proffered or offered in its

14  support.  Koppel v. 4987 Corp., 167 F.3d 125, 133 (2nd Circ.

15  1999).  The Court's consideration "is limited to facts stated

16  on the face of the complaint and in the documents appended to

17  the complaint or incorporated in the complaint by reference as

18  well as to matters of which judicial notice may be taken."

19  Hertz Corporation v. City of New York, 1 F.3d 121, 125 (2nd

20  Circ. 1993).  The Second Circuit recognizes incorporation by

21  reference for contracts and/or agreements that are integral to

22  the complaint even if they're not attached thereto for purposes

23  of Rule 12(b)(6).  See Chambers v. Time-Warner Inc., 282 F.3d

24  147, 152 (2nd Circ. 2002).

25          The Court accepts the complaint's factual allegations

74

1  as true even if doubtful in fact, and must draw all reasonable

2  inferences in favor of the plaintiff.  Tellabs Inc. v. Makor

3  Issues and Rights Ltd., 127 S.Ct. 2499, 2509 (2007).  However,

4  if a claimant's allegations are clearly contradicted by

5  documents incorporated into the pleadings by reference, the

6  Court need not accept them.  Labaho v. Best Buy Stores LP

7  [Ph.], 478 F.Supp. 2d 523, 528 (S.D.N.Y. 2007).  Moreover, the

8  Court is "not bound to accept as true a legal conclusion

9  couched as a factual allegation." Papasan v. Allain, 478 U.S.

10  265, 286 (1986).  Instead the complaint must state more than

11  labels and conclusions and a formulaic recitation of the

12  elements of the cause of action will not do.  Bell Atlantic

13  Corporation v. Twombly, 127 S.Ct. 1955, 1965 (2007).  Thus

14  while the Supreme Court has confirmed in light of the notice

15  pleading standard of Federal Rule of Civil Procedure 8(a), when

16  a complaint attacked by a Rule 12(b)(6) motion does not need

17  detailed factual allegations, Erickson v. Pardus, 127 S.Ct.

18  2197, 2200 (2007), to survive a motion under Rule 12(b)(6) a

19  complaint's "factual allegations must be enough to raise a

20  right to relief above the speculative level" Bell Atlantic, 127

21  S.Ct. (1964).  Where the claim would not otherwise be plausible

22  on its face therefore, the complaint must contain sufficient

23  additional factual allegations to "nudge the claim across the

24  line from conceivable to plausible" Id. at 1974.  Otherwise the

25  defendant, in this case the debtor, should not be subjected to

75

1   the burdens of continued discovery and the worry of overhanging

2   litigation.  Id. At 1965-67.  See also Benjamin v. Whitman, 523

3   F.3d 119, 129 (2nd Circ. 1989) and Iqbal v. Hasty, 490 F.3d

4   143, 157-58 (2nd Circ. 2007), cert. granted 2008, U.S. LEXIS

5   4906 (June 16, 2008), which stand for the proposition that to

6   survive a Rule 12(b)(6) motion after Bell Atlantic a complaint

7   must "amplify a claim with some factual allegations and those

8   contexts where such amplification is needed to render the claim

9   plausible."

10          In addition to objecting to Statek's claim on the

11  merits under Rule 12(b)(6), the plan administrator also objects

12  on the basis that the claim is time barred under New York's

13  borrowing statute as well as, if that borrowing statute does

14  not apply, the applicable statutes of limitations.  A statute

15  of limitations defense can be raised under Rule 12(b)(6) but

16  the circumstances under which it may be raised are limited by

17  the nature of a 12(b)(6) objection.  Normally a lapse of a

18  limitation's period is an affirmative defense the defendant

19  must plead and prove.  Staehr v. Hartford Financial Services

20  Group, Inc., 547 F.3d 406, 425 (2nd Circ. 2008).  However, "a

21  defendant may raise an affirmative defense in a pre-answer Rule

22  12(b)(6) motion if the defense appears on the face of the

23  complaint, Id. citing McKenna v. Wright, 386 F.3d 432, 436 (2nd

24  Circ. 2004).  For the circumstances under which an affirmative

25  defense may be raised in addition to it appearing on the face

76

1   of the complaint, see generally <u>5 Wright & Miller Federal</u>

2   <u>Practice and Procedure</u> Section 1357.  A complaint showing that

3   the governing statute of limitations has run on the plaintiff's

4   claim for relief is the most common situation in which the

5   affirmative defense appears on the face of the pleading and

6   provides a basis for a motion to dismiss under Rule 12(b)(6).

7   Since Rule 9(f) makes averments of time material, the

8   conclusion of dates in the complaint indicating that the action

9   is untimely renders it subject to dismissal for failure to

10  state a claim."

11       Of course the defendant moving in a 12(b)(6) posture

12  "must accept the more stringent standard applicable to this

13  procedural route."  Not only must the facts supporting the

14  defense appear on the face of the complaint, but as with all

15  Rule 12(b)(6) motions the motion may be granted only where "it

16  appears beyond doubt the plaintiff can prove no set of facts in

17  support of his claim that would entitle him to relief."

18  <u>McKenna</u>, 386 F.3d at 436.

19       Here, as I noted, the plan administrator objects to

20  Statek's proof of claim as set forth in the amended complaint

21  which they filed on August 29, 2008, on both the merits as well

22  as on grounds of untimeliness.  The nature of the claim was

23  clarified and reduced or minimized in Statek's response to the

24  plan administrator's objection.  The complaint itself has one

25  asserted cause of action headed with the caption breach of

77

1   professional and fiduciary duties.  The response by Statek as

2   well as Statek's counsel's presentation today at this hearing

3   had made it clear that at this time and going forward the only

4   breach of a fiduciary duty that Statek asserts is "Coudert's

5   relatively minor failure to account for its $43,557.47

6   disbursement of Statek funds out of its U.S. dollar account.

7   Statek does not claim that Coudert intentionally withheld files

8   from Statek in breach of its fiduciary duty to provide them."

9   That's found at page 42 of Statek's memorandum of law in

10  opposition to this claim objection.

11          Thus, at this time Statek has reduced its claim to

12  one for breach of care, malpractice or negligence, all stemming

13  from the following fact pattern.  As alleged in the complaint

14  or the amended complaint, Statek and its parent TCI-II were

15  originally under the control of an individual named Hans

16  Frederick Johnston as well as his associate Sandra Spillane.

17  They assumed the position of Statek's and TCI's directors and

18  were in control of those corporations.  They allegedly,

19  according to the complaint, retained Coudert Brothers LLP

20  through its UK office for certain legal services which Coudert

21  billed to Statek. [2:15:18 **audio skips**] with an interest

22  asserted in the ownership and control of Statek and TCI-II

23  asserted in Delaware Chancery Court those interests and

24  eventually obtained a determination by the Delaware Chancery

25  Court pursuant to §225 of the Delaware General Corporation Law

78

1   that indeed Johnston and Spillane were not the lawful directors

2   of TCI-II and that instead they should be replaced.

3          Upon their replacement two things occurred.  First,

4   in and around June 26, 1996, Statek and TCI commenced a second

5   action in Delaware State Court against Johnston, Spillane, and

6   entities owned or controlled by them asserting claims of fraud,

7   breach of fiduciary duty, and corporate waste.  Secondly, in or

8   around July of 1996 Statek through its counsel -- actually

9   starting in January of 1996 Statek through its counsel sought

10  from Coudert certain information from Coudert and instructed

11  Coudert not to transfer any funds that it was holding for

12  Statek without proper authorization, having informed Statek of

13  the first ruling in the §225 action.  Then in July of 1996

14  Statek again notified Coudert that it had commenced the fraud

15  and waste action and, as set forth in paragraph 28 of the

16  amended complaint, "asked Coudert to provide information and a

17  complete copy of the files arising out of and relating to the

18  services Coudert had rendered," which the complaint defines as

19  the Statek files.

