(1941). On appeal from the decision of the United States District Court (Hellerstein, J.),
affirming this Court's order denying Statek's motion for reconsideration of the Order, the Second
Circuit held that Gaston did not apply to Statek's Claim based on an action commenced in
another jurisdiction prior to Coudert's bankruptcy filing. Rather, the Second Circuit held that the
resolution of the motion to disallow the Claim should be governed by extension of the United
States Supreme Court's decisions in Van Dusen v. Barrack, 376 U.S. 612 (1964), where the
Supreme Court held that following a transfer under 28 U.S.C. §1404(a), the transferee court must
apply the law of the transferor court, and Ferens v. John Deere Co., 494 U.S. 516 (1990), in
which the Supreme Court extended that ruling to transfers initiated by plaintiffs. Thus, the
Second Circuit directed that this action should be remanded to this Court "with instructions to
apply Connecticut's choice of law rules in deciding Statek's motion to reconsider." In re:
Coudert Brothers LLP, 673 F.3d 180, 191 (2d Cir. 2012).

    However, nothing in the Second Circuit's decision requires this Court to ignore well
established binding Second Circuit precedent which clearly holds that the law of the transferor
does not apply where the transferor court has no personal jurisdiction over the defendant.[2]

    Coudert had a pending motion to dismiss the action Statek commenced in Connecticut
(the "Connecticut Action") for lack of personal jurisdiction when the Connecticut Court instead
chose to rule on Coudert's motion to dismiss on forum non conveniens grounds.[3] The court

---

[2] Coudert moved for reconsideration of the Second Circuit's decision seeking a clarification that its instruction to
apply Connecticut choice of law principles applied only if Connecticut had jurisdiction over Coudert. The Second
Circuit's denial of that motion has no precedential value and does not bar this Court from considering the issue.
See, Speed Prods. Co. v. Tinnerman Prods., 222 F.2d 61, 68 (2d Cir. 1955); Marshak v. Reed, 229 F. Supp. 2d 179,
185 (E.D.N.Y. 2002); 16 C. Wright & A. Miller, Federal Practice and Procedure, § 3986 (3d ed. 2012).

[3] The transcript of the Connecticut District Court's February 21, 2008 bench ruling on Coudert's motion to dismiss
the Connecticut Action was annexed to Coudert's memorandum of law In opposition to Statek's motion for
reconsideration of this Court's Order, dated August 14, 2009. [Docket No. 1212] References to that transcript will
be "Conn. Ts. p. ___."

S-239

conditionally dismissed the action on that basis but noted: "there are significant issues regarding personal jurisdiction [over] defendant[] Coudert... in Connecticut." (Conn. Ts.  p. 33.)

It is respectfully submitted that a review of the papers submitted by the parties on that motion discloses that there was no jurisdiction over Coudert in Connecticut.  In such a case, it is well settled in this Circuit that the law of the transferee court, i.e. New York, should apply and this Court should therefore adhere to its prior ruling that Statek's claim is time barred, as Statek concedes it would be, by New York's borrowing statute.  (Point I.)

Even if this Court decides it must apply Connecticut's choice of law rules, either because it determines it is foreclosed from examining the personal jurisdiction issue or because it finds that Coudert was subject to personal jurisdiction in Connecticut, contrary to Statek's assertion, the application of Connecticut's choice of law rules does not result in the application of Connecticut's statute of limitations.  Rather, the courts in Connecticut have moved away from the traditional approach of applying the limitations period of the forum and have adopted the significant interests test as articulated in § 142 of the Restatement (Second) of Conflict of Laws, to determine which state's statute of limitations should apply.  This Court has already held that under such a test, given the "paramount interest of England in regulating English attorneys," the statute of limitations of England should apply.  (Order, Ts. p. 28.)  Because Statek did not seek reconsideration of that portion of the Order, and because its appeal from the Order was dismissed as untimely, In re Coudert, supra, 673 F.3d at 185-86, this finding is undisturbed by the Second Circuit's decision.

For the reasons set forth below, Coudert submits that there is sufficient undisputed evidence, based on Statek's pleading and admissions in this action, and on judicial decisions issued in Statek's dispute with Hans Johnston and Sandra Spillane who were found to have

S-240

defrauded Statek, to find that Statek's Claim is barred by the English statute of limitations. However, if the Court disagrees, it is respectfully submitted that the Court should hold this motion in abeyance and allow the parties to take limited discovery on the issue of when the English statute began to run. This motion can then be determined as a summary judgment motion. (Point II.)[4]

Finally, even if the Court determines that Connecticut's own statute of limitations should apply, the Claim is time barred. The applicable Connecticut statute of limitations is three years. Connecticut General Statutes § 52-577 ("[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of"). The three year limitation period "begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." DeCorso v. Watchtower Bible and Tract Soc'y, 752 A.2d 102, 108 (Conn. Super. Ct. 2000). That period clearly ran in 1999, six years before the Connecticut Action was commenced. Although Statek seeks to rely on Connecticut's "continuing course of conduct doctrine" to toll the statute, that doctrine is of no application as a matter of law because there was no relationship between the parties at the relevant time and no continuing wrong by Coudert. Further, Statek's knowledge, as early as 1996, of the facts on which it based the Connecticut Action, bars its reliance on that tolling doctrine. For this reason as well, the Court should adhere to its ruling and disallow the Claim. (Point III.)

---

[4] The running of the statute of limitations is the proper subject of a motion to dismiss. (Order, Ts. p. 5.) Moreover, in ruling on this motion, the allegations of Statek's complaint are not entitled to blind deference. Rather, the factual allegations of the pleading must "be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007); Erickson v. Pardus, 551 U.S. 89, 93 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009); McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004). Where plaintiff's pleading does not satisfy this standard, the defendant should not be subjected to the burden of continued discovery and the worry of overhanging litigation. (Order, Ts. p. 4.)

S-241

### Background

Because the Court is familiar with the background of this dispute, Coudert will be brief.

In short, Statek, a California corporation, which on and after 1996 is conceded to have

maintained no office in Connecticut, commenced suit in Connecticut state court on November 5,

2005.[5]  The complaint alleged that Coudert, which Statek acknowledged was in dissolution, had

been complicit in the fraud committed against Statek by its officers and directors, Hans Johnston

and Sandra Spillane.  (Those allegations have been withdrawn by Statek.)  Statek also alleged

that Coudert negligently failed, some nine years earlier, in 1996, to produce to Statek all

documents in its possession pertaining to Coudert's London office's alleged representation of

Statek in the early 1990s.

Coudert timely moved to dismiss the complaint for lack of personal jurisdiction and on

forum non-conveniens grounds.  While that motion was pending, Coudert filed for bankruptcy in

this Court.  The automatic stay which resulted was lifted pursuant to a stipulation of the parties,

so ordered by this Court on September 5, 2007, solely to allow the Connecticut District Court to

rule on the pending motions.  [Docket No. 520]  The Connecticut court declined to reach the

personal jurisdiction motion and conditionally dismissed the action on forum non conveniens

grounds.  As Coudert did not agree to the conditions set forth by the Connecticut District Court,

the Connecticut Action was not dismissed, but the focus of the dispute returned to the

Bankruptcy Court.

Shortly thereafter, the parties agreed to lift the automatic stay again, this time solely for

the purpose of allowing Statek to amend its complaint in the Connecticut Action to assert claims

---

[5] Statek filed its Connecticut complaint on October 28, 2005, but under Connecticut law, the action was not
commenced until the summons was served on Coudert on November 5, 2005.  See e.g. Rana v. Ritacco, 672 A.2d
946, 951 (Conn. 1996).

{00038545.DOC}                                    5

S-242

under English law, which amendment would effect a modification of the Claim, and to proceed

to mediation in the Bankruptcy Court. The stipulation and order expressly provided that Coudert

would not be required to answer the amended complaint. (Stipulation and Order, dated August

21, 2008, ¶ 2.) [Docket No. 862] Statek's amended complaint limited the Claim to one based on

the alleged negligent failure of Coudert's London office in 1996 to provide documents to Statek.

As will be further developed below, it is clear that Connecticut has virtually no connec-

tion to the Claim.

Argument

POINT I

BECAUSE THERE WAS NO
PERSONAL JURISDICTION OVER COUDERT
IN CONNECTICUT, THIS COURT PROPERLY
APPLIED NEW YORK'S BORROWING STATUTE

In its decision, the Second Circuit stated that by extension of the Supreme Court's rulings

in Van Dusen and Ferens, the Claim should be treated as if it had been transferred from the

District of Connecticut pursuant to 28 U.S.C. §1404(a).[6]  In Van Dusen, however, the Supreme

Court clearly held that it was protecting plaintiff's venue privilege where the defendant "was

properly subjected to suit in the transferor State." Van Dusen, supra, 376 U.S. at 638. Where,

the defendant was not properly subject to suit in the transferor court, the rationale and holdings

of Van Dusen and Ferens do not apply.

Indeed, the Second Circuit has clearly and repeatedly held that where there is no basis for

personal jurisdiction over defendant in the transferor court, the transferee court must apply its

own law. Gerena v. Korb, 617 F.3d 197, 204-205 (2d Cir. 2010); SongByrd, Inc. v. Estate of

Grossman, 206 F.3d 172, 177-180 (2d Cir. 2000); Chaiken v. VV Pub. Corp., 119 F.3d 1018,

---

[6] Coudert reserves its right to claim in the future that the Second Circuit's Order was in error.

S-243

1030 (2d Cir. 1997); Levy v. Pyramid Co. of Ithaca, 871 F.2d 9, 10 (2d Cir. 1989); see also

Smith v. Railworks Corp., 2012 WL 752048, **5-6 (S.D.N.Y. Mar. 6, 2012).

The Second Circuit decision did not limit or overrule these well-established authorities

and therefore they remain good law and should be followed.  See U.S. v. Oneida Indian Nation

of N.Y., 617 F.3d 114, 122 (2010) (one panel of court of appeals cannot overrule another panel);

U.S. v. Brutus, 505 F.3d 80, 87 (2d Cir. 2007) (same); Moore's Federal Practice §§134.02[1][c],

134.05[6] (3d ed. 2012).

