9. I have never used a computer, as defined by Connecticut General Statutes § 53-451(a)(1),

or a computer network, as defined by Connecticut General Statutes § 53-451(a)(3),

located within the state of Connecticut.

10. In 1989, I was approached by Coudert Brothers and asked to establish an English Law

firm as part of the firm's international network.  At the time, an English Solicitor could

not be in partnership in the practice of English law in the UK with a lawyer admitted

elsewhere.  Furthermore, foreign lawyers were restricted in what they could do in the UK.

They could not, for example, convey real estate, draft wills or appear in litigation.

Therefore, in April 1990 I agreed to establish, with Hugh Thompson, another English

solicitor, the firm of Beharrell, Thompson & Co.  We were the only partners initially.

Thompson and I were given partner status in Coudert Brothers.  Such status in a foreign

firm was only permitted if Coudert Brothers agreed not to practice or advise on English

law at all in the UK.  Therefore, an agreement was signed between the two firms whereby

Beharrell Thompson & Co exclusively practiced English Law and Coudert Brothers

agreed not to do so; it could advise clients in the UK on US law, but not English law.

11. The Courts and Legal Services Act 1990 was passed shortly thereafter.  That law, when it

came into force in October 1991, allowed foreign lawyers who were registered with the

Law Society and had Professional Liability insurance to be admitted as partners in a firm

of English Solicitors.  However they were still restricted in the fields of English law on

which they could advise.  Such firms were to be designated "Multi-National

Partnerships".  In May 1993, Beharrell, Thompson & Co became a Multi National

Partnership; the firm registered and admitted some Coudert Partners and changed its

name to "Coudert Brothers – a Multi National Partnership of English Solicitors and

- 2 -

NYC_834S211 v2 - Statak - Affidavit of SRB/STRETTON

S-289

Registered Foreign Lawyers". Nonetheless the agreement between the two firms

continued in force, with Coudert Brothers, the New York partnership, agreeing not to

practice English law. The registration of a foreign lawyer does not constitute a license or

admittance as a lawyer in the UK or affect his or her status, other than to permit an

English solicitor to share profits with such a person.

12. In July of 1990 I was introduced to Fred Johnson by David Alford. David Alford was a

well known and respected businessman and Chairman of a public company.

13. It is my understanding that Johnson was the owner of Technicorp International Inc. that

owned a US Corporation, called Statek Corporation in California. Technicorp

International Inc., through Johnson, retained Beharrell, Thompson & Co. to establish a

UK service company known as Statek Europe Limited. All meetings between Johnson

and myself and concerning the creation of Statek Europe Limited occurred in England. I

have never represented Technicorp International II Inc.

14. During the course of my representation of Technicorp International Inc., and the

anticipated relocation of Mr Johnson to the UK, I referred Johnson to David Morgan, a

solicitor in Jersey, Channel Islands associated with the firm of David Morgan, Whitehead

& Co. for assistance in setting up an off-shore trust, as I did not perform this type of

work. To my knowledge, Morgan's firm performed all the work in establishing this trust,

which I believe was eventually called the 1990 No. 1 Trust. Other than acting as an

intermediary, I took no part in the creation or activities of the 1990 No. 1 Trust.

15. During the course of my representation of Technicorp International Inc., I was asked to

assist Johnson, and did assist Johnson, in obtaining a lease for an apartment in London for

his use as a director of Statek Europe Limited.

2 -                    NYC #149351 v2 - Statek - Affidavit of SRB/STRETTON

16. Johnson was represented by Geoff Deichmann in connection with the claims brought by Miklos Vandell against Johnson. Mr Deichmann was not associated with Coudert Brothers. I knew little about this litigation and, other than one trip to New York in 1995, I was not involved in defending Johnson or planning his litigation strategy.

17. I did not travel to Connecticut in connection with my representation of Technicorp International Inc. or Statek Europe Limited or for any other business purpose related to Technicorp International Inc., Technicorp International II Inc., Statek Corporation, Statek Europe Limited, Johnson, Sandra Spillane or Vandell.

AFFIANT,

STEVEN R. BEHARRELL

Kingdom of England
City of London

On this 13 day of January 2006, before me personally came STEVEN R. BEHARRELL, known to me to be the person who executed the foregoing Affidavit and he duly acknowledged to me that he executed the same.

Notary Public
Dated: 13 January 2006

Notary Public London, England
(Nigel P. Ready)
(My commission expires with Life)

- 4 -

S-291

| DOCKET NO.: FST-CV-05-5000425-S | : | SUPERIOR COURT |
|---|---|---|
| STATEK CORPORATION ET AL. | : | J.D. OF STAMFORD/NORWALK |
| v. | : | AT STAMFORD |
| COUDERT BROTHERS LLP ET AL. | : | FEBRUARY 6, 2006 |

## DEFENDANTS' MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION AND/OR FORUM NON CONVENIENS

Defendants COUDERT BROTHERS LLP and DEAN POSTER (collectively "the Defendants") respectfully move the Court pursuant to Practice Book § 10-30 et seq. to dismiss the complaint filed by the Plaintiffs, STATEK CORPORATION and TECHNICORP INTERNATIONAL II, for lack of jurisdiction over the Defendants' person. In the alternative, the Defendants move the Court to dismiss the complaint on the basis of forum non conveniens, also pursuant to Practice Book § 10-30 et seq.

WHEREFORE, the Defendants request that this Honorable Court enter an Order dismissing the Plaintiffs' complaint together with such other relief as this Honorable Court may deem just and proper.

**ORAL ARGUMENT REQUESTED**
**NO TESTIMONY REQUIRED**

1054349.3

THE DEFENDANTS,
Coudert Brothers LLP and
Dean R. Poster

By

Brian Del Gatto, Esq.
Douglas M. Connors, Esq.
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
One Stamford Plaza
263 Tresser Boulevard, 9th Floor
Stamford, CT 06901
203-564-1900
203-564-1742 (fax)
File No.: 09323.00001

## ORDER

The foregoing Motion to Dismiss, having come before the Court, is hereby ORDERED:

**GRANTED/DENIED**

_____

**By The Court/Clerk**

1054349.3

### CERTIFICATION

This is to certify that a copy of the foregoing Motion to Dismiss was mailed on February

6, 2006, postage prepaid, to:

Day, Berry & Howard, LLP
One Audobon Street
New Haven, CT  06511

Edwards, Angell, Palmer and Dodge, LLP
301 Tresser Blvd., Suite 1310
Stamford, CT  06901

Brian Del Gatto

1054349.3

| DOCKET NO.: FST-CV-05-5000425-S | : | SUPERIOR COURT |
| | : | |
| STATEK CORPORATION ET AL. | : | J.D. OF STAMFORD/NORWALK |
| | : | |
| v. | : | AT STAMFORD |
| | : | |
| COUDERT BROTHERS LLP ET AL. | : | FEBRUARY 6, 2006 |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

      Defendants Coudert Brothers LLP ("Coudert") and Dean Poster ("Poster") (collectively "the Defendants") submit this memorandum of law in support of their motion to dismiss the plaintiffs' complaint.  Connecticut's long-arm statute, Conn. Gen. Stat. § 52-59b, permits the Connecticut courts to exercise personal jurisdiction over nonresident individuals such as Poster and foreign partnerships such as Coudert, but none of the conditions triggering the statute applies to the Defendants.  Furthermore, the exercise of personal jurisdiction over the Defendants does not satisfy the requirements of constitutional due process.  None of the Defendants has the minimum contacts with Connecticut nor would the exercise of jurisdiction over them be reasonable given the facts of this case.  Accordingly, this Court lacks personal jurisdiction and must dismiss the complaint.

      In the alternative, the Defendants hereby move the Court for an order dismissing this action in favor of litigating it in a trial court in the United Kingdom.  As the grounds for this motion, the Defendants submit that this matter should be litigated in the United Kingdom for the convenience of the parties and because the balance of hardships tips in favor of the defendants.

10543493

S-296

## STATEMENT OF FACTS

The Plaintiffs, Statek Corporation ("Statek) and Technicorp International II, Inc. ("Technicorp II"), allege that Hans Frederick Johnston ("Johnston") and Sandra Spillane ("Spillane"), the sole directors and officers of Statek, a wholly-owned subsidiary of Technicorp II, schemed to steal millions of dollars of assets from the plaintiffs over a period of many years. The Plaintiffs claim that Coudert, an international law firm, Defendant Steven Beharrell ("Beharrell"), a former managing partner of the firm, and Poster, a former partner of the firm and former head of the firm's London office, as personal counsel for Johnston, participated in the scheme to defraud them of assets.

The Plaintiffs commenced an action against the Defendants alleging fraud, breach of fiduciary duty, legal malpractice, fraudulent concealment and negligence. The Defendants appeared on November 22, 2005. On December 8, 2005, the Defendants and Beharrell, invoking the district court's jurisdiction through the parties' diversity of citizenship, petitioned for removal of the case to federal court, after which the Plaintiffs filed a motion for remand. In light of the case law cited in the Plaintiffs' motion, the Defendants had no objection to the remand to the Connecticut Superior Court. The Defendants now move to dismiss the complaint.

## ARGUMENT

### I.    Standard of Review

"A motion to dismiss . . . properly attacks the jurisdiction of the court . . . ." Ferreira v. Pringle, 255 Conn. 330, 346 (2001) (internal quotation marks omitted). "In ruling upon whether

- 2 -

S-297

a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Brookridge Dist. Ass'n v. Planning & Zoning Comm'n, 259 Conn. 607, 611 (2002) (internal quotation marks omitted).  A motion to dismiss admits all well-pleaded facts. Ferreira, 255 Conn. at 346.

**II.      The Defendants Do Not Have the Minimum Contact with Connecticut to Confer this Court with Personal Jurisdiction.**

This Court does not have personal jurisdiction over the Defendants.  None of the Defendants has committed any of the enumerated acts listed in Connecticut's long-arm statute nor have they the minimum contacts with Connecticut necessary to satisfy the due process requirements of the federal constitution.  The Court, consequently, cannot exercise personal jurisdiction over them and must dismiss the complaint.

"When a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required.  The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant].  If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process. . . .  If a challenge to the court's personal jurisdiction is raised by a defendant . . . the plaintiff must bear the burden of proving the court's jurisdiction." Knipple v. Viking Communs., 236 Conn. 602, 606-07 (1996) (citations omitted) (internal quotation marks omitted).

-3-

### A.   Long-Arm Jurisdiction

Connecticut's long-arm statute provides, in relevant part: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any *nonresident individual, foreign partnership* or foreign voluntary association . . . who in person or through an agent:  (1) Transacts any business within the state; (2) commits a tortious act within the state . . . (3) commits a tortious act outside the state causing injury to person or property within the state . . . if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or services rendered in the state, or (B) expects or should reasonably expect to have consequences in the state and derives substantial revenue form interstate or international commerce; [or] (4) owns, uses or possesses any real property situated within the state . . . ." Conn. Gen. Stat. § 52-59b (2005) (emphasis added).  Because this action against a nonresident individual, Poster, and a foreign partnership, Coudert, does not arise out of any of the enumerated acts in the long-arm statute, the Court does not have personal jurisdiction.

