Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 1 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-S   J   Document 26   Pg 110 of 168   Filed 12/21/200   Page 26 of 32

Super. LEXIS 2282, at *19 (Super. Ct. Aug. 25, 2005); Chase, 2004 Conn. Super. LEXIS 2905,

at *13. As a result, once Plaintiffs establish Defendants' voluntary activity within Connecticut,

Defendants bear the burden to "present a compelling case that the presence of some other

considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477; Metro.

Life Ins. Co., 84 F.3d at 568.

Defendants have engaged in conduct that is sufficient to satisfy specific jurisdiction. As

previously described, Beharrell deliberately and voluntarily engaged in significant activities that

were directed to Connecticut through the services he provided to Johnston, Spillane, and

purportedly Statek, and that conduct also created continuing obligations concerning those

services. There is no doubt that Beharrell purposely directed activities to Connecticut. Further,

the present litigation arises from Beharrell's legal services and the billing related to those

services, which served to further the defalcation perpetrated upon Plaintiffs.

Similarly, it is beyond doubt that Coudert conducted significant business activity in

Connecticut and had continuing obligations here based upon the firm's Connecticut client base

and the longevity of its relationships in Connecticut, as well as all the revenues that these

engagements produced. As also described throughout, the activities and obligations of Beharrell

and Coudert each are imputed to the other.

Nor can Defendants provide any other considerations that would render jurisdiction in

Connecticut unreasonable in light of their prior actions. Indeed, they provided legal services to

clients located in Connecticut, they sent bills for those services into Connecticut, and they

received revenue from these representations. Defendants' contacts with Connecticut are

sufficient to satisfy constitutional specific jurisdiction and to make jurisdiction presumptively

reasonable.

S-339

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 2 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-S    )   Document 26   of 168   Filed 12/21/20(   Page 27 of 32

2.   *Defendants have had continuous and systematic general business contacts with Connecticut*

Even if the litigation does not arise out of the defendant's forum contacts, a defendant is also constitutionally subject to jurisdiction when it has "continuous and systematic general business contacts" within the State. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984); Thomason, 234 Conn. at 290. A defendant is subject to general jurisdiction where it carries on "a continuous and systematic, but limited, part of its general business" within the forum. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438 (1952); Raymond E. Danto, Assocs., Inc. v. Arthur D. Little, Inc., 316 F. Supp. 1350, 1356 (E.D. Mich. 1970) (finding "continuous and systematic" contacts sufficient for jurisdiction in a Michigan forum over a Massachusetts consulting firm where defendants entered a substantial number of service contracts with Michigan residents, performed a number of services within Michigan, were continuing to do business with Michigan customers, and had mailed literature to Michigan residents). As with specific jurisdiction, if Plaintiffs show continuous and systematic contacts with the forum, jurisdiction is presumptively reasonable. See Metro. Life. Ins. Co., 84 F.3d at 568, 575.

Defendants have engaged in conduct that is sufficient to satisfy general jurisdiction. Again, as described above, Coudert's own documents reveal continuous and systematic contacts with Connecticut from the 1990s through to the time of the firm's wind up. The documents also exhibit a substantial Connecticut client base and significant revenues that the firm generated from work provided to clients in Connecticut. Moreover, Coudert's general and systematic business contacts are imputed to Beharrell.

And, here too, Defendants cannot provide any other considerations that would render jurisdiction in Connecticut unreasonable. To the contrary, Coudert has generated significant

-27-

S-340

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 3 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-S   .   Document 26.2 of 166  Filed 12/21/200   Page 28 of 32

revenues from providing legal services in Connecticut and has many clients here. Defendants'
contacts with Connecticut are sufficient to satisfy constitutional general jurisdiction and to make
jurisdiction presumptively reasonable.

   3.   *Defendants cannot rebut the presumption of reasonable jurisdiction*

   As noted above, jurisdiction becomes presumptively reasonable once a plaintiff
establishes sufficient minimum contacts, and it is the defendant who then must justify why
jurisdiction is unreasonable by assessing (i) the burden on the defendant, (ii) the interests of the
forum State, (iii) the plaintiff's interest in obtaining relief, (iv) the interstate judicial system's
interest in obtaining the most efficient resolution of controversies, and (v) the shared interest of
the several States in furthering fundamental substantive social policy. See Burger King, 471
U.S. at 477; Asahi, 480 U.S. at 113.[18]

   Defendants cannot rebut the presumption of reasonableness when one assesses the
relevant factors. It is not an undue burden on Defendants to travel to Connecticut to defend this
lawsuit because modern means of travel exist that easily will facilitate occasional travel to
Connecticut, and each can regularly communicate via modern telecommunication devices.[19]
Moreover, both are represented by local counsel. Consequently, there is no insurmountable
burden on Defendants by pursuing this case in Connecticut, and jurisdiction is not unreasonable.

   Connecticut's "manifest interest" in protecting resident plaintiffs and providing a forum
for their recovery also weighs strongly in favor of concluding that jurisdiction in Connecticut is

---

[18] The presumptive reasonableness standard established in Burger King applies even when minimum
contacts are attributed to non-resident partners, and these partners therefore also have the burden to show that
litigating in the forum would be unreasonable. Oppenheim v. Erwin, No. CV000441611, 2001 Conn. Super. LEXIS
1014, at *23-24 (Super. Ct. Apr. 9, 2001) (allowing personal jurisdiction over non-resident partners because "the
defendants have not shown that litigating this action in Connecticut would be so burdensome, costly, or
inconvenient as to be unfair.").

[19] In fact, Poster already has been deposed via video teleconferencing.

-28-

S-341

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 4 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-S   ;   Document 20   of 168   Filed 12/21/20(   Page 29 of 32

reasonable.  See Burger King, 471 U.S. at 473; Milne v. Catuogno Court Reporting Servs., 239

F. Supp. 2d 195, 206 (D. Conn. 2002); Chase, 2004 Conn. Super. LEXIS 2905, at *14-15

("Connecticut has a strong policy favoring the ability of residents to bring actions against foreign

[defendants] who have deliberately done business in this state."); Monette v. Monette, No.

FA030197842S, 2005 Conn. Super. LEXIS 3097, at *16 (Super. Ct. Nov. 3, 2005) ("Connecticut

has a deep and abiding interest in retaining jurisdiction over" Connecticut plaintiffs).[20]

  In the present case, Statek operated from Connecticut, and suffered harm in this State

based on Defendants' actions in this State.  Moreover, since Defendants "purposefully derive

benefit" from Connecticut activities, it would be unfair "to allow them to escape having to

account in [Connecticut] for consequences that arise proximately from such activities."  Burger

King, 471 U.S. at 473-74.

  With regard to Plaintiffs' interest in obtaining relief, the fact that Plaintiffs brought this

suit in Connecticut also weighs, in and of itself, in favor of concluding that jurisdiction in

Connecticut is reasonable because "[t]he plaintiff's choice of forum is the best indicator of his

own convenience."  Milne, 239 F. Supp. 2d at 206.[21]

  Plaintiffs concede that some witnesses are likely to be located outside of Connecticut, and

that the interstate judicial system's interest in obtaining the most efficient resolution of

controversies therefore does not necessarily favor Connecticut over any other jurisdiction.

---

[20] Plaintiffs concede that Statek no longer operates a Connecticut office, but this does not make jurisdiction
any less reasonable. To the contrary, Plaintiffs are entitled to a Connecticut forum because Statek maintained a
Connecticut office during the years relevant to this lawsuit and submitted to the burdens of operating in Connecticut
during that time.

[21] Moreover, Connecticut courts have been unwilling to find jurisdiction unreasonable where a plaintiff's
claim against an out-of-state defendant arises from tortious conduct "committed in Connecticut upon a resident of
Connecticut, even if the tort is a wholly isolated event." Center Capital Corp., 1993 Conn. Super. LEXIS 1442, at
*22-24 ("One who causes fraudulent misrepresentations to be communicated to Connecticut ... cannot claim
surprise when called upon to answer in a Connecticut court.").  In the present case, Plaintiffs' claims arise, in part,

S-342

Case 1:13-cv-08578-LTS    Document 16-7    Filed 12/17/13    Page 5 of 50

06-12226-rdd    Doc 1486    Filed 09/25/12    Entered 09/25/12 14:57:08    Main Document
        Case 3:07-cv-00456-S    J    Document 164    of 168    Filed 12/21/20\    Page 30 of 32
                                    Pg 164 of 168

Metro. Life Ins. Co., 84 F.3d at 574. Nevertheless, Spillane is a named Defendant, and she

resides in Connecticut. As for other potential witnesses, they are located in many different states

and countries around the world, including California, Connecticut, Great Britain, Jersey

(Channel Islands), and Belgium. This factor therefore does not weigh strongly in favor of any

jurisdiction, and surely does not  support a finding that jurisdiction in Connecticut is

unreasonable.

    The final factor, the shared interest of the several States in furthering fundamental

substantive social policy, "requires [the court] to consider the common interests of the several

states in promoting substantive social policies." Milne, 239 F. Supp. 2d at 206. A court

generally should not rely on this factor because any "potential clash of the forum's law with the

'fundamental social policies' of another State may be accommodated through application of the

forum's choice-of-law rules." Burger King, 471 U.S. at 477.

    Nonetheless, this factor weighs in favor of concluding that jurisdiction in Connecticut is

reasonable because Statek maintained a Connecticut office during the events that form the basis

of this litigation, and Connecticut has a fundamental policy of affording its residents the ability

to recover here for injuries that are sustained by them in this State. Simaitis v. Flood, 182 Conn.

24, 32 (1980) (Connecticut has a "clear and legitimate" interest in fully compensating injured

Connecticut residents for their injuries); Chase, 2004 Conn. Super. LEXIS 2905, at *14-15

(Connecticut policy favors ability of residents to bring actions for their recovery in Connecticut).

    Defendants therefore cannot rebut the presumption of reasonableness surrounding

jurisdiction in Connecticut.

---

from bills that were sent to Statek in Connecticut for legal services that were provided to Johnston and Spillane,
individually, and therefore it is reasonable that Defendants answer these claims in a Connecticut court.

S-343

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 6 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-S   ;   Document 615 of 188 12/21/20(   Page 31 of 32

V.   <u>CONCLUSION</u>

Defendants have waived their right to contest personal jurisdiction by failing to raise

timely objections before this Court and the Superior Court.  Moreover, this Court has personal

jurisdiction over Defendants because Defendants have, either directly through Beharrell or

through the Coudert partnership, transacted business within the state, engaged in tortious conduct

within Connecticut, and/or engaged in tortious conduct outside Connecticut that had an effect

within Connecticut, all within the meaning of the Connecticut long arm statute.  Defendants also

have sufficient minimum contacts with Connecticut, either directly through Beharrell or through

the Coudert partnership, to make jurisdiction reasonable under the due process clause of the

Constitution.  Plaintiffs therefore respectfully request that the Court deny Defendants' respective

motions to dismiss.

-31-

S-344

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 7 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-S   |   Document 20   Pg 116 of 168   Filed 12/21/200   Page 32 of 32

PLAINTIFFS, STATEK CORPORATION and
TECHNICORP INTERNATIONAL II, INC.