20         The complaint asserts that Coudert provided

21  information to Statek including sending Statek six files

22  related to the services it had rendered in setting up a

23  subsidiary known as Statek Europe Limited and in assisting with

24  a lease and operation of an apartment in London that was used

25  by Johnston.  Paragraph 30 of the complaint states that Coudert

79

1   confirmed that it had no other Statek files or information

2   about other Statek services it had rendered.  The complaint

3   then states that, contrary to the confirmation it provided to

4   Statek, Coudert in fact had additional "Statek files" and

5   information of other "Statek services it had rendered,"

6   including the four types of services listed in paragraph 31

7   which included involving setting up an asset protection trust

8   in the Jersey Channel Islands used by Johnston and Spillane,

9   assistance in setting up a bank account and arranging for safe

10  deposit boxes in the name of one of the asset protection

11  trusts, advice relating to a house in Nassau, Bahamas, that

12  Johnston and Spillane had purchased, and advice and assistance

13  relating to purchasing, shipping and storing art and stamps

14  that Johnston and Spillane acquired using funds misappropriated

15  from Statek.

16        The complaint asserts that this information was

17  subsequently provided to Statek over the course of time.

18  Paragraph 36 of the complaint states that "for reasons unknown

19  to Statek or to the plaintiff Coudert did not provide Statek

20  with complete and accurate information about the Statek

21  services or the contents of all of its Statek files, either

22  when first requested in July 1996 or at any time since."

23        The complaint goes on to state that after obtaining a

24  judgment in the fraud and waste action in September of 2000

25  after a lengthy opinion was issued by the Delaware court in

80

1  that action on May 31, 2000, Statek pursued its remedies

2  against Johnston and Spillane and their entities.  The May 31,

3  2000 opinion, as quoted in paragraph 18 and 19 of the amended

4  complaint, noted "the task of proving those diversions of funds

5  was daunting because many of the expenditures were either

6  inadequately documented or not documented at all, and further

7  that Mrs. Spillane moved money in huge amounts to Johnston

8  entities and back to Statek and back out of Statek with the

9  elan and skill of a drug cartel consigliore.  This money moves

10 at the speed of light and in huge amounts."  Again that's a

11 quote from the Delaware decision from May 31, 2000, and that

12 appears at paragraph 21 of the complaint.

13        Statek alleges that it pursued the collection of this

14 claim in various ways, which included commencing an insolvency

15 proceeding against Johnston in the Supreme Court of the

16 Judicature of England and Wales pursuant to the 1986 Insolvency

17 Act.  The complaint then goes on to say that after that

18 involuntary petition was filed on or about July 11, 2002, an

19 English trustee was appointed and that after his appointment on

20 October 2, 2002, he by letter dated November 4, 2002 -- I'm

21 sorry, by letter dated October 22, 2002, to Coudert the trustee

22 sought files and documents from Coudert related to Johnston and

23 to any assets that should be included in Johnston's bankruptcy

24 estate.  That led, as set forth in the complaint, to a back and

25 forth between Coudert and bankruptcy trustee with regard to

81

1   whether Coudert had any additional information to that which

2   had been previously provided to Statek.  But ultimately, after

3   the trustee commenced an ancillary bankruptcy proceeding under

4   Bankruptcy Code 304 in the United States the Bankruptcy Court

5   for the District of Connecticut, the trustee obtained

6   additional information in addition to information provided by

7   Coudert on November 4, 2002, which revealed that it had

8   information concerning an art collection that Mr. Johnston

9   wanted to bring to Europe.

10          In response to that November 4th production, on

11  December 12, 2002, the trustee wrote to Coudert and stated "it

12  is my understanding that you assisted the bankrupt with

13  numerous affairs, and I shall therefore be grateful if you

14  would provide me with copies of your fee notes in relation to

15  the bankrupt and Statek in order that I can establish the exact

16  nature of the advice provided."  And then again when the

17  trustee felt that he was frustrated by Coudert in that matter,

18  he started in June of 2003 the ancillary proceeding in

19  Bankruptcy Court here in Connecticut and obtained additional

20  information from Coudert in that context including Coudert's

21  assistance in setting up the Channel Islands trust.

22          Based on all of the foregoing, Statek alleges that

23  Coudert breached its professional duty of care by failing to

24  provide Statek with all of the "Statek files," failing to

25  disclose to Statek all of the information of which it was aware

82

1  about Statek's matters and "the Statek services," and failing

2  to account for Statek's funds that it disbursed from its

3  accounts.  Statek contends that it was damaged by that failure

4  to provide files and information, and that it delayed the time

5  when Statek could obtain or recover or discover assets that

6  Johnston and Spillane had misappropriated from Statek, and

7  increased the cost to Statek in recovering such assets to the

8  extent that they were recoverable.  Based on all the foregoing,

9  the proof of claim asserts a claim of $85 million.

10       On the merits the plan administrator contends that

11  the foregoing recitation of facts, which I believe is

12  encapsulated in paragraph 36 of the complaint, which again

13  states "for reasons unknown to the plaintiff Coudert did not

14  provide Statek with complete and accurate information about the

15  Statek services or the contents of all of its Statek files

16  either when first requested in July 1996 or any time since."

17  It fails to state a claim for professional malpractice or

18  negligence.

19       The basis for the claim or the underlying claim, as I

20  stated, was somewhat uncertain until clarified first in

21  Statek's response to the claim objection as well as on the

22  record.  The focus appeared to be on breach of fiduciary duty,

23  and even after the clarification in the memorandum and response

24  to the claim objection Statek relied upon an English decision,

25  Bristol and West Building Society v. Mothew, 1998, Ch 1, Ct. of

83

1  Appeal, where professional negligence was conceded by the

2  defendant.

3        On that basis and based on the lack of any assertion

4  of any negligence per se or explicitly in the complaint, the

5  plan administrator contends that pursuant to the 12(b)(6)

6  standard that I outlined Statek has not asserted a claim for

7  negligence or professional malpractice.  It is the case,

8  however, that the labels or conclusions that a complaint puts

9  on the facts asserted therein are of no import and that the

10 Court needs instead to review the factual assertions set forth

11 in the complaint to determine whether the complaint states a

12 claim.

13        I have noted that it is not clear to me from the face

14 of the complaint what exactly the complaint means by the phrase

15 Statek files or the phrase Statek services, whether, for

16 example, that phrase encompasses not only files of Statek and

17 services provided to Statek but also includes files of Johnston

18 and Spillane individually or of their other entities and

19 services provided to Johnston and Spillane individually.

20 However, it does appear to me from the face of the complaint

21 that the complaint does allege that Coudert provided services

22 to Statek, although it does not specify what those services

23 were, and that the defined terms Statek services and Statek

24 files could be read to include services to Statek and files of

25 Statek.

84

1        Given that and given the allegation in the complaint

2   that notwithstanding a request by Statek for return of such

3   files and information pertaining to such services, I believe

4   that the complaint does state a claim for negligence in that it

5   appears that such files and information was in Coudert's

6   possession and was not, when the request was made, returned to

7   Statek but rather was only discovered and returned later in

8   2002 and 2003.  It is conceivable certainly that such files and

9   such information were not Statek's own files or information

10  pertaining to a Statek representation by Coudert, and

11  consequently that Coudert did not have an obligation under its

12  professional duty of care to its client Statek to provide such

13  files and information to Statek.  It's also possible that

14  Coudert was not negligent in doing so, even if they were

15  Statek's files and information pertaining to Statek's -- or to

16  services provided to Statek by Coudert.  But I believe those

17  issues are issues that are properly decided after a proper

18  evidentiary record has been developed and not on a motion to

19  dismiss basis.