While the Second Circuit asked this Court to consider what choice of law decision a

Connecticut court would make in this case on the statute of limitations issue, the unavoidable

conclusion is that for want of jurisdiction over the defendant, the Connecticut court would

decline to reach the choice of law question and would dismiss the case.  Indeed, in the absence of

personal jurisdiction, the court would be unable to reach any other issue.  "Whenever the absence

of jurisdiction is brought to the notice of a court or tribunal, cognizance of it must be taken and

the matter passed upon before it can move one further step in the cause; as any movement is

necessarily the exercise of jurisdiction."  Federated Deposit Ins. Corp. v. Peabody, N.E., Inc.,

680 A.2d 1321, 1325 (1966); see also, Peter Pan Bus Lines, Inc. v. Adventure's Tours Corp.,.

2011 WL 6413832, *3 (Conn. Super. Dec. 5, 2011).

Therefore, before deciding this motion for reconsideration, it is respectfully submitted

that this Court should decide the fully briefed motion to dismiss for lack of personal jurisidiction.

That motion can be decided on the basis of those submissions with the following brief addendum

which addresses the impact of the amendment of Statek's complaint.[7]

---

[7] The parties' submissions on the motion to dismiss the Connecticut Action are annexed hereto as an addendum.  To avoid burdening the Court, we have included the parties' submissions without their voluminous exhibits.  We would
(Continued)

S-244

Statek's claim that there was personal jurisdiction over Coudert in Connecticut, an issue

on which it bears the burden, Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560,

566 (2d Cir. 1996), focused on Connecticut's long-arm statute. Conn. General Statutes, § 52-

59b. Thus, in its brief before the Second Circuit, Statek claimed that jurisdiction in the original

complaint was based on the facts that Statek's executive offices were located in Connecticut "at

the relevant time" and Coudert's London office communicated with Statek's former executives

there. (Second Circuit Brief for Appellant Statek Corporation dated September 30, 2010, Index

No. 10-2723 [Docket No. 28] ("Statek App. Br."), at p. 3.)

The "relevant time" under the original complaint, which focused on the now abandoned

allegations that Coudert was complicit in the fraud perpetrated on Statek by Johnston and

Spillane, was the period before 1996. The original complaint alleged that Johnston and Spillane

conducted the fraud from their offices in Connecticut and that Coudert sent bills to that office.

(Complaint, ¶¶ 23, 25.)[8] The Connecticut District Court had grave reservations about whether

this was sufficient to establish jurisdiction over Coudert. The Court expressly noted that the only

allegation in the complaint which tied anything Coudert did to Connecticut was the allegation

that bills were mailed to Statek in Connecticut. (Conn. Ts. p. 11.) Judge Underhill, of the

Connecticut District Court, found that Connecticut had some connection to the underlying fraud

committed by Johnston and Spillane, but very little to the claims against Coudert. (Conn. Ts. p.

32.) Judge Underhill also found that Coudert's alleged actions were centered in England. (Id. at

---

(Continued)

be pleased to provide those exhibits at the Court's request. In addition, if the Court would prefer given the changes
in the operative pleading in the Connecticut Action, Coudert will re-brief the issue of jurisdiction.

[8] The original complaint dated October 28, 2005 is annexed to Statek's proof of claim, dated January 25, 2007. It is
also annexed as Exhibit E to the affidavit of Karen S. Frieman, sworn to March 13, 2009, submitted in support of
Coudert's motion to disallow the claim. [Docket No. 1153]

{00038545.DOC}                    8

S-245

p. 12.)  The Connecticut Court concluded that "there are significant issues regarding personal jurisdiction [over] defendant[] Coudert... in Connecticut."  (Id. at p. 33; see also id. at pp. 9 ("it is not at all clear to me that there is personal jurisdiction over..." Coudert); 11; 32.)

The basis for long-arm jurisdiction is even more attenuated under the amended complaint.  The amended complaint makes no reference whatsoever to the state of Connecticut and eliminated all claims against Coudert relating to the period before 1996.  The single claim against Coudert, purportedly asserted under English law, alleges only that the London office of Coudert failed in 1996 to provide documents to Statek.  However, Statek, a California corporation, has conceded that it had an office in Connecticut only while Johnston was in charge of Statek prior to 1996.  (Statek's Memorandum of Law in Opposition to Coudert Brothers LLP's Motion to Disallow Claim # 239, April 13, 2009 ("St. Opp. Disallow"), Docket No. 1165, pp. 30, 37 ("Statek did not even maintain an office in Connecticut after Vendel took control of the company in 1996"); Complaint, ¶ 2.)  In fact, Statek has categorically stated that it never transacted business in Connecticut.  (St. Opp. Disallow p. 36; see also, Conn. Ts. pp. 33-34.)

In short, there is no connection between the wrongdoing alleged to have been committed by Coudert and Connecticut and no basis for a finding of jurisdiction over Coudert, consistent with Coudert's due process rights, under Connecticut's long arm statute.

Statek will likely argue that Coudert waived the jurisdictional defense.  This claim does not withstand scrutiny.  On February 3, 2006, Coudert made a timely motion to dismiss the complaint on the grounds of forum non conveniens and lack of personal jurisdiction.  The Connecticut state court action was then removed to the Connecticut District Court on March 23, 2007, following Coudert's bankruptcy filing which had the effect of staying the Connecticut Action.  On September 5, 2007, the parties agreed to lift the automatic stay for the purposes of

S-246

taking discovery and obtaining decision on the pending motions to dismiss. Those motions were decided on February 21, 2008, when the Connecticut Court declined to reach the personal jurisdiction motion and conditionally granted the motion to dismiss on forum non conveniens grounds. The action was reinstated on May 8, 2008, after Coudert declined to agree to the Court's conditions, but was stayed by virtue of Coudert's bankruptcy.

Less than 30 days later, on June 2, 2008, Statek again moved for relief from the stay to amend its complaint to assert claims under English law. That motion was settled by the parties by stipulation dated August 21, 2008, which allowed the amendment of the complaint, specifically did not require Coudert to file an answer thereto, and directed the parties to mediate Statek's Claim before the Bankruptcy Court.

At that point, Statek's Claim was firmly in the hands of the Bankruptcy Court. There was no moment when Coudert had any reason to seek a return to the Connecticut Court to continue contesting jurisdiction there. Whether or not that court had jurisdiction over Coudert was then irrelevant because Statek had filed a Claim which Coudert would have to litigate, which it has been doing, and which the parties had determined would be mediated in the Bankruptcy Court. Coudert never took the knowing and deliberate steps required to constitute a waiver of its right to dispute jurisdiction over it in Connecticut. <u>China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.</u>, 2012 WL 3101274, *8 (S.D.N.Y. July 31, 2012) (holding that a party did not waive its personal jurisdiction objection, as waiver is the "intentional relinquishment or abandonment of a known right" and "requires a finding that such waiver is knowing and intelligent").[9]

---

[9] The authorities Statek previously relied on in opposition to Coudert's petition for rehearing in the Second Circuit to argue that Coudert waived this defense are entirely inapposite. In <u>Credle Brown v. Connecticut</u>, 502 F. Supp. 2d 292, 297 (D. Conn 2007), the defendant affirmatively stated he was not contesting personal jurisdiction and then attempted to raise the defense for the first time in answer to plaintiff's second amended complaint. In <u>Hamilton v. Atlas</u>, 197 F.3d 58, 60-62 (2d Cir. 1999), the defendant never moved to dismiss the action based on the lack of
<span style="text-align:right;display:block">(Continued)</span>

S-247

This Court should treat Statek's Claim as if it had been transferred as directed by the Second Circuit in its decision, but this Court must also adhere to well-established Second Circuit precedent which holds that where there is no jurisdiction over the defendant in the transferor court, the law of the transferee court should apply. Here, as this Court properly found in disallowing the Claim, the Claim is barred by New York's borrowing statute. The Court, therefore, should either deny Statek's motion for reconsideration or reconsider its original decision and adhere to its ruling disallowing the Claim.

POINT II

CONNECTICUT'S CHOICE OF LAW RULES REQUIRE
THE APPLICATION OF ENGLAND'S STATUTE OF
<u>LIMITATIONS PURSUANT TO WHICH THE CLAIM IS TIME BARRED</u>

A.    The Connecticut Court Would Apply
England's, and not Connecticut's,
<u>Statute of Limitations.</u>

If this Court were to find, and we respectfully submit it should not, that it must apply Connecticut's choice of law rules notwithstanding the lack of personal jurisdiction over Coudert in Connecticut, or if it determines there was personal jurisdiction over Coudert there, the application of Connecticut choice of law principles would <u>not</u> require the application of Connecticut's statute of limitations.

Rather, Connecticut would apply an interest analysis test under the <u>Restatement (Second) Conflict of Laws</u> to determine which law to apply in tort cases such as this. In the Connecticut Supreme Court's most recent pronouncement on the subject, the Court stated: "we have moved

_____

(Continued)

personal jurisdiction and participated in pre-trial discovery for four years. Significantly, and as noted above, the Second Circuit never ruled on the jurisdictional issue or any claim of waiver in this action.

S-248

away from the place of the injury rule for tort actions and adopted the most significant

relationship test found in §§ 6 and 145 of the Restatement (Second) of Conflict of Laws."

Jaiguay v. Vasquez, 948 A.2d 955, 972 (Conn. 2008).

In O'Connor v. O'Connor, 519 A.2d 13, 25-26 (Conn. 1986), the Connecticut Supreme

Court "expressly abandoned categorical allegiance to the doctrine of lex loci delicti in tort

actions." Id. at 973, n. 20. See also, Dugan v. Mobile Medical Testing Services, Inc., 830 A.2d

752, 759 (Conn. 2003);   Williams v. State Farm Mutual, 641 A.2d 783, 789 (Conn. 1994);

Rosenthal v. Ford Motor Company, Inc., 462 F. Supp. 2d 296, 301 (D. Conn. 2006).

In O'Connor, supra, 519 A.2d at 25-26, the Connecticut Supreme Court held that

Connecticut would not strictly apply the traditional lex loci test for making choice of law

determinations.   Indeed, the O'Connor court held that the more traditional rules for choice of law

determinations, such as that now relied on by Statek, are "legal anachronisms" that have "lost

[their] legal underpinnings." O'Connor, supra, 519 A.2d at 25-26.[10]   Rather, O'Connor holds

that a court "should incorporate the guidelines of the Restatement as the governing principles for

those cases in which application of the doctrine of lex loci would produce an arbitrary, irrational

result." O'Connor, supra, 519 A.2d at 22.

In reliance on this language, some courts have interpreted O'Connor as not adopting the

Restatement standard in all situations but, rather only where lex loci would produce an arbitrary,

irrational result.   However, Jaiguay, supra, imposes no such limits on Connecticut's adoption of

the Restatement. See also, Schuster v. Dragone Classic Motor Cars, 67 F. Supp. 2d 288, 292

(S.D.N.Y. 1999) (concluding that Connecticut would abandon lex loci delicti).