Poster resides and practices law in England as a solicitor.  See Affidavit of Dean Poster (attached as Exhibit A).  Poster does not practice nor is he licensed to practice law in Connecticut.  See Exhibit A.  Because he could not practice law in this state and worked in Coudert's London office at the time of the events alleged in the complaint, this action could not arise from any business transacted by Poster in Connecticut.  See Conn. Gen. Stat. § 52-59b(a)(1) (2005).  For the purposes of conferring personal jurisdiction, "transacts any business" has been defined to include a single purposeful act.  Zartolas v. Nisenfeld, 184 Conn. 471, 474

- 4 -

1054349.2
1054349.3

S-299

(1981). "In determining whether the plaintiffs' cause of action arose from [a] defendants' transaction of business within this state, [the court does] not resort to a rigid formula. Rather, [the court] balance[s] considerations of public policy, common sense, and the chronology and geography of the relevant factors." Id. at 477. As explained above, Poster, a resident of England, could not practice law in Connecticut. Working in London, he could not commit any single purposeful act which could be construed to be the transaction of business in Connecticut from which this action arose.

Poster does not satisfy any of the remaining relevant conditions of Connecticut's long-arm statute. None of Poster's alleged tortious acts from which this action arose occurred in Connecticut. He does not own, possess or use any real property located in Connecticut. See Exhibit A. Poster does not regularly do or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered, in Connecticut. Conn. Gen. Stat. § 52-59b(a)(3)(A) (2005). Furthermore, Poster would not expect or reasonably expect the alleged acts to have consequences in Connecticut and he does not derive substantial revenue from interstate or international commerce. Id. § 52-59b(a)(3)(B). Poster, a solicitor, lives and works in England. The long-arm statute cannot extend its reach to Poster, therefore the Court cannot exercise personal jurisdiction over him.

Coudert, a limited liability partnership formed under the laws of New York; see Affidavit of Coudert (attached as Exhibit B); is "a partnership formed pursuant to an agreement governed by the laws of any state other than [Connecticut] and registered or denominated as a registered limited liability partnership or limited liability partnership under the laws of such other state;"

- 5 -

1054349.2
1054349.3

S-300

Conn. Gen. Stat. § 34-40(9) (2005); and as such, is a foreign partnership to which the long-arm

statute would apply. As with Poster, however, Coudert does not satisfy the conditions of the

statute. Coudert does not transact any business in Connecticut. See Exhibit B; Conn. Gen. Stat.

§ 52-59b(a)(1) (2005); Zartolas, 184 Conn. at 474, 477. The law firm has never had offices in

the state. See Exhibit B. Coudert has not committed any tortious acts in Connecticut. See

Exhibit B; Conn. Gen. Stat. § 52b-59b(a)(2) (2005). Coudert has not regularly conducted or

solicited business or engaged in any other persistent course of conduct in Connecticut nor does

the firm derive substantial revenue from services rendered in the state. See Exhibit B; Conn.

Gen. Stat. § 52-59b(a)(3)(A) (2005). Similarly, Coudert could not have expected or reasonably

expected any of the alleged acts to have consequences in Connecticut. Conn. Gen. Stat. § 52-

59b(a)(3)(B) (2005). The work allegedly performed by the firm for Johnston and Statek took

place in its London office.

### B.   Due Process

Even if there were statutory authority to exercise long-arm jurisdiction over the

Defendants, this exercise of jurisdiction offends principles of constitutional due process.

"Whether due process is satisfied must depend . . . upon the quality and nature of the activity in

relation to the fair and orderly administration of the laws which it was the purpose of the due

process clause to insure. That clause does not contemplate that a state may make binding a

judgment in personam against an individual or corporate defendant with which the state has no

contacts, ties, or relations." International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945).

- 6 -

1054349.2
1054349.3

S-301

The first stage of a due process inquiry is to determine if a defendant has sufficient contacts with a forum state to justify the exercise of personal jurisdiction. Id. at 316. "Either specific jurisdiction or general jurisdiction can satisfy the constitutional requirement of sufficient minimum contacts between the defendant and the forum. A state court will have specific jurisdiction over a nonresident defendant whenever the defendant has purposefully directed [its] activities at residents of the forum . . . and the litigation [has] result[ed] from alleged injuries that arise out of or relate to those activities . . . . Alternatively, even when the cause of action does not arise out of or relate to the foreign [defendant's] activities in the forum State, due process is not offended by a State's subjecting the [defendant] to its in personam jurisdiction if the defendant has had continuous and systematic general business contacts with the state." Thomason v. Chemical Bank, 234 Conn. 281, 287-288 (1995) (citations omitted) (internal quotation marks omitted).

For a court to have specific jurisdiction over a defendant, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). "[A] defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-76 (1985). In the case at hand, all work performed for Statek took place in Coudert's London and Brussels offices, billed in pounds sterling from London; see

- 7 -

S-302

Exhibit B; and Poster worked in the London office, never in any of the firm's other offices; see Exhibit A.

None of the Defendants has the continuous and systematic general business contact with Connecticut necessary for the Court to exercise general jurisdiction. To satisfy this standard, "courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed . . . ." Metropolitan Life Insurance Co. v. Robertson-Ceco Corporation, 84 F.3d 560, 569 (2d Cir. 1996) (citing cases analyzing contacts with the forum state for three-, five- and seven-year periods). Poster has practiced law in England and Wales, nowhere else, for his entire legal career. See Exhibit A. The Plaintiffs make no allegations that Poster ever stepped on Connecticut soil. Coudert has never operated an office in Connecticut and currently is in the process of winding up its partnership. See Exhibit B. Over the course of the five years leading up to this decision, the firm added approximately ninety five clients with billing addresses in Connecticut but substantially all work the firm performed for these clients took place in offices outside the state. See Exhibit B. When called upon to litigate in the Connecticut courts during these five years, Coudert always engaged local counsel. See Exhibit B. The firm never practiced Connecticut law. See Exhibit B.

The second step of the due process inquiry addresses whether the court's exercise of personal jurisdiction over a defendant is reasonable given the circumstances of the case. A reasonable exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." International Shoe Co., 326 U.S. at 316. The reasonableness inquiry

- 8 -

1054349.2
1054349.3

S-303

involves the application of the following five factors:  (1) the burden on the defendant, (2) the

interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial

system's interest in obtaining the most efficient resolution of controversies, and (5) the shared

interests of the several states in furthering fundamental substantive social policies.  Asahi Metal

Industry Co. v. Superior Court of California, 480 U.S. 102, 113 (1987).

     The exercise of personal jurisdiction over the Defendants in this case would be an

unreasonable extension of this Court's authority.  Poster, an English resident, would be unduly

burdened by litigation brought against him in a Connecticut court.  Coudert, too, as a partnership

in the process of winding up, would be similarly burdened by such litigation.  Connecticut has

little or no interest in this case.  Statek has a place of business in the state, but it is a California

corporation.  Technicorp II is a Delaware corporation.  As mentioned repeatedly, Poster is an

English solicitor with tenuous connections, at best, to the state.  None of the business underlying

the case took place in the United States, let alone in Connecticut.  The Plaintiffs have an interest

in obtaining relief, but the limited connection to Connecticut makes it the least efficient and

convenient place to obtain such relief.  As for the interstate judicial system's interest in the

efficient resolution of this controversy, the Connecticut court does not afford the best opportunity

for such a resolution.  None of the potential witnesses hail from the state nor do any of the

Defendants.  Most parties with an interest in the case can be found outside of the United States,

the most important in England, others elsewhere.  Finally, to further substantive social policies,

this case cannot be heard in a Connecticut court.  The principals in the alleged conspiracy

conducted the majority of their activity overseas.  Some, such as Beharrell and Poster, having no

- 9 -

1054349.2
1054349.3

S-304

license to practice law in Connecticut, cannot even conduct the alleged activities in the state.
Coudert had no office in the state at the time nor did it conduct regular business in the state. The
exercise of personal jurisdiction over Poster and Coudert cannot satisfy any of the five factors set
forth in <u>Asahi</u> that a court must use to determine whether such jurisdiction is reasonable.
Accordingly, this Court must dismiss the complaint for lack of personal jurisdiction.

        **III.     The Connecticut courts do not serve the convenience of the parties to this
litigation nor the ends of justice.**

      The Defendants also move this Court for an order dismissing this litigation pursuant to
the doctrine of forum non-conveniens. As grounds for this motion, the Defendants submit that
the parties will be best served if this litigation is conducted in the United Kingdom, not
Connecticut. "[T]he doctrine of forum non conveniens vests discretion in the trial court to
decide where trial will best serve the convenience of the parties and the ends of justice ." <u>Durkin
v. Intevac, Inc.</u>, 258 Conn. 454, 463-64 (2001) (internal quotation marks omitted).

      The Connecticut Supreme Court has clarified the four-step analysis for determining
whether the doctrine of forum non-conveniens requires that a case be dismissed. "First, the court
should determine whether an adequate alternative forum exists that possesses jurisdiction over
the whole case. . . . Second, the court should consider all relevant private interest factors [albeit]
with a strong presumption in favor of . . . the plaintiffs' initial choice of forum. . . . Third, if the
balance of private interest factors is equal, the court should consider whether any public interest
factors tip the balance in favor of trying the case in the foreign forum. . . . Finally, if the public
interest factors tip the balance in favor of trying the case in the foreign forum, the court must . . .

- 10 -

1054349.2
1054349.3

S-305

ensure that [the] plaintiffs can reinstate their [action] in the alternative forum without undue

inconvenience or prejudice." Id. at 466 (alteration in original) (citations omitted) (internal

quotation marks omitted).

###### A.     Adequate Alternative Forum

A trial court within the United Kingdom would be an entirely adequate alternative forum

for this dispute.  "Ordinarily, the alternative forum prerequisite will be satisfied simply if the

defendants are amenable to service in another jurisdiction." Parker v. Avis Rent-A-Car Sys.,

Inc., No. 123310, 2002 Conn. Super. LEXIS 2612, at *10 (July 30, 2002 Conn. Super. Ct.)

(emphasis added) (attached as Exhibit C).  Furthermore, "[f]ederal authorities generally limit the

threshold inquiry of the adequacy of the alternative forum to those rare instances where the

differences in substantive law are so severe that the inadequate remedy provided by the

alternative forum effectively precludes any remedy at all." Id. at **8-9 (emphasis added).

The United Kingdom is a signatory to the Brussels regime, a set of rules, comprised of

the Brussels Convention; Convention on Jurisdiction and Enforcement of Judgments in Civil &

Commercial Matters, Sept. 27, 1968, 8 I.L.M. 229; the Lugano Convention; Convention on

Jurisdiction & Enforcement of Judgments, Sept. 16, 1988, 28 I.L.M. 620; and the Brussels I

Regulation; Council Regulation on Jurisdiction & the Recognition & Enforcement of Judgments

in Civil & Commercial Matters, Dec. 22, 2000 [hereinafter Brussels I Regulation]; regulating the

allocation of jurisdiction in international legal disputes of a civil or commercial nature involving

persons resident in a member state of the European Union.  As a result, the English Courts apply

the principle that a defendant in such disputes should normally be sued in the State in which he,

- 11 -

1054349.2
1054349.3

she or it is domiciled.  Brussels I Regulation, arts. 1-3.  Here, Poster is said by the plaintiffs

themselves, in the Summons, to be a resident of the United Kingdom and, more specifically, in

St Albans, England.  He is sued in his professional capacity as a solicitor of the Supreme Court

of England & Wales.  Poster was admitted to practice law in 1990 and remains in practice in the

United Kingdom, therefore English Courts would consider themselves to have jurisdiction over

him in relation to this matter.