By_____ /s/ Mark M. Porto _____
      James J. Tancredi (ct06819)
      jjtancredi@daypitney.com
      Steven M. Greenspan (ct00380)
      smgreenspan@daypitney.com
      Mark M. Porto (ct24271)
      mmporto@daypitney.com
      Day Pitney LLP
      242 Trumbull Street
      Hartford, Connecticut 06103-1212
      (860) 275-0100
-and-
      Joshua W. Cohen
      jwcohen@daypitney.com
      Day Pitney LLP
      One Audubon Street
      New Haven, Connecticut 06511
      (203) 752-5000
      Their Attorneys

## CERTIFICATE OF SERVICE

      I hereby certify that on this date a copy of foregoing **Objection to Motions to Dismiss** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

               _____ /s/ Mark M. Porto _____
               Mark M. Porto (ct24271)

S-345

Case 1:13-cv-08578-LTS    Document 16-7    Filed 12/17/13    Page 8 of 50

06-12226-rdd    Doc 1486    Filed 09/25/12    Entered 09/25/12 14:57:08    Main Document
Case 3:07-cv-00456-S    )    Document 37 of 168    01/28/200    Page 1 of 15

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATEK CORPORATION and TECHNICORP INTERNATIONAL II, INC. | : | CIVIL ACTION NO. |
| | : | 3:07 CV 456 (SRU) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| COUDERT BROTHERS LLP, STEVEN R. BEHARRELL and DEAN R. POSTER | : | |
| | : | |
| Defendants. | : | JANUARY 28, 2008 |

### DEFENDANT STEVEN BEHARRELL'S REPLY
### TO OBJECTION TO MOTION TO DISMISS

Defendant Steven R. Beharrell respectfully replies to Plaintiffs' Objection to Defendant Steven R. Beharrell's Motion to Dismiss. Plaintiffs' Objection is misleading, relies on wild, unsupported and disputed factual allegations, and improperly attempts to merge the activities of Beharrell and Defendant Coudert Brothers (to be referred to herein as "Coudert Brothers – New York"). The Motion to Dismiss should be granted because Plaintiffs have failed to establish grounds to exercise personal jurisdiction over Beharrell.

## I.    THE MOTION TO DISMISS WAS TIMELY FILED

Plaintiffs' claim of timeliness is not only frivolous, it lacks candor. Beharrell appeared in the Connecticut Superior Court on November 28, 2005. On December 8, 2005, ten days later, this case was removed to Federal Court. On December 13, 2005, five days after this case was removed, Beharrell timely filed a Motion for Pre-Filing Conference, as required by the Honorable Janet Bond Arterton before any dispositive motion, including a Motion to Dismiss, can be filed. Prior to the Pre-

S-346

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 9 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 118 of 168
Case 3:07-cv-00456-S   J   Document 30   Filed 01/28/20,   Page 2 of 15

Filing Conference Plaintiffs moved to remand. On January 25, 2006, the Motion for Remand was granted.

On February 3, 2006, nine days later, Beharrell filed his Motion to Dismiss in the Connecticut Superior Court. The District Court's docket report provides that the District Court did not transfer the case back to the Connecticut Superior Court until February 6, 2006 and the state court did not acknowledge receipt until February 10, 2006. Thus, the case was in the Connecticut Superior Court for a total of ten days after Beharrell appeared and before he filed his Motion to Dismiss. The Motion to Dismiss is timely[1]. See CT. Prac. Bk. § 10-30; CT. Prac. Bk. § 1-8 ("the design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice"); Baricko v. Chesebrough-Ponds USA Co., 1997 Conn. Super. LEXIS 3277 at *3 (Conn. Super. 1997)[2] citing 28 U.S.C. §1446(d) (a notice of removal instructs the state court "to proceed no further unless and until the case is remanded" and, therefore, the time period within which to file a motion to dismiss does not commence, or continue, until the case is returned to the state court); see also Nevins v. American Airlines, Inc., 2000 Conn. Super. LEXIS 2797 at *7-10 (Conn. Super. 2000) (rejecting a timeliness argument where Plaintiff could not demonstrate any undue prejudice resulting from the delay and acknowledging that the deadline to file a motion to dismiss may be extended); Stewart v. Air Jamaica

---

[1] Plaintiffs' reliance on Bolognese v. ProMed Financial, Inc., 2003 Conn. Super. LEXIS 1141 (Conn. Super. 2003) is misplaced. In Bolognese, the defendant did not move to dismiss until seven months after the case was remanded to the state court and, prior to filing the motion to dismiss, defendant made no specific reservation with respect to personal jurisdiction. Id. at *3. Defendant Beharrell, on the other hand, filed a Motion for Pre-Filing Conference with the District Court to specifically address personal jurisdiction fifteen days after he filed his appearance in the state court. In addition, due to the vast amount of time that expired between the remand of the case to the state court and the filing of the motion to dismiss, the Bolognese court had no reason to address CT. Prac. Bk. § 1-8, requiring that the rules be construed not to work surprise or injustice, or 28 U.S.C. 1446(d), instructing state courts to proceed no further unless and until the case is remanded.
[2] Unreported decisions attached as Exhibit D.

NYC_243249_2/JSTRETTON

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 10 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 119 of 168
Case 3:07-cv-00456-J   Document 30   Filed 01/28/20   Page 3 of 15

Holdings Ltd., 2000 Conn. Super. LEXIS 1107 at *5-8 (Conn. Super. 2000) (same); In re Helicopter

Crash Near Wendle Creek, 485 F. Supp. 2d 47, 52 (D.Conn. 2007) (same).

## II.   PLAINTIFFS CANNOT RELY ON UNVERIFIED ALLEGATIONS IN A COMPLAINT AFTER CONDUCTING EXTENSIVE DISCOVERY

Plaintiffs' burden to demonstrate personal jurisdiction is apportioned based on how far the

case has progressed. Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).

Prior to discovery, at which point Plaintiffs are required only to establish a prima facie case of

personal jurisdiction, Plaintiffs may rely on legally sufficient allegations, pled in good faith in

accordance with Rule 11, in a Complaint in order to establish personal jurisdiction. Id. However,

when defending a post-discovery challenge to personal jurisdiction, as is the case here, the Court may

no longer assume the truth of the allegations of Plaintiffs' Complaint. There is now a heightened

evidentiary requirement wherein Plaintiffs are charged with making an averment of facts sufficient to

establish jurisdiction. Id.; Gomez v. ISB LTEE Ltd, 920 F. Supp. 275, 276 (D. Conn. 1995) (after

discovery, "plaintiff will not be permitted to rely on the conclusory allegations of the complaint but

will be required to present specific facts developed through discovery supporting the exercise of

personal jurisdiction"); Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 54-56 (1983) ("when a

motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable

from the face of the record, the burden of proof is on the plaintiff to present evidence which will

establish jurisdiction"). In addition, "if the defendant contests the plaintiff's factual allegations, then a

hearing is required, at which the plaintiff must prove the existence of jurisdiction by a preponderance

of the evidence." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d at 197; Commercial Union

Insurance Co. v. Alitalia Airlines, 347 F.3d 448, 2003 U.S. App. LEXIS 21664 at *48 (2d. Cir. 2003);

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984).

NYC_243249_2//STRETTON

S-348

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 11 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-J   Document 290 of 168   Filed 01/28/20   Page 4 of 15

Plaintiffs' suggestion that they can continue to rely on the unverified and disputed allegations of their Complaint, even after conducting extensive discovery, which included depositions, interrogatories, document requests and requests for admissions, is contrary to well established precedent in both the Second Circuit and the State of Connecticut. To the extent this Court is inclined to entertain the unverified, fictional and disputed allegations of Plaintiffs' Complaint, Beharrell hereby respectfully requests an evidentiary hearing.

## III.   A PARTNER IS NOT AN AGENT OF HIS/HER PARTNERS UNDER CONNECTIUT LAW

In Connecticut, "a partnership is an entity distinct from its partners." Conn. Gen. Stat. § 34-313. As such, each partner, under Connecticut law, is considered "an agent of the partnership for the purpose of its business." Conn. Gen. Stat. § 34-322. However, under Connecticut partnership law and generally accepted common law, while each partner is generally an agent of the partnership for the purposes of its business, each partner is not ordinarily considered an agent of his/her partners. Grunberger Jewelers v. Leone, 2004 U.S. Dist. LEXIS 11268 (D. Conn. 2004) ("while the actions of a corporate officer may typically be attributed to the corporation under agency principles for purposes of determining jurisdiction over the corporation, the actions of the corporation (undertaken by other individuals) should not ordinarily be attributed to the individual corporate officer for purposes of determining whether jurisdiction exists over that individual"); Partnership Law and Practice; General and Limited Partnerships, § 8.4 Partners as Agents with Respect to Third Parties (2007) ("a partner is the partnership's agent, and not his or her co-partners' agent"); Sher v. Johnson, 911 F.2d 1357, 1366 (9th Cir. 1990) ("while each partner is generally an agent of the *partnership* for purposes of its

- 4 -

NYC_243249_2/JSTRETTON

S-349

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 12 of 50

06-12226-rdd    Doc 1486    Filed 09/25/12    Entered 09/25/12 14:57:08    Main Document
Case 3:07-cv-00456-S    J    Document 30 of 166 Filed 01/28/20    Page 5 of 15

business, he is not ordinarily an agent of his *partners*")[3].  The Connecticut partnership statute is

simply not written in such a broad fashion.  Conn. Gen. Stat. § 34-322 (providing only that a partner

is an agent of the partnership; the statute does not further state that a partner is an agent for his/her

partners); Conn. Gen. Stat. §§ 34-335 – 34-340 (this chapter, which is entitled "Relationships of

Partners to Each Other and to Partnership" does not provide that a partner is an agent for his/her

partners); Federal Deposit Insurance Corporation v. Kagan, 871 F. Supp. 1522, 1525 (D. MA. 1995)

(construing the Massachusetts statute, which is similar to Connecticut's statute, and holding that "the

statute is not so broad . . . It provides that a partner is the agent of the *partnership*, not of the

individual partners").

Moreover, the grounds on which the New York cases conclude that one partner can be an

agent for another partner, which are liability issues concerning a partner's ultimate responsibility for

the debts of the partnership, are at odds with United States Supreme Court precedent concerning

personal jurisdiction.[4]  In order to satisfy the Due Process Clause, "each defendant's contacts with the

forum State must be assessed individually."  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781, fn

13 (1984); see also Rush v. Savchuk, 444 U.S. 320, 332 (1980) ("the requirements of *International*

*Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction");

International Shoe Co. v. Washington, 326 U.S. 310, 317 (1945).  Whether or not a partner may

---

[3] See also Ytuarte v. Gruner & Jahr Printing & Publishing Co., 935 F.2d 971, 972 (8th Cir. 1991); Walker v.
White, 2007 WL 1612451 at *7-8 (W.D.N.C. 2007); Tuttle v. Lorillard Tobacco Co., 118 F.Supp.2d 954, 960
(D.Minn. 2000); Marriot PLP Corp. v. Tuschman, 904 F.Supp. 461, 466-467 (D.Md. 1995); Guy v. Layman, 932
F.Supp. 180, 182-183 (E.D.Ky. 1996).
[4] The only Connecticut case relied on by Plaintiffs for the notion that jurisdiction can be obtained over a partner,
the agent of the partnership, due to the acts of the partnership, the principal, is Oppenheim v. Erwin, 2001 Conn.
Super. LEXIS 1014 at *17 (Conn. Super. 2001); but see Friedson v. Lesnick, 1992 U.S. Dist. LEXIS 2773 at *9
(S.D.N.Y. 1992) ("It does not, however, provide for the reverse; activities of the principal in New York do not
give rise to jurisdiction over the agent").  The Oppenheim case bases its reasoning on principals of ultimate
liability among partners in a partnership, which, as explained in this section, is an issue separate and district from
the issue of whether this Court has jurisdiction over an individual partner.

- 5 -

NYC_243249_2/JSTRETTON

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 13 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
                Case 3:07-cv-00456-J   Document 30 of 168   Filed 01/28/20   Page 6 of 15

ultimately be responsible for debts of the partnership, or the debts his/her partners may have incurred

on behalf of the partnership, is a separate and distinct issue. Sher v. Johnson, 911 F.2d 1357, 1365-66

(9th Cir. 1990) ("jurisdiction depends only upon each defendant's relationship with the forum . . .

Regardless of their joint liability, jurisdiction over each defendant must be established individually");

Grunberger Jewelers v. Leone, 2004 U.S. Dist. LEXIS 11268 (D. Conn. 2004); Thomason v.

Chemical Bank, 234 Conn. 281, 287 (1995); Falik v. Smith, 884 F. Supp. 862 (S.D.N.Y. 1995).  The

issue presently before this Court is whether Beharrell personally had sufficient contacts with

Connecticut to satisfy both Connecticut's Long Arm Statute and the Due Process Clause.  Plaintiffs

have not demonstrated that Beharrell contacts with Connecticut, of which there are none, are

sufficient to subject him to the jurisdiction of this Court.