20        It is also asserted by Statek that the relatively

21  minor amount of $43,557 was lost by Coudert not only as a

22  result of its negligence but also based on an asserted breach

23  of fiduciary duty.  However, from the face of the complaint I

24  can see no basis for a breach of fiduciary claim as asserted in

25  the complaint with regard to such funds and Coudert's failure

85

1    to turn over such funds.  So on the merits, Coudert's motion to

2    dismiss is denied insofar as the professional malpractice

3    and/or negligence claim but granted with regard to the

4    remaining breach of fiduciary duty claim which pertains to the

5    roughly $43,000 of funds that were not retained by Coudert that

6    were Statek's funds.

7         The plan administrator is also, as I noted, objecting

8    to the claim on the basis that it's time barred, there are two

9    underlying grounds for this objection.

10        First, the plan administrator contends that the claim

11   is time barred by the operation of New York's borrowing statute

12   which appears at New York CPLR Section 202.  Statek

13   acknowledges or concedes that if New York law applies to this

14   matter that it is time barred.

15        In addition, even if for some reason the New York

16   borrowing statute does not apply, the plan administrator

17   contends that under applicable choice of law principles and the

18   applicability of the relevant statutes of limitation the claim

19   would also be time barred.  Again, Statek concedes that if New

20   York law applies, New York underlying substantive law applies

21   here, that the claim would be time barred.  It also concedes at

22   Page 45 of its memorandum of law that if California law applies

23   here, its claim would be time barred.  It disagrees with the

24   plan administrator that if Connecticut law applied it would

25   also be time barred with respect to this claim on the merits

86

1   and also it disagrees with the plan administrator's contention

2   that if English law applies the claim would be time barred.

3         The first issue to decide here is whether the

4   application of the choice of law determination the Court should

5   apply New York law in respect of choice of law or

6   alternatively, whether it should apply some other choice of law

7   principle, mainly federal choice of law principles.  That issue

8   applies both to whether the Court should apply the New York

9   borrowing statute which requires no choice of law analysis to

10  be applied as well as whether if the borrowing statute is not

11  applied and not effective for some reason the Court should

12  apply New York choice of law principles on the underlying

13  statute of limitations question or federal choice of law

14  principles.

15        The underlying jurisdictional basis for this claim is

16  the Court's bankruptcy jurisdiction under 28 USC Section 1334.

17  The claim here is related to the bankruptcy case and that it is

18  a claim asserted against the debtor.  As I noted before, the

19  Court's determination of that claim is a core matter and core

20  proceeding under Section 128 USC 157(a)(2)(B).

21        It has long been the rule that in cases based upon

22  diversity of citizenship where the Federal Court's jurisdiction

23  is based on diversity that the Federal Court must decline the

24  choice of law or state conflicts rules are the state in which

25  it sits as set forth in Klaxon v. Stentor Electric

87

1   Manufacturing Company, Inc., 313 US 487, 496 (1941).  The

2   original basis for this claim was in fact diversity as

3   originally filed before the complaint was amended.  It was

4   brought in the district -- well, it was removed from the

5   District Court of Connecticut, Statek being a California

6   Corporation and Coudert being a New York LLP.  As the Supreme

7   Court in the Klaxon case said other than applying the choice of

8   law rules at the state at which the Federal Court sits would

9   mean that, quote, "The accident of diversity of citizenship

10  would constantly disturb equal administration of justice in

11  coordinate state and federal courts sitting side by side."

12         MR. RITT:  Your Honor, if I may just -- I don't want

13  to interrupt you but to make sure the record is correct, there

14  was no diversity of jurisdiction in Connecticut.  We filed in

15  the Superior Court.  It was removed on --

16         THE COURT:  Oh, it was removed because of the

17  bankruptcy?

18         MR. RITT:  But it was about to be remanded on the

19  bankruptcy proceedings.

20         THE COURT:  All right.  You're right.  You're right.

21  In any event, the principle of Klaxon is that the accident of

22  diversity of citizenship would constantly disturb equal

23  administration of justice in coordinate state and federal

24  courts sitting side by side and that any other ruling would do

25  violence to the principle of uniformity within a state.  The

88

1   Supreme Court had concluded that the application of the choice
2   of law determination was a matter of substantive laws as the
3   law covered by Erie v. Tompkins.
4        However, as I noted, the basis for this Court's
5   jurisdiction is 28 USC Section 1334 and the underlying core
6   function of the Bankruptcy Court to determine the allowance or
7   disallowance of claims against the debtor.  Although there had
8   been dicta in the Second Circuit dating back to the Kalb,
9   Voorhis & Company v. American Financial Corporation case, 8
10  F.3d 130, (2d Cir., 1993) and even before then to the Koreag,
11  Controle Et Rivision SA case, 961 F.2d 341, 92d Cir., 1992).
12  The Second Circuit did not directly address whether it would
13  apply Klaxon and Erie to determinations by a Bankruptcy Court
14  exercising bankruptcy jurisdiction until it did so in another
15  law firm bankruptcy In re Gaston and Snow, 243 F.3d 599 (2d
16  Cir., 2001).  In that case there was no basis for federal
17  jurisdiction in the Bankruptcy Court but for the fact that
18  Gaston and Snow's Chapter 11 case was pending there and the
19  defendant in that case's voluntary submission to the in
20  personam jurisdiction of the Court.
21       As is asserted in this case, in Gaston and Snow, New
22  York's borrowing statute, CPLR Section 202, would be
23  dispositive or determinative on the ability of the action to
24  continue if it applied.  Other than the fact that the case was
25  pending in New York as a result of Gaston and Snow's

S-206

89

1  bankruptcy, New York choice of law principles would not call

2  for the application of New York law given the interest of the

3  parties.  Gaston and Snow was a Massachusetts law firm with

4  only a branch office in New York and the wrong, if it occurred,

5  occurred in either Massachusetts or Utah where the defendant

6  resided.

7       The Court of Appeals considered again whether the

8  borrowing statute should apply as would be required under

9  Klaxon or instead whether it should apply as urged by the

10  defendant in that case a federal choice of law analysis which

11  would have led to the borrowing statute not applying.

12       It was argued to the Second Circuit consistent with

13  some case law in other jurisdictions including In re Lindsay,

14  59 F.3d 942 (9th Cir., 1995) and In re SMEC Inc., 160 B.R. 86

15  (MD Tenn. 1993) that there was a distinction between Klaxon and

16  the Court's bankruptcy jurisdiction that should require a

17  uniform federal choice of law analysis.

18       Notwithstanding those arguments, the Second Circuit

19  concluded to the contrary that the logic and policy underlying

20  Klaxon should apply where the Court was exercising its

21  bankruptcy jurisdiction, and therefore, that the Court in this

22  case, in the Gaston and Snow case, the District Court

23  exercising bankruptcy jurisdiction should apply the law of the

24  state in which it sits.