In any event, the courts in Connecticut have also recognized that in determining whether

---

[10] Statek itself referred to the lex loci approach as "a rigid and long-outdated characterization of the nature of statutes of limitations."  (St. Opp. Disallow p. 49.)

S-249

the application of Connecticut law would produce an inappropriate result, the court has to engage in exactly the analysis required under the Restatement to determine the jurisdiction with the most significant relationship to the facts. Howe v. Stuart Amusement Parks, 1991 WL 273637, **2-3 (Conn. Super. Ct. Dec. 11, 1991) (O'Connor "effectively eviscerates the [lex loci] rule in virtually all conflict situations since a court would need to undertake a 'most significant relationship' analysis in order to determine whether its result is arbitrary or irrational"); Aviamax Aviation Ltd. v. Bombardier Aerospace Corp., 2010 WL 1882316, *2 (D. Conn. 2010) (since place of injury lacked any other connection to dispute, it would be arbitrary to apply law of that jurisdiction such that court "must apply the 'most significant relationship test"); U.S. Fidelity & Guar. Co. v. S.B. Phillips Co., Inc., 359 F. Supp. 2d 189 (D. Conn. 2005); Svege v. Mercedes Benz Credit Corp., 182 F. Supp. 2d 226, 229-235 (D. Conn. 2002). For this reason, the Howe court concluded that the mandate of O'Connor "is to apply the most significant relationship test to all tort cases involving the conflict of laws." 1991 WL 273637 at **2-3.

Connecticut's movement away from outmoded fixed rules for determining choice of law issues and to the most significant interests test of the Restatement extends to cases determining which statute of limitations to apply. Hyek v. Field Supply Servs., Inc., 2011 WL 3930225, *3 (Conn. Super. Ct. Aug. 9, 2011); Howe, supra 1991 WL 273637 at **3-6; Philips v. Scott, 446 F. Supp. 2d 70, 83 (D. Conn. 2006) (selection of state whose statute of limitations will be applied is "essentially similar to that used in the case of other issues of choice of law").

In Hyek, supra, 2011 WL 3930225 at *3, the court held that the determination of whether New York's or Connecticut's statute of limitations apply is guided by the "most significant relationship test" under § 142 of the Restatement. Section 142 provides:

> Whether a claim will be maintained against the defense of the
> statute of limitations is determined under the principles stated in

S-250

§6.  In general, unless the exceptional circumstances of the case make such a result unreasonable:

(1) the forum will apply its own statute of limitations barring the claim.

(2) the forum will apply its own statute of limitations permitting the claim unless:

    (a) maintenance of the claim would serve no substantial interest of the forum; and

    (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

In applying § 142, the courts use the same principles under § 6 of the Restatement as they do under O'Connor.  Advest, Inc. v. Wachtel, 668 A.2d 367, 372 (Conn. 1995) ("whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6 of [the Restatement]").

Thus, in Howe, the court concluded that the determination of which statute of limitation should apply must be made by reference to the most significant relationship test:

In ascertaining the applicable statute of limitations, however, the Restatement favors the jurisdiction with the most significant relationship to the cause of action, with the "black letter" caveat that a forum apply its own statute of limitations barring the claim, and that the forum apply its own statute of limitations permitting the claim, unless a state with a more significant relationship to the parties or the occurrence would bar the claim.  This rule is substantially similar to the approach advocated in O'Connor v. O'Connor, supra, in that it favors forum law except in cases where the forum is the less interested of two or more jurisdictions.  This rule will be used to determine the applicable statute of limitations.

1991 WL 273637 at *3 (internal citation omitted).

As discussed in greater length below, Statek's Claim is untimely in Connecticut and that ends the matter under § 142(1).  (Point III, infra.)  But even if that were not so, it is clear that the

{00038545.DOC}

14

S-251

factors set forth in §§ 6 and 145 of the Restatement Second demonstrate for purposes of § 142(2)

that Connecticut does not have the most significant relationship with the claim such that its

statute of limitations should not apply.

Section 145(2), which the courts rely on it applying the factors in § 6,  provides that

"[c]ontacts to be taken into account in applying the principles of § 6 to determine the law

applicable to an issue include:  (a) the place where the injury occurred [here, California, if

anywhere]; (b) the place where the conduct causing the injury occurred [here England, if

anywhere]; (c) the... place of incorporation and place of business of the parties [England or New

York for Coudert and California for Statek];[11] and (d) the place where the relationship, if any,

between the parties is centered."  O'Connor, supra, 519 A.2d at 23.

The underlying relationship with Statek, which had no place of business in Connecticut

during the time relevant to Statek's claim that Coudert in England failed in 1996 to provide

documents, could not have been in Connecticut.  Indeed, this Court has already found that

neither party here made a case for Connecticut having the most significant interest (Order, Ts. p.

28), and Statek previously argued that England had the most significant relationship with the

action. (St. Opp. Disallow p. 44.)  The Connecticut court itself held in the Connecticut Action

that "[t]here's a fairly strong showing that the matter arises out of activities that occurred

principally abroad, and it's not apparent to me, especially given the position taken in the briefs

about Statek's presence in Connecticut, why Connecticut has much, if any connection to this

dispute." (Conn. Ts. p. 9.)

The Restatement factors demonstrate that England, New York or California would all

have claims to be the jurisdiction with the most significant interest in this dispute.  Thus,

---

[11] Notably, Statek commenced suit against the New York entity, Coudert Brothers, LLP.

S-252

Connecticut choice of law principles would call either for the application of New York or California law, under which Statek has conceded its Claim is time barred (St. Opp. Disallow, pp. 44-45), or the statute of limitations of England.

This Court held that the interest of New York or California would be overcome here by "the paramount interest of England in regulating English attorneys and malpractice claims against English attorneys (recognizing that the attorneys who allegedly committed the malpractice and/or negligence were English solicitors…)." (Order, Ts. pp. 28-29.)   This finding is supported by ample authority acknowledging the interest of the state where the attorney practices in regulating his or her conduct.   Cobalt MultiFamily Investors I, LLC v. Shapiro, 2012 WL 762129, *8 (S.D.N.Y. Mar. 7, 2012); O'Brien v. Stolt-Neilsen Transp. Group, Ltd., 2004 WL 304318, **2-5 (Conn. Super. Ct. Jan. 30, 2004); Haymond v. Statewide Grievance Comm., 723 A.2d 821, 825 (Conn. Super. Ct. 1997).

In fact, Coudert could not put it better than Statek did to this Court: "England has a far greater interest in regulating the conduct of English solicitors than Connecticut has in protecting California citizens who engage overseas lawyers." (St. Opp. Disallow p. 40.)[12]

Despite these authorities which demonstrate that Connecticut would apply the Restatement test to issues of statutes of limitations, Statek clings to the traditional rule that if limitations are procedural, the statute of the forum applies and that they are substantive (and subject to the Restatement test) only if the cause of action asserted did not exist at common law. Statek's argument is unconvincing.   Thus, Statek relies on Baxter v. Sturm, Ruger & Co., Inc., 644 A.2d 1297 (Conn. 1994), and two cases from 1945, Thomas Iron Co. v. Ensign-Bickford

---

[12] Even if O'Connor, supra, were to be limited to situations where the application of lex loci leads to an arbitrary and irrational result, the lack of any connection between Connecticut and the amended complaint would make it both arbitrary and irrational to apply Connecticut law.

S-253

Co., 42 A.2d 145 (Conn. 1945) and Morris Plan Ind. Bank v. Richards, 42 A.2d 147 (Conn.

1945), all of which predate Hyek, Phillips and Advest.

Nor can Statek find comfort in Sanborn v. Greenwald, 664 A.2d 803 (Conn. App. Ct.

1995). Statek relies on Sanborn, to support its claim that the tort of legal malpractice existed at

common law and the decision does say that. However, of perhaps greater significance for this

matter, in Sanborn the court affirmed the decision below that the continuing course of conduct

doctrine did not apply to save the plaintiff's claim and denied the plaintiff's challenge to the

constitutionality of the statute of limitations for negligence claims such as legal malpractice

because it prevented her asserting the claim arising out of an injury she discovered after the

statute of limitations had expired. The court found that Connecticut's three year statute of

limitations applicable was a statute of repose designed to protect defendants from stale claims

and avoid the difficulty of proof inherent in older cases. Id. at 811-12. It concluded that it was

not unconstitutional to place the qualification of a limitations period on the right to bring an

attorney malpractice action. In other words, Sanborn recognizes that Connecticut is not bound to

leave common law rights untouched and that it is consistent with Connecticut policy for a statute

of limitations to be imposed upon common law rights. It thereby lays the groundwork for the

decisions in Hyek and Howe that the selection of the limitations period may be based on the

most significant interests test rather than blind adherence to lex fori.[13]

The Connecticut Court would apply the most significant interests test and recognize the

---

[13] Statek also argues that claims for "...breach of fiduciary duty existed at common law." (Statek Brief p. 4.) This,
however, ignores the fact that its claims for breach of fiduciary duty have either been withdrawn or dismissed.
(Order, Ts. pp. 6, 15.) Therefore, Conn. v. Marsh & McLennan Cos., Inc., 944 A.2d 315 (Conn. 2008) (which
decides the inapplicable question of whether the state has standing to pursue a parens patriae antitrust claim for
damages to its economy under a Connecticut statute), and the concurring opinion in Chauffers, Teamsters &
Helpers, Local No. 391 v. Terry, 494 U.S. 558, 587 (1990) (dealing with the inapplicable question of whether a jury
trial is available for a claim of breach of a union's duty of fair representation), relied on by Statek, are inapt.

S-254

primacy of England's interests here. Therefore, it would apply the English statute of limitations

under which, as explained below, Statek's Claim would be barred.

B.    Statek's Claim is Barred by
      the English Statute of Limitations.

Section 14(a) of the Limitations Act of 1980, the applicable English statute of limitations,

provides that the limitations period for Statek's Claim is either six years from the date when the

cause of action accrued or three years from the "starting date." (See Order, Ts. pp. 29-30.) The

six year period, running from 1996, clearly ran before Statek commenced suit in November,

2005. Statek must therefore rely on the starting date if its Claim is to be found timely. The

"starting date" is defined in Section 5 of the Act as "[t]he earliest date on which the plaintiff

…had both the knowledge required for bringing an action for damages in respect of the relevant

damage and a right to bring such an action." Id. at 30.