 Lastly, for purposes of this motion only, the Defendants stipulate and consent to be

subject to the jurisdiction of the United Kingdom courts in the event that this motion is granted,

and that this office, as counsel for the Defendants, would accept timely service of any papers

commencing the action in the United Kingdom on behalf of the defendants.  Clearly, then, the

United Kingdom is an adequate alternative forum in which to litigate this dispute, inasmuch as

the plaintiffs would incur no procedural or substantive hurdles to litigate in that venue.

  **B.**  **Private Interest Factors**

 The balance of private interests involved in this litigation requires that the instant suit be

dismissed and that the Plaintiffs be permitted to re-file within the United Kingdom.  In Durkin,

the Connecticut Supreme Court analyzed certain factors in determining whether the balance of

private interests tipped in the defendants' favor.  See Durkin, 258 Conn. at 468.

- 12 -

1054349.2
1054349.3

**S-307**

a.   **Relative Ease of Access to Sources of Proof & Availability of Process
to Secure Attendance of Unwilling Witnesses**

Access to Sources of Proof

The "relative ease of access to sources of proof and the availability of witnesses for trial

generally requires that the trial court become entangled in the merits of the underlying dispute. . .

. [T]he court must scrutinize the substance of the dispute between the parties to evaluate what

proof is required, and determine whether the pieces of evidence cited by the parties are critical,

or even relevant, to the [plaintiffs'] cause of action and to any potential defenses to the action."

Durkin, 258 Conn. at 467-68 (alteration in original) (citation omitted) (internal quotation marks

omitted).

Poster is an English citizen, licensed to practice law in the United Kingdom.  No services

were ever provided to the plaintiffs outside of the United Kingdom by him.  Numerous

individuals have been identified as potential witnesses to Poster's conduct.  These witnesses

include, but are not limited to, the following individuals:  Lucy Wayne, Christine Mills, Diana

Buck, Stephen Marshall, Garth Warnes, Sara Bond, Phillip Dunham, Seung Chong, Terry Back,

Jeremy McCallum, R. Guelff and S. Blythe.  All of these potential witnesses were, at the time of

the alleged events, residents of Great Britain and still believed to be residents of Great Britain.

As such, they are subject to the jurisdiction of the United Kingdom courts and can be compelled

to provided evidence of their knowledge and involvement in the events that form the substance

of plaintiffs' complaint.  Furthermore, it is anticipated that, since the complained of conduct

occurred in Great Britain, discovery will inevitably lead to other possible witnesses who are also

- 13 -

1054349.2
1054349.3

S-308

residents of Great Britain and therefore subject to the jurisdiction of the courts of the United

Kingdom.

Additionally, there are a number of individuals who, it is anticipated, the defendants will

seek to add as third party defendants in the present action. These individuals include David

Alford, David Morgan and Werner Schmidt-Tebelemann. Alford and Schmidt-Tebelmann are

both believed to reside in Great Britain, and Morgan is an attorney in Jersey, Channel Islands, a

territorial province of Great Britain. As such, the courts of the United Kingdom can exercise

jurisdiction over these potential defendants, and the Defendants submit that this matter would

most conveniently be litigated in the courts of the United Kingdom as much of the evidence can

be found there.

Availability of Compulsory Process

"With regard to the availability of compulsory process to compel unwilling witnesses . . .

the defendants bear the burden of identifying the key witnesses and establishing generally what

their testimony will cover. . . . [The defendants] must establish who the key witnesses are and

that their testimony is material. . . . Requiring extensive investigation [however] would defeat

the purpose of [the defendants'] motion [to dismiss]." Durkin, 258 Conn. at 472 (citations

omitted) (internal quotation marks omitted).

As set forth above, there are numerous witnesses whom the Defendants would likely call

upon to provide testimony and relevant evidence in this matter, be it through a deposition or at

trial. Several of the witnesses are former members of Coudert who worked on Statek

Corporation business and therefore would have relevant testimony with respect to the firm's

- 14 -

S-309

conduct. Diana Buck, Christine Mills and Grant Marshall were all involved in the leasing of the

London apartment and will have relevant information concerning its nature and use by Johnson

and/or Statek. Finally, Garth Warnes provided certified financial records concerning Statek and,

as such, will have relevant testimony concerning the business conducted by Statek in England.

Although some lower courts in Connecticut have not given significant weight to the

argument that an action should be dismissed because some witnesses may not be amenable to

service of process, see, e.g., Fudge v. Alliant Foodservice, Inc., No. CV-01-0812056-S, 2002

Conn. Super. LEXIS 2339, at *18 (July 12, 2002 Conn. Super. Ct.) (attached as Exhibit D), the

Connecticut Supreme Court has recognized in Durkin the potential for prejudice to a litigant who

may be deprived of the opportunity to have live witnesses before the Court and/or jury should the

case proceed in the inconvenient forum. See Durkin, 258 Conn. at 476 ("litigants cannot compel

personal attendance [of foreign citizens] and [are thus] forced to try their cases on deposition,

[which] creates a condition not satisfactory to the court, jury or most litigants . . . " (alteration in

portions of original) (emphasis added)). The credibility of a witness is difficult, if not

impossible, to discern based purely on a viewing of a videotape.

In light of the difficult access to the many sources of proof originating in the United

Kingdom and the fact that many English-based witnesses could not be compelled to submit to a

deposition and/or to the trial of this matter in Connecticut, the balance of private interests tip in

favor of dismissing the instant action in favor of a forum in the United Kingdom. Accordingly,

this Court must dismiss the Plaintiffs' complaint.

- 15 -

1054349.2
1054349.3

      b.     **Inability to Implead Third Parties**

Another relevant private interest to examine in weighing the merit of the instant forum

non-conveniens analysis is the Defendants' inability to implead third parties that potentially

could have caused, in whole or in part, the Plaintiffs' damages in this litigation. As discussed

*supra*, and depending on the results of further investigation and analysis by Defendants', the

Defendants may ultimately conclude that David Alford, David Morgan and or Werner Schmidt-

Tebelemann were active and knowing participants in the alleged Johnson-Spillane scheme, thus

providing the basis for a third-party claim for indemnity or contribution against the these

individuals. Should this action proceed in Connecticut, the Defendants would be stripped of the

opportunity to so implead these third parties. In certain cases, the Supreme Court has held that

this factor may prove to be significant in weighing the relevant private interests. See Durkin,

258 Conn. at 478. In light of the foregoing, therefore, the Defendants assert that the relevant

private interests weigh in favor of transferring this case to a state court within Great Britain.

      C.     **Public Interest Factors**

The instant controversy should be litigated in the United Kingdom due to the fact that

courts within that country have a legitimate interest in adjudicating a claim which arose out of

the conduct of Solicitors licensed to practice law in England. See Parker, 2002 Conn. Super.

LEXIS 2612 at *5 ("There is a local interest in having localized controversies decided at home."

(emphasis added)). Further, the Plaintiffs have alleged malpractice on the part of English

Solicitors who performed legal services entirely within Great Britain. Thus, the English courts

would be the more appropriate tribunal to review the conduct of English solicitors, who are

- 16 -

1054349.2
1054349.3

S-311

officers of the Supreme Court of England & Wales.  Furthermore, an English Court is more

familiar with the Rules of Professional Conduct and other standards applicable to English

solicitors so as to place it in a better position than a Connecticut court to preside over a case in

which these issues will be litigated.  Therefore, the balancing of the relevant public interests tips

in favor of the defendants, and this matter should be dismissed in favor of litigating it in the

United Kingdom.

### D.    Undue Inconvenience or Prejudice

The Plaintiffs allege the following causes of action in their complaint:  fraud; breach of

fiduciary duty; legal malpractice; fraudulent concealment and negligence.  First, courts of the

United Kingdom recognize each of these causes of action, and if successful with their proof, then

the plaintiffs have remedies for each cause of action under English Law.  The remedies available

to the Plaintiffs include each measure of damages sought in the Connecticut complaint.  As such,

dismissal of this case in favor of a proceeding in the United Kingdom would not prevent the

plaintiffs from obtaining the relief sought, subject to their ability to sustain their evidentiary

burden.

Furthermore, English law provides statute of limitations which are equivalent or in some

instances greater than those afforded under Connecticut Law.  The statute of limitations for legal

malpractice, negligence and breach of fiduciary duty are all six years in the United Kingdom.  In

Connecticut, on the other hand, the statute of limitations for legal malpractice is three years; see

Conn. Gen. Stat. § 52-577 (2005); and the limitation period for negligence is two years.  See

Conn. Gen. Stat. § 52-584 (2005).  Furthermore, the courts in both Connecticut and the United

- 17 -

1054349.2
1054349.3

S-312

Kingdom hold that that the statute of limitations for fraud and deliberate concealment does not begin to run until a plaintiff has discovered the fraud or should have discovered it through the exercise of due diligence. See Conn. Gen. Stat. § 52-595 (2005). As such, the Plaintiffs would not be prejudiced by litigating this matter in the United Kingdom.

<u>CONCLUSION</u>

For the foregoing reasons, the Defendants respectfully submit that this Court must dismiss the complaint on the bases that the Connecticut courts lack personal jurisdiction over them and/or that Connecticut is an inconvenient forum for adjudication of this dispute.

THE DEFENDANTS,
Coudert Brothers LLP and
Dean R. Poster

By_____
Brian Del Gatto, Esq.
Douglas M. Connors, Esq.
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
One Stamford Plaza
263 Tresser Boulevard, 9th Floor
Stamford, CT 06901
203-564-1900
203-564-1742 (fax)
File No.: 09323.00001

- 18 -

1054349.2
1054349.3

S-313

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 26 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 85 of 168
Case 3:07-cv-00456·  .U   Document 26   Filed 12/21/2(      Page 1 of 32

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATEK CORPORATION and TECHNICORP INTERNATIONAL II, INC. | : | CIVIL ACTION NO. 3:07cv00456 (SRU) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| COUDERT BROTHERS LLP, STEVEN R. BEHARRELL, DEAN R. POSTER and SANDRA SPILLANE | : | |
| Defendants. | : | DECEMBER 21, 2007 |

## OBJECTION TO MOTIONS TO DISMISS

Plaintiffs, Statek Corporation ("Statek") and Technicorp International II, Inc. ("TCI II")

(collectively, "Plaintiffs"), hereby object to (i) Defendant Steven Beharrell's Motion To Dismiss,

dated February 2, 2006, filed by Steven Beharrell ("Beharrell") and (ii) Defendants' Motion To

Dismiss For Lack Of Personal Jurisdiction And/Or Forum Non Conveniens, dated February 6,

2006, filed by Defendants, Coudert Brothers, LLP ("Coudert") and Dean Poster ("Poster")

(Beharrell and Coudert, collectively, "Defendants").[1]

The Court should deny the motions to dismiss because Defendants have waived the right

to contest personal jurisdiction based on their failure to assert any timely objection to personal

jurisdiction either in this Court or in the Superior Court for the State of Connecticut, where the

case twice has been pending.  Moreover, to the extent the Court does not conclude that

Defendants have waived their right to contest personal jurisdiction, the Court nevertheless should

deny each of the motions because Defendants' actions and conduct satisfy Connecticut's long

---

[1] Coudert and Poster jointly filed their motion to dismiss. Coudert then filed a bankruptcy proceeding, which stayed the proceedings before this Court as to Coudert. The Bankruptcy Court, however, has granted Plaintiffs relief from stay so that the parties can address and resolve Coudert's motion to dismiss. In addition, Plaintiffs anticipate filing a withdrawal of the present action against Poster. This objection therefore does not address aspects of any motion to dismiss that specifically relate to Poster.