## IV.   BEHARRELL IS NOT SUBJECT TO JURISDICTION

### A.   Plaintiffs Cannot Satisfy Connecticut's Long Arm Statute

Plaintiffs acknowledge that this Court cannot obtain personal jurisdiction over Beharrell

pursuant to subsections (a)(4) and (a)(5) of Connecticut General Statutes § 52-59b.  Therefore, this

Court's analysis is limited to subsections (a)(1), (a)(2) and (a)(3).

#### 1.   Beharrell Did Not Transact Business in Connecticut; Conn. Gen. Stat. § 52-59b(a)(1).

Plaintiffs' contention, that a English solicitor, hired to establish a U.K. entity under U.K. law,

who conducted all client meetings in the U.K. and resides in the U.K., who is not licensed or

authorized to practice law in Connecticut or the United States and who never solicited any business

from the State of Connecticut, is nonetheless "transacting business[5]" in the State of Connecticut

---

[5] The "term 'transacting business' is not broadly interpreted in Connecticut" and recognizes that "defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters or where

NYC_243249_2/JSTRETTON

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 14 of 50

06-12226-rdd    Doc 1486    Filed 09/25/12    Entered 09/25/12 14:57:08    Main Document
Pg 123 of 168
Case 3:07-cv-00456-    J    Document 30    Filed 01/28/20    Page 7 of 15

because billings[6] were sent to Connecticut and a few isolated telephone calls[7] were made and/or

received from Connecticut has systematically and routinely been rejected by countless courts

construing Connecticut law. Rosenblit v. Danaher, 206 Conn. 125, 140-141 (1988) (affirming the

dismissal of a legal malpractice action brought by two Connecticut residents against a Massachusetts

attorney, who resides and practices law in Massachusetts, retained to bring an action in Massachusetts

notwithstanding the fact that meetings occurred in Connecticut and billings were sent to Connecticut);

Ryan v. Cerullo, 282 Conn. 109, 123 (2007) (affirming the dismissal of an accounting malpractice

action where a Connecticut resident retained a New York accountant to prepare his Connecticut and

New York tax returns where the New York accountant performed the services in New York and met

with the plaintiff exclusively in New York); Custom Navigation Systems, Inc. v. Pincus, 935 F. Supp.

117, 119 (D. Conn. 1995) ("the transmission of communications between an out-of-state defendant

and a party within the jurisdiction does not, by itself, constitute the transaction of business within the

forum state"); Grasser v. Midstate Medical Ctr., 2007 WL 1828288 at *6 (Conn. Super. 2007)

(dismissing a medical malpractice action on the grounds that a Florida doctor's transmittal of bills to a

Connecticut resident is wholly insufficient to establish personal jurisdiction); Mitchell v. Patterson,

2005 Conn. Super. LEXIS 1579 at *23 (Conn. Super. 2005)[8] (dismissing an action against an out-of-

state resident notwithstanding the fact that the contract was made in Connecticut, defendant received

payment in Connecticut, and faxes and/or emails were sent to Connecticut, where all the work was to

---

they conduct substantial general business activities." Mitchell v. Patterson, 2005 Conn. Super. LEXIS 1579 at 23.

[6] As is evident from the invoices relied on by Plaintiffs, the work performed by Beharrell, Thompson & Co. was deminimus and sporadic. See Exhibit C to Plaintiffs' Objection.

[7] As is evident from the limited correspondence relied on by Plaintiffs, all communications concerned foreign law or foreign issues. See Exhibits D and E to Plaintiffs' Objection.

[8] The Mitchell court also cites a long string of cases holding that the transmittal of communications into the State of Connecticut is insufficient to establish personal jurisdiction. Mitchell, 2005 Conn. Super. LEXIS 1579 at *20.

NYC_243249_2/STRETTON

S-352

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 15 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 124 of 168
Case 3:07-cv-00456-S   J   Document 30   Filed 01/28/20   Page 8 of 15

be performed outside of Connecticut); Weber v. U.S. Sterling Securities, Inc., 2005 Conn. Super.

LEXIS 1031 at *2 (Conn. Super. 2005) ("Connecticut courts have held that the mere sending of a

communication into the State does not necessarily confer jurisdiction"); Matto v. Dermatopathology

Assoc. of N.Y., 1998 Conn. Super. LEXIS 1628 at  *4 (Conn. Super. 1998) (dismissing an action

where defendant doctor, although he performed work for a Connecticut resident and sent bills to

Connecticut, was not licensed in Connecticut, did not solicit business in Connecticut and was retained

to analyze tissue samples sent from Connecticut to New York); Mayes v. Leipziger, 674 F.2d 178,

185 (2d Cir. 1982) (holding that the New York courts would not exercise jurisdiction "solely on the

basis that the defendants, from California, reported to their New York client and sought the

wherewithal (i.e., funds, authority, and information) by means of letters and calls to New York to

perform their non-New York services"); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475

(1985) (in order to establish that a defendant transacted business in the forum state, i.e. purposely

availed himself of the privileges of conducting business in the forum state and, thus invoking the

benefits and protections of the laws of the forum state, the contacts must be shown to be more than

random, fortuitous or attenuated).  Plaintiffs cannot establish that Beharrell transacted business in

Connecticut[9].

    In addition, Plaintiffs' reference to clients Coudert Brothers-New York may have serviced in

Connecticut is irrelevant. First, to be relevant to the "transacting business" analysis, "plaintiff's cause

of action [must have]  arise[n] out of the business transacted in the state." Mitchell v. Patterson, 2005

Conn. Super. LEXIS 1579 at  *15 fn 6; see also Ryan v. Cerullo, 282 Conn. at 123; Custom

---

[9] In addition, Plaintiffs have never been authorized to transact business in the State of Connecticut. See Secretary
of State Aff. (Exhibit C).  As such, Plaintiffs are not authorized to maintain any civil action in the courts in the
State of Connecticut.  Conn. Gen. Stat. § 33-921(a) ("A foreign corporation transacting business in this state

NYC_243249_2/JSTRETTON

S-353

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 16 of 50

06-12226-rdd    Doc 1486    Filed 09/25/12    Entered 09/25/12 14:57:08    Main Document
Case 3:07-cv-00456-    J    Document 25  of 168    Filed 01/28/20    Page 9 of 15
Pg 125 of 168

Navigation Systems, Inc. v. Pincus, 935 F. Supp. at 118. Plaintiffs make no such claim. Second, the

contacts of Coudert Brothers-New York are not personal to Beharrell and, therefore, are not pertinent

to this Court's determination of whether this Court may exercise personal jurisdiction over Beharrell.

Keeton v. Hustler Magazine, Inc., 465 U.S. at 781, fn 13; Rush v. Savchuk, 444 U.S. at 332;

International Shoe Co. v. Washington, 326 U.S. at 317; Thomason v. Chemical Bank, 234 Conn. at

287. Plaintiffs have failed to carry their burden of establishing that Beharrell transacted business in

the State of Connecticut.

2.    Beharrell Did Not Commit a Tortious Act Within the State
of Connecticut; Conn. Gen. Stat. § 52-59b(a)(2).

A "motion to dismiss for lack of in personal jurisdiction . . . is a test of plaintiff's actual

proof." Bowman v. Grolsche Bierbrouwerij B.V., 474 F. Supp. 725, 728 (D. Conn. 1979); see also

Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d at 197; Gomez v. JSB LTEE Ltd, 920 F. Supp.

at 276; Standard Tallow Corp. v. Jowdy, 190 Conn. at 54-56. Therefore, unless Plaintiffs can

establish a prima facie case[10] that "a tort was committed," the Court will be without a basis to find

personal jurisdiction under Conn. Gen. Stat. § 52-59b(a)(2). Bowman v. Grolsche Bierbrouwerij

B.V., 474 F. Supp. at 733; see also Pro Performance Corp., Inc. v. Goldman, 47 Conn. Supp. 476,

485 (Conn. Super. 2002).

There is absolutely no evidence to support Plaintiffs' baseless claim that Beharrell

fraudulently[11] billed Statek for services that Plaintiffs' claim were designed to benefit Johnston and

---

without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a
certificate of authority").
[10] Plaintiffs' burden is a preponderance of the evidence if a hearing is required due to a disputed issue of
jurisdiction fact. Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d at 197. Absent a hearing, Plaintiffs,
similar to the party moving for summary judgment, will fail to carry their burden in the event of a disputed issue
of jurisdiction fact. Id.
[11] According to Rule 9(b), allegations of fraud, including the circumstances constituting fraud, must "be stated
with particularity." Plaintiffs have failed to do so.

- 9 -

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 17 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Case 3:07-cv-00456-S   J   Document 30   Filed 01/28/20   Page 10 of 15
Pg 126 of 168

Spillane individually.[12]  First and foremost, the billings were the result of services performed for

Technicorp International, Inc. at the request of Johnston, whom Beharrell believed to be its owner,

and were sent, according to the Johnston's instructions, to Statek, a subsidiary of the parent company,

Technicorp, Inc., for payment.  Beh. Dep. at 25-27, 29, 33, 45-52 (attached as Exhibit A); Aff. Beh,

¶¶ 13, 17; Sup. Aff. Beh, ¶ 3 (attached as Exhibit B).   Thus, Plaintiff Statek cannot claim fraud

because the billings were directed at Statek in accordance with the instructions of its parent

corporation and Plaintiff Technicorp International II, Inc. cannot claim fraud because the billings were

never directed at it.  Sanchez v. Corona, 283 F. Supp. 2d 648, 654 fn6 (D. Conn. 2003) (an affidavit

allegedly containing fraudulent statements filed in connection with litigation pending in New York

and mailed to the plaintiff in Connecticut does not establish that a tort was committed in Connecticut

because the "conduct asserted to be actionable is the alleged misleading of the New York court").

      Second, a fundamental flaw in Plaintiffs' argument is the assumption that Beharrell was

aware, which he was not, that Vandell was a silent owner or that Johnston was engaging

in self-dealings and fraud.  Plaintiffs have presented no such evidence.  Defendant Beharrell, on the

other hand, testified that he believed Johnston to be the owner of Technicorp International, Inc. and

that he understood it to be the parent company to Statek[13].  Beh. Dep. at 33, 45-52, 78; Aff. Beh, ¶13;

Sup. Aff. Beh, ¶¶ 2-3.  In addition, since all instructions came from the owner of the company,

Johnston, and all work was performed in accordance with those instructions and only work that was

actually performed was billed for, Plaintiffs cannot establish that Beharrell made a false statement of

---

[12] The undisputed facts are that Beharrell, Thompson & Co. were asked to assist Technicorp International, Inc. in
renting a flat for its CEO, Johnston, in connection with its work in establishing a UK service company known as
Statek Europe Ltd. and recommending that Johnston establish an offshore trust for UK tax purposes.  Beh. Dep.
at 27-28, 55-57, 62-63, 77; Aff Beh., ¶¶ 13, 14.  Moreover, the flat was rented in the company's name, not in
Johnston's personal name.  Beh. Dep. at 77.  Plaintiffs do not identify the work they claim Beharrell, Thompson
& Co. performed for Spillane.

- 10 -

NYC_243249_2/STRETTON

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 18 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 127 of 168
Case 3:07-cv-00456-S. J   Document 30   Filed 01/28/20L       Page 11 of 15

fact that he knew to be untrue and that he intended Johnson or Technicorp International, Inc. to rely

on or, for that matter, that Johnson or Technicorp International, Inc. ever relied on, a false statement of

fact to their detriment. IM Partners v. Debit Direct Ltd, 394 F. Supp. 2d 503, (D. Conn. 2005) (fraud

requires: a false representation made as a statement of fact; that was untrue and known to be untrue by

the party making it; made to induce the other party to act upon it; and the other party did so act upon

the false representation to his detriment). The Motion to Dismiss should be granted.

>     3.     **Beharrell Did Not Commit a Tort Outside of Connecticut;**
>            **Conn. Gen. Stat. § 52-59b(a)(3).**

As discussed in the previous section, Beharrell has not engaged in tortious conduct and

Plaintiffs have not established a prima facie of tortious conduct. Because Beharrell has not engaged

in tortious conduct, he could not have expected the tortious act alleged by Plaintiffs to have

consequences in this state.