25       The Second Circuit I believe fully considered policy

90

1   arguments to the contrary including arguments raised by Statek

2   here that there is potential for forum shopping that would

3   arise from the application of Klaxon in such a context and

4   similarly that because the Bankruptcy Court is dealing with

5   claims filed into it from all occasions that a uniform rule

6   should apply under federal law.

7          The Court noted that given that it was being asked to

8   apply federal choice of law principles it needed under the

9   Supreme Court jurisprudence to apply such federal law

10  principles only in those few and restricted incidences where,

11  quote, "A significant conflict between some federal policy or

12  interest and the use of state law must be first specifically

13  shown."  See O'Melveny & Meyers v. FDIC, 512 U.S. 79, 87

14  (1994), and Atherton v. FDIC, 519 U.S. 213, 218 (1997).

15         The Second Circuit found no such federal policy or

16  interest here given that the underlying claim was a state law

17  claim and could have been brought on diversity grounds -- I'm

18  sorry, even though it could not have been brought on diversity

19  grounds.  The Court relied upon, again, the notion that this

20  was an underlying non-bankruptcy claim, and therefore, found no

21  overriding federal interest.  It contrasted the situation that

22  it faced with the facts in Vanston Bondholders Protective

23  Committee v. Green, 329 US 156 (1946) where such a federal

24  interest existed given the Bankruptcy Act of 1898's treatment

25  of the claim at issue in Vanston which overrode the applicable

91

1    non-bankruptcy law.

2            In addition to the arguments that were specifically

3    made and rejected by the Second Circuit in Gaston and Snow,

4    Statek makes two other arguments here premised upon a

5    distinction between the facts in Gaston and Snow and the

6    present facts.   Gaston and Snow was a collection action in an

7    adversary proceeding by Gaston and Snow's trustee of a bill,

8    although it is mentioned in the case that there was a

9    counterclaim by the former client.   The action here is a claim

10   rejection where I've applied the adversary proceeding rules but

11   the Court is again exercising its core function in determining

12   the allowability of a claim.   Relying largely on language in

13   Vanston, the claimant here suggests that the federal policy in

14   having a uniform approach to choice of law in claim objection

15   situations is stronger than in the adversary proceeding

16   collection action in Gaston and Snow.   It also relies upon the

17   Supreme Court's ruling in Katz to argue that the Supreme Court

18   has since the Gaston and Snow reaffirmed and strengthened the

19   concept and importance of a uniformed administration of the

20   bankruptcy laws.

21           I do not believe, however, that the dicta in Vanston

22   or the holding in Katz would result in any change of the

23   present facts from the result in the Gaston and Snow case.

24           First, again, the Vanston case is I believe properly

25   viewed as preemption case where there was clearly a strong

92

1   federal interest in applying federal law to all of the aspects

2   of the determination of the allowability of post petition

3   interest for a claimant given that the bankruptcy code in

4   effect at the time, which was the Bankruptcy Act of 1898,

5   disallowed claims for post petition interest by unsecured

6   creditors with a Judge-made exception in instances where the

7   debtor proved to be solvent.  To my mind, since the Bankruptcy

8   Act had a specific provision dealing with that specific claim,

9   it was not a claim decided by applicable non-bankruptcy law,

10  and therefore, federal law should govern.

11          Similarly, the equitable subordination action in In

12  re Lois/USA, 264 B.R. 65 at 90 (Bankr. SDNY 2001) involved a

13  specific provision of the Bankruptcy Code Section 510(c), which

14  by its very nature is a federal statute, would set forth a

15  federal purpose which would require the uniformity and

16  interpretation.

17          I also do not believe that the holding in Central

18  Virginia Community College v. Katz, 546 US 356 (2006) expanded

19  the concept of the need to apply uniform bankruptcy law, or

20  bankruptcy law uniformly to cover the applicable choice of law

21  when one is dealing with an underlying claim based upon and

22  governed by non-bankruptcy law.  In Katz, the issue was whether

23  the bankruptcy clause in Article 1, Section 8 of the

24  constitution which gave congress the power to establish uniform

25  laws pertaining to bankruptcy would trump a state's assertion

S-210

93

1   of sovereign immunity.  Again, the issue was to my mind a

2   preemption issue where a clear federal interest expressed in

3   the bankruptcy clause butted up against a state interest

4   consistently again since this claim objection, as is the case

5   with most claim objections, is one that is not subject to

6   specific provisions of the Bankruptcy Code that as a matter of

7   federal law limit the claim such as Section 502(b)(6) or

8   Section 502(b)(2) or Section 510(c), but is rather one to be

9   determined on underlying non-bankruptcy adherence.  It appears

10  to me that there's no overriding federal interest that would

11  rise to the level required by the O'Melveny and Meyers and

12  Atherton cases.

13          The claim here could have been brought outside of

14  bankruptcy, i.e., if this bankruptcy had not intervened in any

15  number of forums.  It could have been brought in New York, it

16  could have been brought on the State of Connecticut, it could

17  have been brought in England, it could have been brought in

18  California in each case assuming that there was a basis for an

19  in personam jurisdiction as well as the diversity which would

20  have existed in each one of those forums.  But given the fact

21  that Coudert's bankruptcy is here in New York, I believe that

22  it is consistent with Klaxon as per the logic of the Second

23  Circuit in Gaston and Snow that this Court should apply New

24  York's choice of law rules.

25          The issue of whether there's any taint of forum

94

1    shopping in applying those rules I believe is as much of a red

2    herring here as it was in the <u>Gaston and Snow</u> case.  Coudert

3    was a New York LLP with its primary office in Manhattan.

4    Clearly, the venue of this Chapter 11 case is therefore

5    appropriate.  Moreover, I can take judicial notice of the

6    multitude of claims asserted against Coudert which would lead

7    me to conclude that Coudert's Chapter 11 filing in Manhattan

8    was not motivated by trying to obtain a favorable statute of

9    limitations.

10         Therefore, I do not believe that <u>Gaston and Snow</u> is

11   distinguishable or that it should be viewed in a different

12   light and subject to reconsideration or it would ultimately be

13   reversed in light of the <u>Katz</u> case.  As the plan administrator

14   points out, subsequent to the <u>Katz</u> determination Courts sitting

15   in bankruptcy or applying their bankruptcy jurisdiction have

16   continued to apply the choice of law principles of their forum

17   state in the Second Circuit.  See <u>Bondi v. Grant Thornton</u>

18   <u>International</u>, 2007 US Dist. Lexis 11767 (SDNY Feb. 22, 2007)

19   and <u>In re Enron Corporation</u>, 357 B.R. 3252 (Bankr. SDNY 2006).

20         Given that legal conclusion that I should look to New

21   York law on choice of law matters, I conclude, as did the Court

22   in <u>Gaston and Snow</u>, that CPLR 202, New York's borrowing

23   statute, applies.  It applies as drafted even if under New York

24   choice of law principles, New York choice of law would

25   generally lead to another state's or nation's choice of law

95

1   being applied for other purposes, In re Gaston and Snow, 243

2   F.3d at 608.  See also Ledwith v. Sears Roebuck & Company,

3   Inc., 660 NYS2d 402, 406 (AD 1st Dept 1997) and Gorlin v. Bond

4   Richman & Co., 706 F. Supp. 236, (SDNY 1989).  See also Baena

5   v. Woori Bank, 2006 US District Lexis 74549 (SDNY Oct. 11,

6   2006).

7           Since as applied to the facts here the shorter

8   limitations period under New York law applies it's conceded

9   that that limitations period would defeat the claim, the

10   objection is granted on a 12(b)(6) basis based on the

11   applicability of New York CPLR Section 202.