This Court has held that English law takes a restrictive view of this tolling provision, and

in particular that it is enough to trigger the starting date if the claimant knows enough that "it is

reasonable to begin to investigate further… [I]t is not necessary for the claimant to have know-

ledge sufficient to enable his legal advisers to draft a fully and comprehensively particularized

statement of claim." (Order, Ts. p. 31.)

In other words, to start the three year statute of limitations under English law, it was not

necessary that Statek be certain that Coudert had acted wrongfully or have all the evidence

needed to prove that (which it would be unable to do in any event). The starting date does not

begin when a party has all the information necessary to "draft a particularized" complaint.

Rather, it must only know enough to require it to investigate and once it has that knowledge it

must conclude its investigation and commence suit within three years. A plaintiff cannot ignore

its suspicions and keep the statute of limitations period open indefinitely. This rule fairly

S-255

balances the interests of defendants in repose and plaintiffs in avoiding having their claims
barred before they had any suspicion of wrongdoing.

The starting date here occurred more than three years before Statek commenced suit such
that the action was untimely under English law. These facts are undisputed. Statek obtained
access to the books and records kept by Spillane and Johnston following resolution of an action
commenced in 1993. In 1994 Statek commenced suit under §255 of the Delaware General
Corporation Law to determine that Johnston and Spillane were not the lawful directors of TCI II,
Statek's parent. During the course of that action or from the books and records earlier obtained,
Statek learned that Coudert's London office had been retained by Johnston and Spillane during
the period when they were defrauding Statek, a fact this court has previously found most
compelling. (See Order, Ts. pp. 32-33.) The decision in the § 225 action, rendered in January of
1996, noted that some $6 million of Statek funds were unaccounted for. Arbitrium (Cayman
Islands) Handels AG v. Johnston, 1996 Dec. Ch. LEXIS 1 at *4 (Del. Ch. Jan. 5, 1996).

Almost immediately, also in January, 1996 (if not before), Statek first asked Coudert for
information. Thus, as this Court concluded, in 1996, Statek knew that Johnston and Spillane
were fraudsters and that Coudert had been advising it, including in connection with setting up a
subsidiary and buying an apartment. (See Order, Ts. p. 32.)[14] Certainly, at this point "it was
reasonable [for Statek] to begin to investigate [Coudert's involvement] further."

Five months later, in June, 1996, Statek commenced suit against Johnston and Spillane
alleging fraud and waste. The next month, in July, it asked Coudert for its Statek files. Statek
has conceded that from the first communications with Coudert, Statek felt that Coudert's

---

[14] See also, Arbitrium, supra, 1996 Del. Ch. Lexis 1 at **43, 47 (noting defendant's pattern of misleading courts and
Mr. Vendel).

S-256

responses to requests for information were "incomplete." (St. Opp. Disallow p. 18.)[15]  Indeed, in

August and October, 1996, after Coudert provided documents, Statek continued to request more

information.  (Id. pp. 19-20.)

 Clearly by October, 1996, Statek had a reason to investigate.  Nevertheless, there is no

evidence that Statek did anything else to communicate with or inquire of Coudert for years.

However, and tellingly, virtually the first thing the trustee appointed on October 2, 2002, in the

English bankruptcy of Johnston – which was filed by Statek – did was to ask Coudert on October

22, 2002, for a list of all the files Coudert had. (Order, Ts. p. 33), demonstrating that Statek was

well aware for some time of Coudert's potential liability.  Indeed, it is clear that as early as 1996,

Statek was well aware of all it needed to know to commence suit against Coudert or at least

"begin to investigate further." It did not.  Instead, Statek rested on its rights, pursued other

claims against others, allowed its claim against Coudert to grow stale, a fact exacerbated by

Coudert's bankruptcy and the dispersion of its partners and files, and waited until November 5,

2005 to commence suit to the prejudice of Coudert.

 This Court therefore stated that, given what Statek knew in 1996, "it is very tempting,

even in a motion to dismiss context, to conclude... that the 'starting date' occurred in and around

1996, the date that Coudert allegedly was negligent, and not a later date when it was established

that Coudert had not provided all of the files and information that was requested in 1996."

(Order, Ts. pp. 32-33.)  The Court ultimately held that the inquiry was precluded on a motion to

dismiss and should await "further factual development based upon what was known or should

have been understood by Statek starting in 1996, although I do believe it is very clearly

---

[15] In particular, Statek's memorandum of law reports that in a July 30, 1996 letter, Statek advised Coudert that it was
"...disappointed in your letters of July 16 and July 24, 1996, which respond incompletely or not at all to the requests
I made to you on behalf of Statek Corp...during our meeting on July 12, 1996." (Id.)  Statek's memorandum goes
on to describe the letter as outlining the requests and the reasons for Statek's disappointment.

S-257

something that could be the subject for a motion for summary judgment." (Order, Ts. p. 33.)

Coudert respectfully submits that these undisputed facts, based on Statek's pleadings,

admissions, and decisions in other cases, are sufficient to find that the statute of limitations has

run under English law.[16] But if they were not enough, the decision in the fraud and waste action

against Johnston and Spillane, <u>Technicorp International II, Inc. v. Johnston</u>, 2000 WL 713750,

*39 (Del. Ch. May 31, 2000), conclusively demonstrates that by the date of that decision, and

certainly much earlier, Statek had all the knowledge necessary to trigger the starting date.

Statek's parent, TCI II commenced the fraud and waste action on June 26, 1996 and the

Delaware Chancery Court found after trial that Johnston and Spillane were liable to TCI II

(Statek's alleged parent) for fraud, breach of fiduciary duty and waste. Among other findings,

the Court held that Johnston and Spillane had to return to Statek the fees they caused Statek to

pay to <u>Coudert.</u> <u>Id</u>. at *39. That decision also discloses and discusses the evidence offered at

trial of payments made by Johnston to <u>Coudert</u> and the fact that in 1996 Johnston had been

ordered to turn over to Statek evidence of legal services rendered to Statek and failed to, thus

demonstrating that even before 1996 Statek was aware or at least suspicious that there were

potential issues to be investigated with respect to Johnston's dealings with attorneys. The Court

also noted what it viewed as a discrepancy between the description of services rendered on

Coudert's invoices and on accompanying cover letters. The Court held:

> Because they show that Beharrell's services concerned Johnston's flat in
> London and were rendered by Beharrell and his firms for the benefit of the
> defendants, and not Statek, the disclosures on the Beharrell's invoices
> cannot be presumed to be truthful. If for no other reason, that places
> squarely upon the defendants the burden to show that the payments to
> Beharrell were made for the benefit of Statek.

---

[16] Consideration of documents attached to or incorporated by reference in the complaint and matters of which judicial notice may be taken do not convert a motion to dismiss into a summary judgment motion. <u>Calcutti v. SBQ, Inc.</u>, 224 F. Supp. 2d 691, 696 (S.D.N.Y. 2002).

S-258

Id. Indeed, the Court went so far as to question whether the work done by Beharrell's firms (including, but not limited to Coudert) was legitimate work for Statek. Id.

Coudert emphatically denies any wrongdoing in its representation of Statek, and indeed, Statek does not allege any such wrongdoing. However, it is inescapable that the facts developed in the Fraud and Waste Action, as described by the court in its 2000 decision, gave Statek ample reason (and obligation) to investigate Coudert further and to do so promptly. Indeed, as noted above, this is the purpose of the "starting date," which must be held as a matter of law to have commenced no later than May 31, 2000 – the date of the Fraud and Waste decision. However, Statek waited over five more years to commence suit – the English statute of limitations had long since run.

Therefore, the Court should adhere to its Order disallowing the Claim. In the alternative, Coudert submits that the Court should hold this motion in abeyance and direct the parties to take limited discovery on the issue of the "starting date," following which this motion can be renewed.

POINT III

THE CLAIM IS TIME BARRED
UNDER CONNECTICUT'S
STATUTE OF LIMITATIONS

Even if this Court were to find that Connecticut would apply its own statute of limitations, despite the fact that it is clear Connecticut has virtually no interest in this dispute, Statek's claim would be time barred thereunder.

There is no dispute that under Connecticut law, the statute of limitations for Statek's tort claim is three years. Connecticut General Statutes § 52-577. Further, as the Connecticut Court of Appeals stated in Piteo v. Gottier, 963 A.2d 83, 86 (Conn. App. Ct. 2009), the legislative

S-259

history of the statute "precludes any construction thereof delaying the start of the limitation

period until the cause of action has accrued or the injury has occurred. The three year limitation

period of § 52-577, therefore, <u>begins with the date of the act or omission complained of, not the</u>

<u>date when the plaintiff first discovers an injury</u>." (Emphasis supplied.) <u>See also</u> <u>Ogle Specialty,</u>

<u>LLC v. Weigand</u>, 2012 WL 3089705, *2 (Conn. Super. Ct. July 3, 2012); <u>DeCorso</u>, <u>supra</u>, 752

A.2d at 108.

 The statute of limitations in Connecticut began running no later than September, 1996,

when Coudert allegedly failed to provide all documents to Statek. It ran no later than September,

1999, six years before the Complaint was served.

 Statek acknowledges this but claims that the statute was tolled by virtue of Connecticut's

doctrine of "continuing course of conduct." Under Statek's authority, <u>Vanliner Ins. Co. v. Fay</u>,

907 A.2d 1220, 1231 (Conn. App. Ct. 2006), such a "continuing course of conduct" <u>may</u> (not

must) toll the statute of limitations in the presence of a continuing duty by the defendant to the

plaintiff. The continuous course of conduct doctrine is "narrowly and somewhat sparingly"

applied because it contravenes, or at least qualifies, the legislatively mandated policies favoring

repose found in the statute of limitations. <u>Partitions, Inc. v. Blumberg Assocs., Inc.</u>, 2001 WL

1332174, *3 (Conn. Super. Ct. Oct. 9, 2001).

 Statek cannot meet its burden of proving a continuous course of conduct with plausible

evidence and this failure provides proper grounds for this motion to dismiss. <u>Partitions Inc.</u>,

<u>supra</u>, 2001 WL 1332174 at *7; <u>Int'l Strategies Group, Ltd. v. Ness</u>, 645 F.3d 178, 183 (2d Cir.