## ORAL ARGUMENT IS REQUESTED

S-314

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 27 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-... J   Document 26   Filed 12/21/2(   Page 2 of 32
Pg 86 of 168

arm statute, Conn. Gen. Stat. § 52-59b, and Defendants have created sufficient minimum contacts with Connecticut to satisfy the due process clause of the Constitution based on their intentional provision of legal services to numerous clients in Connecticut.

## I.  FACTUAL BACKGROUND

Statek is a California corporation engaged in the manufacture of micro-electronic components that, at all relevant times until 1996, maintained a principal place of business at 20 Acosta Street, Stamford, Connecticut. (Plaintiffs Complaint ("Compl.") ¶ 2.)  Statek is a subsidiary of TCI II. (Compl. ¶ 3.)  From 1984 through January 1996, Hans Frederick Johnston ("Johnston") and Defendant, Sandra Spillane ("Spillane"), were officers and directors of Statek and TCI II and managed and controlled Statek and TCI II from the companies' office in Stamford, Connecticut (the offices of Statek and TCI II are referred to, collectively, as the Statek office). (Compl. ¶ 28.)  Johnston and Spillane had full access to the companies' funds and corporate records. (Id.)

In 1990, Statek, by and through Johnston and Spillane, engaged Coudert to form a British subsidiary of Statek. (Compl. ¶ 15.)  Coudert was a law firm existing as a general partnership formed under the laws of New York until it converted to a registered limited liability partnership in October, 2001. (Deposition of Pat Kane (the "Kane Dep.") at 10, 11.)[2]  In April, 1990, Beharrell formed a Coudert-affiliated English law firm, Beharrell Thompson and Co., and at the same time became an equity partner in Coudert. (Deposition of Steven Beharrell (the "Beharrell Dep.") at 22).[3]  Beharrell was the Coudert partner responsible for managing the Statek

---

[2] Relevant portions of Ms. Kane's deposition testimony are attached hereto as Ex. A.

[3] Relevant portions of Beharrell's deposition testimony are attached hereto as Ex. B.  In 1993, Beharrell Thompson and Co. became a multinational partnership known as "Coudert Brothers, a London Multinational Partnership." (Kane Dep. at 36; Beharrell Dep. at 26.)

-2-

S-315

Case 1:13-cv-08578-LTS  Document 16-6  Filed 12/17/13  Page 28 of 50

06-12226-rdd  Doc 1486  Filed 09/25/12  Entered 09/25/12 14:57:08  Main Document
Case 3:07-cv-00456- J  Document 26 of 168  Filed 12/21/20  Page 3 of 32

engagement and for performing and overseeing the legal work Coudert performed for Statek.

(Compl. ¶¶ 18, 20; Beharrell Dep. at 23.)  Beharrell remained a Coudert equity partner until

January, 2004.  (Compl. ¶¶ 18, 20; Beharrell Dep. at 23.)

Notwithstanding this formal engagement, and while Beharrell billed Statek for the legal

work he and other Coudert lawyers performed (for which Statek paid), the legal services

provided actually were for Johnston's personal benefit.  (Compl. ¶ 18.)  Beharrell, as a Coudert

partner, assisted Johnston with, *inter alia*, the formation of certain asset protection trusts and

with the execution of various asset protection schemes used by Johnston to divert significant

assets from TCI II and Statek to Johnson and Spillane.  (Id.)  Beharrell also counseled Johnston,

personally, regarding (i) the formation and funding of shell corporations used by Johnston in his

defalcation scheme, (ii) the movement of assets from the United States to Europe to cover up

Johnston's diversion of funds from Statek and TCI II, and (iii) strategic advice for various

litigation matters that arose from Johnston and Spillane's operation of Statek and TCI II.

(Compl. ¶ 19.)[4]  The provision of these services furthered Spillane and Johnston's illegal conduct

and scheme, and expose Coudert and Beharrell to liability for their role in the defalcation.

(Compl. at Counts I-IV.)

Johnston also directed Coudert, and Beharrell specifically, to send invoices for its legal

work to Statek at its Stamford, Connecticut office.  Beharrell complied with this instruction and

sent all invoices to Statek's Connecticut office.  (Compl. ¶¶ 23, 24; Beharrell Dep. at 28-29, 51,

53-54; Billing Records from Coudert to Statek in Stamford, Connecticut, attached hereto as Ex.

C.)  (See also Affidavit of Margaritha Werren, attached hereto as Ex. D).  These invoices,

---

[4] The details regarding Beharrell's purported representation of Statek and the services he provided to
Johnston personally are set forth in Plaintiffs' Complaint.  The intricate details of this representation are not relevant
for purposes of the motions to dismiss or this objection, however, so they are not described at length in this
memorandum.

-3-

S-316

Case 1:13-cv-08578-LTS    Document 16-6    Filed 12/17/13    Page 29 of 50

06-12226-rdd    Doc 1486    Filed 09/25/12    Entered 09/25/12 14:57:08    Main Document
Case 3:07-cv-00456-.    U    Document 88 of 168    Filed 12/21/2(    Page 4 of 32

however, actually were for services provided to Johnston and Spillane, as part of their scheme to

defraud Plaintiffs', and the invoices themselves support Plaintiffs' allegations of Defendants'

improper conduct and were in furtherance of the defalcation scheme. (Compl. at Counts I-III.)

In the course of providing his legal services, Beharrell sent correspondence via facsimile

on numerous occasions from his office to Statek's Connecticut office. (Beharrell Dep. at 34-36,

57-58, 84-85; Documents evidencing communications from Coudert and/or Beharrell to Statek,

Johnston and/or Spillane in Stamford, Connecticut, attached hereto as Ex. E; Ex. D.) Beharrell

also received documents sent to him by Johnston and Spillane from Statek's Connecticut office.

(Documents evidencing communications from Statek, Johnston and/or Spillane in Stamford,

Connecticut to Coudert and/or Beharrell, attached hereto as Ex. F; Ex. D.)

Beharrell also made telephone calls on several occasions from his office in London to

Johnston and Spillane at Statek's office in Connecticut. (Beharrell Dep. at 34-36, 57-58, 84-85.)

Indeed, documents produced by Coudert in discovery contain entries for services provided and

list numerous client phone conferences, with Johnston or the "client," and the drafting of letters

to them. ("Billed and Unbilled Recap Of Time Detail" for the period commencing May 26, 1992

through to March 31, 1997, attached hereto as Ex. G.) Documents produced by Coudert also

reveal that, for the period commencing May 26, 1992 through to March 31, 1997, Coudert

performed legal services that were billed to Statek (in Connecticut) in the amount of $43,473.12.

(Ex. G.) Statek paid each of the Coudert legal bills from its corporate bank accounts. (Compl.

¶22.)

Coudert's representation of Statek was not its only occasion to represent clients in

Connecticut. Coudert has represented numerous clients in Connecticut other than Statek since

the inception of its representation of Statek in 1990. (Kane Dep. at 108-09.) More specifically,

-4-

S-317

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 30 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 89 of 168
Case 3:07-cv-00456-:   J   Document 26   Filed 12/21/2C   Page 5 of 32

documents produced by Coudert reveal that, for the period commencing August 16, 1990

through to August 16, 1995, Coudert had twenty-two (22) clients with Connecticut business

and/or billing addresses and a combined total of thirty-seven (37) matters. (Coudert "CB Client

Matters August 16, 1990 To August 16, 1995," attached hereto as Ex. H.) These documents also

indicate that Coudert provided legal services of significant value to these clients, including the

billing of $42,108.89 for legal services in 1993, which grew dramatically to $800,442.15 in

1994, and then to $1,048,695.54 for just the period January 1, 1995 to August 16, 1995. (Ex. H.)

This time period directly overlaps with the period of Coudert's representation of Statek.

Finally, Coudert maintained its presence in Connecticut and continued to represent

Connecticut clients through the 1990s and until the time it decided to wind down its partnership

in 2005. Indeed, Coudert admits to initiating ninety-five (95) new client relationships in

Connecticut between April 2000 and April 2005. (Kane Dep. at 48-50.) At least one of these

more recent Connecticut clients generated yearly revenues of more than $100,000.00. (Kane

Dep. at 88-89.) Documents produced by Coudert also reveal that, for the period commencing

December 1, 2000 through to December 31, 2005, Coudert commenced either 63 new client

relationships with Connecticut clients and/or opened 115 new matters for Connecticut clients.

("Client Matters Opened From December 1, 2000 To December 31, 2005," attached hereto as

Ex. I.)[5] While the information provided by Ms. Kane and the documents produced by Coudert

apparently present inconsistent information concerning the precise number of new relationships,

both demonstrate Coudert's persistent presence in Connecticut.

To the extent Coudert derived profits from services rendered to clients in Connecticut, all

---

[5] While Plaintiffs' discovery requests sought a listing of new Coudert clients in Connecticut, it is not clear
from the documents produced whether the documents relate to new Connecticut clients, new matters for existing
Connecticut clients, or some combination of the two. Regardless, however, any permutation speaks to Coudert's
persistent performance of significant work in Connecticut.

S-318

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 31 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 90 of 168
Case 3:07-cv-00456-   U   Document 26   Filed 12/21/2(   Page 6 of 32

Coudert partners shared in them, including Beharrell, who remained an equity partner until

January, 2004. (Beharrell Dep. at 22-23.) Coudert partners also marketed their services to other

potential clients in Connecticut during the relevant periods described above. (Kane Dep. at 107;

Dep. of Dean Poster (the "Poster Depo.") at 47-48.)[6]

## II.   LEGAL STANDARD

The court in Desia v. GE Life & Annuity Assur. Co., No. 3:05-cv-1395 (JCH), 2007 U.S.

Dist. LEXIS 22179, at *7-9 (D. Conn. Mar. 26, 2007) (Unreported cases attached hereto as Ex.