However, even assuming the existence of a tort, it still cannot be said that an injury within the

state of Connecticut was direct and foreseeable. Grasser v. Midstate Medical Ctr., 2007 WL 1828288

at *4 (Conn. Super. 2007); Matto v. Dermatopathology Assoc. of N.Y., 1998 Conn. Super. LEXIS

1628 at  *4.   Neither Plaintiff was a client of Beharrell, Thompson & Co[14]; Plaintiff Statek

Corporation is a California corporation[15]; Beharrell was unaware of the existence of Plaintiff

Technicorp International II, Inc. until the litigation between Johnston and Vendell; and Beharrell is a

solicitor in England, is not licensed to practice law in the United States, was retained to establish,

---

[13] It was not until the litigation between Vendel and Johnston that Beharrell even became aware of the existence of Technicorp International II., Inc. or Johnston's claim of an ownership interest in Statek.

[14] In 1990, Technicorp International, Inc., which is not a party to this action, retained 'Beharrell, Thompson & Co.' to establish a UK service company known as Statek Europe Ltd. Technicorp International, Inc. was never a client of 'Coudert Brothers-New York,' a separate and distinct entity from 'Beharrell, Thompson & Co.' and 'Coudert Brothers – a Multi National Partnership of English Solicitors and Registered Foreign Lawyers' ("CBMNP"). CBMNP was the successor to 'Beharrell, Thompson & Co.' Beh. Dep. at 25-27; Aff. Beh, ¶ 13.

NYC_243249_2/JSTRETTON

S-356

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 19 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 128 of 168
Case 3:07-cv-00456-S   J   Document 30   Filed 01/28/20(   Page 12 of 15

under UK law, a UK service company known as Statek Europe Ltd. and performed all work out of London. Beh. Dep. at 25-27, 39, 45-48, 97; Aff. Beh. ¶ 13; Sup. Aff. Beh. ¶¶ 2-3. Beharrell did not expect, nor should he have expected, that his actions would have consequences in the State of Connecticut. Ryan v. Cerullo, 282 Conn. at 124, fn 15 (in an accounting malpractice action, the court held that "the place of the injury is generally the place where the critical events associated with the dispute took place").

In addition, Plaintiffs cannot establish that Beharrell regularly solicits or conducts business in the State of Connecticut. First, it is undisputed that Beharrell does not solicit business from, nor does he transact business in, the State of Connecticut. Beh. Dep. at 20, 25-27, 32-33, 39, 90-91; Aff. Beh. ¶ 5. Second, Plaintiffs' suggestion that the business Coudert Brothers - New York may have conducted in Connecticut was substantial is irrelevant. Coudert Brothers - New York did not represent Technicorp International, Inc. Beh. Dep. at 25-27, 29, 37, 42, 52, 66, 92. Technicorp International, Inc. was a client of Beharrell, Thompson & Co and its successor, CBMNP. Id.; see also Beh. Dep. 9, 12 (wherein Beharrell testified that each of the law firms were distinct entities); Sup. Aff. Beh. ¶ 3. In addition, other than stating in a conclusory fashion that the business Coudert Brothers-New York conducted in Connecticut was substantial, Plaintiffs presented no evidence to support this assertion.[16] For instance, Plaintiffs present no evidence demonstrating that the revenues attributed to Connecticut represented a substantial percentage of Coudert Brothers-New York's total revenues. Ryan v. Cerullo, 282 Conn. at 125 ("the determination of whether that jurisdictional threshold has been met in any particular case necessarily will require a careful review of the relevant

---

[15] In addition, Statek and Technicorp II, Inc. have never been authorized to transact business in the State of Connecticut. See Secretary of State Aff. (Exhibit C).
[16] Beh. Dep. at 42, 92, 94 (wherein Beharrell testified that Technicorp International, Inc. was a small client and the revenues earned were insubstantial).

NYC_243249_2/SRRETION

S-357

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 20 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 129 of 168
Case 3:07-cv-00456-S   J   Document 30   Filed 01/28/20ᵤ   Page 13 of 15

facts and frequently will entail an evaluation of both the total amount of revenue involved and the
percentage of annual income that that revenue represents"). As such, Plaintiffs have failed to satisfy
their evidentiary burden under Conn. Gen. Stat. § 52-59b(a)(3).

**B.      Any Attempt to Exercise Personal Jurisdiction Over
         Beharrell Violates Due Process**

As set forth in his Motion to Dismiss and above, Plaintiffs have not presented evidence that
would permit this Court to exercise specific or general jurisdiction over Beharrell. In addition, while
Beharrell already established in his Motion to Dismiss that it would violate principals of "fair play and
substantial justice" to subject Beharrell to the jurisdiction of Connecticut, Beharrell submits that the
following points as further evidence that any attempt to exercise jurisdiction over Beharrell would be
unreasonable:

- Beharrell, who is sued in his individual capacity and responsible for his own costs, resides in
  the UK. As such, it would be unduly burdensome to require Beharrell to defend himself in
  Connecticut, a state he never conducted business in and a forum wherein none of the conduct
  allegedly occurred;

- Plaintiff Statek, a California corporation, has not maintained a principal place of business in
  Connecticut since 1996. Complaint, ¶ 2. There is no evidence that Technicorp International
  II, Inc. has ever maintained a principal place of business in Connecticut. Complaint, ¶ 3. In
  fact, neither Plaintiff has ever been authorized to conduct business in the State of
  Connecticut[17]. Beharrell is an English solicitor that has never practiced law in the State of

---

[17] Secretary of State Aff. (Exhibit C); see also Conn. Gen. Stat. § 33-921(a) ("A foreign corporation transacting
business in this state without a certificate of authority may not maintain a proceeding in any court in this state
until it obtains a certificate of authority").

NYC_243249_2/JSTRETTON

S-358

Connecticut and has never represented either Plaintiff. Vendell, the individual that owns

Plaintiffs, is not a resident of Connecticut. Connecticut has no interest in this case.

- Even if Plaintiffs were to obtain a judgment against Beharrell, Plaintiffs could not enforce that

judgment unless the UK courts were willing to recognize the judgment[18]. Thus, proceeding

in Connecticut is not the most efficient manner of resolving this controversy.

In short, Beharrell could not have anticipated being haled into court in Connecticut as a result of his

representation of Technicorp International, Inc. Grasser v. Midstate Medical Ctr., 2007 WL 1828288

at *6 (Conn. Super. 2007) (out-of-state lawyer performing services based on foreign law "could not

have anticipated being hailed into court" in Connecticut "when the services he provided was

accomplished wholly in Florida"). The Motion to Dismiss should be granted.

V.   **CONCLUSION**

Based on the foregoing, and as set forth in the Motion to Dismiss, Defendant Steven R.

Beharrell respectfully requests that his Motion to Dismiss be granted, with prejudice.

DEFENDANT,
STEVEN R. BEHARRELL

By
Michael Thompson, Esq. ct 09634
mthompson@eapdlaw.com
John G. Stretton, Esq. ct 19902
jstretton@eapdlaw.com
EDWARDS ANGELL PALMER & DODGE, LLP
301 Tresser Boulevard
Stamford, CT 06901
203-353-6844

---

[18] The circumstances that may support an action for fraud in the UK are more limited than the circumstances that can support an action for fraud in Connecticut. See Bradford Third Equitable Benefit Building Society v. Borders, [1941] 2 All E.R. 205, at 211 (Lord Maugham).

- 14 -

NYC_243249_2/JSTRETTON

S-359

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of the foregoing DEFENDANT STEVEN

BEHARRELLS' REPLY TO OBJECTION TO MOTION TO DISMISS was filed electronically and

served by mail on anyone unable to accept electronic filing. Notice of the filing will be sent by email

to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept

electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through

the court's CM/ECF system.

John G. Stretton

NYC_243249_2/JSTRETTON

S-360

## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATEK CORPORATION and TECHNICORP INTERNATIONAL II, INC. | : | CIVIL ACTION NO. 3:07-CV-00456 (SRU) |
| | : | |
| v. | : | **REPLY TO PLAINTIFFS OBJECTION TO MOTION TO DISMISS** |
| | : | |
| | : | |
| | : | |
| COUDERT BROTHERS LLP STEVEN R. BEHARRELL DEAN R. POSTER and SANDRA SPILLANE | : | **JANUARY 29, 2008** |

### DEFENDANT COUDERT BROTHERS REPLY TO
### PLAINTIFF'S OBJECTION TO DISMISS

Defendant COUDERT BROTHERS, LLP (Coudert) hereby submits this reply brief in response to plaintiff's objection to defendant's motion to dismiss. In support of said objection, the Defendant submits the following:

### I.    WAIVER

Plaintiffs' first attempt to argue that the defendants' waived the right to move to dismiss is without merit and does not comport with the law of Connecticut.

Coudert appeared in State Court on November 22, 2005. Therefore, a motion to dismiss would be due on or before December 22, 2005.[1] However, before the 30 days had expired the case was removed to Federal Court on December 8, 2005. The plaintiff's do not point to any conduct on behalf of Coudert between the time of their appearance and removal which acts as a waiver of jurisdiction.[2] Removal itself does not deprive the defendant from raising personal

---

[1] See Connecticut Practice Book § 10-30.
[2] Upon removal, the Federal Court takes the case up where the State Court left off. See Granny Goose Foods Inc., v Bhd. Of Teamsters & Auto Truck Drivers, 415 U.S. 423 (1974).

S-361

jurisdiction by way of a motion to dismiss.  As such, Coudert retained the right to move to dismiss for lack of jurisdiction after removal.

Plaintiffs argue that the defendants waived their right to move for dismissal by not filing a motion on or before December 13, 2003, pursuant to Rule 81(c) of the Federal Rules of Civil Procedure. However, the plaintiffs have not accurately stated the sequence of events following the removal, having failed to include the fact that on December 12, 2005, a joint motion for status conference was filed by defendants Coudert and Stephen Beharrell, which sought a conference, specifically to request permission to file a motion dismiss. The Court scheduled a telephonic conference to discuss these and other issues for January 24, 2006. Coudert did not file an answer or any other pleading evidencing their voluntary submission to Connecticut jurisdiction.[3] The plaintiff's have failed to establish any voluntary activities by Coudert which recognized the in personum jurisdiction of the Connecticut Courts, either prior to removal or subsequent to remand. The only action undertaken by Coudert upon removal was to file notice of its intent to file a motion to dismiss.

"In most cases where courts have found waiver, the defendant has waited multiple years after its answer to file a motion to dismiss." In re Helicopter Crash near Wendle Creek, B.C. on August 8, 2002, 485 F. Supp. 2d 47, 52 (D. Conn. 2007). Additionally, the court found that most cases in which courts have made a finding of waiver, "the defendant has engaged in substantial pretrial activity or has attempted to deceive the opposing party." Id. 52.  Neither of these circumstances is present in the case before this court.

---

[3] Plaintiffs reliance on Haedike v. Kodiak Research, 814 F. Supp 679 (1992), is misplaced as the defendant filed an appearance and jury demand prior to moving to dismiss. "A defendant who enters an appearance by filing an answer is before the court for all purposes." West v. City Nat'l Bank of Birmingham, 597 S.W.2d 461, 464 (Tex. Civ. App. 1980).   Likewise, the Statewide Grievance Committee filed an answer to a complaint brought in the Superior Court by plaintiff, prior to filing its motion to dismiss. Connor v. Statewide Grievance Committee, 260 Conn. 435 (2002). See also Hakemy v. Jackson, No.3:01-CV-0272-P. 2001 U.S. Dist Lexis 5839, (N.D. Tex. May 4, 2001), wherein the defendants answered prior to moving to dismiss.

2

S-362

Furthermore, "all pleadings shall be so construed to do substantial justice." Bell v. Shah, No. 3:05-CV-0671 (RNC), 2006 U.S. Dist. LEXIS 14919, at 5 (D. Conn. Mar. 30 2006).[4] To find under the facts before this Court that the defendants waived any jurisdictional defenses would create a substantial injustice.

Finally, pursuant to Fed. R. Civ. P. 16(b) and the Standing Order on Scheduling in Civil Cases in the District Courts of Connecticut, all motions to dismiss based upon the pleadings shall be filed within 90 days after the filing of complaint or the filing of the petition for removal. (A copy of the Standing Order is annexed as Exhibit A.) Coudert therefore had until March 8, 2006, to file same but did not, due to the Court's remand on January 26, 2006.