12           The debtor has also argued, the plan administrator

13   has also argued that even if I did not apply the New York

14   borrowing statute and did apply either New York or federal

15   choice of law principles, the applicable law that I would come

16   up with would be one where the underlying claim would be time

17   barred as well.  Notwithstanding my application of CPLR 202,

18   I've considered that argument also.  Considering Section 142 of

19   the Restatement Second, Conflicts of Laws which Statek relies

20   upon as being a basis for federal choice of law principles, it

21   appears to me that the New York limitations should apply here

22   as well.  That section says that, "Whether a claim will be

23   maintained against the defense of the statute of limitations is

24   determined under the principles stated in Section 6.  In

25   general, unless the exceptional circumstances of the case make

96

1   such a result unreasonable, 1), the forum will apply its own

2   statute of limitations barring the claim," which as I've noted

3   above would be the case here under New York Law.   "The forum

4   will apply its own statute of limitations permitting the claim

5   unless maintenance of the claim would serve no substantial

6   interest of the forum; and the claim would be barred under the

7   statute of limitations of a state having a more significant

8   relationship to the parties."   Therefore, that alternative

9   would not apply.

10        Comment F to that rule states, "There will be rare

11  situations when the forum will entertain a claim that is barred

12  by its own statute of limitations but not by that of some other

13  state.  Thus, the suit will be entertained when the forum

14  believes that under the special circumstances of the case,

15  dismissal of the claim would be unjust.  This may be so when

16  through no fault of the plaintiff an alternative forum is not

17  available as, for example, where jurisdiction cannot be

18  obtained over the defendant in any state other than that of the

19  forum, or where for some reason the Judge maintained that any

20  other state having jurisdiction would be unenforceable

21  elsewhere."

22        As I've stated, I believe that these principles,

23  which are extraordinary ones, would not apply here under the

24  Gaston and Snow case.  However, I do have the belief that if

25  for some reason the New York borrowing statute did not apply

97

1   under New York choice of law principles, which I believe under

2   Gaston and Snow are the proper principles to apply, the

3   paramount interest of England in regulating English attorneys

4   and malpractice claims against English attorneys, and here

5   again the attorneys who allegedly committed the malpractice

6   and/or negligence where English solicitors would override the

7   normal New York choice of law analysis, that normal analysis

8   would look at primarily the place of the wrong and the -- or

9   the locus of the tort and the location of the parties.  See

10  Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996).  Here, the

11  injured party being California Corporation and the debtor being

12  a New York LLP, it appears to be under the general New York

13  choice of law rules, one would apply non-English law as sought

14  by the claimant but California law.

15          But there is an exception I believe under the New

16  York jurisprudence in R2 of New York's interest analysis which

17  deals with malpractice claims against attorneys where the state

18  where the attorneys are licensed and are practicing has a

19  paramount interest at regulating the conduct of its own

20  attorneys.  See Diversified Group. Inc. v. Daugerdas, 139

21  F.Supp.2d 445, 453 (SDNY, 2001), as well as LNC Investments,

22  Inc. v. First Fidelity Bank NA, 935 F.Supp. 1333 (SDNY 1996).

23  See Engelke v. Brown, Rudnick, Bertack, Israels, LLP, 824 NYS2d

24  753 (Sup. Ct. NY County 2006) which was reversed on other

25  grounds at 845 NYS2d 260 (AD 1st Dept. 2007).

98

1          Based on that analysis it would appear to me that

2   English law should govern if one gets to the merits including

3   the subsequent choice of law analysis.  Again, as stated in

4   Ledwith and Gaston and Snow, that choice of law analysis does

5   not pertain at all to whether the borrowing statute applies

6   since that statute applies at all times given that I said in

7   New York.

8          Under English law, the plan administrator contends

9   that this claim is time barred.  There is, however, a statutory

10  exception to the six year statute of limitation running from

11  the date of the injury which would be in 1996 and clearly would

12  result in barring the claim here.  That is the limitation at

13  Section 14 of 1980 which provides in Section 14(a)(5) -- I'm

14  sorry, 14(a)(4) that the limitation period shall be either six

15  years from the date on which the cause of action accrued or (b)

16  three years from the starting date as defined by Subsection 5

17  below if that period expires later than the period mentioned

18  above, i.e., the six-year period.  The starting date is as set

19  forth in Section 5, Section 14(a) of the Limitation Act of

20  1980.  The earliest date on which the plaintiff or any person

21  in whom the cause of action was vested before him first had

22  both the knowledge required for bringing an action for damages

23  in respect of the relevant damage and a right to bring such an

24  action.  Then Sections 6 and 7 continue.  The knowledge

25  required for bringing an action for damages in respect of the

99

1   relevant damage means knowledge both of the material facts

2   about the damage in respect of which damages are claimed and of

3   the other facts relevant to the current action mentioned in

4   Subsection 8 below.  Subsection 8 states the other facts

5   referred to in subsection (6)(b) above are that the damage was

6   attributable in whole or in part to the act or omission which

7   is alleged to constitute negligence.

8           This act was the subject of a lengthy series of

9   opinions by the House of Lords that appeared in Haward v.

10  Fawcetts, (2006) UKHL 9, (2006) 3 All ER 497 (Mar. 2006).  In

11  those opinions the Court interpreted the extent of knowledge of

12  both damages and the other circumstances required by Section

13  14(a) before the starting date accrues and based on my reading

14  of the various opinions that appear at that citation I take a

15  restrictive view of Tolden [Ph.].  As stated by Lord Nicholls

16  of Birkenhead, knowledge for purposes of the statute does not

17  mean knowing for certain beyond possibility of contradiction,

18  it means knowing with sufficient confidence to justify

19  embarking on the preliminaries to the issue of a writ, such as

20  submitting a claim for the proposed defendant, taking advice,

21  and collecting evidence.  Suspicion, particularly if it is

22  vague and unsupported, will indeed not be enough, but

23  reasonable belief will normally suffice. In other words, the

24  claimant must know enough for it to be reasonable to begin to

25  investigate further.  It is not necessary for the claimant to

100

1   have knowledge sufficient to enable his legal advisers to draft

2   a fully and comprehensively particularized statement of claim.

3        Moreover, as stated by Lord Brown of Eaton-under-

4   Heywood, he asks is it enough that Mr. Heywood knew, as plainly

5   he did, that Fawcetts, the defendant, advised him that this was

6   a sound and suitable investment and that it was on the basis of

7   this advice that he went ahead with it, or did he need to know

8   more than that, and if so, what more?  Clearly, for time to

9   start running he did not have to know that Fawcetts had as a

10  matter of law acted negligently in the giving of their advice.

11  On the facts of this case the question only seems to me to come

12  down to this, to set time running that Mr. Heywood need to know

13  not only that the investment was made on Fawcetts' advice, but

14  also that the advice had not been based on the kind of

15  investigations which much necessarily be undertaken before any

16  such advice can be reliably tendered.  To my mind it must fail

17  if anything more is required than that Mr. Heywood knew that

18  his loss might well have resulted from an investment made on

19  Fawcetts' advice.  That is the plaintiff's knowing that he had

20  suffered the relevant damage by the material date, Fawcetts'

21  advice was more than merely the sine qua non of that loss.