2011) (motion to dismiss claim as untimely granted despite claim of continuing course of

conduct under Connecticut law based on complaint and judicial notice of filings in related

lawsuit); <u>see also</u> <u>Hechtman v. Conn. Dep't of Public Health</u>, 2009 WL 5303796, **10-12

S-260

(Conn. Super. Ct. Dec. 3. 2009) (dismissing libel case on statute of limitations grounds over assertion of continuing course of conduct).

As an initial matter, Statek's knowledge of Coudert's alleged wrongdoing in 1996, and certainly by 2000, as described above in Point II, which was sufficient to trigger the starting date under the English statute of limitations, also forecloses Statek's reliance on the continuous course of conduct doctrine. See, Int'l Strategies Group, supra, 645 F.3d at 183; Coss v. Stewart, 2010 WL 1050534, *6 (Conn. Super. Ct. Feb. 11, 2010) (applying reasoning of Rosato, supra, to tort claims under § 52-577), aff'd 10 A.3d 539 (App. Ct. 2011); Brule v. Nerac Corp., 2009 WL 5322206, *9 (Conn. Super. Ct. Dec. 9, 2009), aff'd, 13 A.3d 723 (Conn. App. 2011). Therefore, the Claim is time barred under the Connecticut statute of limitations.

In any event, the continuing course of conduct doctrine does not apply.

First, any duty owed by Coudert would be based on the continued existence of an attorney-client relationship between it and Statek. In order to be timely under Connecticut law, the attorney-client relationship would have had to be extant on November 5, 2002 – three years before the complaint was served. However, there is no evidence and no basis to argue that the attorney client relationship lasted that long. (Notably, Statek does not argue that the statute should be tolled pursuant to the separate concept of "continuous representation.") Indeed, it is indisputable that once Johnston and Spillane were ousted from Statek, the relationship with Coudert was at an end.

On September 17, 1996, Statek's counsel wrote to Coudert, advising it of the change in control of Statek (St. Opp. Disallow p. 17) and advising it in no uncertain terms that Coudert was not to transfer any funds without authorization from Vendel or Allingham. (See Complaint, ¶

S-261

131; Amended Complaint, ¶ 27.)[17]  This letter effectively terminated the attorney-client

relationship between Coudert and Statek.  Indeed, it is well settled that the fact that successor

counsel is involved indicates that the attorney-client relationship has been terminated.  Borla v.

Guion, Stevens & Ryback, 2011 WL 5307394, *3 (Conn. Super. Ct. Oct. 20, 2011); Moran v.

Hirsch, 2009 WL 5322427, *3 (Conn. Super. Ct. Dec. 14, 2009) ("de facto termination occurs if

the client takes a step that unequivocally indicates that he has ceased relying on his attorney's

professional judgment in protecting his legal interests, such as hiring a second attorney to

consider a possible malpractice claim"); Day v. Trybulski, 2008 WL 2039301, *7 (Conn. Super.

Ct. Apr. 28, 2008) ("A client who has taken such a concrete step may not invoke this doctrine,

because such actions clearly indicate that the client no longer is relying on his attorney's

professional judgment but instead intentionally has adopted a clearly adversarial relationship

toward the attorney"); see also, Restatement (Second) Agency, § 119 (1957).

Moran is instructive.  There, plaintiff commenced suit in 2008 alleging that the defendant

attorney had failed to inform him that property owned by the plaintiff and his partner had been

sold in 2001 and had failed to remit 50% of the proceeds to plaintiff.  Plaintiff claimed he was

unaware that he was entitled to the funds until 2008.  The applicable 3 year statute of limitations

had clearly run but plaintiff asserted the statute had been tolled by the analogous continuous

representation doctrine.  However, in 2002, an attorney for plaintiff had written to defendant

asking for information about the property and the proceeds of its sale.  The Court found that this

---

[17] The amended complaint, dated August 29, 2008, is annexed as Exhibit G to the affidavit of Karen S. Frieman, sworn to March 13, 2009, submitted in support of Coudert's motion to disallow the claim.  [Docket No. 1153]

S-262

letter demonstrated that by its date, plaintiff had de facto terminated the attorney-client

relationship with the defendant. As a result, the court found the statute had not been tolled.[18]

Here, Statek expressly alleges in its amended complaint that: "[o]n January 15, 1996,

Statek's counsel sent Coudert a copy of the Section 225 Decision, requested certain information

from Coudert and instructed Coudert not to transfer any funds it was holding for Statek without

proper authorization." (Amended Complaint, ¶ 27; emphasis supplied.) Thus, on the face of the

amended complaint, it is clear that there was no attorney-client relationship extant three years

before this action was commenced in November, 2005.

Further, Statek has repeatedly stated in its papers in this matter that Coudert represented

Statek only from 1990 to 1996. (St. Opp. Disallow, pp. 2, 6 (heading); Statek App. Br at p. 7.)

Statek has thus conceded that the attorney client relationship terminated long before November

5, 2002, three years before service of the complaint commenced the action. Indeed, even the

Second Circuit here referred to Coudert as the "old law firm" for Statek. In re: Coudert Brothers

LLP, supra, 673 F.3d at 183.

In sum, the duty alleged – i.e. the duty of an attorney to its client – is conceded by Statek

to have terminated "prior to commencement of the period allowed for bringing an action for such

a wrong." Vanliner, supra, 907 A.2d at 1230-1231.

Statek tries to create a continuing duty based on the Connecticut Rules of Professional

Conduct. However, Statek offers no reason why those rules would apply here. Rather, the code

expressly provides that the rules of professional conduct of the jurisdiction where the conduct

---

[18] The concept of de facto termination applies equally to the doctrine of continuing course of conduct. Abdelsame v. Foden De Castro, 2007 WL 2036849, *5, n. 9 (Conn. Super. Ct. May 10, 2007). There is no requirement in the law for a formal termination letter ending an attorney-client relationship. L.F. Pace Const. Inc. v. Simko, 2007 WL 4686485, **5-6 (Conn. Super. Ct. Dec. 7, 2007). The Connecticut Professional Code, relied on by Statek, imposed such a requirement only in 2011, well after the facts at issue here. See 1 Conn. Prac., Super. Ct. Civ. Rules R. 1.16 (2011 ed.).

S-263

occurred or, if different, of the location of the "pre-dominant effect of the conduct," should

apply. 1 Conn Prac., Super. Ct. Civ. Rules R. 8.5 (2011 ed.). Here, the conduct occurred in

England and the predominant effect was in California, where Statek was incorporated and had its

principal place of business. Connecticut's rules are without application. (Indeed, it is notable

that the original complaint in the Connecticut Action purported to allege violations of New

York's Code of Professional Conduct.) Moreover, Connecticut's Rules of Professional Conduct

specifically recognize that the violation of a rule <u>does not create any presumption that a legal

duty has been breached</u>, does not govern whether or not an attorney-client relationship exists,

and provides no basis for civil liability. 1 Conn Prac., Super. Ct. Civ. Rules Scope (2011 ed.)

(emphasis supplied); <u>see also id.</u>, Preface. The Connecticut Code does not support Statek's

claim of a continuing duty.[19]

Second, Statek argues that Coudert's alleged "later wrongful conduct" provides the basis

for finding a continuing course of conduct tolling the statute of limitations. Statek states that this

wrongful conduct can be found in Coudert's subsequent production of documents to Statek in

2002, 2004, 2008 and 2009. In other words, Statek argues that when Coudert acted in

conformity with its alleged obligations to Statek it was engaged in "wrongful conduct." Thus, if

Coudert had never produced another piece of paper to Statek after 1996 and made no efforts to

cooperate with the bankruptcy trustee in 2002, failed to respond to Statek's subpoenas in 2004,

and failed to participate in good faith efforts to provide discovery in the mediation of its Claim,

then any cause of action against it would be time barred, but that by continuing to provide

information to Statek, Coudert revived time barred claims against itself. This makes no sense as

a matter of law or policy and not surprisingly, Statek cites no authority for this proposition. In

---

[19] Rule 1.15 on which Statek also relies relates to the impropriety of attorneys comingling their funds with those of
their clients. It is entirely inapt.

S-264

fact, it is clear that the allegation against Coudert is of a single wrong in 1996. Indeed, Statek

has itself described the injury it alleges it suffered in terms of allegedly not receiving all the

documents it claims it needed in 1996. (St. Opp. Disallow p. 4.)

  Bellemare v. Wachovia Mortg. Corp., 894 A.2d 335, 344 (Conn. App. Ct. 2006), aff'd,

931 A.2d 916 (Conn. 2007), is instructive. There, plaintiff alleged that the defendant failed to

execute and deliver a release of the mortgage it held on plaintiff's property after plaintiff paid the

loan balance in full on June 18, 1998. The release was not issued until May, 2003. Plaintiff

commenced suit in December, 2003 seeking damages under, inter alia, two applicable

Connecticut statutes. The Court upheld the dismissal of the statutory causes of action as time

barred under the applicable three year limitations period. The complaint was plainly filed more

than three years after the alleged wrong -- the 1998 failure to execute and deliver the release -- but

plaintiff argued that the limitations period was tolled by the continuous course of conduct

doctrine until the release was provided on May 12, 2003. 894 A.2d at 344. The Court rejected

Bellemare's argument holding:

> ...[T]he only subsequent act of the defendant that the plaintiff
> claims constituted a continuing course of conduct was the
> defendant's continued failure to execute and deliver the release.
> Although it may be true that the defendant never was released of
> its contractual and statutory obligations to provide a release of
> mortgage once the debt was satisfied, its failure to provide the
> appropriate release constituted a single omission and not an
> ongoing or recurring wrongful act.

Id. at 345 (emphasis supplied).

  Similarly, Coudert's alleged failure occurred in 1996 when it allegedly failed to turn over

all the documents in its possession. Even assuming arguendo that its obligation to provide those

documents continued after that time, its failure was a single omission and not an ongoing or

recurring wrongful act any more than Wachovia's failure to provide a release was an ongoing

S-265

wrong in <u>Bellemare</u>.  Coudert's production of documents after that may provide <u>evidence</u> of the

alleged wrongdoing but it does not provide a basis for tolling the statute.