K.), set forth the applicable motion to dismiss standard:

> "On a Rule 12(b)(2) motion to dismiss for lack of personal
> jurisdiction, the plaintiff bears the burden of showing that the
> court has jurisdiction over the defendant." Met. Life Ins. Co. v.
> Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). "Where
> a court relies on pleadings and affidavits, rather than conducting
> a 'full-blown evidentiary hearing,' the plaintiff need only make a
> prima facie showing that the court possesses personal jurisdiction
> over the defendant." Distefano v. Carozzi North America, Inc.,
> 286 F.3d 81, 84 (2d Cir. 2001). "A plaintiff can make this
> showing through his own affidavits and supporting materials
> containing an averment of facts that, if credited . . . would suffice
> to establish jurisdiction over the defendant." Whitaker v.
> American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir.
> 2001)(quotation marks omitted). All allegations are construed "in
> the light most favorable to the plaintiff and doubts are resolved in
> the plaintiff's favor." Id. (quotation marks omitted).
>
> "In diversity or federal question cases the court must look first to
> the long-arm statute of the forum state . . . ." Bensusan
> Restaurant Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997).
> "Connecticut utilizes a familiar two-step analysis to determine if
> a court has personal jurisdiction. First, the court must determine
> if the state's long-arm statute reaches the [defendant]. Second, if
> the statute does reach the [defendant], then the court must decide
> whether that exercise of jurisdiction offends due process."
> Bensmiller v. E.I. Dupont de Nemours & Co., 47 F.3d 79, 81 (2d

---

[6] Relevant portions of Poster's deposition testimony are attached hereto as Ex. J.

-6-

S-319

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 32 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 91 of 168
Case 3:07-cv-00456-   U   Document 26   Filed 12/21/20      Page 7 of 32

Cir.1995).[7]

## III.  DEFENDANTS HAVE WAIVED THEIR RIGHT TO CONTEST PERSONAL JURISDICTION

Defendants have waived their right to contest personal jurisdiction because they failed

timely to assert an objection to personal jurisdiction either in this Court or in the Superior Court

for the State of Connecticut.  In particular, Rule 81(c) of the Federal Rules of Civil Procedure,

which applies to removed cases, states that "the defendant shall answer or present the other

defenses or objections available under these rules within 20 days after the receipt ... of a copy of

the initial pleading setting forth the claim for relief upon which the action or proceeding is based,

or within 20 days after the service of the summons upon such initial pleading, then filed, or

within 5 days after the filing of the petition for removal, whichever period is longest."  Fed. R.

Civ. P. 81(c).

Additionally, Connecticut Practice Book § 10-30 states that "[a]ny defendant, wishing to

contest the court's jurisdiction, may do so even after having entered a general appearance, but

must do so by filing a motion to dismiss within thirty days of the filing of an appearance."

Connecticut Rules of Court § 10-30.  Further, Connecticut Practice Book § 10-32 states that

"[a]ny claim of lack of jurisdiction over the person . . . is waived if not raised by a motion to

dismiss filed . . . within the time provided by Section 10-30."  Connecticut Rules of Court § 10-

---

[7] Beharrell argues that Plaintiffs cannot rely on the allegations of their complaint to establish jurisdiction. (Beharrell's Mem. Of Law In Support Of Mot. To Dismiss ("Beharrell Brief") at 5.) Beharrell's reliance on Standard Tallow Corp. v. Jowdy, 190 Conn. 48 (1983), to support this proposition, however, is misplaced.  As the court in Reiner, Reiner & Bendett, P.C. v. Cadle Co., 278 Conn. 92, 108-110 (2006), made clear in its analysis of Jowdy, the Jowdy decision and the treatise material cited in it focus on service of process, the return of service, and issues relating thereto.  The Jowdy court did not conclude that a plaintiff cannot rely on the allegations of its complaint.  See also Trinidad v. Munez, No. NNICV065001231, 2007 Conn. Super. LEXIS 728, at *6-7 (Conn. Super. Ct. Mar. 13, 2007) (in ruling on motion to dismiss for lack of personal jurisdiction, court must take as true the facts alleged in the complaint and construe them in a manner most favorable to the pleader); Hasler, Inc. v. Block, No. CV054004813S, 2006 Conn. Super. LEXIS 1027, at *4-6 (Conn. Super. Ct. Mar. 31, 2006) (same).

-7-

S-320

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 33 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-   J   Document 26   Pg 92 of 168   Page 8 of 32
Filed 12/21/20

32.

In the present case, Coudert filed a general appearance in the Connecticut Superior Court on November 22, 2005, and Beharrell filed his general appearance in that court on November 28, 2005. The case then was removed to the United States Federal Court for the District of Connecticut on December 8, 2005. Defendants never filed any pleading with this Court to contests personal jurisdiction. The case was remanded to the Superior Court on January 25, 2006. Beharrell did not file his motion to dismiss in Superior Court until February 3, 2006 (docket entry no. 105.00). Coudert did not file its motion to dismiss until February 6, 2006 (docket entry no. 107.00). This matter then later removed again to this Court on March 23, 2007.

Defendants have waived the right to contest personal jurisdiction in this Court pursuant to the Federal Rules of Civil Procedure because they did not assert a timely objection to personal jurisdiction in this Court under Rule 81(c) of the Federal Rules of Civil Procedure within five (5) days after the filing of the initial petition for removal in December 2005.[8] In the absence of a timely pleading, a defendant waives the right to contest personal jurisdiction. See Voogd v. Pavilion Found., No. 03 C 2465, 2004 U.S. Dist. LEXIS 7003, at *3 (N.D. Ill. Apr. 23, 2004) (finding that defendant waived the right to contest personal jurisdiction by failing to file a responsive pleading within the time allotted under Rule 81(c), although the decision subsequently was overruled based on improper service of the underlying complaint), aff'd, 122 F. App. 850 (7th Cir. 2004). Nor have Defendants filed any pleading with this Court pursuant to Rule 6(b) of the Federal Rules of Civil Procedure that seeks leave to file an untimely pleading.

---

[8] Pursuant to Rule 81(c), the five (5) day test is the correct measure given the procedural history of this matter. More specifically, Plaintiffs served Coudert and Beharrell with the complaint on or before November 9, 2005, and the complaint was made returnable to Superior Court on November 22, 2005. Defendants then removed this matter on December 8, 2005. Based on the foregoing, either twenty (20) day period expired before removal, and pursuant to Rule 81(c), the five (5) day period from removal is the longest period.

-8-

S-321

Case 1:13-cv-08578-LTS    Document 16-6    Filed 12/17/13    Page 34 of 50

06-12226-rdd    Doc 1486    Filed 09/25/12    Entered 09/25/12 14:57:08    Main Document
Case 3:07-cv-00456-    J    Document 26 of Filed 12/21/2C    Page 9 of 32
Pg 93 of 168

Even if Defendants do file such a request, they cannot establish excusable neglect in this matter.

Moreover, pursuant to § 10-30 of the Superior Court rules of practice, Coudert needed to file its motion to dismiss no later than December 22, 2005 and Beharrell needed to file his motion by December 28, 2005. Defendants therefore also have waived their right to contest personal jurisdiction in the Superior Court. This waiver is automatic, and neither the Superior Court nor this Court need adjudicate the matter or enter any orders to this effect. See Statewide Griev. Comm. v. Connor, 260 Conn. 435, 445 (2002) (Connecticut Practice Book § 10-32 "specifically and unambiguously provides that any claim of lack of jurisdiction over the person as a result of an insufficiency of service of process is waived unless it is raised by a motion to dismiss filed within thirty days[.]").

Nor does the December 2005 removal excuse Defendants' failure to file their motions in Superior Court on a timely basis or remedy the resulting waiver of the right to contest personal jurisdiction. See Bolognese v. Promed Fin., Inc., No. CV02816660S, 2003 Conn. Super. LEXIS 1141 (Super. Ct., Apr. 14, 2003) (determining thirty day time limit to file motion to dismiss runs from date appearance is filed, regardless of subsequent removal, and concluding motion to dismiss asserting waivable defects is untimely when filed upon remand to state court but after thirty day period expired).

Finally, the second removal to this Court in 2007 does not revive Defendants' right to contest personal jurisdiction or otherwise vitiate the waiver, nor does it operate to make the already late-filed motions to dismiss timely. Indeed, it is well established that when a defendant waives a defense in state court, the federal court is bound by that waiver upon removal. See Hakemy v. Jackson, No. 3:01-CV-0272-P, 2001 U.S. Dist. LEXIS 5839, at *5 (N.D. Tex. May 4, 2001) (finding that defendants were barred from asserting the defense of lack of personal

-9-

S-322

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 35 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
    Case 3:07-cv-00456-S   J   Document 264 of 168 12/21/20   Page 10 of 32
                                         Pg 84 of 168

jurisdiction in federal court because they had waived their right to do so by filing an answer in

the state court.); Haedike v. Kodiak Research, Ltd., 814 F. Supp. 679, 681 (N.D. Ill. 1992) ("[T]o

the extent that a defense would not be available to a defendant in state court prior to removal,

that defense is deemed waived in federal court without consideration of the Federal Rules."); 14-

81 Moore's Federal Practice -- Civil § 81.04 ("If ... a defendant has already waived an

affirmative defense in the state court, the right to plead that defense is lost. . . . Removal to

federal court will not allow the defendant to revive the defenses."); see also Granny Goose

Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 423, 436 (1974) ("After

removal, the federal court takes the case up where the State court left it off.")(internal quotation

marks and citation omitted); Nationwide Eng'g & Control Sys., Inc. v. Thomas, 837 F.2d 345,

348 (8th Cir. 1988) ("Removal, in itself, does not constitute a waiver of any right to object to

lack of personal jurisdiction, but after removal, the federal court takes up the case where the state

court left off.").

 Defendants have waived their right to contest personal jurisdiction.

**IV.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS**

  **A.    Applicable law**

   **1.    *Personal Jurisdiction***

 The Court must apply Connecticut's two-step analysis to determine whether it has

personal jurisdiction over Defendants. First, it must determine whether Connecticut's long arm

statute, Conn. Gen. Stat. § 52-59b, reaches Defendants. If § 52-59b is satisfied, the Court then

must decide whether the exercise of its jurisdiction offends due process.

 Connecticut's long arm statute, § 52-59b, states, in relevant part, that:

> As to a cause of action arising from any of the acts enumerated in
> this section, a court may exercise personal jurisdiction over any

-10-

S-323

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 36 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-S   J   Document 26   Pg 95 of 168   Filed 12/21/20   Page 11 of 32

> nonresident individual, foreign partnership or foreign voluntary
> association, or over the executor or administrator of such nonresident
> individual, foreign partnership or foreign voluntary association, who
> in person or through an agent: (1) Transacts any business within the
> state; (2) commits a tortious act within the state, except as to a cause
> of action for defamation of character arising from the act; (3)
> commits a tortious act outside the state causing injury to person or
> property within the state, except as to a cause of action for
> defamation of character arising from the act, if such person or agent
> (A) regularly does or solicits business, or engages in any other
> persistent course of conduct, or derives substantial revenue from
> goods used or consumed or services rendered, in the state, or (B)
> expects or should reasonably expect the act to have consequences in
> the state and derives substantial revenue from interstate or
> international commerce; (4) owns, uses or possesses any real
> property situated within the state; or (5) uses a computer, as defined
> in subdivision (1) of subsection (a) of section 53-451, or a computer
> network, as defined in subdivision (3) of subsection (a) of said
> section, located within the state.