Coudert did file its motion to dismiss on February 6, 2006, well within the time allowed by the federal standing order. However, Coudert's motion is also timely pursuant to Superior Court rules as well.[5] Upon remand and within 11 days of this case returning to the Superior Court Docket, Coudert filed its motion.[6] Coudert's motion was filed 28 days after an appearance was entered, excluding the period of time wherein this case was removed to Federal Court.[7] To hold otherwise would be a tortured interpretation of both the Federal Rules of Civil Procedure and the provisions of the Connecticut Practice Book.

## II.   PLAINTIFFS HAVE NO STANDING PURSUANT TO Conn. Gen. Stat. § 33-921

Plaintiffs are not now nor have they ever been registered to transact business in Connecticut pursuant to Conn. Gen. Stat. § 33-920. (Annexed as Exhibit B are certificates of

---

[4] See also USCS Fed Rules Civ. Proc. R 8(d); Connecticut Practice Book § 1-8.
[5] Plaintiff argues that Coudert's motion was due on or before December 22, 2005, however, this proposition defies logic. No such case existed in Superior Court from December 8, 2005 until January 26, 2006 making the filing of such a motion an exercise in futility.
[6] Plaintiffs' reliance on Bolognese v. ProMed Fin., No. CV02816660S, 2003 Conn. Super. Lexis 1141(Super. Ct. Apr. 14, 2003), is misplaced as the defendants waited seven months after the Federal Court remanded the case to State Court prior to filing a motion to dismiss.
[7] Coudert appeared in State Court on November 22, 2005 and this case was removed on December 8, 2005. This case spent a total of 17 days in State Court. Coudert moved to dismiss 11 days after remand.

3

STDOCS01 98484v.1

S-363

Non-Existence.) The consequences of transacting business without authority are set forth in

Conn. Gen. Stat. §33-921 which reads:

> (a) A foreign corporation transacting business in this state without a certificate
> of authority may not maintain a proceeding in any court in this state until it
> obtains a certificate of authority. Conn. Gen. Stat. § 33-921

The language is clear an unambiguous. "A foreign corporation transacting business in

Connecticut cannot maintain an action in the courts of this state if it has not obtained a certificate

of authority to transact business here." Poly-Pak Corp. of America v. Barrett, 1 Conn. App. 99,

103 (Conn. App. Ct. 1983).[8] If the plaintiff is barred from the use of the courts of the State of

Connecticut, it cannot maintain its suit in the United States District Court for the District of

Connecticut. Woods v. Interstate Realty Co., 337 U.S. 535 (1949).

## III.  CONNECTICUT LONG ARM STATUTE

### A.    Coudert Has Not Transacted Business in Connecticut Pursuant to Conn. Gen. Stat. § 52-59(b)(1)

A single purposeful business transaction within Connecticut is sufficient to establish

personal jurisdiction over a defendant. See Zartolas v. Nisenfeld, 184 Conn. 471, (Conn. 1981).

A balancing of considerations set forth in Zartolas fails to establish that Coudert engaged in any

purposeful acts within Connecticut with respect to Statek sufficient to establish jurisdiction over

them.

---

[8] See also R.S. Silver & Co. v. Bridgewater Assocs., 2004 Conn. Super. LEXIS 3716 (Conn. Super. Ct. 2004);
Springfield Plumbing Supply v. Clinton Bldg. Supply, 1991 Conn. Super. LEXIS 3052 (Conn. Super. Ct. 1991);
Fleet Credit Corp. v. Fech, Inc., 1992 Conn. Super. LEXIS 2979 (Conn. Super. Ct. 1992); Business Brokers of
North America, Inc. v. R & R Productions, 1994 Conn. Super. LEXIS 1378 (Conn. Super. Ct. 1994). Copies of
unreported cases attached as Exhibit C.

S-364

Plaintiffs argue that Statek's Connecticut mailing address[9] alone is sufficient for the court to exercise jurisdiction over Coudert. When the balance test required by Zartolas *Id.* is applied to the facts of this case, the balance favors dismissal. The court determined that the ownership of land by the defendant and the subsequent transfer of same constituted transacting business for purposes of Conn. Gen. Stat. § 52-59b(a)(1), because the defendants invoked the benefits and privileges of Connecticut's laws by virtue of their ownership of real property. No such analogous facts exist in the present matter as Statek's Connecticut address was merely a fortuitous event separate and apart from the alleged wrongdoing, which involved legal services provided to plaintiffs in England.

Plaintiffs' reliance on Hart, Nininger & Campbell Assoc., Inc. v. Rogers, 16 App. 619 (App. Ct. 1988) is misplaced. The Court noted that the defendants entered Connecticut to negotiate and sign employment contracts and regularly entered Connecticut to attend quarterly business meetings. In addition to regularly entering Connecticut in performance of their employment obligations, the defendants also kept in regular phone contact with the Connecticut office, filed weekly activity reports, sent expense accounts to Connecticut and received payroll checks drawn on Connecticut banks. Finally, the defendants had usage of company automobiles registered in Connecticut. Plaintiffs allege and provide no such evidence of Coudert entering the state or any other activities directed at Connecticut to establish jurisdiction pursuant to the courts analysis in Hart.[10]

---

[9] Statek refers to an alleged business address located at 20 Acosta St. Stamford, Connecticut but offers no proof and any such claims are contradicted by the certificate of non existence annexed as Exhibit B. The only proof of a Connecticut address is contained in Exhibits C, E and F, attached to plaintiffs' objection, which consists of correspondence sent to and from Statek and or Technicorp International at a Stamford address. There is no such correspondence to or from Technicorp International II.

[10] Likewise, plaintiffs' reliance on two Superior Court cases is misplaced. In Updike Kelly & Spellacy P.C. v. Beckett, No. X03CV0497890S, 2002 Conn. Super. LEXIS 744, (Super. Ct. Mar. 6, 2002), the defendant hired a Connecticut law firm to pursue litigation in Connecticut. In Pro Performance Corporate Inc., v. Goldman, 47 Conn. Sup. 476 (Super. Ct. 2002), the defendant made 40 – 50 telephone calls over a twelve day period to a Connecticut

5

S-365

Coudert's only Connecticut contacts with Statek were merely incidental to its services, which were provided in Great Britain.[11] The only such contacts in Connecticut were incidental phone calls and mailings to Statek per Statek's request. The Connecticut State Courts have held that contacts of this nature are insufficient to rise to the level of transacting business in Connecticut. In <u>Rosenblit v. Danaher</u>, 206 Conn. 125 (1988), Connecticut plaintiffs attempted to exert jurisdiction over a Massachusetts lawyer. The facts are similar as the plaintiffs entered Massachusetts and retained the defendant, a Massachusetts attorney, to bring a lawsuit in Massachusetts. The defendant's attendance at one meeting in Connecticut and submission of records detailing his professional services were found insufficient to find that the defendant had transacted business in Connecticut. Transferal of funds from a Connecticut bank to a New York bank to cover security purchases made by defendant on plaintiff's behalf in New York, likewise, does not constitute transacting business. <u>Lombard Bros., Inc. v. General Asset Management Co.</u>, 190 Conn. 245 (Conn. 1983). The mailing of letters into Connecticut by out of state attorneys not licensed to practice in Connecticut and with no intention to do so does not constitute transacting business within the state. <u>Green v. Simmons</u>, 100 Conn. App. 600 (Conn. App. Ct. 2007). Additionally, the sending of bills into Connecticut by a New York doctor not licensed to practice in Connecticut and who performed his service exclusively in New York was found not to have been transacting business in Connecticut for purposes of the long arm statute. <u>Matto v. Dermatopathology Assocs.</u>, 1998 Conn. Super. LEXIS 1628 (Conn. Super. Ct. 1998). Furthermore, an Ohio attorney was not transacting business in Connecticut despite incidental

---

company, for the purposes of obtaining the services of that company, i.e. the purchase of Super Bowl tickets. The search for available tickets was to be done by the plaintiff from its Connecticut office. The present case reveals virtually opposite facts as it was the Connecticut plaintiff who sought out and solicited the services of English lawyers to perform services <u>in</u> Great Britain.

[11] The nature of these services is clearly stated in the bills at issue, which have been attached to plaintiffs' objection as Exhibits C and E.

6

S-366

contact within Connecticut in preparation for a possible lawsuit to be filed on plaintiff's behalf in Connecticut. <u>Estate of Martinez v. Yavorcik,</u> 455 F. Supp. 2d 115 (D. Conn. 2006).

Connecticut District Courts have also held in similar circumstances, that the mere act of corresponding to a party residing in Connecticut is does give rise to transacting business in Connecticut sufficient to establish jurisdiction. "The transmission of communications between an out-of-state defendant and a [party] within the jurisdiction does not, by itself, constitute the transaction of business within the forum state." <u>Custom Navigation Sys. v. Pincus,</u> 935 F. Supp. 117, 119 (D. Conn. 1995).[12] "Telephone calls and telefax transmissions do not, without more, constitute transacting business." <u>Lawrence Wisser & Co. v. Slender You, Inc.,</u> 695 F. Supp. 1560, 1562 (S.D.N.Y. 1988).

Finally, plaintiffs' claim that Coudert transacted business in Connecticut by virtue of their dealings with plaintiffs defies logic in that the plaintiffs have never been authorized to do business in Connecticut.

Plaintiffs have not met their burden of establishing that Coudert transacted business in Connecticut with respect to Statek, giving rise to the instant action. As such, there is no jurisdiction over Coudert pursuant to Conn. Gen. Stat. § 52-59b(a)(1).

**B.   Coudert Has Not Engaged in Tortious Conduct Within Connecticut (Conn. Gen. Stat. § 52-59(b)(2))**

Plaintiffs claim jurisdiction is proper due to the existence of allegations that defendants submitted false statements in Connecticut, however, they present no evidence to support these allegations. Discovery has been conducted with respect to the jurisdictional and factual disputes raised by defendants' motion to dismiss. "When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the

---

[12] See also <u>Bross Utilities Corp. v. Aboubshait,</u> 489 F. Supp. 1366, (D.Conn.), *aff'd mem.,* 646 F.2d 559 (2d Cir. 1980).

7

S-367

burden of proof is on the plaintiff to present evidence which will establish jurisdiction." Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 54 (Conn. 1983). Plaintiffs' reliance solely on their allegations of fraudulent statements is insufficient to meet their burden of proof. "After discovery, the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). "Where, however, as here, the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." Barde v. Board of Trustees, 207 Conn. 59, 62, (1988).[13] Plaintiffs, have failed to present factual evidence to support its claims that the defendants submitted false statements in Connecticut, and have therefore failed to meet their burden of proof.

Coudert denies making any false statements as alleged by plaintiffs. As such, the plaintiffs' reliance on Knipple v Viking Communs., Ltd., 236 Conn. 602 (1996) is misplaced. The Viking defendants never denied that they made the false statements upon which the plaintiff's claims were premised.[14] Plaintiff's claims of misrepresentations do not constitute evidence and as such these claims are insufficient to meet the standard as set out in Standard Tallow Corp. v. Jowdy.

Plaintiffs have not presented any evidence to support that their Coudert fraudulently billed Statek for services designed to benefit Johnston and Spillance individually[15]. The

_____

[13] See also Gomez v. ISB LTEE Ltd., 920 F. Supp. 275 (D. Conn. 1995).

[14] Likewise, reliance on Center Capital Corporation v. Hall, No. CV92-0452084S, 1993 Conn. Super. LEXIS 1442 (Super. Ct. June 9, 1993), is also misplaced as the defendant also admitted to sending a letter to the plaintiff in Connecticut with assertions which were factually untrue.

[15] Beharrell did not bill Technicorp International, Inc. for services that were intended to benefit Johnston personally. To the contrary, the undisputed facts are that Beharrell assisted Technicorp International, Inc. in renting a flat for its CEO, Johnston, in connection with its work in establishing a UK service company known as Statek Europe Ltd.