22       As may have been suggested by my questions at oral

23  argument, given what the new members of the Statek board and

24  Statek itself knew in 1996 about the fact that Johnston and

25  Spillane were sophisticated diverters of funds and further that

101

1   Coudert had been advised that including irrespective setting up

2   foreign subsidiary and buying an apartment London it is very

3   tempting, even on a motion to dismiss, to conclude that under

4   the interpretation of the tolling provision of the British

5   Limitations Act of 1980 that the starting time occurred in and

6   around 1996, the date that Coudert allegedly was negligent and

7   not a later date when it was conclusively established that

8   Coudert had not provided all of the files and information that

9   was requested in 1996.  I say that also because the complaint

10  itself notes that the trustee appointed in Mr. Johnston's

11  English bankruptcy case almost immediately started to pursue

12  discovery first informally and then formally of Coudert after

13  his appointment.

14          However, I believe that on a motion to dismiss that

15  inquiry is precluded.  Again, see McKenna, 386 F.3d 436, and

16  should await further factual development based upon what was

17  known.  Although I do believe it's very clearly something that

18  would be the subject for a motion for summary judgment.

19          So again, the only basis in this procedural posture

20  for dismissing the negligence claim as well as the -- and that

21  would include a negligence claim with respect to the 40 some

22  thousand dollars, $43,000.00, would be based upon the

23  applicability of the New York borrowing statute.

24          So counsel for the plan administrator should submit

25  her order consistent with that ruling.

102

1          As I usually do when I give a lengthy bench ruling, I
2     will go over the transcript.  I'm sure there are parts of it
3     that I will correct not only for the inevitable typos and
4     misspellings of case citations, but also for my grammar and the
5     like.  If I do make changes like that, I'll mark up the
6     transcript and separately file it as an amended bench ruling.
7     But the gist of the ruling won't change.
8          MS. FRIEMAN:  Thank you, Your Honor.
9          THE COURT:  Thank you.
10         MR. RITT:  Your Honor, may I ask for one point of
11    clarification for the record?
12         THE DEFENDANT:  Sure.
13         MR. RITT:  I think when we talked about the legal
14    standard for a motion to dismiss and Your Honor read the
15    standard it was that the limitation defense is appears beyond
16    doubt and there's nothing more that could be done by way of
17    pretrial discovery or trial that would change that.
18         THE COURT:  Right.
19         MR. RITT:  Is Your Honor making a factual
20    determination that there is no retainer agreement with a choice
21    of law provision?
22         THE COURT:  No, but I'm glad you asked that.  As I
23    read Gaston and Snow and the Ledwith case, the borrowing
24    statute applies notwithstanding a choice of law analysis.  So
25    I'm not dealing -- the issue of whether there's a retainer

S-220

103

1  agreement would not enter into that aspect of the

2  determination.  So I'm not making a finding that there's no

3  retainer agreement.

4          MR. RITT:  So the basis is that the ruling in <u>Gaston</u>

5  <u>and Snow</u> is that assuming there were a choice of law agreement

6  that would otherwise be enforceable, that's somehow trumped by

7  the borrowing statute?

8          THE COURT:  Correct.

9          MR. RITT:  Thank you, Your Honor.

10          THE COURT:  As <u>Ledwith</u> says, modern choice of law

11  decisions are simply inapplicable to the question of statutory

12  construction presented by CPLR 202.  CPLR 202 is to be implied

13  as written without [inaudible] to conflict of law analysis.

14          MR. RITT:  I agree, Your Honor.  I don't think the

15  issue is before the Court as to whether there is an enforceable

16  contract.  Ordinarily the analysis looks first to see whether

17  the parties agree and the general rule is I believe that if

18  that agreement doesn't violate somehow a fundamental policy of

19  the forum state then the Court will enforce the parties'

20  agreement.

21          THE COURT:  Well, my reading of <u>Gaston and Snow</u> and

22  the cases that cite it say that the borrowing statute --

23          MR. RITT:  Applies.

24          THE COURT:  -- applies, right.

25          MR. RITT:  If there is New York law to the contrary --

104

1   -

2          THE COURT:  You could raise it to me.

3          MR. RITT:  I think we'd ask for an opportunity to do

4   that --

5          THE COURT:  Well, you can always make a motion.  I

6   mean obviously it wasn't in the briefs, but you can make that

7   motion.

8          MR. RITT:  Well, that's true, Your Honor, in the

9   sense that we -- I think it's also the rule under Rule 12 which

10  was not what we had thought about when we drafted the complaint

11  that you don't anticipate any affirmative defenses, and

12  therefore, we didn't have to anticipate that they would raise

13  limit --

14         THE COURT:  No, Rule 12 permits one to raise -- all

15  right.  Never mind.  You can make the motion to reconsider.

16         MR. RITT:  I appreciate that, Your Honor.

17         THE COURT:  Okay.

18         MR. RITT:  Thank you.

19                    *  *  *  *  *  *

20

21

22

23

24

25

105

1      I certify that the foregoing is a court transcript from an

2  electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5  _____

6                           Sally Reidy

7  Dated:   May 28, 2009

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

06-12226-rdd    Doc 1485-3    Filed 08/24/12    Entered 08/24/12 15:11:49    Exhibit B
Pg 1 of 2

# EXHIBIT B

**Ritt, Kenneth W.**

| | |
|---|---|
| **From:** | Karen Frieman [KFrieman@sterntannenbaum.com] |
| **Sent:** | Monday, December 08, 2008 9:50 AM |
| **To:** | Ritt, Kenneth W. |
| **Subject:** | Statek v. Coudert |



Document.pdf (110
KB)

      Ken,

I realized that I failed to enclose the referenced documents with my
letter to you of December 4.  They are attached hereto.  Please note
that my letter mistakenly identifies the proper Bates Nos. of those
documents.  They are numbered STB 000588-593.

I apologize for any inconvenience.

Karen S. Frieman, Esq.
Stern Tannenbaum & Bell LLP
380 Lexington Avenue
Suite 3600
New York, NY 10168
(212)792-8490
kfrieman@sterntannenbaum.com

1

S-225

06-12226-rdd    Doc 1485-4    Filed 08/24/12    Entered 08/24/12 15:11:49    Exhibit C
Pg 1 of 2

# EXHIBIT C

S-226

# STERN TANNENBAUM & BELL

Stern Tannenbaum & Bell LLP
380 Lexington Avenue
New York, NY 10168
Phone 212.792.8484
Fax 212.792.8489
www.sterntannenbaum.com

KAREN S. FRIEMAN
Direct Dial: 212.792.8490
kfrieman@sterntannenbaum.com

February 19, 2009

BY FEDERAL EXPRESS
Kenneth W. Ritt, Esq.
Day Pitney LLP
One Canterbury Green
Stamford, CT 06901-2047

Re:   **In Re Coudert Brothers LLP**
      **Statek Corporation v. Coudert Brothers LLP**

Dear Ken:

     As you know, we have been continuing our efforts to insure that all documents have been searched for and produced. To that end, kindly find enclosed documents bearing Bates Nos. STB00597-929 which were recently located.

                                        Very truly yours,

                                        Karen S. Frieman

cc: Lawrence W. Pollack, Esq.

{00006744.DOC v}

**S-227**

06-12226-rdd   Doc 1485-5   Filed 08/24/12   Entered 08/24/12 15:11:49   Exhibit D
Pg 1 of 2

# EXHIBIT D

S-228

**From:**       Carroll, Paul [IMCEAEX-_O=COUDERT_OU=CB10
                _CN=RECIPIENTS_CN=CARROLP@orrick.com]
**Sent:**       Thursday, October 31, 2002 1:29 PM
**To:**         Hogben, Glynis
**Subject:**    RE: Files to SRB

Yes - the files are being sent by pouch tomorrow.