Statek's authority, <u>Sanborn</u>, <u>supra</u>, 664 A.2d at 812, also demonstrates that the continuing

course of conduct doctrine does not apply.  There, an attorney drafted a stipulation in 1985 which

he and his client, the plaintiff, erroneously believed excused the plaintiff from putting certain

sums in trust.  Defendant asserted that his representation of the plaintiff ended at that time.  The

plaintiff's husband sued her in 1989 for failure to fund the trust.  In 1989 and 1990, the defendant

repeatedly advised the plaintiff that the stipulation eliminated that obligation.  However, in 1990,

the court held that plaintiff was obliged to make the payment.  Plaintiff sued the attorney in 1992

-- beyond the three year statute of limitations -- for malpractice in the drafting of the stipulation

and for negligently failing to advise her, through 1990, that she was required to make the

payment.  Plaintiff argued that the attorney's representations in 1989 and 1990 constituted a

continuing course of conduct tolling the statute.  The court rejected this argument holding that

after the defendant drafted the stipulation, he made no promise to do anything else in the future,

had no continued relationship with the plaintiff and committed no fraud.  The court stated:

"plaintiff should not be allowed to keep a legal malpractice action alive after the lawyer-client

relationship has ended by telephoning the attorney every three years to obtain verification that

something attorney had drafted previously would not cause the plaintiff harm."  664 A.2d at 808.

Here too, Coudert had no dealings with Statek after 1996 except to respond to requests

from the trustee or to requests propounded in discovery; there is <u>no</u> evidence of any continued

relationship.  Just as the client in <u>Sanborn</u>, could not extend the statute of limitations for a legal

malpractice action by telephoning the lawyer after the end of the relationship to verify something

the attorney had done earlier, so too Statek can not be allowed to extend the statute of limitations

S-266

endlessly while it took its time asking Coudert for additional documents. Indeed, Statek's

argument here is even more extreme. Statek claims that Coudert had a continuing duty to it that

survived until the duty was satisfied. (Statek Br., p. 4.) In other words, Statek argues that, in

effect, the statute of limitations could never start to run. There is no authority for this concept

which is contrary to the public policy of even Connecticut in providing repose. Piteo, supra, 963

A.2d at 86.

Further, the policy behind the continuing course of conduct doctrine is that "during an

ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be

difficult to identify and may yet be remedied." Dixon v. Evans, 2008 WL 1948071, *3 (Conn.

Super. Ct. Apr. 22, 2008), quoting, Blanchette v. Barrett, 640 A.2d 74, 85 (Conn. 1994)[20];

Abdelsame, supra, 2007 WL 2036849 at *5. The court in Vanliner explained:

> The continuing course of conduct doctrine reflects the policy that,
> during an ongoing relationship, lawsuits are premature because
> specific tortious acts or omissions may be difficult to identify and
> may yet be remedied... For example, the doctrine is generally
> applicable under circumstances where it may be impossible to
> pinpoint the exact date of a particular negligent act or omission
> that caused injury or where the negligence consists of a series of
> acts or omissions and it is appropriate to allow the course of action
> to terminate before allowing the repose section of the statute of
> limitations to run.

907 A.2d at 1231, quoting, Rosato v. Mascardo, 844 A.2d 893, 898 (Conn. App. Ct. 2004); see

also, Sanborn, supra, 664 A.2d at 807-808. In other words, the doctrine seeks to preserve the

relationship between the parties and ultimately avoid litigation. Here, it is indisputable that there

was no ongoing relationship; all further discussions with and "productions by" Coudert were

---

[20] Dixon, relied on by Statek in support of its reliance on the continuing course of conduct doctrine is distinguishable on its facts; the parties' attorney-client relationship incontrovertibly continued for 13-14 years after the alleged misrepresentation as the defendant worked on other matters for the plaintiff.

S-267

adversarial, a result of demands by the trustee or as part of discovery in this matter, and not part

of an ongoing relationship between the parties. Where there is no relationship, there is no

continued rationale for the tolling.[21]

  Finally, Statek's argument tolls the statute of limitations until such time as it <u>chose</u> to ask

for more documents. If the trustee had not asked Coudert for more documents until last week,

under Statek's formulation, the statute of limitations would be timely into 2015, <u>19 years</u> after

Coudert allegedly failed to provide all the documents sought. Statek cannot postpone the

running of the statute by failing to assert its rights. <u>See</u>, <u>Huyn v. Chase Manhattan Bank</u>, 465

F.3d 992, 999 (9th Cir. 2006). Indeed, such a theory would be contrary to the purposes of the

statute of limitations to grant repose. Courts "…will not deprive…defendants of the finality,

repose and avoidance of stale claims and stale evidence for which the statute of limitations was

designed." <u>Haggerty v. Williams</u>, 855 A.2d 264, 268 (Conn. App. 2004); <u>Brule</u>, <u>supra</u>, 2009 WL

5322206 at *7.

  As the Second Circuit has stated:

> If a plaintiff's miscellaneous, discontinuous interactions with a
> defendant over an extended period of time alone justified tolling, it
> 'would render the repose part of [a] statute of limitations a
> nullity'…and 'would, in effect, allow the plaintiff to acquiesce in
> the defendant's conduct for as long as convenient to the plaintiff,
> contrary to one of the purposes of statutes of limitations, which is
> to prevent the unexpected enforcement of stale claims concerning
> which the persons interested have been thrown off their guard by
> want of prosecution.'… A plaintiff does not have a unilateral
> option to extend the repose period of its claims merely by making
> an inquiry that can be expected to elicit a reply.

---

[21] Moreover, even if the production of documents by Coudert in 2002 revived the claims against it, the new period should have run when Coudert sent the documents, on November 4, 2002, not when they were received, allegedly on November 7, 2002. <u>Collum v. Chapin</u>, 671 A.2d 1329, 1332 (Conn. App. Ct. 1996). Thus, the complaint, served on November 5, 2005, served more than three years after the production by Coudert, was untimely.

S-268

Int'l Strategies, supra, 645 F.3d at 184-185 (citations omitted); see also, Ogle, supra, 2012 WL 3089705 at *6.

For all these reasons, Statek's claims are barred under the Connecticut statute of limitations.

Conclusion

For all the foregoing reasons, it is respectfully submitted that Statek's motion for reconsideration should be denied, and if granted, the Court should adhere to its original ruling. In the alternative, it is respectfully submitted that the Court should hold the motion in abeyance to allow limited discovery on the issue of when Statek had sufficient information to begin the "starting date" under the English limitations act and/or sufficient to end any tolling of the Connecticut statute of limitations.

Dated:  New York, New York
     September 25, 2012

STERN TANNENBAUM & BELL LLP


By:_____
    David S. Tannenbaum
    Karen S. Frieman
380 Lexington Avenue
New York, New York 10168
(212) 792-8484
*Attorneys for Development Specialists, Inc.*

{00038545.DOC}                    32

S-269

# ADDENDUM

| DOCKET NO. FST-CV-05-5000425-S | : | SUPERIOR COURT |
| | : | |
| STATEK CORPORATION & TECHNICORP | : | J.D. OF STAMFORD |
| INTERNATIONAL II, INC. | : | |
| | : | AT STAMFORD |
| v. | : | |
| | : | |
| COUDERT BROTHERS LLP, ET AL. | : | FEBRUARY 2, 2006 |

### DEFENDANT STEVEN BEHARRELL'S MOTION TO DISMISS

Pursuant to Connecticut Practice Book § 10-31 and Connecticut General Statutes § 52-59b, Defendant Steven R. Beharrell respectfully moves to dismiss all claims against him on the basis that this court lacks personal jurisdiction over Steven R. Beharrell. Steven R. Beharrell is a resident of England, is an English solicitor, has never transacted or solicited business in the State of Connecticut, does not own, use or possess real property in the State of Connecticut, has never committed a tortious act in the State of Connecticut, does not derive substantial revenue from goods used or services rendered in the State of Connecticut, has never performed services that he would reasonably have presumed to have consequences in the State of Connecticut and which derive substantial revenue from international commerce and, finally, Plaintiffs have not alleged any claims arising out of activity within the scope of Connecticut General Statutes § 52-59(b)(5). Thus, Plaintiffs are incapable of demonstrating that Steven R. Beharrell is subject to Connecticut's law-arm jurisdiction statute. Further, it would violate due process for this court to assert jurisdiction over Steven R. Beharrell given the lack of specific or general jurisdiction and Plaintiffs' inability to demonstrate that the principals of fair play and substantial justice would not be violated if this court were to exercise jurisdiction over Steven R. Beharrell.


**ORAL ARGUMENT REQUESTED**
**TESTIMONY NOT REQUIRED**

STM_204740_1.DOC/JSTRETTON

**S-271**

Wherefore, based on the foregoing reasons, as are more fully set forth in the

accompanying memorandum of law, Defendant Steven R. Beharrell respectfully requests that his

Motion to Dismiss be granted in its entirety.

DEFENDANT,
STEVEN R. BEHARRELL

By _____
Marc L. Zaken, Esq.
mzaken@eapdlaw.com
Michael Thompson, Esq.
mthompson@eapdlaw.com
John G. Stretton, Esq.
jstretton@eapdlaw.com
EDWARDS ANGELL PALMER & DODGE, LLP
301 Tresser Blvd.
Stamford, CT 06901
203-353-6844
Juris No. 421274

- 2 -

STM_204740_1.DOC/JSTRETTON

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing DEFENDANT STEVEN BEHARRELL'S

MOTION TO DISMISS was forwarded via first class mail, postage prepaid, to:

> Joshua Cohen, Esq.
> Day, Berry & Howard LLP
> One Audubon Street
> New Haven, CT 06511
>
> Brian Del Gatto, Esq.
> Douglas M. Connors, Esq.
> Wilson Elser Moskowitz Edelman & Dicker, LLP
> 263 Tresser Boulevard
> Stamford, CT 06901
>
> Stephen M. Kindseth
> Zeisler & Zeisler, P.C.
> PO Box 3186
> Bridgeport, CT 06605-0186

this 2nd ____ day of February, 2006.

_____
John G. Stretton

- 3 -

STM_204740_1.DOC/JSTRETTON

**S-273**

| | | |
|---|---|---|
| DOCKET NO. FST-CV-05-5000425-S | : | SUPERIOR COURT |
| | : | |
| STATEK CORPORATION & TECHNICORP | : | J.D. OF STAMFORD |
| INTERNATIONAL II, INC. | : | |
| | : | AT STAMFORD |
| v. | : | |
| | : | |
| COUDERT BROTHERS LLP, ET AL. | : | FEBRUARY 2, 2006 |

## DEFENDANT STEVEN BEHARRELL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**I.     INTRODUCTION**

Defendant Steven R. Beharrell respectfully submits this memorandum of law in support of his Motion to Dismiss.  This case is apparently the end result of years of litigation between two business partners, Hans Frederick Johnston and Miklos Vendel, and the entity they owned together, Technicorp International II, Inc.  Based on the allegations of the Complaint, Johnston apparently engaged in self-dealings and fraud over the course of many years and to the detriment of Vendel.  Hampered in his ability to collect upon the judgments, Vandel has now apparently set his sites on anybody that was even remotely connected to Johnston, including Steven R. Beharrell, an English solicitor, in the hopes of increasing the likelihood he will recover on the sums due to him by Johnston.  Plaintiffs, however, have chosen the wrong forum in which to pursue their claim.  None of the activities allegedly attributable to Beharrell occurred in the State of Connecticut.  Moreover, Beharrell is a resident of England, has never conducted business in the State of Connecticut and is not licensed to practice law in any state in the United States.  Simply put, there is no basis under Connecticut's long-arm statute for this Court to exercise jurisdiction over Beharrell.  The Motion to Dismiss should be granted.