Conn. Gen. Stat. § 52-59b(a).

The second step of this analysis requires the Court to determine whether jurisdiction

"comports with the principles of due process." Thomason v. Chem. Bank, 234 Conn. 281, 299

(1995). This requires that Defendants have sufficient "minimum contacts" such that they

"purposefully avail [themselves] of the privilege of conducting activities within the forum State"

and that exercising jurisdiction would be reasonable, not offending "traditional notions of fair

play and substantial justice." Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 110, 113

(1987).

"The constitutional touchstone of the determination whether an exercise of personal

jurisdiction comports with due process remains whether the defendant purposefully established

'minimum contacts' in the forum State." Asahi, 480 U.S. at 108-09 (internal quotation marks

and citation omitted). Due Process is satisfied if either "the defendant has purposefully directed

its activities at residents of the forum, and the litigation has resulted from alleged injuries that

-11-

S-324

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 37 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 96 of 168
Case 3:07-cv-00456-   J   Document 26   Filed 12/21/20   Page 12 of 32

arise out of or relate to those activities . . . [or] if the defendant has had continuous and

systematic general business contacts with the state." Thomason, 234 Conn. at 288 (citations and

internal quotation marks omitted). The former is known as specific jurisdiction, and the latter

general jurisdiction.[9]

### 2.   *Partnership law and imputed conduct and contacts*

A partner in a general partnership that has contact with a forum state imputes those

contacts to both his out-of-state firm and his partners who work out-of-state or who have not had

contact with the state, thereby subjecting both his firm and his partners to jurisdiction within the

forum state. See Afloat in France, Inc. v. Bancroft Cruises, Ltd., No. 03 Civ. 917, 2003 U.S.

Dist. LEXIS 18703, at *14 (S.D.N.Y. Oct. 20, 2003); Durkin v. Shea, 957 F. Supp. 1360, 1366-

67 (S.D.N.Y. 1997); Friedson v. Lesnick, No. 91 Civ. 2133, 1992 U.S. Dist. LEXIS 2773, at *5

(S.D.N.Y. Mar. 6, 1992); Wichita Fed. Sav. & Loan Ass'n v. Comark, 586 F. Supp. 940, 943

(S.D.N.Y. 1984); Balogh v. Rayner-Smith, 30 A.D.2d 788, 788 (N.Y. App. Div. 1968), rev'g

274 N.Y.S.2d 920, 922 (Sup. Ct. 1966); Oppenheim v. Erwin, No. CV000441611, 2001 Conn.

Super. LEXIS 1014, at *17-20 (Super. Ct. Apr. 9, 2001). Similarly, jurisdictional contacts may

be imputed to a defendant by virtue of the contacts of his or its agent. See Updike, Kelly &

Spellacy, P.C. v. Beckett, No. X03CV0497890S, 2002 Conn. Super. LEXIS 744, at *8 (Super.

Ct. Mar. 6, 2002) (attorney's activities within Connecticut, performed as the agent of an out of

---

[9] For purposes of the Connecticut long arm statute and Constitutional general jurisdiction, discussed *infra*, the Court should consider the period of time encompassed by the Complaint. See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir. 1996) (holding that "[i]n general jurisdiction cases, district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances – up to and including the date the suit was filed[.]"); cf. Thomason, 234 Conn. 281, 284 (1995) (examining in-state contacts over a twelve year period for purposes of Connecticut's corporate long arm statute and Constitutional general jurisdiction and finding conduct that would make a similar suit to the plaintiff's reasonably foreseeable).

S-325

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 38 of 50

06-12226-rdd    Doc 1486    Filed 09/25/12    Entered 09/25/12 14:57:08    Main Document
Pg 97 of 168
Case 3:07-cv-00456-{   J    Document 26 of   Filed 12/21/20    Page 13 of 32

state client, are imputed to the client for jurisdictional purposes).[10]

Based on the foregoing, in the present case, Coudert's contact with Connecticut is measured not only by the activities of Coudert as a firm, but also by Beharrell's individual and direct contacts with Connecticut. And, in turn, Beharrell's contact with Connecticut is measured not only by his individual and direct contacts, but also by the contacts imputed to him by the activities of other Coudert partners and Coudert's contact with Connecticut as a partnership at large.[11]

### B.   Defendants' Contacts Satisfy Conn. Gen. Stat. § 52-59b

Defendants have sufficient contact with Connecticut to satisfy Conn. Gen. Stat. § 52-59b, which governs jurisdiction over nonresident individuals and foreign partnerships. Section 52-59b(a) provides that the court has personal jurisdiction "as to a cause of action arising from" any one of five categories of conduct in which a defendant, or its agent, may engage. See Conn. Gen. Stat. § 52-59b(a).[12]   Coudert and Beharrell satisfy sub-sections (a)(1), (a)(2), and (a)(3) of §

---

[10] While Beharrell ignores the implications of his partnership status and instead focuses exclusively on his individual and direct contacts with Connecticut, Beharrell has sufficient contacts, both direct and imputed, to justify personal jurisdiction over him in this Court.

[11] Coudert's conversion to a limited liability partnership (an "LLP") in October, 2001, (Kane Dep., at 11), does not change the jurisdictional analysis. New York partnership law shields an individual partner in an LLP from liability for the obligations or actions of other partners and the LLP itself. N.Y. P'ship Law § 26(b) (2005). It does not, however, erase liabilities incurred when the LLP existed as a general partnership, nor does it shield the LLP, as an entity, from liability for its partner's actions. See N.Y. P'ship Law § 26(e) (2005) ("[N.Y. P'ship Law § 26(b), cited above, does] not affect the liability of a registered limited liability partnership out of partnership assets for partnership debts, obligations and liabilities."); Mudge Rose Guthrie Alexander & Ferdon v. Pickett, 11 F. Supp. 2d 449, 453 (S.D.N.Y. 1998) (individual partners in an LLP "remain liable for any obligations incurred prior to the registration of the partnership as an LLP."). Therefore, Beharrell, as a partner in a New York LLP, remains bound by any activities undertaken by the partnership or his fellow partners before October 2001.

[12] "Arising from" does not imply a direct causal link between the defendant's conduct and the plaintiff's cause of action, but instead indicates that by engaging in the conduct described in the long arm statute, "it was reasonably foreseeable that, as a result of that [conduct], the defendant could be sued in Connecticut by a … person on a cause of action similar to that now being brought by the plaintiff." Thomason, 234 Conn. at 296 (interpreting the language "arising from" in the context of the former corporate long arm statute, Conn. Gen. Stat. § 33-411, now Conn. Gen. Stat. § 33-929); see also UOP v. Andersen Consulting, No. 95014753S, 1995 Conn. Super. LEXIS 3625, at *8-10 (Super. Ct. Dec. 21, 1995) (applying Thomason's interpretation of "arising from" to Conn. Gen. Stat. 52-59b).

-13-

S-326

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 39 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-S   J   Document 26   Filed 12/21/20      Page 14 of 32
Pg 98 of 168

52-59b, which relate to transacting business in Connecticut, tortious acts within the state, and

tortious acts outside the state that injure persons within the state, respectively.

### 1.   *Defendants have transacted business within Connecticut*

Jurisdiction is proper under § 52-59b(a)(1) when the defendant "in person or through an

agent ... transacts any business within the state." Conn. Gen. Stat. § 52-59b(a)(1).  Repetitive

business activity is not required, rather "a single purposeful business transaction" within the state

is sufficient.  Zartolas v. Nisenfeld, 184 Conn. 471, 474 (1981).  The court balances

"considerations of public policy, common sense, and the chronology and geography of the

relevant factors [concerning the transaction of business]" to determine whether the defendant's

conduct satisfies Section 52-59b(a)(1). Zartolas, 184 Conn. at 477; see also Hart, Nininger &

Campbell Assocs., Inc. v. Rogers, 16 Conn. App. 619, 624 (App. Ct. 1988).

"[O]ne need not be physically present in order to be subject to the jurisdiction of our

courts ... for, particularly in this day of instant long-range communications, one can engage in

extensive purposeful activity here without ever actually setting foot in the State."  Under Par

Assocs., L.L.C. v. Wash Depot A., Inc., 47 Conn. Supp. 319, 322 (Super. Ct. 2001).  Purposeful

business transactions are commonly found where the defendant's business, while predominantly

foreign, has a number of contacts that, in the aggregate, evidence a nucleus of Connecticut

business activity.  See Pro Performance Corporate, Inc. v. Goldman, 47 Conn. Supp. 476, 483

(Super. Ct. 2002) (purposeful business transaction within Connecticut found when a Maryland

defendant, with no physical presence within Connecticut at any relevant time, called the

plaintiff's Connecticut place of business, and ordered tickets to be hand delivered by the plaintiff

to the defendant in Florida); Updike, Kelly & Spellacy, 2002 Conn. Super. LEXIS 744, at *8-12

(New York defendant's "retention of [a] Connecticut law [firm] to pursue a claim in a

-14-

S-327

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 40 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 99 of 168
Case 3:07-cv-00456-S   J   Document 26   Filed 12/21/20(   Page 15 of 32

Connecticut court," and subsequent communication between the lawyer and client regarding the

representation, "constitutes the 'transaction of business' within the state under Connecticut's

long arm statute").   Particularly relevant are "whether the defendant has an on-going contractual

relationship with a [Connecticut] corporation" and "whether the contract requires [the defendant]

to send notices and payments into the forum state or subjects them to supervision by the

corporation in the forum state." Mitchell v. Patterson, No. 4001501, 2005 Conn. Super. LEXIS

1579, at *16 (Super. Ct. June 21, 2005).[13]

     Defendants satisfy § 52-59b(a)(1) because they have transacted business within the State

of Connecticut.   Indeed, as described in detail above, Beharrell does not dispute that he provided

the legal services underlying this action to a client located in Connecticut. (Beharrell Dep., at

25.)  Beharrell provided services to Johnston and Spillane at the Statek business office in

Connecticut, and communicated with them via telephone and facsimile knowing that they were

receiving these communications in Connecticut. (Beharrell Dep., at 34-36, 57-58.)  Beharrell

further acknowledges that all the legal services performed were billed (at Johnston's request) to

Statek in Connecticut, and relevant documents reveal significant billings for Statek. (Beharrell

---

[13] Beharrell's reliance on Mitchell in support of the absence of personal jurisdiction here is misplaced.
(Beharrell Brief at 7.)  Although Mitchell speaks generally to the rules governing personal jurisdiction pursuant to
Conn. Gen. Stat. § 52-59b, Mitchell is factually inapposite. Mitchell involved an isolated contract between a
Connecticut concert producer and a North Carolina promoter to provide promotional material for a North Carolina
event. 2005 Conn. Super. LEXIS 1579, at *6-7. The entire contractual relationship lasted approximately one
month, and the only contacts with Connecticut were the delivery of one payment into Connecticut and the faxing or
e-mailing of seven single page documents to Connecticut. Id. at *8-9, *19-20. The court granted defendant's
motion to dismiss because there was "no evidence of an ongoing contractual relationship between the defendants
and a Connecticut corporation or other entity," and the contacts with Connecticut were insufficient to give fair
notice of being haled before the Connecticut court. Id. at *17-22. The court found that the fact that payment was
made in Connecticut was insignificant because it only occurred because the defendant's partner happened to be
coming to Connecticut on personal business and the contract did not specifically call for payment to be made in
Connecticut. Id. at *19. Further, while the court found the communications relevant, it discounted them because of
the lack of any other purposeful business activity directed at Connecticut. Id.