8

S-368

elements of a fraud claim are: (1) a false representation made as a statement of fact; (2) that was untrue and known to be untrue by the party making it; (3) made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his detriment. IM Partners v. Debit Direct Ltd, 394 F. Supp. 2d 503, (D. Conn. 2005). First and foremost, the billings were the result of services performed for Technicorp International, Inc. at the request of Johnston, whom Beharrell believed to be its owner, and were sent, according to the Johnston's instructions, to Statek, a subsidiary of the parent company, Technicorp, Inc., for payment. Beh. Dep. at 25-27, 29, 33, 45-52; Aff. Beh, ¶¶ 13, 17.   Thus, Plaintiff Statek cannot claim fraud because the billings were directed at Statek in accordance with the instructions of its parent corporation and Plaintiff Technicorp International II, Inc. cannot claim fraud because the billings were never directed at it. Sanchez v. Corona, 283 F. Supp. 2d 648, 654 fn6 (D. Conn. 2003) (an affidavit allegedly containing fraudulent statements filed in connection with litigation pending in N.Y. and mailed to the plaintiff in CT does not establish that a tort was committed in CT because the "conduct asserted to be actionable is the alleged misleading of the New York court").

A fundamental flaw in Plaintiffs' argument is the assumption that Beharrell was aware, which he was not, that Vendell was a silent owner of Plaintiffs or that Johnston was engaging in self-dealings and fraud to the detriment of Vendell, a fact which even Plaintiffs claim to have been ignorant of for years. Plaintiffs have presented no such evidence. Defendant Beharrell, on the other hand, testified that he believed Johnston to be the owner of Technicorp International, Inc. and that it was the parent company to Statek. Beh. Dep. at 33, 45-52, 78; Aff. Beh, ¶ 13. In addition, since all instructions came from the owner of the company, Johnston, and all work was performed in accordance with those instructions and only work that was actually performed was

---

Beh. Dep. at 27-28; Aff Beh., ¶ 13. In fact, the flat was rented in the company's name, not in Johnston's personal name. Beh. Dep. at 77.

STDOCS01 98484v.1

9

S-369

billed for, Plaintiffs cannot establish that Beharrell made a false statement of fact that he knew to be untrue and that he intended Johnson or Technicorp International, Inc. to rely on or, for that matter, that Johnson or Technicorp International, Inc. ever relied on, a false statement of fact to their detriment.

### C.    Coudert Has Not Engaged In Tortious Conduct Outside Connecticut (Conn. Gen. Stat. § 52-59(b)(3))

Plaintiffs next argue that Coudert committed a tort outside Connecticut which resulted in harm within the state resulting in jurisdiction under Conn. Gen. Stat. § 52-59(b)(3). However, this assertion, like their earlier assertion of a tort committed in Connecticut is equally unpersuasive as it too, is unsupported by evidence. As previously set forth, Statek sets forth mere conclusory allegations as to the inaccuracy of the billing statements. They do not, and cannot point to any evidence in support of these claims, and as such under Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990), and Barde v. Board of Trustees, 207 Conn. 59, 62, (1988), have failed to meet their burden of demonstrating through evidence that the billing statements were in fact misrepresentative of the work actually performed. As such there is no evidence to support Statek's contention that a fraud was committed outside of Connecticut.

Assuming that a tort was committed outside of Connecticut, Statek must still establish that harm resulted in Connecticut. Since neither Statek nor Technicorp International II was ever registered to do business in Connecticut, any such claims of harm sustained in Connecticut are unsupported by facts.

Assuming arguendo, that the plaintiffs have suffered a harm within Connecticut due to an out of state tort, plaintiffs must prove that the defendant regularly does business in Connecticut or should reasonably expect the act to have consequences within the state. On both of these issues, plaintiffs fail to meet their burden.

10

STDOCS01 98484v.1

S-370

The court first must look to the defendant's contacts with the forum state at the time that the lawsuit was initiated. "Jurisdiction is to be determined at the time of the service of the complaint." Connecticut Artcraft Corp. v. Smith, 574 F. Supp. 626, 630 (D. Conn. 1983). "Whether or not a court has jurisdiction over a party must logically be determined as of the moment when the party is haled into court." F&F Screw Prods. v. Clark Screw Mach. Prods. Co., 2002 Conn. Super. LEXIS 3946, 17 (Conn. Super. Ct. 2002).[16]

When this action was first initiated, Coudert was in the process of winding up its business. (See Pat Kane Affidavit ¶ 5). Plaintiffs offer no evidence that Coudert was transacting any business in Connecticut during 2005. The only evidence offered consists of billing records from 1990 through 1995, a listing of new clients from 2000 through 2005 with Connecticut addresses and portions of Pat Kane's deposition. These documents however are insufficient to establish jurisdiction over Coudert.

Plaintiffs' reliance on the billing records is misplaced as the records only reveal revenues up to 1995: a period ending ten years prior to the filing of this lawsuit. They have produced no evidence of earnings from 1995 through 2005 sufficient to demonstrate that Coudert regularly conducted business in Connecticut at the time this lawsuit was initiated. Plaintiffs attempt to use Pat Kane's deposition testimony also fails. Plaintiffs' claims of recent earnings of more than $100,000 from American Soda Ash, do not accurately recite Kane's Testimony. Kane does admit to revenues received for American Soda exceeding $100,000, but in response the following question:

> Do you know whether in any year of the *thirteen* (emphasis added) we have been chatting about, billings from Coudert to the American Natural Soda Ash Corporation exceeded $100,000 American dollars? (Kane Dep. at 89 – 90.)

---

[16] See also Greene v. Sha-Na-Na, 637 F. Supp. 591, (D. Conn. 1986).

11

S-371

The thirteen year period counsel was referring to commenced in 1992 and concluded in 2005. (See Exhibit D, attached transcript of Kane Dep. at 82.) At no point does counsel ask for clarification as to what year those billings exceeded $100,000 and no such evidence is before this court.

In furtherance of the aforementioned argument, the plaintiffs attempt to equate invoicing Connecticut clients for services as "services rendered in Connecticut" (Statek brief page 21.) "The diversity of a physician's pool of patients, without more, cannot convert an otherwise local practice to an interstate business activity. A physician does not sell his or her services in interstate commerce by treating unsolicited patients that travel into the physician's home State seeking health care. Indeed, to the physician, the patient's residence is largely irrelevant to the provision of medical services." Ingraham v. Carroll, 90 N.Y.2d 592, 599 (N.Y. 1997).[17]

The facts of the present case are similar to those present in Mayes v. Leipziger, 674 F.2d 178 (2d Cir. 1982). In Mayes, the plaintiff's sought out California attorneys for the purpose of prosecuting an appeal in the California courts. The Mayes court held that the New York courts would not exercise jurisdiction "solely on the basis that the defendants, from California, reported to their New York client and sought the wherewithal (i.e., funds, authority, and information) by means of letters and calls to New York to perform their non-New York services." Mayes v. Leipziger, Id. 185.

Finally, despite plaintiffs' attempts to portray Coudert's billing of Connecticut clients for legal services, they do not provide any evidence as to the nature of such services or that they were performed in part or in whole in Connecticut. As such, and as discussed below, plaintiffs

---

[17] The facts of the Ingraham are analogous to the case before this court, i.e. it was Statek who traveled to Great Britain to employ the service of English solicitors for work to be done entirely in Great Britain. Like in Ingraham, Statek's Connecticut address is largely irrelevant to the provision of legal services. They were no Connecticut licensed attorneys in the employ of Coudert, no offices, no bank accounts and no advertisements directed at Connecticut.

S-372

have presented no evidence that Coudert could have reasonably expected their actions to have
consequences in Connecticut.

### III.   DUE PROCESS

Even if Connecticut has jurisdiction over Coudert under its Long Arm Statute, the
exercise of jurisdiction would violate the due process clause of the U.S. Constitution.

#### 1.   Specific Jurisdiction

In order for there to be specific jurisdiction over a defendant the defendant must have
directed its activities into the forum state which form the subject of the dispute. Such activities
have to be sufficient to find that the defendant purposely "availed himself of benefits and
protections" of the forum state. Coudert did not direct its activities with respect to Statek into
Connecticut. The sole connection to Connecticut is the fact that Coudert was requested by Statek
to send its bills to Connecticut for services rendered in Great Britain. Coudert undertook no
activities within Connecticut that would constitute availing itself of the benefits and protections"
of Connecticut law.[18]

#### 2.   General Jurisdiction

Plaintiffs next argue that the court has general jurisdiction over Coudert due to what they
characterize as continuous and systematic business contacts within Connecticut. In support of
this argument they incorrectly cite to Pat Kane's deposition testimony. While it is true that
Coudert received revenues from clients who had addresses in Connecticut, plaintiffs offer no
evidence that such revenue was generated by business or activities within the state. The only

---

[18] Defendants attempted to participate in a business venture where the location of the business was to be
Connecticut, which raised both leasing and zoning issues. Milford Paintball, LLC v. Wampus Milford Assoc., No
CV0540075s, 2005 Conn. Super LEXIS 2282 (Super. Ct. Aug. 25, 2005). Like wise the shipment of materials and
goods into Connecticut to be used to renovate homes in Connecticut was sufficient contact to deem the defendant to
have purposely availed themselves of the benefits. See also Chase v. Neff Kitchens Mfg., Ltd., No. CV020820079S,
2004 Conn. Super. 2004 Conn. Super. LEXIS 2905, (Super. Ct. Oct. 18, 2004).

13

STDOCS01 98484v.1

S-373

evidence presented is testimony of Pat Kane that Coudert did not practice law in Connecticut. The location of Coudert's clients is merely incidental to its provision of legal services, services necessarily provided to its clients in jurisdictions other than Connecticut.[19]

### 3.    Reasonableness of Jurisdiction

#### a.    Burden on Defendant

Most of the evidence and witnesses are located in Great Britain. It would greatly increase the cost of preparing their defense as extensive international travel would be required to meet and prepare witnesses and to gather the necessary evidence in furtherance of its defense. More significantly, Coudert would be potentially deprived of the opportunity of impleading potential third party defendants who are residents of Great Britain and who may not be subject to personal jurisdiction in Connecticut or elsewhere in the United States.

#### b.    Interests of Connecticut

Connecticut has little interest in the outcome of this litigation. The defendants are lawyers, none of which are licensed to practice in Connecticut. Furthermore, the plaintiffs are not now, nor where they ever registered to do business in Connecticut. Statek has ceased to have a mailing address in Connecticut in since 1996 (See plaintiffs' complaint ¶ 2), nine years before the lawsuit was initiated. The services at issue were preformed solely in England by English solicitors.

#### c.    Plaintiff interest in obtaining Relief

Plaintiffs do have an interest in obtaining relief, however said relief can be obtained in Great Britain as easily, if not more so than in Connecticut. Plaintiffs cite the ease of travel and modern communications, and argue same would ease the burden on defendants if it were to

---

[19] See Rosenblit v. Danaher, 206 Conn. 125 (1988), Lombard Bros., Inc. v. General Asset Management Co., 190 Conn. 245 (Conn. 1983), Lawrence Wisser & Co. v. Slender You, Inc., 695 F. Supp. 1560, 1562 (D.N.Y. 1988).

STDOCS01 98484v.1

S-374

litigate this case in Connecticut. Likewise, there is little burden to the plaintiffs if they were to litigate this matter in Great Britain. Plaintiff sought out the defendants in England to perform services there and therefore should be prepared to litigate in the forum they voluntarily entered, Great Britain. Great Britain affords the plaintiffs an adequate alternative forum and as such, plaintiff will have the opportunity to obtain its requested relief.

       **d.**    **Interstate Interest in Efficient Resolution**

Litigating this case in Connecticut will not be the most efficient manner in which to resolve this dispute. Since many witnesses, documentary evidence and potential third parties reside in Great Britain, discovery will be burdened by difficulties in securing cooperation from parties not subject to the jurisdiction of this court. The Hague Convention and other international laws and treaties may ultimately allow some measure of access, however, discovery will likely proceed at a slower pace and at a greater cost to all parties due to the additional hurdles that are present by virtue of the multiple judicial bodies that will be necessary to resolve any discovery disputes.