Paul

-----Original Message-----
From: Hogben, Glynis
Sent: 31 October 2002 17:25
To: Carroll, Paul
Subject: FW: Files to SRB


Hi Paul

Have you managed to find this and send it?

Thanks
Glynis


-----Original Message-----
From: Maguire, C. Jane [mailto:jmaguire@hunton.com]
Sent: 29 October 2002 15:37
To: Carroll, Paul
Cc: Woods, Toni; Hogben, Glynis
Subject: Files to SRB


   Hi Paul,  will catch up with you soon, hope everything is a.o.k. with you!  In the
meantime would you please arrange to send to Steven/Toni in NY the following file:

   Statek Corporation
   General
   Matter No. 65096.01


   Toni, we did have a deed packet at one time but Fred (Johnston)  requested it back;
Fred had an office in Connecticut but Sandy Spillane I think worked out of Orange County.
There is probably a card on the Roladex under Statek Corporation.

   Thanks very much Paul - speak to you soon.

   Jane



Jane Maguire
PA to Peter Kavanagh
Hunton & Williams
25 Farringdon Street
London
EC4A 4AB
Direct: + 44 (0) 20 7246 5736
E mail: jmaguire@hunton.com

                                                    i

STB 000588

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                   :

IN RE: COUDERT BROTHERS LLP,        :

                                 :     Case No. 06-12226 (RDD)

              Debtor.        :

                                 :

-------------------------------------------------------------x

## DEVELOPMENT SPECIALIST INC.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION OF STATEK CORPORATION FOR RECONSIDERATION OF THIS COURT'S ORDER DISALLOWING STATEK'S CLAIM # 239

**STERN TANNENBAUM & BELL LLP**
380 Lexington Avenue
New York, New York 10168
(212) 792-8484

*Attorneys for Development Specialists, Inc.*

S-230

## TABLE OF CONTENTS

Page

Table of Authorities.................................................................................................ii

Summary of Argument............................................................................................1

Background ...........................................................................................................5

Argument...............................................................................................................6

POINT I:   BECAUSE THERE WAS NO PERSONAL JURISDICTION
OVER COUDERT IN CONNECTICUT, THIS COURT
PROPERLY APPLIED NEW YORK'S BORROWING
STATUTE ..........................................................................................6

POINT II:   CONNECTICUT'S CHOICE OF LAW RULES REQUIRE
THE APPLICATION OF ENGLAND'S STATUTE OF
LIMITATIONS PURSUANT TO WHICH THE CLAIM
IS TIME BARRED ............................................................................11

       A.   The Connecticut Court Would Apply England's,
and not Connecticut's, Statute of Limitations ..............................11

       B.   Statek's Claim is Barred by the English
Statute of Limitations ..................................................................18

POINT III:   THE CLAIM IS TIME BARRED UNDER CONNECTICUT'S
STATUTE OF LIMITATIONS ..........................................................22

Conclusion............................................................................................................32

i

S-231

# TABLE OF AUTHORITIES

Page

Cases

Abdelsame v. De Castro,
2007 WL 2036849 (Conn. Super. Ct. May 10, 2007).......................................................... 26, 30

Advest, Inc. v. Wachtel,
668 A.2d 367 (Conn. 1995) .................................................................................................. 14

Arbitrium (Cayman Islands) Handels AG v. Johnston,
1996 Del. Ch. Lexis 1 (Del. Ch. Jan. 5, 1996)...................................................................... 19

Ashcroft v. Iqbal,
556 U.S. 662 (2009).............................................................................................................. 4

Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.,
2010 WL 1882316 (D. Conn. 2010) .................................................................................... 13

Baxter v. Sturm, Ruger & Co., Inc.,
644 A.2d 1297 (Conn. 1994) ............................................................................................... 16

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)............................................................................................................. 4

Bellemare v. Wachovia Mortg. Corp.,
894 A.2d 335 (Conn. App. Ct. 2006),.................................................................................. 28

Blanchette v. Barrett,
640 A.2d 74 (Conn. 1994) .................................................................................................... 30

Borla v. Guion, Stevens & Ryback,
2011 WL 5307394 (Conn. Super. Ct. Oct. 20, 2011) .......................................................... 25

Brule v. Nerac Corp.,
2009 WL 5322206 (Conn. Super. Ct. Dec. 9, 2009) ........................................................... 24, 31

Calcutti v. SBO, Inc.,
224 F. Supp. 2d 691 (S.D.N.Y. 2002).................................................................................. 21

Chaiken v. VV Pub. Corp.,
119 F.3d 1018 (2d Cir. 1997)............................................................................................... 6

Chauffers, Teamsters & Helpers, Local No. 391 v. Terry,
494 U.S. 558 (1990)............................................................................................................. 17, 19

S-232

China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.,
    2012 WL 3101274 (S.D.N.Y. July 31, 2012) ............................................................ 10

Cobalt MultiFamily Investors I, LLC v. Shapiro,
    2012 WL 762129 (S.D.N.Y. Mar. 7, 2012) ................................................................ 16

Collum v. Chapin,
    671 A.2d 1329 (Conn. App. Ct. 1996) ....................................................................... 31

Conn v. Marsh & McLennan Cos., Inc.,
    944 A.2d 315 (Conn. 2008) ........................................................................................ 17

In re: Coudert Brothers LLP,
    673 F.3d 180 (2d Cir. 2012) ............................................................................. 2, 3, 26

Credle Brown v. Connecticut,
    502 F. Supp. 2d 292 (D. Conn 2007) ......................................................................... 10

Day v. Trybulski,
    2008 WL 2039301 (Conn. Super. Ct. Apr. 28, 2008) ................................................ 25

DeCorso v. Watchtower Bible and Tract Soc'y,
    752 A.2d 102 (Conn. Super. Ct. 2000) .................................................................. 4, 23

Dixon v. Evans,
    2008 WL 1948071 (Conn. Super. Ct. Apr. 22, 2008) ................................................ 30

Dugan v. Mobile Medical Testing Services, Inc.,
    830 A.2d 752 (Conn. 2003) ........................................................................................ 12

Erickson v. Pardus,
    551 U.S. 89 (2007) ....................................................................................................... 4

Federated Deposit Ins. Corp. v. Peabody, N.E., Inc.,
    680 A.2d 1321 (1966) ................................................................................................... 7

Ferens v. John Deere Co.,
    494 U.S. 516 (1990) ...................................................................................................... 2

Gaston & Snow,
    243 F.3d 601 (2d Cir. 2001) ......................................................................................... 1

Gerena v. Korb,
    617 F.3d 197 (2d Cir. 2010) ......................................................................................... 6

S-233

Haggerty v. Williams,
  855 A.2d 264 (Conn. App. 2004) ................................................................................ 31

Hamilton v. Atlas,
  197 F.3d 58 (2d Cir. 1999) ....................................................................................... 10

Haymond v. Statewide Grievance Comm.,
  723 A.2d 821 (Conn. Super. Ct. 1997) ...................................................................... 16

Hechtman v. Conn. Dep't of Public Health,
  2009 WL 5303796(Conn. Super. Ct. Dec. 3. 2009) ( ................................................. 23

Howe v. Stuart Amusement,
  Parks, 1991 WL 273637 (Conn. Super. Ct. Dec. 11, 1991) ................................. 13, 14

Huyn v. Chase Manhattan Bank,
  465 F.3d 992 (9th Cir. 2006) .................................................................................... 31