II.   **STATEMENT OF THE FACTS RELEVANT TO THE INSTANT MOTION**

A.   **Beharrell's Lack of Contacts With the State of Connecticut**

Steven R. Beharrell is a solicitor licensed to practice law in England and Wales. Affidavit of S. Beharrell, ¶ 3 (attached as Exhibit A). Beharrell does not own, use or possess any real property in the State of Connecticut. Id., ¶ 7. Beharrell has never solicited or conducted business in the State of Connecticut. Id., ¶ 5. His law practice focuses exclusively on English law and is based in England. Id., ¶ 10-11. He is not a citizen of the United States of America and is not licensed to practice law in any state in the United States of America. Id., ¶ 4. Beharrell has never provided any service as an English solicitor which he reasonably believed would have consequences in the State of Connecticut. Id., ¶ 6.

In July of 1990 Beharrell was introduced to Fred Johnston by David Alford. Id., ¶ 12. It was Beharrell's understanding that Johnston was the owner of Technicorp International Inc., an entity which owned a California corporation known as Statek Corporation. Id., ¶ 13. Beharrell's law firm, Beharrell, Thompson & Co., was subsequently retained by Technicorp International Inc., through Johnston, to establish a UK service company known as Statek Europe Limited. Id. All meetings between Johnston and Beharrell concerning the creation of Statek Europe Limited occurred in England. Id. Beharrell has never represented Technicorp International II Inc., which is one of the named Plaintiffs in this action. Id.

During the course of his representation of Technicorp International Inc., and the anticipated relocation of Johnston to the UK, Beharrell referred Johnston to David Morgan, a solicitor in Jersey, Channel Islands associated with the firm of David Morgan, Whitehead & Co., for assistance in setting up an off-shore trust. Id., ¶ 14. This referral was done as a courtesy to Johnston, who was the owner of Beharrell's client, Technicorp International Inc. The referral

- 2 -

STM_294740_1.DOC/JSTRETTON

S-275

was also necessary as Beharrell did not perform this type of work. Id. To Beharrell's

knowledge, Morgan's firm performed all the work in establishing this trust, which Beharrell

believes was eventually called the 1990 No. 1 Trust. Id. Other than acting as an intermediary,

Beharrell took no part in the creation or activities of the 1990 No. 1 Trust. Id.

     During the course of Beharrell, Thompson & Co.'s representation of Technicorp

International Inc., Beharrell was asked to assist Johnston, and did assist Johnston, in obtaining a

lease for an apartment in London for his use as a director of Statek Europe Limited. Id., ¶ 15.

Once again, this assistance was provided as a courtesy to Johnston, the owner of Technicorp

International Inc., who was seemingly unfamiliar with the London real estate market.

     Beharrell never traveled to Connecticut in connection with his representation of

Technicorp International Inc. Id., ¶ 17. Beharrell also never traveled to Connecticut for any

other business purpose related to Technicorp International Inc., Technicorp International II Inc.,

Statek Corporation, Statek Europe Limited, Johnston, Sandra Spillane or Vandell. Id.

     Beharrell also knew little about the litigation between Vandell and Johnston. Id., ¶ 16.

Johnston was represented by Geoff Deichmann in connection with the claims brought by Miklos

Vandell against Johnston. Id. Other than one trip to New York in 1995, Beharrell was not

involved in defending Johnston or planning his litigation strategy. Id.

    **B.**    **Beharrell's Relationship With Defendant Coudert Brothers, LLP**

     Beharrell's relationship with Defendant Coudert Brothers, LLP began in 1989, when he

was approached by Coudert Brothers and asked to establish an English Law firm as part of the

firm's international network. Id., ¶ 10. At the time, an English solicitor could not be in

partnership in the practice of English law in the UK with a lawyer admitted elsewhere. Id.

Furthermore, foreign lawyers were restricted in what they could do in the UK. Id. They could

- 3 -

S-276

not, for example, convey real estate, draft wills or appear in litigation. Id. Therefore, in April 1990 Beharrell agreed to establish, with Hugh Thompson, another English solicitor, the firm of Beharrell, Thompson & Co. Id. Beharrell and Thompson were given partner status in Coudert Brothers. Id. Such status in a foreign firm was only permitted if Coudert Brothers agreed not to practice or advise on English law at all in the UK. Id. An agreement was signed between the two firms whereby Beharrell Thompson & Co would exclusively practice English Law and Coudert Brothers agreed not to do so. Id.

The Courts and Legal Services Act 1990 was passed shortly thereafter. Id., ¶ 11. That law, when it came into force in October 1991, allowed foreign lawyers who were registered with the Law Society and had Professional Liability insurance to be admitted as partners in a firm of English Solicitors. Id. However they were still restricted in the fields of English law on which they could advise. Id. Such firms were to be designated "Multi-National Partnerships." Id. In May 1993, Beharrell, Thompson & Co became a Multi National Partnership; the firm registered and admitted some Coudert partners and changed its name to "Coudert Brothers – a Multi National Partnership of English Solicitors and Registered Foreign Lawyers." Id. Nonetheless the agreement between the two firms continued in force, with Coudert Brothers, the New York partnership, agreeing not to practice English law. Id.

## III.   ARGUMENT

### A.   Plaintiffs' Action Against Beharrell Should Be Dismissed For Lack Of Personal Jurisdiction

#### 1.   Overview of Personal Jurisdiction Analysis

In response to a motion to dismiss for lack of personal jurisdiction, the party asserting jurisdiction bears the burden of proving the court's jurisdiction. Knipple v. Viking Comme'n, 236 Conn. 602, 607 (1996). A Motion to Dismiss is a test of Plaintiffs' actual proof on

- 4 -

S-277

jurisdiction.    To establish jurisdiction, Plaintiffs must present evidence to support their

contention that jurisdiction is proper and may not rely on the allegations of their Complaint.

Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 53 (1983).    Conclusory allegations are

insufficient.  Olson v. Accessory Control & Equip. Corp., 1995 Conn. Super. LEXIS 1183 *15

(1995).  A motion to dismiss will be denied only where Plaintiffs can establish the existence of

prima facie conduct by Defendant sufficient to justify the exercise of personal jurisdiction.  Id.

Personal jurisdiction requires a two step inquiry.  Knipple v. Viking Commc'n, 236 Conn.

at 606.   First, it must be determined if defendant's conduct satisfies the requirements of

Connecticut's long-arm statute.  Id.  Second, if Connecticut's long-arm statute is satisfied, it must

be determined whether the exercise of jurisdiction comports with constitutional principles of due

process.  Id.  As demonstrated below, Plaintiffs will be incapable of demonstrating that Beharrell

is subject to personal jurisdiction under Connecticut's applicable long-arm statute, or that the

exercise of personal jurisdiction over Beharrell by this court comports with due process.

   2. <u>Connecticut's Applicable Long-arm Statutes</u>

The applicable long-arm statutes is Connecticut General Statutes §  52-59b.

Connecticut General Statutes § 52-59b provides, in pertinent part:

> 52-59b. Jurisdiction of courts over nonresident individuals, foreign partnerships
> and foreign voluntary associations.  Service of process
>
> (a) As to a cause of action arising from any of the acts enumerated in this section,
> a court may exercise personal jurisdiction over any nonresident individual,
> foreign partnership or foreign voluntary association, or over the executor or
> administrator of such nonresident individual, foreign partnership or foreign
> voluntary association, who in person or through an agent: (1) Transacts any
> business within the state; (2) commits a tortious act within the state, except as to
> a cause of action for defamation of character arising from the act; (3) commits a
> tortious act outside the state causing injury to person or property within the state,
> except as to a cause of action for defamation of character arising from the act, if
> such person or agent (A) regularly does or solicits business, or engages in any
> other persistent course of conduct, or derives substantial revenue from goods used
> or consumed or services rendered, in the state, or (B) expects or should

STM_204740_1.DOC/JSTRETTON

S-278

reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

Beharrell's affidavit demonstrates that he is not subject to personal jurisdiction in Connecticut under the state's long-arm statute and, further, that the constitutional principles of due process prohibit a finding a jurisdiction over Beharrell.

3.   Beharrell Has Not Engaged in Any Conduct Permitting the Exercise of Personal Jurisdiction Under Connecticut's Long-arm Statute

In order to prove that Beharrell is subject to personal jurisdiction under Connecticut's long-arm statute, Plaintiffs must prove that Beharrell engaged in activity within the scope of Connecticut General Statutes § 52-59b. In other words, Plaintiffs must prove that Beharrell:

(1)   Transacted business within the state;

(2)   committed a tortious act within the state;

(3)   committed a tortious act outside the state causing injury to person or property within the state, and that he (A) regularly solicits business, or engages in any other persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered, in the state, or (B) expect or should reasonably expect the act to have consequences in the state and derive substantial revenue from interstate or international commerce;

(4)   owns, uses or possesses any real property situated within the state; or

(5)   uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

Connecticut General Statutes § 52-59b(1) is inapplicable because there is no evidence that Beharrell transacted business within the state of Connecticut. The "term 'transacting business' is not broadly interpreted in Connecticut" and recognizes that "defendants, as a rule, should be

-6-

STM_204740_1.DOC//STRETTON

S-279

subject to suit where they are normally found, that it, at their pre-eminent headquarters or where they conduct substantial general business activities." Mitchell v. Patterson, 2005 Conn. Super. LEXIS 1579 at 14-15, 23 (2005). In "order to meet the 'transacting business' element, a plaintiff must show that the defendant 'purposefully availed [himself] of the privileges of conducting activities within [the forum state], thus invoking, the benefits and protections of its laws." Id. at 14 quoting Cutco Industries, Inc. v. Naughton, 806 F.2d 361, 365 (2d. Cir. 1986). Beharrell has never solicited or conducted business in the State of Connecticut. His law practice focuses exclusively on English law and is based in England. He is not a citizen of the United States of America and is not licensed to practice law in any state in the United States of America. His attenuated connection to this case is that he was retained by Technicorp International Inc., which is not a party to this case, in England through Johnston to establish a UK service company to be known as Statek Europe Limited as an affiliate of Statek Corporation, a Californian corporation. All meetings between Johnston and Beharrell regarding the formation of Statek Europe Limited occurred in England. In short, Beharrell has never provided any service as an English Solicitor which he reasonably believed would have consequences in the State of Connecticut. Plaintiffs are incapable of demonstrating that Beharrell transacted business in this state as required by Connecticut General Statutes § 52-59b(1).