    In contrast, the contractual relationship between Beharrell, Coudert, and Statek was ongoing for
approximately six years. The agreement also *required* all bills to be sent to the client's business office in
Connecticut for payment, and the communications sent into Connecticut were directly related to the services
rendered under the ongoing relationship.

S-328

Case 1:13-cv-08578-LTS    Document 16-6    Filed 12/17/13    Page 41 of 50

06-12226-rdd    Doc 1486    Filed 09/25/12    Entered 09/25/12 14:57:08    Main Document
Case 3:07-cv-00456-S    J    Document 200 of 168 12/21/200    Page 16 of 32
Pg 100 of 168

Dep., at 53-54, 97, 105.) Any of these facts establish a single and purposeful transaction, a nucleus of Connecticut business activity, and an on-going relationship with a client located in Connecticut. These facts therefore constitute the transaction of business in Connecticut and satisfy § 52-59b(a)(1).

With regard to Coudert, Statek was a Coudert client and it had a Connecticut address. (Kane Dep., at 22, 53, 127.) This alone is sufficient to satisfy § 52-59b(a)(1). Moreover, as also described above, Coudert's own documents reveal billings for legal services rendered to Statek. Apart from Statek, Coudert also had a significant client base in Connecticut, and billed for significant amounts of work to those Connecticut clients, throughout the 1990s and beyond. Indeed, documents produced by Coudert in discovery reveal that Coudert billed in excess of $1.8 million for services to Connecticut clients in the years 1993 to 1995 alone. Here too, these facts establish the transaction of business in Connecticut when viewed in light of the applicable legal test. Additionally, Coudert concedes that it has engaged local counsel to represent clients in Connecticut. (Kane Depo., at 75-76; Affidavit of Patricia Kane in Support of Defendant Coudert Brothers LLP's Motion to Dismiss (the "Kane Aff.") ¶ 14, attached hereto as Ex. L.)

Furthermore, Coudert's contacts with Connecticut by way of these other relationships are imputed to Beharrell, and Beharrell's relationship and contacts with Statek, Johnston, and Spillane in Connecticut similarly are imputed to Coudert as a firm. The foregoing satisfies § 52-59b(a)(1) and subjects Defendants to the Court's personal jurisdiction.

> ### 2. *Beharrell, and therefore Coudert, have engaged in tortious conduct within Connecticut*

Jurisdiction is proper under § 52-59b(a)(2) when the defendant "commits a tortious act within the state[.]" Conn. Gen. Stat. § 52-59b(a)(2). Physical presence within the state is not required for the defendant to have committed a tortious act within the state, and "[f]alse

-16-

S-329

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 42 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 101 of 168
Case 3:07-cv-00456-S   )   Document 26   Filed 12/21/20.   Page 17 of 32

representations entering Connecticut by wire or mail constitute tortious conduct in

Connecticut[.]" Knipple v. Viking Communs., Ltd., 236 Conn. 602, 610 (1996) (holding, under

the corporate long arm statute's equivalent standard, that fraudulent statements in advertisements

and phone calls, even though originating outside of Connecticut, were tortious conduct within

Connecticut); see also David v. Weitzman, 677 F. Supp. 95, 97 (D. Conn. 1987) (holding that

"jurisdiction exists under [the corporate long arm provision for tortious conduct within the state]

where the defendant sends fraudulent misrepresentations into the state, because such conduct is

deemed to have occurred *within* the state."); Center Capital Corp. v. Hall, No. CV92-0452084S,

1993 Conn. Super. LEXIS 1442, at *11 (Super. Ct. June 9, 1993) (jurisdiction proper under § 52-

59b(a)(2) where the defendant's only contact with Connecticut was a fraudulent letter sent to the

Connecticut plaintiff, thereby constituting tortious activity within the state).

Beharrell also satisfies § 52-59b(a)(2) because he has committed a tortious act within the

State by sending bills to Plaintiffs' Connecticut office that sought payment from Statek for legal

services that were provided to benefit Johnston and Spillane individually. (Beharrell Dep., at 28,

53-54, 67, 71.) Beharrell also was the partner responsible for the client relationship, and was

directly responsible for approving and sending out these invoices. (Poster Dep. at 38.) The mere

act of billing Statek improperly and sending these invoices alone satisfies § 52-59b(a)(2). In

addition, these bills also were part of, and served to further, the overall fraudulent scheme

perpetrated on Plaintiffs. This also constitutes tortious conduct. The invoices therefore underlie

Plaintiffs' allegations concerning Defendants' billing for services and their improper conduct

concerning these services. (Compl., at Counts I-III.)

Finally, Beharrell also satisfies § 52-59b(a)(2) because he directed legal services into

Connecticut and these services fostered and facilitated Spillane and Johnston's illegal conduct

S-330

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 43 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 102 of 168
Case 3:07-cv-00456-S   )   Document 26   Filed 12/21/20.   Page 18 of 32

and scheme. (Compl., at Counts I-IV). Indeed, Connecticut was Statek's principal place of business, the location from which Johnston and Spillane operated, and the location where Beharrell's legal services were delivered.

Beharrell's transmission of invoices and legal services into Connecticut constitutes tortious conduct within Connecticut. Furthermore, Beharrell's contacts with Connecticut by way of this conduct also are imputed to Coudert.

The foregoing therefore satisfies § 52-59b(a)(2) and subjects Defendants to this Court's jurisdiction.

### 3. *Beharrell, and therefore Coudert, have committed tortious acts outside Connecticut*

Jurisdiction is proper under § 52-59b(a)(3) when the defendant "commits a tortious act outside the state causing injury to person or property within the state ... if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" Conn. Gen. Stat. § 52-59b(a)(3).

Defendants also are subject to this Court's jurisdiction because their collective and imputed conduct satisfies the primary elements of § 52-59b(a)(3) as well as both sub-sections (A) and (B).

### a. *Beharrell, and therefore Coudert, committed tortious acts outside Connecticut that caused injury within Connecticut*

A defendant commits a tortious act outside the state when he sends "fraudulent misrepresentations into [Connecticut] ... causing injury within the state." Center Capital Corp.,

-18-

S-331

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 44 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
      Case 3:07-cv-00456-S   J   Document 163 of 168 12/21/20.     Page 19 of 32

1993 Conn. Super. LEXIS 1442, at *11 (jurisdiction proper under § 52-59b(a)(3) where the

defendant's only contact with Connecticut was a fraudulent letter sent to the Connecticut

plaintiff, thereby constituting tortious activity outside the state); see also Basta v. Today's

Adoption, No. 119321, 1995 Conn. Super. LEXIS 2158, at *12-15 (Super. Ct. July 24, 1995)

(sending misrepresentations into Connecticut is grounds for jurisdiction under Section 52-

59b(a)(3)).[14]

      As set forth above, Beharrell sent bills to Plaintiffs' Connecticut office that were

improper because they were not for services provided to Statek. These bills served to further

Spillane and Johnston's larger fraudulent scheme, as did the legal services that Beharrell directed

into Connecticut. These actions constitute the commission of a tortious acts outside the state and

satisfy the first primary element of § 52-59(b)(a)(3). This conduct also is imputed to Coudert,

and similarly binds it for purposes of this jurisdictional analysis.

      The second primary element of § 52-59b(a)(3) is that an injury occur within Connecticut.

See Conn. Gen. Stat. § 52-59b(a)(3). "[T]he injury within the state must be immediate and direct

… not … remote, consequential or of a derivative nature stemming merely from the plaintiff's

residence in the forum." Basta, 1995 Conn. Super. LEXIS 2158, at *16. There must be a "direct

and foreseeable expectation of injurious consequences within the state[,]" id., such as where the

defendant's conduct is targeted at a Connecticut resident or business. See Basta, 1995 Conn.

Super. LEXIS 2158, at *17 (contracting to provide services for a Connecticut resident makes it

"foreseeable and expected that direct and injurious consequences would result from the negligent

performance [of] the contract").

---

[14] Connecticut courts recognize jurisdiction concurrently under both section 52-59b(a)(2) and (a)(3) for
fraudulent statements entering Connecticut via mail or wire. The two sections are not mutually exclusive, and may
both be the basis for long arm jurisdiction in the same case. See, e.g., Center Capital Corp. v. Hall, No. CV92-
0452084S, 1993 Conn. Super. LEXIS 1442, at *11 (Super. Ct. June 9, 1993).

S-332

Case 1:13-cv-08578-LTS    Document 16-6    Filed 12/17/13    Page 45 of 50

06-12226-rdd    Doc 1486    Filed 09/25/12    Entered 09/25/12 14:57:08    Main Document
Case 3:07-cv-00456-S    J    Document 28    Of 168    12/21/20.    Page 20 of 32

In the present case, Plaintiffs were harmed in Connecticut because Statek, a business located in Connecticut, was the "target" of Beharrell's conduct. (Beharrell Dep. at 28-29, 53-54, 92-93.) Further, Connecticut was Statek's principal place of business, the location from which Johnston and Spillane operated, and the location where Beharrell's legal services were directed. Connecticut therefore was the hub of the scheme perpetrated upon Statek by Johnston, Spillane, and Defendants, and it was "foreseeable and expected" that Beharrell's actions would have injurious consequences in Connecticut sufficient to satisfy § 52-59b(a)(3).

The foregoing satisfies the two primary elements of § 52-59b(a)(3) and subjects Defendants to jurisdiction before this Court.

> **b.    *Defendants engaged in regular business in Connecticut or derived substantial revenue from services rendered in Connecticut***

Section 52-59b(a)(3)(A) applies when one "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state[.]" Conn. Gen. Stat. § 52-59b(a)(3)(A).[15]

Beharrell satisfies § 52-59b(a)(3)(A) because he has engaged in regular business in Connecticut. As noted previously, Beharrell clearly maintained regular and substantial business

---

[15] "Regular business" in Connecticut requires "something more than the 'one shot' single business transaction described in [Conn. Gen. Stat. 52-59b(a)(1)]." Ingraham v. Carroll, 90 N.Y.2d 592, 597 (1997). While the level of business contact with Connecticut need not be continuous and systematic within the meaning of Constitutional general jurisdiction, it must establish regular and substantial business activity. See Reynolds v. Aircraft Leasing, Inc., No. 23089/2001, 2002 N.Y. Misc. LEXIS 1547, at *11 (Sup. Ct. Oct. 30, 2002). A connection between a defendant's regular activities and the particular tortious act or the cause of action arising from it is not required. See Hearst Corp. v. Goldberger, No. 96 Civ. 3620, 1997 U.S. Dist. LEXIS 2065, at *45 (S.D.N.Y. 1997).