       **e.**    **Shared Interests of Several States**

The forum with the greatest interest in this matter is Great Britain. The allegations involve alleged misconduct of individuals admitted to the practice of law in Great Britain, and involve acts alleged to have been committed in Great Britain. Additionally, there may be other potential defendants who are British citizens, over whom the Courts of Great Britain would have jurisdiction. Great Britain also has an interest in insuring that its citizens act in accordance with the laws of Great Britain and therefore has an interest in applying its laws to the potential third party defendants' conduct.

STDOCS01 98484v.1

S-375

## IV.   FORUM NON-CONVENIENS

Plaintiffs fail to specifically object to claims raised in Coudert's Motion to Dismiss based upon the doctrine of Forum Non-Conveniens. However, the plaintiffs appear to set forth their objection in its discussion of due process, wherein the plaintiffs attempt to argue that there would be no undue burden imposed on the defendants if forced to litigate this matter in Connecticut. In support thereof plaintiffs claim that plaintiffs' choice of Connecticut is the best indicator of the appropriateness and convenience of this forum.[20] Plaintiffs never were authorized to do business in Connecticut and concede that they are no longer having an address in the state of Connecticut.

Plaintiff's sole argument is that Connecticut is an adequate forum in which to litigate this dispute. However, the doctrine of Forum Non-Conveniens requires the courts to first determine if an adequate alternative forum exists. Plaintiffs fail to challenge Great Britain as an adequate alternative forum.[21] Said arguments in support of Great Britain as an adequate forum are stated in Coudert's Motion to Dismiss and shall not be repeated herein. In fact, The United States Court of Appeals has already found that Great Britain does afford the plaintiffs an adequate alternative forum.[22]

---

[20] "Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (U.S. 1981).
[21] In its Motion to Dismiss, Coudert had indicated it was amenable to service in Great Britain. However, Coudert has since filed for bankruptcy and as such, Plaintiffs would be required to seek leave from the Bankruptcy Court prior to initiating a new action in Great Britain. Should the Bankruptcy Court deny leave, plaintiffs would still be able to pursue their claims in Bankruptcy Court as they have already filed claims in that forum as well.
[22] See Capital Currency Exch. v. National Westminster Bank PLC, 155 F.3d 603, 609 (2d Cir. 1998). See also Syndicate 420 at Lloyd's London v. Early American Ins. Co., 796 F.2d 821 (5th Cir. 1986).

STDOCS01 98484v.1

S-376

Likewise, plaintiffs fail to dispute that the private interests[23] of the parties favors litigation in Great Britain. Plaintiffs acknowledge that the parties and witnesses will be located throughout both the United States and Europe, including Great Britain. However plaintiffs, do not address the issue of <u>access</u> to those witnesses, particularly non-parties, as well as any documentary evidence they may possess.  The exercise of jurisdiction over the defendants affords the defendants no power over citizens of Great Britain to either appear for deposition or produce documentary evidence. Furthermore, and perhaps more significant, is the fact the Coudert may ultimately be required to bring third party complaints against one or more citizens of Great Britain. Plaintiffs do not contest that assertion and provide no rebuttal to the fact that potential third party defendants may not be subject to Connecticut jurisdiction.

Finally, the conduct complained of is that of English Solicitors engaged in the practice of law in England. The body best suited and most knowledgeable to judge the conduct of these defendants is the English legal system.[24] The public factors, therefore, weighs in favor of dismissal in lieu of an action in Great Britain.

---

[23] "The private interest factors to be considered by the Court relate primarily to the convenience of the litigants. They include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses;" <u>Syndicate 420 at Lloyd's London v. Early American Ins. Co.</u>, Id. 831.

[24] While a choice of law motion could result in the application of English laws in the present case it is the courts of England who are best suited to apply its own laws to the issues raised in this case.

17

S-377

COUDERT BROTHERS, LLP
& DEAN R. POSTER

By ___ /s/ Brian Del Gatto (ct13100)
    Brian Del Gatto (ct13100)
    Douglas Connors (ct18324)
    WILSON, ELSER, MOSKOWITZ, EDELMAN
    & DICKER LLP
    177 Broad Street, 6th Floor
    Stamford, CT 06901
    Tel.: 203-388-9100
    Fax: 203-388-9101
    Email: brian.delgatto@wilsonelser.com
    File No.: 09323.00003

18

S-378

## CERTIFICATION

I hereby certify that on January 29, 2008 a copy of the foregoing Reply Brief was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of the filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the court's CM/ECF system.

Erik H. Beard, Esq.
Day Pitney LLP-Trmbl St Htfd-CT
242 Trumbull St.
Hartford, CT 06103-1212
860-275-0604
Fax: 860-275-0343
Email: ehbeard@daypitney.com
**Counsel for Plaintiffs, Statek Corp. and Technicorp International II, Inc.**

Joshua W. Cohen, Esq.
Day Pitney LLP-NH
One Audubon St.
New Haven, CT 06511
203-752-5000
Email: jwcohen@daypitney.com
**Counsel for Plaintiffs, Statek Corp. and Technicorp International II, Inc.**

Mark M. Porto, Esq.
Day Pitney LLP-Htfd-CT
242 Trumbull St.
Hartford, CT 06103-1212
860-275-0627
Fax: 860-275-0343
Email: mmporto@DayPitney.com
**Counsel for Plaintiffs, Statek Corp. and Technicorp International II, Inc.**

John Gerard Stretton, Esq.
Edwards & Angell
301 Tresser Boulevard, 13th FL.
Stamford, CT 06901
203-353-6844
Fax: 800-232-0862
Email: jstretton@edwardsangell.com
**Counsel for Defendant, Steven R. Beharrell**

Marc L. Zaken, Esq.
Edwards & Angell
301 Tresser Boulevard, 13th FL.
Stamford, CT 06901
203-353-6819
Fax: 888-325-1667
Email: mzaken@edwardsangell.com
**Counsel for Defendant, Steven R. Beharrell**

Michael Pollard Thompson, Esq.
Edwards Angell Palmer & Dodge, LLP
301 Tresser Boulevard, 13th FL.
Stamford, CT 06901
203-353-6806
Fax: 203-975-7180
Email: mthompson@eapdlaw.com
**Counsel for Defendant, Steven R. Beharrell**

**/s/ Brian Del Gatto (ct13100)**
Brian Del Gatto

19

STDOCS01 98484v.1

**S-379**

SDSD District Version 1.3                                                                      Page 1 of 2

## Responses, Replies and Supporting Documents
3:07-cv-00456-SRU Statek Corp. et al v. Coudert Brothers LLP et al
EFILE

### U.S. District Court

### United States District Court for the District of Connecticut

### Notice of Electronic Filing

The following transaction was entered by Del Gatto, Brian on 1/29/2008 at 12:30 PM EST and filed on 1/29/2008

**Case Name:**       Statek Corp. et al v. Coudert Brothers LLP et al
**Case Number:**   3:07-cv-456
**Filer:**              Coudert Brothers LLP
**Document Number:** 33

**Docket Text:**
REPLY to Response to [4] MOTION to Dismiss filed by Coudert Brothers LLP.
(Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C, # (4) Exhibit D)(Del Gatto, Brian)

3:07-cv-456 Notice has been electronically mailed to:

Erik H. Beard    ehbeard@daypitney.com, fdoiron@daypitney.com

Stephen P. Brown    Stephen.Brown@wilsonelser.com, Michael.Tortora@wilsonelser.com

Joshua W. Cohen    jwcohen@daypitney.com

Douglas M. Connors    douglas.connors@wilsonelser.com, ileana.cordova@wilsonelser.com

Brian Del Gatto    Brian.DelGatto@wilsonelser.com, Douglas.Connors@wilsonelser.com,
Gladys.Campbell@wilsonelser.com

Mark M. Porto    mmporto@DayPitney.com, gpbartle@DayPitney.com

John Gerard Stretton    jstretton@edwardsangell.com

Michael Pollard Thompson    mthompson@eapdlaw.com

Marc L. Zaken    mzaken@edwardsangell.com

https://ecf.ctd.uscourts.gov/cgi-bin/Dispatch.pl?480862028517335                    1/29/2008

S-380

3:07-cv-456 Notice has been delivered by other means to:

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1034868047 [Date=1/29/2008] [FileNumber=1500024-0
] [88d53902e2b080752389f2e2d1389ef4871e9c8fd02f8607a055cf953675a40d0f8
865e58def44aea489ce7b75bed13ea06618d5068618b74068671d1e6fd9eb]]
**Document description:**Exhibit A
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1034868047 [Date=1/29/2008] [FileNumber=1500024-1
] [48218a9e36b7965d1bcf4e0aa214b2a29b8a70ecad57d07360a0ce95624274d2afa
d3b5ecd905806ed341892e74c84de2f13d8fcd451c7e91825b29bdbfae992]]
**Document description:**Exhibit B
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1034868047 [Date=1/29/2008] [FileNumber=1500024-2
] [c9d125454b334ab0df6e50d31b66079eea69d1cf8de82147d594080bb05e1013ff0
da1b7e79496b51e3e2dd6f12701b17a4738d5ea902116974467cbdead4503]]
**Document description:**Exhibit C
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1034868047 [Date=1/29/2008] [FileNumber=1500024-3
] [5763d00027701e9f1466e573208ac99945a6c6ad3f7f4ebb24562923a39efdea9a1
6a471a793e39727d133a0867d2dbf42d9a9624179fef4fb74d995c227e4e2]]
**Document description:**Exhibit D
CMECF.widgit.ProcessingWindowDestroy() TRONG>Original filename:n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1034868047 [Date=1/29/2008] [FileNumber=1500024-4
] [31e4665ef6ac6202af975a5d669bb3b517684f580c5b2c9abc8d4e9836fdcda5ed7
688e5c0f85df00b63c73e2ab55f579835d366a09d625e6bc0fb80241037a4]]

S-381

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATEK CORPORATION and TECHNICORP INTERNATIONAL II, INC. | : | CIVIL ACTION NO. 3:07cv00456 (SRU) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| COUDERT BROTHERS LLP, STEVEN R. BEHARRELL, DEAN R. POSTER and SANDRA SPILLANE | : | |
| | : | |
| Defendants. | : | FEBRUARY 15, 2008 |

<u>SUR-REPLY</u>

Plaintiffs, Statek Corporation ("Statek") and Technicorp International II, Inc. ("TCI II")

(collectively, "Plaintiffs"), with leave of Court, hereby submit this sur-reply in response to the

reply briefs filed by Defendant, Steven Beharrell ("Beharrell"), and Defendant, Coudert

Brothers, LLP ("Coudert"), which replies respond to Plaintiffs' objection to the motions to

dismiss filed by Beharrell and Coudert.[1]

I.    <u>Factual Issues</u>

Beharrell and Coudert assert numerous factual contentions in their replies that simply are

incorrect, and for which there is direct, uncontroverted evidence to the contrary. In particular,

and without burdening the Court with excessive discourse, the following is a summary review of

those factual misstatements.

Contrary to their own admissions in internal documents, and in correspondence with

Statek and with the bankruptcy trustee for Hans Frederick Johnston ("Johnston"), both Beharrell

and Coudert maintain that Technicorp International, Inc. was the client, not Statek, and that it

was only a client of the London office of Coudert. (Beharrell's Reply to Objection to Motion to

---

[1] Defendant, Dean R. Poster, also jointly filed a motion to dismiss with Coudert.