Hyek v. Field Supply Servs., Inc.,
  2011 WL 3930225 (Conn. Super. Ct. Aug. 9, 2011) ................................................. 13

Int'l Strategies Group, Ltd. v. Ness,
  645 F.3d 178 (2d Cir. 2011) .......................................................................... 23, 24, 31

Jaiguay v. Vasquez,
  948 A.2d 955 (Conn. 2008) ...................................................................................... 12

Johnston and Spillane, Technicorp International II, Inc. v. Johnston,
  2000 WL 713750 (Del. Ch. May 31, 2000) ............................................................... 20

Klaxon Co. v. Stentor Elec. Mfg. Co.,
  313 U.S. 487 (1941) ................................................................................................... 1

L.F. Pace Const. Inc. v. Simko,
  2007 WL 4686485 (Conn. Super. Ct. Dec. 7, 2007) ................................................. 26

Levy v. Pyramid Co. of Ithaca,
  871 F.2d 9 (2d Cir. 1989) ........................................................................................... 7

Marshak v. Reed,
  229 F. Supp. 2d 179 (E.D.N.Y. 2002) ......................................................................... 2

McKenna v. Wright,
  386 F.3d 432 (2d Cir. 2004) ....................................................................................... 4

S-234

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,
  84 F.3d 560 (2d Cir. 1996)............................................................................... 8

Moran v. Hirsch,
  2009 WL 5322427 (Conn. Super. Ct. Dec. 14, 2009) ................................... 25

Morris Plan Ind. Bank v. Richards,
  42 A.2d 147 (Conn. 1945) ............................................................................. 17

O'Brien v. Stolt-Neilsen Transp. Group, Ltd.,
  2004 WL 304318 (Conn. Super. Ct. Jan. 30, 2004)....................................... 16

O'Connor v. O'Connor,
  519 A.2d 13 (Conn. 1986) ......................................................................... passim

Ogle Specialty, LLC v. Weigand,
  2012 WL 3089705 (Conn. Super. Ct. July 3, 2012) ................................. 23, 32

Partitions, Inc. v. Blumberg Assocs., Inc.,
  2001 WL 1332174 (Conn. Super. Ct. Oct. 9, 2001) ...................................... 23

Peter Pan Bus Lines, Inc. v. Adventure's Tours Corp.,
  2011 WL 6413832 (Conn. Super. Dec. 5, 2011) ............................................. 7

Philips v. Scott,
  446 F. Supp. 2d 70 (D. Conn. 2006)............................................................... 13

Piteo v. Gottier,
  963 A.2d 83 (Conn. App. Ct. 2009)........................................................... 22, 30

Rana v. Ritacco,
  672 A.2d 946 (Conn. 1996) ............................................................................. 5

Rosato v. Mascardo,
  844 A.2d 893 (Conn. App. Ct. 2004)............................................................. 30

Rosenthal v. Ford Motor Company, Inc.,
  462 F. Supp. 2d 296 (D. Conn. 2006) ............................................................ 12

Sanborn v. Greenwald,
  664 A.2d 803 (Conn. App. Ct. 1995)....................................................... passim

Schuster v. Dragone Classic Motor Cars,
  67 F. Supp. 2d 288 (S.D.N.Y. 1999) .............................................................. 12

v

Smith v. Railworks Corp.,
   2012 WL 752048 (S.D.N.Y. Mar. 6, 2012) ................................................................. 7

SongByrd, Inc. v. Estate of Grossman,
   206 F.3d 172 (2d Cir. 2000) .................................................................................. 6

Speed Prods. Co. v. Tinnerman Prods.,
   222 F.2d 61 (2d Cir. 1955) ................................................................................... 2

Svege v. Mercedes Benz Credit Corp.,
   182 F. Supp. 2d 226 (D. Conn. 2002) ..................................................................... 13

Thomas Iron Co. v. Ensign-Bickford Co.,
   42 A.2d 145 (Conn. 1945) .............................................................................. 16, 17

U.S. Fidelity & Guar. Co. v. S.B. Phillips Co., Inc.,
   359 F. Supp. 2d 189 (D. Conn. 2005) ..................................................................... 13

U.S. v. Brutus,
   505 F.3d 80 (2d Cir. 2007) ................................................................................... 7

U.S. v. Oneida Indian Nation of N.Y.,
   617 F.3d 114 (2010) ........................................................................................... 7

Van Dusen v. Barrack,
   376 U.S. 612 (1964) ........................................................................................ 2, 6

Vanliner Ins. Co. v. Fay,
   907 A.2d 1220 (Conn. App. Ct. 2006) .............................................................. passim

Williams v. State Farm Mutual,
   641 A.2d 783 (Conn. 1994) ................................................................................. 12

**Statutes**

28 U.S.C. §1404(a) ........................................................................................... 2, 6

Conn. General Statutes, § 52-59b ............................................................................ 8

Connecticut General Statutes § 52-577 .................................................................. 4, 22

1 Conn. Prac., Super. Ct. Civ. Rules R. 1.16 (2011 ed.) ................................................ 26

1 Conn. Prac., Super. Ct. Civ. Rules R. 8.5 (2011 ed.) ................................................. 27

S-236

## Miscellaneous

16 C. Wright & A. Miller, Federal Practice and Procedure, § 3986 (3d ed. 2012) ........................ 2

Moore's Federal Practice §§134.02[1][c], 134.05[6] (3d ed. 2012) ................................................ 7

Restatement (Second) Agency, § 119 (1957) .............................................................................. 25

Restatement (Second) of Conflict of Laws, § 142 (1969) ....................................................... passim

S-237

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

IN RE: COUDERT BROTHERS LLP,      :

                                     :     Case No. 06-12226 (RDD)

         Debtor.          :

------------------------------------------------------------x

### DEVELOPMENT SPECIALISTS INC.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION OF STATEK CORPORATION FOR RECONSIDERATION OF THIS COURT'S ORDER DISALLOWING STATEK'S CLAIM # 239

Development Specialists, Inc., as plan administrator for Debtor Coudert Brothers LLP

("Coudert"), respectfully submits this brief in opposition to the motion of Statek Corporation

("Statek") for reconsideration of this Court's Order, dated July 21, 2009 (the "Order") which

disallowed Claim No. 239 filed by Statek (the "Claim").[1]

<u>Summary of Argument</u>

This Court should not reconsider the Order, or if it reconsiders the Order, it should adhere

to its original decision and disallow Statek's Claim. At a minimum, the Court should hold the

motion in abeyance to allow the parties to take limited discovery on the question of when Statek

had sufficient knowledge of the facts for the applicable statute of limitations to run.

This Court previously disallowed Statek's Claim on the ground that it was time barred by

operation of New York's borrowing statute which the Court applied in reliance on the Second

Circuit's ruling in <u>Gaston & Snow</u>, 243 F.3d 601 (2d Cir. 2001), <u>cert. denied</u>, 534 U.S. 1042

(2001), and the Supreme Court's ruling in <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487

---

[1] Pursuant to Coudert's First Amended Plan of Liquidation, effective as of September 8, 2008, Coudert's Plan Administrator, Development Specialists, Inc., succeeded to its rights. For ease of understanding, we refer to the Debtor as Coudert. The Order includes, as Exhibit A, the transcript of the Court's May 18, 2009 bench ruling granting Coudert's motion to disallow the Claim. References below to that ruling will be as follows: "Order, Ts. p. __." The Order is Document No. 1207 on the Bankruptcy Court docket.

{00038545.DOC}