Connecticut General Statutes § 52-59b(2) is similarly inapplicable because there is no evidence that Beharrell committed any tortious act in the State of Connecticut. In fact, the allegations in Plaintiffs' Complaint make it quite clear that any alleged tortious conduct attributable to Beharrell did not occur in Connecticut. See Complaint ¶ 61. Moreover, there exists no evidence that Beharrell, other than this one trip to New York, was involved in defending Johnston in the claims brought against him by Vandell. Any attempt by Plaintiffs to

STM_204740_1.DOC//STRETTON

S-280

suggest otherwise is pure speculation and factually unfounded.  Connecticut General Statutes §
52-59b(2) does not provide long-arm jurisdiction over Beharrell.

        In order to rely on Connecticut General Statutes § 52-59b(3) to establish long-arm
jurisdiction, Plaintiffs must prove both that: (1) Beharrell committed a tortious act outside the
state causing injury to person or property within the state, and (2) that Beharrell (A) regularly
solicits business, or engages in any other persistent course of conduct, or derives substantial
revenue from goods used or consumed or services rendered, in the state, or (B) expects or should
reasonably expect the act to have consequences in the state and derive substantial revenue from
interstate or international commerce.  As previously discussed, Beharrell practices English law,
his law practice is based in England, he is not licensed to practice law in the United States and,
further, has never solicited or conducted business in the State of Connecticut.  Connecticut
General Statutes § 52-59b(3) does not support the exercise of long-arm jurisdiction over the
defendants.

        Finally, neither Connecticut General Statutes § 52-59b(4) nor § 52-59(b)(5) support the
exercise of long-arm jurisdiction.  It is undisputed that Beharrell does not own any real property
in Connecticut.  Plaintiffs have not alleged any claims arising out of activity within the scope of
Connecticut General Statutes § 52-59(b)(5), and there is no evidence that Conn.Gen.Stat. § 52-
59(b)(5) is applicable to this case.  Plaintiffs are incapable of demonstrating that Beharrell is
subject to Connecticut's long-arm statute.

        4.    <u>Even if the Court Determines that Beharrell is Subject to Jurisdiction
              Under Connecticut's Long-arm Statutes (Which Is Denied), Plaintiffs'
              Complaint Should Nevertheless Be Dismissed Because the Exercise of
              Personal Jurisdiction Over Beharrell Would Violate Due Process</u>

        Connecticut's long-arm statute does not permit the exercise of jurisdiction over Beharrell.
Assuming, however, for the purposes of this Motion that the court determines that Connecticut

- 8 -

STM_204740_1.DOC//STRETTON

S-281

long-arm jurisdiction exists, the second step in the personal jurisdiction inquiry is whether the exercise of jurisdiction comports with constitutional principles of due process. Knipple v. Viking Commc'n, 236 Conn. at 606.

The due process clause protects a nonresident defendant from being subject to the binding judgment of a state with which it lacks meaningful minimum contacts. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "The due process test for personal jurisdiction has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2nd Cir. 1996); see also Thomason v. Chemical Bank, 234 Conn. 281, 287 (1995). "First, the court must determine whether the defendant has minimum contacts with the forum." Edberg v. Neogen Corp., 17 F.Supp.2d 104, 111-112 (D. Conn. 1998). "If so, the second question that must be addressed is whether the assertion of jurisdiction comports with the traditional notions of fair play and substantial justice, that is, whether it is reasonable under the circumstances of the particular case." Id. at 112. The court must examine whether the totality of the defendant's conduct and connection with the forum state are such that it should reasonably anticipate being haled into court there. See World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 296, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 113 (1987) (establishing a five step reasonableness inquiry).

The Constitution permits the exercise of either "specific" personal jurisdiction or "general" personal jurisdiction over out-of-state defendants. Specific jurisdiction exists where the defendant has purposefully directed its activities at the residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. See Thomason v. Chemical Bank, 234 Conn. at 288; Keeton v. Hustler Magazine, Inc., 465 U.S. 770,

- 9 -

STM_204740_1.DOC/JSTRETTON

S-282

774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 90 L.Ed.2d 404 (1984); Burger King, 471 U.S. at 472-473. In contrast, general personal jurisdiction exists only where the defendant has "continuous and systematic" general business contacts with the forum state. See Thomason v. Chemical Bank, 234 Conn. at 290; Helicopteros, 466 U.S. at 414-416.

The allegations in Plaintiffs' Complaint and Beharrell's affidavit testimony demonstrate that neither specific nor general personal jurisdiction exists over Beharrell. As previously discussed, Beharrell was retained by Technicorp International Inc. to establish a UK service company known as Statek Europe Limited. Years later, he was asked on an urgent basis to fly to New York to discuss claims brought by Vandell against Johnston. Other than this one trip to New York in 1995, Beharrell was not involved in defending Johnston or planning his litigation strategy. Not only do neither of these matters involve the State of Connecticut, Plaintiffs also do not allege that Beharrell conducted business in Connecticut or, in fact, that he ever entered Connecticut in connection with these matters. Beharrell did not "purposefully direct" activities at residents of Connecticut, and this litigation does not result from alleged injuries arising out of or related to any such activities. There is no basis for the exercise of specific personal jurisdiction over Beharrell.

For these same reasons, general personal jurisdiction does not exist over Beharrell. Beharrell has no contacts with Connecticut and certainly does not have "systematic and continuous" contacts with Connecticut. Beharrell does not own any real property in the State of Connecticut and has never solicited or conducted business in the State of Connecticut. His law practice focuses exclusively on English law and is based in England. Beharrell lacks the

STM_204740_1.DOC/JSTRETTON

S-283

minimum contacts necessary for the exercise of personal jurisdiction over him to comport with due process.

Finally, it would violate principles of "fair play and substantial justice" for Beharrell, a resident of England that is not licensed to practice law in the United States, to be subject to jurisdiction in Connecticut. Given that Beharrell was retained to establish a UK services company and flew once to New York to discuss with Johnston a claim brought against him by Vandell, it cannot be said that Beharrell "should reasonably [have] anticipate[d] being haled into court" in Connecticut. See World-Wide Volkswagen Corp., 444 U.S. at 297, 100 S. Ct. at 567 (due process clause requires court to determine if a defendant "should reasonably anticipate being haled into court there"). Moreover, given that Beharrell resides in England, it would be unduly burdensome to force Beharrell to travel to Connecticut, a state he has never conducted business in, to defend himself in a civil action that did not arise out of any conduct that occurred in the State of Connecticut. Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. at 113. Connecticut also has little interest in this case. Statek Corporation is a California corporation, Technicorp International II is a Deleware Corporation, Beharrell is an English resident and none of the activities are alleged to have occurred in Connecticut. Id. Connecticut is also not the most efficient site to resolve this controversy given that none of the defendants reside in Connecticut and Vandell, the principal representative of Plaintiffs, does not reside in the state. Id. Fair play and substantial justice dictates that Beharrell should not be subjected to jurisdiction in this state.

STM_204140_1.DOC//JSTRETTON

S-284

## IV.   CONCLUSION

Based on the foregoing, Defendant Steven Beharrell respectfully requests that this Court

dismiss all claims against him.

DEFENDANT,
STEVEN R. BEHARRELL

By
Marc L. Zaken, Esq.
mzaken@eapdlaw.com
Michael Thompson, Esq.
mthompson@eapdlaw.com
John G. Stretton, Esq.
jstretton@eapdlaw.com
EDWARDS ANGELL PALMER & DODGE, LLP
301 Tresser Blvd.
Stamford, CT 06901
203-353-6844
Juris No. 421274

STM_204740_1.DOC/JSTRETTON

S-285

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing DEFENDANT STEVEN BEHARRELL'S

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS was forwarded via first

class mail, postage prepaid, to:

> Joshua Cohen, Esq.
> Day, Berry & Howard LLP
> One Audubon Street
> New Haven, CT 06511
>
> Brian Del Gatto, Esq.
> Douglas M. Connors, Esq.
> Wilson Elser Moskowitz Edelman & Dicker, LLP
> 263 Tresser Boulevard
> Stamford, CT 06901
>
> Stephen M. Kindseth
> Zeisler & Zeisler, P.C.
> PO Box 3186
> Bridgeport, CT 06605-0186

this _2nd_ day of February, 2006.

John G. Stretton

- 13 -

STM_204740_1.DOC//STRETTON

S-286

**EXHIBIT A**

wDOCKET NO. FST-CV-05-5000425-S :   SUPERIOR COURT
                                       :

STATEK CORPORATION & TECHNICORP :
INTERNATIONAL II, INC. :   J.D. OF STAMFORD
                                       :

v. :   AT STAMFORD
                                       :

COUDERT BROTHERS LLP, ET AL. :

## AFFIDAVIT OF STEVEN R. BEHARRELL

The undersigned, being duly sworn, does hereby depose and state as follows:

1. I am over the age of eighteen (18) years and believe in and understand the obligations of an oath.

2. I make this affidavit based on personal knowledge.

3. I am a solicitor admitted to practice law in England and Wales. I am not licensed to practice law in any state in the United States of America.

4. I have never transacted business within the state of Connecticut.

5. I have never solicited business or conducted business in the state of Connecticut nor engaged in any other persistent course of conduct in the state of Connecticut. I have not derived substantial revenue from goods used or consumed or services rendered in the state of Connecticut at any point during my career.

6. I have never provided any services as a solicitor, or in any other business capacity, that would have caused me to reasonably expect such services to have consequences in the state of Connecticut and which derived substantial revenue from international commerce.

7. I do not own, use or possess any real property situated within the state of Connecticut.

8. I have never committed a tortious act within the state of Connecticut.

NYC_#345211 v2 - Statek - Affidavit of SRB/BRETTON