In addition, § 52-59b(a)(3)(A) requires proof of "substantial revenue" from Connecticut sources, and § 52-59b(a)(3)(B) requires the same proof, but from interstate or international commerce. Connecticut courts have adopted the dictionary definition of "substantial," and have found this element satisfied so long as the defendant earns a "considerable" or "material" amount from the relevant source. See Basta v. Today's Adoption, No. 119321, 1995 Conn. Super. LEXIS 2158, at *19-20 (Super. Ct. July 24, 1995); Shopey v. Lupoli, No. 055850, 1992 Conn. Super. LEXIS 146, at *5-6 (Super. Ct. Jan. 21, 1992). "Substantial" does not require a particular percentage of gross revenue.

S-333

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 46 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-S   J   Document 205 of 168 12/21/20   Page 21 of 32

activity in Connecticut through his relationship with Johnston and Spillane, who dealt with him from Statek's Connecticut office. Beharrell also received a share of the revenue from services rendered in Connecticut because, as an equity partner in Coudert, he directly shared in the revenue Coudert obtained from services rendered to clients in Connecticut, as described above and below. (Poster Dep. at 51-52; Kane Dep. at 58.) Moreover, regardless of Beharrell's right to share in these funds, Coudert's generation of revenues are imputed to Beharrell as a matter of general partnership principles.

Coudert also satisfies § 52-59b(a)(3)(A) because it represented a significant number of Connecticut clients from 1990 through to the time of the partnership's wind up, and therefore also has regularly conducted business in Connecticut. Cf. David Tunick, Inc. v. Kornfeld, 813 F. Supp. 988 (S.D.N.Y. 1993) (art dealer that makes repeated purchases within the forum regularly conducts business pursuant to New York Civil Practice law § 302, a parallel statute to Conn. Gen. Stat. § 52-59b, and is amenable to personal jurisdiction).[16] Coudert also has generated considerable and material revenue in the form of legal fees from services rendered in Connecticut to these clients. Indeed, Coudert's documents indicate that it billed clients in Connecticut for millions of dollars of legal services. Cf. Reynolds v. Aircraft Leasing, Inc., No. 23089/2001, 2002 N.Y. Misc. LEXIS 1547, at *11 (Sup. Ct. Oct. 30, 2002) (finding jurisdiction pursuant to C.P.L.R. 302 over Washington manufacturer that received approximately $1 million in New York sales, even though it represented just a tiny percentage of gross revenues, over the relevant time frame). Further, the correct focus is not on the percentage of Coudert's overall revenue derived from Connecticut clients, but rather on whether the revenue from Connecticut

---

[16] Connecticut courts routinely look to interpretations of New York Civil Practice Law 302 for guidance in construing section 52-59b, especially where there is limited Connecticut case law on point. See, e.g., Zartolas v. Nisenfeld, 184 Conn. 471, 474 (1981).

-21-

S-334

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 47 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
              Case 3:07-cv-00456-S  )   Document 28  Filed 12/21/20  Page 22 of 32
                                    Pg 106 of 168

clients was, in and of itself, substantial.  Coudert therefore also satisfies § 52-59b(a)(3)(A).

Finally, Coudert's contacts with Connecticut by way of these representations are imputed to Beharrell and its generation of substantial revenues also are imputed to Beharrell, both as a matter of his sharing in the revenues and basic partnership law principles.  Likewise, Beharrell's ties to Connecticut through Johnston, Spillane, and Statek are imputed back to Coudert.

The foregoing satisfies the elements of § 52-59b(a)(3)(A) for both Beharrell and Coudert, and subjects Defendants to this Court's jurisdiction.

> c.   *Defendants reasonably should have expected Beharrell's acts to have consequences in Connecticut and they derived substantial revenue from interstate or international commerce*

Section 52-59b(a)(3)(B) applies when one "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]"  Conn. Gen. Stat. § 52-59b(a)(3)(B).[17]  "It is not necessary that the defendant foresee the specific event producing injury in [Connecticut]; it is sufficient that defendant foresee the possibility of forum consequences generally."  Center Capital Corp., 1993 Conn. Super. LEXIS 1442, at *18 (defendant that drafts a letter containing untrue statements and mails it to Connecticut should reasonably expect consequences in Connecticut); Basta, 1995 Conn. Super. LEXIS 2158, at *17, 19 (defendant entering into a contract with a Connecticut resident should reasonably expect consequences in Connecticut); Shopey v. Lupoli, No. 055850, 1992 Conn. Super. LEXIS 146, at *8 (Super. Ct. Jan. 21, 1992) (defendant manufacturer who sold fireworks equipment to vendor doing business in Connecticut should reasonably foresee Connecticut

---

[17] There is no requirement that the "substantial revenue" a defendant derives from interstate or international commerce have any connection to Connecticut.  See Shopey, 1992 Conn. Super. LEXIS 146, at *5-9 (finding substantial revenue from interstate commerce, despite no direct interstate revenue stream, by virtue of sales to an in-state customer who used the product in Connecticut); Center Capital Corp., 1993 Conn. Super. LEXIS 2158, at *19-20 (substantial revenue from interstate commerce satisfied where defendant earned his unspecified salary based upon sales in several east coast states, but not Connecticut).

-22-

S-335

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 48 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-S   J   Document 107 of 168   Filed 12/21/20   Page 23 of 32

consequences, but "need not foresee the possibility of an accident in Connecticut.").

Beharrell satisfies section 52-59b(a)(3)(B) because he should have expected his acts to have consequences in Connecticut and he derived substantial revenue from both interstate and international commerce. In particular, Beharrell intentionally provided legal services to a Connecticut client and sent bills into Connecticut for those services. He therefore reasonably should have expected that any claims arising from these services or bills would have consequences in Connecticut.

Further, Beharrell's billings to Statek constitute substantial income from interstate or international commerce given Coudert's location and the fact that payments were not made from within New York. In addition, and as above, Coudert generated substantial earnings from Connecticut clients which also likely constitute revenues from interstate or international commerce. These earnings are imputed to Beharrell both because he shared in them as a partner and based on general partnership principals. Last, there is no doubt as to the substantial nature of Coudert's overall revenues from all locations, because Coudert's gross revenue was $228 million in 2004 alone. (Kane Dep. at 56-58, 85.) This too was shared with, and is imputed to, Beharrell. Under any definition, these are substantial revenues from interstate or international commerce.

With regard to Coudert, Beharrell's conduct is imputed to it. With this imputed conduct and Coudert's interstate or international revenues described above, Coudert also is subject to jurisdiction under § 52-59b(a)(3)(B) as well.

The foregoing satisfies the elements of § 52-59b(3)(B) for both Beharrell and Coudert, and subjects Defendants to this Court's jurisdiction.

Coudert and Beharrell satisfy sub-sections (a)(1), (a)(2), and (a)(3) of § 52-59b, and Plaintiffs' present causes of action arise from the conduct and facts that satisfy § 52-59b. This

S-336

Case 1:13-cv-08578-LTS   Document 16-6   Filed 12/17/13   Page 49 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-S   J   Document 108 of 168 Filed 12/21/20(   Page 24 of 32

Court therefore has personal jurisdiction over Defendants.

C.  Defendants' Contacts Satisfy The Due Process Clause Of The U.S.
    Constitution

The second step of the jurisdictional analysis requires the Court to determine whether

jurisdiction comports with the principles of due process. More specifically, the Court must

assess whether Defendants have purposefully established "minimum contacts" in this forum.

Asahi, 480 U.S. at 108. Due process is satisfied if either "the defendant has purposefully

directed his activities at residents of the forum, and the litigation has resulted from alleged

injuries that arise out of or relate to those activities . . . [or] if the defendant has had continuous

and systematic general business contacts with the state." Burger King v. Rudzewicz, 471 U.S.

462, 472 (1985) (internal quotation marks and citations omitted). The former is known as

specific jurisdiction, and the latter as general jurisdiction.

Moreover, jurisdiction over a defendant becomes presumptively reasonable once a

plaintiff establishes sufficient minimum contacts, and it is the defendant who then must show

facts that present compelling reasons why jurisdiction is unreasonable. Burger King, 471 U.S. at

477. The Supreme Court has recognized five factors that relate to a defendant's showing of

unreasonableness: (i) the burden on the defendant, (ii) the interests of the forum State, (iii) the

plaintiff's interest in obtaining relief, (iv) the interstate judicial system's interest in obtaining the

most efficient resolution of controversies, and (v) the shared interest of the several States in

furthering fundamental substantive social policy. Asahi, 480 U.S. at 113. When jurisdiction is

presumptively reasonable, "[m]ost [of these] considerations usually may be accommodated

through means short of finding jurisdiction unconstitutional." Burger King, 471 U.S. at 477.

Moreover, the burden on a defendant to defend in a foreign jurisdiction is afforded little

weight because "the conveniences of modern communication and transportation ease what would

-24-

S-337

Case 1:13-cv-08578-LTS    Document 16-6    Filed 12/17/13    Page 50 of 50

06-12226-rdd    Doc 1486    Filed 09/25/12    Entered 09/25/12 14:57:08    Main Document
        Case 3:07-cv-00456-S    J    Document 209    Filed 12/21/20.        Page 25 of 32
                                    Pg 109 of 168

have been a serious burden only a few decades ago." Afloat in France, Inc., 2003 U.S. Dist.

LEXIS 18703, at *23 (reasonable to assert New York jurisdiction over Colorado and South

Carolina partners of a New York partnership despite the fact that none are located within New

York) (internal quotation marks and citations omitted); Metro. Life Ins. Co., 84 F.3d at 574. "[I]t

usually will not be unfair to subject [defendants] to the burdens of litigating in another forum"

when those defendants have purposefully directed their activities into that forum. Burger King,

471 U.S. at 474. This burden also is diminished when the defendant has retained local counsel.

See Twin City Fire Ins. Co. v. Hernandez, No. CV030407476S, 2005 Conn. Super. LEXIS 386,

at *16-17 (Super. Ct. Feb. 7, 2005).

### 1. *Defendants purposefully directed activities at Connecticut and this litigation has resulted from injuries arising from those activities*

Specific jurisdiction exists where the defendant's contacts with Connecticut are causally

connected to the plaintiff's cause of action. Thomason, 234 Conn. at 289. "[W]here the

defendant deliberately has engaged in significant activities within a State, or has created

continuing obligations between himself and residents of the forum, he manifestly has availed

himself of the privilege of conducting business there[.]" Burger King, 471 U.S. at 475-76

(internal quotation marks and citations omitted); see also Chase v. Neff Kitchens Mfg., Ltd., No.

CV020820079S, 2004 Conn. Super. LEXIS 2905, at *14-15 (Super. Ct. Oct. 18, 2004) (due

process satisfied where defendant sent business materials into Connecticut for use within

Connecticut).

Further, a defendant's voluntary activities within the forum state "are shielded by 'the

benefits and protections' of the forum's laws," making it *presumptively reasonable* "to require

him to submit to the burdens of litigation in that forum as well." Burger King, 471 U.S. at 476;

see also Milford Paintball, LLC v. Wampus Milford Assocs., No. CV0540075S, 2005 Conn.

-25-

S-338