41941791.1

S-382

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 45 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 154 of 168
Case 3:07-cv-00456-, J   Document 37   Filed 02/15/2(   Page 2 of 16

Dismiss ("Beharrell Reply"), at 10-14; Coudert's Reply to Plaintiffs' Objection to Motion to

Dismiss ("Coudert Reply"), at 8-9.) In fact, Statek was the client and, further, was at all times a

client of Coudert, the international law firm, regardless of its business structure.[2]

Beharrell and Coudert also would have the Court believe that Beharrell is a London

lawyer whose practice is limited to providing services in London. ( Beharrell Reply, at 6, 13;

Coudert Reply, at 17.) The facts, however, reveal that in addition to providing services to

Johnston in the United States, including in connection with Johnston's Connecticut divorce

proceeding and litigation against Johnston in the United States District Court for the District of

Connecticut, as set forth below, Beharrell was Chairman of Coudert worldwide from 2001 until

his ouster in 2003, resident in its New York offices.[3]

Furthermore, both Beharrell and Coudert state that the legal services at issue in this case

(i) consisted of forming a subsidiary of Technicorp International, Inc. in London for European

operations and (ii) involved foreign issues or foreign law. (Beharrell Reply, at 6-7; Coudert

Reply, at 6.) Both Beharrell and Coudert rely on the narrative in Coudert's bills to Statek to

support their assertion that the services concerned foreign issues or foreign law. (Id.) They fail

to mention, however, the legal services they provided to Johnston in connection with his

---

[2] See July 24, 1996 Letter from Dean Poster to Statek, attached as Exhibit A; November 4, 2002 Letter from Beharrell to Grant Thornton, attached as Exhibit B; January 22, 2003 Letter from Beharrell to Grant Thornton, attached as Exhibit C; January 17, 1996 Facsimile from Beharrell to counsel for Statek identifying funds held on account by Coudert for Statek, attached as Exhibit D; Coudert Memorandum, dated October 15, 1993, concerning issues related to litigation pending against Johnston in United States District Court for the District of Connecticut and referencing Statek as client, attached as Exhibit E; Coudert Telephone Message, dated January 26, 1994, referencing the "Statek account," attached as Exhibit F; Printout of Coudert Client Information File showing "Statek Corporation" as client, attached as Exhibit G; Coudert Billing Statements addressed to "Statek Corporation," attached as Exhibit C to the Plaintiffs' Objection to Motion to Dismiss.

[3] See October 1, 2001 Coudert Press Release, attached as Exhibit H; Dewey & LeBoeuf May, 2005 Announcement, attached as Exhibit I.

4184171.1                          -2-

S-383

Case 1:13-cv-08578-LTS   Document 16-7   Filed 12/17/13   Page 46 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 155 of 168
Case 3:07-cv-00456-⸋   J   Document 37   Filed 02/15/2⸋   Page 3 of 16

Connecticut divorce proceeding,[4] the advice provided in connection with a 1993 Connecticut

District Court action against Johnston,[5] the assistance provided to Johnston, personally, in the

creation of various off-shore asset protection trusts in furtherance of the fraud perpetrated by

Johnston against the Plaintiffs from the Stamford, Connecticut offices,[6] and counsel provided by

Beharrell in London and in the United States in connection with litigation pending in the

Delaware Chancery Court.[7]

They also fail to account for the following conclusion articulated by Vice Chancellor

Jacobs in his decision in the Fraud and Waste case against Johnston and Sandra Spillane

("Spillane") in the Delaware Chancery Court:

> The record contains evidence that when Johnston and Spillane retained
> law firms to do legitimate work for Statek, they obtained detailed law firm
> invoices in proper form.  The record also shows that when the law firms
> were paid with Statek funds for services that were not rendered to Statek,
> the defendants attempted to conceal that fact by creating Fictitious
> (dummy) Invoices reciting, with no detail or explanation, that the
> payments were for services rendered to Statek; or by having the law firms
> submit similarly conclusory invoices.  The Beharrell payments are of that

---

[4] See Beharrell's handwritten notes regarding a possible contempt judgment against
Johnston for non-payment of alimony or property settlement, attached as Exhibit J.

[5] See Coudert Memorandum, attached as Exhibit E.

[6] See Various correspondence and notes related to creation of 1990 No. 1 Trust and 1991
No. 1 Trust, and Beharrell's agreement to serve as a signatory on bank accounts and safe deposit
boxes related thereto, attached as Composite Exhibit K.

[7] See Feltman, Karesh, Major & Farbman (Johnston's litigation counsel) billing
statements reflecting calls and meetings with Beharrell, attached as Composite Exhibit L;
Beharrell handwritten notes regarding settlement structure, attached as Composite Exhibit M;
Jeffrey Daichman Memorandum to, inter alia, Beharrell, regarding agenda for March 6, 1995
meeting on settlement, attached as Exhibit N; March 8, 1995 correspondence from David
Farbman to Thomas Allingham transmitting draft settlement agreement, with copy to Beharrell,
attached as Exhibit O; March 30, 1995 Coudert invoice to Statek reflecting meetings in New
York on Johnston litigation and settlement strategy and air fare on Concorde for trip to New
York, attached as Exhibit P.

S-384

latter character.[8]

Moreover, both Beharrell and Coudert assert that there is no evidence of fraudulent billing that was sent to Statek in Connecticut. (Beharrell Reply, at 9-10; Coudert Reply, at 7-8.) An examination of Coudert's billing statements to Statek, however, establishes otherwise. By way of example, Coudert's invoice for the period from November 1 to December 31, 1990 states, "TO OUR FURTHER PROFESSIONAL CHARGES in connection with advice on setting up a UK distribution company with due care and attention throughout."[9]  However, in a cover letter to Spillane at Technicorp International, Inc., Coudert references services in connection with a flat rented for Johnston in London, services not reflected on the billing statement addressed to Statek.[10]  Additionally, the billing detail for that time period, which was not transmitted to Statek as the client, makes reference to "Declaration of Trust and Indemnity" (presumably one of Johnston's asset protection trusts), "arranging appointment [sic] lease for Mr. Johnston," "reviewing rental agreement for F. Johnston," and "sorting out Johnston flat."[11]

II.     **Legal Issues**

A.     **Burden of Proof and Standard for Post-Discovery Challenges to Personal Jurisdiction**

The procedural posture of a litigation determines the type and amount of proof necessary for a plaintiff to meet its burden of establishing personal jurisdiction over a defendant.  At the threshold, if a defendant files a motion to dismiss that challenges the sufficiency of the

---

[8] Technicorp International II. Inc. v. Johnston, No. 15084, 2000 Del. Ch. LEXIS 81, at *145 (May 31, 2000) (the "Fraud and Waste Decision") (attached as Exhibit Q).

[9] See February 1, 1991 Invoice, attached as Exhibit R.

[10] See February 4, 1990 [sic] Letter from Lucy Wayne to Spillane, attached as Exhibit S.

[11] See Coudert billing detail for Statek as of December 31, 1990, attached as Exhibit T; see also Fraud and Waste Decision, at *145.

41841781.1                                         -4-

S-385

allegations contained in the complaint, the plaintiff can defeat this challenge if the complaint contains sufficient facts which, if proven, would support the exercise of jurisdiction over the defendant.  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).

If the defendant raises a jurisdictional challenge based on facts outside of the complaint, however, discovery is necessary and the plaintiff must make a *prima facie* showing of jurisdiction with an averment of facts through affidavits or other proof that, if proven, would establish jurisdiction.  Tex. Int'l Magnetics, Inc. v. Auriga-Aurex, Inc., 334 F.3d 204, 206 (2d Cir. 2003) (quoting Ball, 902 F.2d at 206).  Although the plaintiff needs to assert factual support for its allegations once the parties have conducted discovery, the plaintiff's burden of proof remains the same, and the plaintiff need only establish a *prima facie* case of jurisdiction.  See Ball, 902 F.2d at 197-98.

Once the plaintiff has provided this additional evidence, the defendant either can (1) seek dismissal on the ground that the undisputed facts demonstrate an absence of jurisdiction, in which case the court should treat the defendant's motions as one for summary judgment or (2) challenge plaintiff's factual allegations as untrue, in which case an evidentiary hearing is necessary.  See Musso v. Seiders, 194 F.R.D. 43, 48 (D. Conn. 1999).  If the facts are in dispute, the plaintiff then, and then only, bears the heightened burden of proving jurisdiction by a preponderance of the evidence.  Ball, 902 F.2d at 198 (noting that the preponderance of the evidence standard "is a standard of proof appropriate for resolving disputed issues of fact").

In the present case, the documents attached to Plaintiffs' objection, together with the additional support contained in this sur-reply, provide an array of additional support that, if credited, satisfy the elements of Connecticut's long-arm statute.  Indeed, to require more at this point would be tantamount to forcing Plaintiffs to establish tortious conduct right now.

41841781.1                                  -5-

S-386

With regard to the transaction of business pursuant to Conn. Gen. Stat. § 52-59(b)(1),
Beharrell and Coudert do not dispute the factual allegations in Plaintiffs' objection concerning
the legal services provided and the invoices sent to Plaintiffs. (Beharrell Reply, at 6-9; Coudert
Reply, at 4-7.) Rather, they contest only whether these actions constitute the transaction of
business under the statutory test. (Beharrell Reply, at 6-7; Coudert Reply, at 5-7.) The Court
therefore can determine that Plaintiffs have established proper jurisdiction pursuant to Conn.
Gen. Stat. § 52-59(b)(1) without further proceedings because Beharrell and Coudert do not
dispute the factual allegations concerning the services and billing themselves.

With regard to Conn. Gen. Stat. § 52-59(b)(2) and (3) and tortious conduct, again, the
issue is not whether Beharrell and Coudert provided legal services or sent invoices. Rather,
Beharrell and Coudert seemingly contest only whether these actions constitute tortious conduct
sufficient to satisfy Conn. Gen. Stat. § 52-59(b)(2) and (3), as neither Beharrell nor Coudert
identify many specific disputed facts. (Beharrell Reply, at 9-12; Coudert Reply, at 8-10.)
Beharrell makes only some unspecified references to Plaintiffs' fraud claims, and the general,
unhelpful claim that the Plaintiffs' allegations are "unverified, fictional and disputed."
(Beharrell Reply, at 4, 10.) The issue of whether Plaintiffs can prove the facts alleged in the
complaint, however, is to be resolved not at this stage of the case, but rather during a trial on the
merits. Coudert also is vague as to the specific facts in dispute, and identifies only "allegations
of fraudulent statements" and allegations that "Coudert fraudulently billed Statek for services
designed to benefit Johnston and Spillane individually." (Coudert Reply, at 8, 10.)

Moreover, Beharrell and Coudert focus exclusively on the fraud aspect of Plaintiffs' case,
and the concept of whether Beharrell and Coudert knew of the scheme to defraud Plaintiffs.
(Beharrell Reply, at 9-10; Coudert Reply, at 8-10.) Conn. Gen. Stat. § 52-59(b)(2) and (3),

-6-

S-387

however, speak to tortious conduct, which includes negligent and intentional acts, and Plaintiffs

have provided more than enough evidence that, if credited, will establish jurisdiction and

Plaintiffs' negligence claims.[12]

### B.   Conn. Gen. Stat. § 33-921 is not Applicable to Plaintiffs

Beharrell and Coudert argue for the first time in their reply briefs that, pursuant to Conn.

Gen. Stat. § 33-920 and § 33-921, Plaintiffs cannot maintain this action in a Connecticut court

because they never registered to transact business in the State of Connecticut. (Beharrell Reply,

at 8 n.9, 13 n.7, Coudert Reply, at 3-4.)[13] This argument fails for the following three reasons.

First, Plaintiffs have not transacted business in Connecticut under the statutory definition.

(See Affidavit of Margaritha Werren, attached as Exhibit U); see also Donner v. knoa Corp., No.

3:01-CV-2171, 2002 U.S. Dist. LEXIS 17618 (D. Conn. July 29, 2002) ("Business" under the

corporate registration statutes is the primary business of the foreign corporation; maintenance of

an office in Connecticut at which management employee reviews business plans, develops

marketing plans, discusses corporate operations and priorities, and makes hiring

recommendations is not "transacting business" in the State of Connecticut, and falls under the

exception for "holding meetings of the board of directors or shareholders or carrying on other

activities concerning internal corporate affairs");[14] Airguard Indus., Inc. v. New England Air

---

[12] In the alternative, the Court may have to decide whether an evidentiary hearing is necessary to address the allegations of tortious conduct to the extent that it concludes that there are disputed issues of fact concerning § 52-59(b)(2) and (3).

[13] Beharrell and Coudert improperly raise this issue for the first time in their reply briefs and, as a result, the Court cannot address this issue. D. Conn. L. Civ. R. 7(d) (reply briefs "must be strictly confined to a discussion of matters raised by the responsive brief."); Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); Procaccino-Hague v. Boll Filter Corp., No. 03-CV-1560, 2004 U.S. Dist. LEXIS 431, at *4 (D. Conn. Jan. 13, 2004).

[14] This and all other unreported cases are attached as Exhibit V.

41541781.1                                    -7-

S-388