Filters, Inc., No. 326415, 1992 Conn. Super. LEXIS 3334 (Super. Ct. Dec. 1, 1992)

(Maintenance of an office in Connecticut for purposes of conducting sales that must be approved

and completed out of state not "transacting business" in the State of Connecticut); Surveyors,

Inc. v. Berger Bros. Co., 9 Conn. Supp. 175, 177 (Super. Ct. 1941) ("'transacting business' is the

business which the foreign corporation was organized to conduct or carry on and not some

business which is incident to the object for which the corporation was organized").[15] Consistent

with the foregoing case law and the Affidavit of Margaritha Werren, Plaintiffs have not

transacted business in Connecticut.[16]

Second, Beharrell and Coudert cannot move to dismiss based on Statek's alleged failure

to register under § 33-920.  Rather, they must interpose such a claim as an affirmative defense.

See EIMCO Process v. Satra Equip., No. CV94-0141748 S, 1996 Conn. Super. LEXIS 1778, at

*2-3 (Super. Ct. July 12, 1996); Merrill Lynch Equity Access v. Cooper, No. 228981, 1996

---

[15] In addition, the term "transacting business" is not broadly construed, Hospitality Sys., Inc. v. Oriental World Trading Co. LTD, No. CV 990169927, 2000 Conn. Super. LEXIS 255 (Super. Ct. Feb. 1, 2000), and the concept of "transacting any business" under Connecticut's long arm statute is substantially broader than the concept of "transacting business" under the corporate registration statute.  Ryan v. Cerullo, 282 Conn. 109, 128-29 (2007).

[16] See also Fraud and Waste, at *61 n.5, where the court addressed the transaction of business, and stated as follows:

This location, which is referred to in this Opinion as the "Acosta Street location," was the place where Johnston and Spillane managed Statek's (and TCI II's) numerous domestic and foreign banking accounts, health and business insurance, and other financial and personal matters. The Acosta Street location also housed the Johnston Entities. The only employees at that location, other than Johnston and Spillane, were Rhea Oberg and Peter Scannell, who defendants have conceded were Johnston Entity employees. (PX 13-22 at 8, no. 11). Johnston and Spillane were the only authorized signatories on TCI II bank accounts, and maintained all records for those accounts and Statek's bank accounts at the Acosta Street location, even though Statek's operations -- and accounting department -- were located 3000 miles away in Orange, California.

S-389

Conn. Super. LEXIS 502, at *14-15 (Super. Ct. Feb. 15, 1996).[17] Indeed, it is well-established

that a defendant cannot move to dismiss an action based on the failure to procure a certificate of

authority to transact business because "a violation of § 33-412(a) [the prior version of § 33-921]

does not implicate the subject matter jurisdiction of the court." EIMCO Process, at *2.

Similarly, there is nothing in the Federal Rules of Civil Procedure or case law that enables a

defendant to raise this waivable statutory issue in the context of a motion to dismiss. Rather, if

Beharrell and Coudert can prove the facts necessary to establish their affirmative defense, either

at summary judgment or at trial, then they would prevail on this argument at that time. And, of

course, this statutory affirmative defense has nothing whatsoever to do with the issue of whether

this Court has personal jurisdiction over Beharrell and Coudert.

Finally, Coudert cannot assert that Plaintiffs failed to comply with § 33-920 or § 33-921

at any point in this proceeding because this defense is not available to a debtor in the

adjudication of a creditor's bankruptcy claim. See In re Cutler-Owens International Ltd., 55

B.R. 291 (Bankr. S.D.N.Y. 1985) (concluding that a state door-closing statute did not constitute

a valid defense to a creditor's claim if there was any jurisdiction pursuant to which the creditor

could pursue the claim); In re Bowers, 16 B.R. 298 (Bankr. D. Conn. 1981) (concluding that the

Connecticut door-closing statute did not prevent a creditor from being a petitioning creditor in a

bankruptcy proceeding). Coudert therefore cannot utilize a § 33-921 defense because it has

commenced a bankruptcy proceeding and this litigation now involves a creditor's claim. While

the bankruptcy court presiding over the Coudert bankruptcy granted the parties relief from stay

to litigate the motions to dismiss before this Court, the parties still are proceeding before the

---

[17] While Plaintiffs were unable to locate any analogous federal case law that required a
defendant to assert an argument based on § 33-920 or § 33-921 as an affirmative defense, this is
a logical implication based on the law cited.

S-390

bankruptcy court and pursuant to its jurisdiction, and any further litigation of Plaintiffs' claim will occur before the bankruptcy court, or elsewhere with its permission.

C.    Analysis of Case Law Cited by Beharrell and Coudert

Beharrell and Coudert cite an array of case law in their replies to support various legal and factual contentions. Beharrell and Coudert, however, mischaracterize the legal propositions articulated in many of these cited decisions. They also omit facts that are material to the cited cases, such that the propositions for which they cite the cases are incorrect or incomplete, and these cases are distinguishable from the present case.

Beharrell and Coudert first claim that they timely filed their motions to dismiss, and, therefore, did not waive their right to challenge personal jurisdiction. (Beharrell Reply, at 1-3; Coudert Reply, at 1-3). Beharrell and Coudert improperly rely on irrelevant and factually distinguishable cases, however, as described in the following parenthetical notations. See Baricko v. Chesebrough-Ponds USA Co., No. CV 970395642, 1997, Conn. Super. LEXIS 3277, *3 (1997) (petition to remove filed before complaint's return date, meaning the defendants were not under the rules of the Superior Court until the case was remanded); Nevis v. American Airlines, Inc., No. CV 98-0487829S, 2000 Conn. Super. LEXIS 2797, *5-6 (2000) (motion timely filed where defendant filed appropriate extensions of time to which plaintiff did not object); Stewart v. Air Jamaica Holdings Ltd., No. CV 990589438, 2000 Conn. Super. LEXIS 1107, *4-5 (2000) (no waiver where defendant filed motion to dismiss within 30 days and plaintiff did not object to untimely supporting memorandum); In re Helicopter Crash Near Wendle Creek, 485 F. Supp. 2d 47, 51-51 (D. Conn. 2007) (no waiver where defendant filed motion outside 30 day period but previously objected to personal jurisdiction in answer); Bell v. Shah, No. 3:05CV0671 (RNC), 2006 U.S. Dist. LEXIS 14919, *4-5 (D. Conn. 2006) (same).

S-391

Beharrell and Coudert did not timely file their motions to dismiss and have waived their right to do so.

Beharrell also claims that he is not an agent of his partners under Connecticut law. (Beharrell Reply, at 4-6). However, it is the law of New York, not Connecticut law, that governs New York partnerships. See Miller v. Ross, 43 A.D.3d 730, 730 (N.Y. App. Div. 2007); Marsh v. Brady, 152 Misc. 2d 990, 991 n.1 (N.Y. Sup. Ct. 1991). In addition, Beharrell cites inapposite case law to claim that the contacts of the partnership are irrelevant to personal jurisdiction over an individual partner, such as Beharrell, but fails to address the applicable agency principals under New York general partnership law. (Beharrell Reply, at 4-6); see Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984) (involving a corporation rather than a partnership and considering whether jurisdiction over a parent corporation impacts jurisdiction over a subsidiary and whether jurisdiction over a corporation impacts jurisdiction over a corporate employee); Rush v. Savchuk, 444 U.S. 320, 328-29 (1980) (involving relationship between insurer and insured and finding jurisdiction improper where defendant's only contact with Minnesota was the fact that insurer conducted business in that state); Sher v. Johnson, 911 F.2d 1357 (9th Cir. 1990) (interpreting California law); Grunberger Jewelers v. Leone, No. 3:03CV647 (CFD), 2004 U.S. Dist. LEXIS 11268, *7-12 (D. Conn. 2004) (addressing jurisdiction over a corporate officer rather than a partner of a partnership); Falik v. Smith, 884 F. Supp. 862, 865-66 (S.D.N.Y. 1995) (failing to address whether contacts of partnership are relevant to jurisdiction over general partner because plaintiff failed to offer evidentiary facts; citing New York corporate rather than partnership case law). Indeed, one case cited by Beharrell further supports Plaintiffs' position despite his misleading statement to the contrary. See Friedson v. Lesnick, No. 91 CV 2133, 1992 U.S. Dist. LEXIS 2773, *5 (S.D.N.Y. 1992) (noting

41841781.1

-11-

S-392

Case 1:13-cv-08578-LTS   Document 16-8   Filed 12/17/13   Page 5 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 164 of 168
Case 3:07-cv-00456-S   )   Document 37   Filed 02/15/20(   Page 12 of 16

that the acts of a general, rather than limited, partner can subject the partnership and any other general partners to suit). Beharrell and Coudert are subject to the partnership principles articulated by Plaintiffs, and bound by each other's acts.

Beharrell and Coudert also claim that they are not subject to jurisdiction under § 52-59b(a)(1) because they did not "transact business" in the state of Connecticut. (Beharrell Reply, at 6-9; Coudert Reply, at 4-7). Again, they cite factually distinguishable case law and attempt to mislead the Court by omitting material facts that significantly impact the legal analysis. See Rosenbilt v. Danaher, 206 Conn. 125, 138, 140 (1988) (no jurisdiction where defendant attended just one meeting in Connecticut and the vast majority of events, property, and witnesses were in Massachusetts); Ryan v. Cerullo, 282 Conn. 109, 122-23 (2007) (contacts with Connecticut did not give rise to cause of action as required by § 52-59b(a)(1) as plaintiff's claim related solely to the negligent preparation of New York tax returns); Custom Navigation Sys., Inc. v. Pincus, 935 F. Supp. 117, 119 (D. Conn. 1995) (communications regarding sale of goods to New York resident, not services to persons in Connecticut); Grasser v. Midstate Med. Ctr., No. X10UWYCV065002587S, 2007 Conn. Super. LEXIS 1438, *12-13 (2007) (sending billings to Connecticut not determinative because Florida-based doctor who treated Connecticut women in Florida had no choice but seek funds in Connecticut); Mitchell v. Patterson, No. 4001501, 2005 Conn. Super. LEXIS 1579, *23 (2005) (no ongoing relationship with a Connecticut person); Weber v. U.S. Sterling Sec., Inc., No. X05CV030199155S, 2005 Conn. Super. LEXIS 1031, *2 (2005) (unsolicited fax sent from New York office, by a New York company, to a New York resident on behalf of a Delaware partnership is an insufficient contact with Connecticut); Lombard Bros., Inc. v. Gen. Asset Mgmt., 190 Conn. 245, 256 (1983) (plaintiff failed to present evidence that under Conn. Gen. Stat. § 33-412 defendants continued on-going business rather

S-393

Case 1:13-cv-08578-LTS   Document 16-8   Filed 12/17/13   Page 6 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 165 of 168
Case 3:07-cv-00456-S ⌐ ⌐   Document 37   Filed 02/15/20(   Page 13 of 16

than "enter into a series of discrete trading transactions"); Green v. Simmons, 100 Conn. App.

600, 601-02 (Conn. App. Ct. 2007) (mailing two unanswered letters of representation on behalf

of South Carolina client to possible Connecticut defendant insufficient for jurisdiction); Estate of

Martinez v. Yavorcik, 455 F. Supp. 2d 115, 122 (D. Conn. 2006) (defendant's minimal contacts

with Connecticut related to representation of Ohio clients and cause of action arose from Ohio

activities); Lawrence Wisser & Co. v. Slender You, Inc., 695 F. Supp. 1560 (S.D.N.Y. 1988)

(New York court finding no jurisdiction over an out-of-state defendant providing services to a

client in Indiana); Mayes v. Leipziger, 674 F.2d 178 (2d Cir. 1982) (California counsel

representing New York resident in California litigation did not transact business in New York

because services were not provided in New York and defendant did not participate in activity in

New York). Beharrell and Coudert have transacted business in Connecticut.

Finally, Beharrell and Coudert claim that they committed no tortious acts, either inside

Connecticut or outside Connecticut that caused a foreseeable injury within the State, to satisfy §

52-59b(a)(2) and § 52-59b(a)(3). (Beharrell Reply, at 9-13; Coudert Reply, at 7-13). They rely

on case law for this proposition, however, that is distinguishable from the present case both

legally and factually. See Ingraham v. Carroll, 90 N.Y.2d 592, 599-600 (1997) (New York

lawsuit by a New York resident against a Vermont physician that provided treatment in, and only

in, Vermont, and which medical treatment the court classified as "inherently personal, and local,

in nature," not sufficient to confer jurisdiction over doctor because it was not foreseeable that an

injury would result in New York that would subject the doctor to suit in that state); Sanchez v.

Corona, 283 F. Supp 2d 648, 654 n.6 (D. Conn. 2003) (fraudulent affidavit sent to Connecticut

for litigation pending in New York did not result in a tort in Connecticut because the party that

ultimately would be defrauded was the New York court). Beharrell and Coudert have engaged in

41847881.1                                -13-

S-394

Case 1:13-cv-08578-LTS    Document 16-8    Filed 12/17/13    Page 7 of 50

06-12226-rdd    Doc 1486    Filed 09/25/12    Entered 09/25/12 14:57:08    Main Document
          Case 3:07-cv-00456-S    ,    Document 37    Filed 02/15/200    Page 14 of 16
                              Pg 166 of 168

tortious conduct that satisfies § 52-59b(a)(2) and § 52-59b(a)(3).

S-395

Case 1:13-cv-08578-LTS   Document 16-8   Filed 12/17/13   Page 8 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 167 of 168
Case 3:07-cv-00456-S.   Document 37   Filed 02/15/20(   Page 15 of 16

PLAINTIFFS, STATEK CORPORATION and
TECHNICORP INTERNATIONAL II, INC.

By___ /s/ Mark M. Porto_____
    James J. Tancredi (ct06819)
    jjtancredi@daypitney.com
    Mark M. Porto (ct24271)
    mmporto@daypitney.com
    Day Pitney LLP
    242 Trumbull Street
    Hartford, Connecticut 06103-1212
    (860) 275-0100

-and-

    Joshua W. Cohen
    jwcohen@daypitney.com
    Day Pitney LLP
    One Audubon Street
    New Haven, Connecticut 06511
    (203) 752-5000
    Their Attorneys

S-396

Case 1:13-cv-08578-LTS   Document 16-8   Filed 12/17/13   Page 9 of 50

06-12226-rdd   Doc 1486   Filed 09/25/12   Entered 09/25/12 14:57:08   Main Document
Pg 168 of 168
Case 3:07-cv-00456-S.   Document 37   Filed 02/15/200   Page 16 of 16

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_____/s/ Mark M. Porto_____
Mark M. Porto (ct24271)

S-397

Edward J.M. Little
Lisa A. Cahill
David B. Shanies
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Statek Corporation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re | Chapter 11 |
| Coudert Brothers LLP, | |
| Debtor. | Case No. 06-12226 (RDD) |

### REPLY MEMORANDUM IN SUPPORT OF
### STATEK'S MOTION FOR RECONSIDERATION

Statek Corporation ("Statek") submits this reply memorandum in support of its

motion for reconsideration (Doc. No. 1210) ("Reconsideration Motion") of the Order dated July

21, 2009 (Doc. No. 1208) ("Order"), granting the motion of Development Specialists, Inc. as

Plan Administrator for Coudert Brothers LLP (together "Coudert") to Disallow Claim No. 239

and/or Dismiss Statek's Amended Complaint (Doc. No. 1153) ("Motion to Dismiss").

### PRELIMINARY STATEMENT

Incredibly, Coudert is now asking this Court to disregard the Second Circuit's

decision and the District Court's order effectuating it, both of which direct that the Court apply

Connecticut's choice of law rules in deciding the Reconsideration Motion. In defiance of the

Second Circuit's clear instruction, Coudert persists in asserting that this Court should apply New

York's choice of law rules, and not Connecticut's, in deciding the Reconsideration Motion.

S-398

The Court must reject Coudert's repetitive arguments, which are precluded by the Second Circuit's decision and the District Court's remand. Second, even when Coudert actually addresses itself to Connecticut's choice of law rules, it does not interpret them correctly, and it resorts to all sorts of self-serving assertions about the "facts" of the case when dealing with the actual statutes of limitations under Connecticut and English law. The Connecticut choice of law rules require the application of Connecticut limitations law, Statek's complaint was filed in time under Connecticut law, and the Motion to Dismiss must finally be denied.

It was seven years ago, almost to the day, that Statek sued Coudert for its continuing breach of the ethical duties it owed to Statek as its client in negligently failing to produce documents and information concerning the previous activities of Statek's former executives in looting the company. While apparently not aware of the criminal nature of those activities, Coudert failed to give Statek critical documents and information that would have enabled Statek to recover diverted assets. Coudert's behavior has, as a practical matter, been perpetuated by the procedural warfare that its Plan Administrator has waged since then, in resorting to every procedural maneuver available to delay litigation of this case and a decision on the merits.

Coudert's latest filing, which raises dozens of issues that have nothing to do with the one question to be decided on this remand, should be seen for what it is — yet another tactic designed to make this litigation too expensive for Statek to pursue. Statek continues to be victimized by having to incur massive amounts of legal fees in this protracted litigation. Enough is enough.

For the reasons discussed below, together with those set forth in Statek's prior submissions, the Court must follow the Second Circuit's decision, comply with its unconditional

instruction to apply Connecticut's choice of law, and find that Statek's suit was filed in time under Connecticut limitations law. Coudert's Motion to Dismiss has to be denied. It is really that simple.

## APPLICABLE LAW

Statek's supplemental brief, Doc. No. 1495 ("Statek's Supp. Brief"), sets forth the legal standard for deciding the Motion to Dismiss. *See* Statek's Supp. Brief at 2, 7. The standard is undisputed. A motion to dismiss can only test the legal sufficiency of a pleading, not the parties' evidence. A motion to dismiss must therefore be denied unless "it appears beyond doubt that the non-moving party could prove no set of facts that would entitle it to relief." *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 696 (S.D.N.Y. 2002) (citations omitted). The motion is not a vehicle for resolving factual disputes; not only must all of the facts pled in the complaint be accepted as true, but all inferences must be drawn in the plaintiff's favor. *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Securities LLC*, 568 F.3d 374, 377 (2d Cir. 2009).[1]

---

1.  Although Coudert admits "'the factual allegations of [a] pleading must be enough to raise a right to relief above the speculative level,'" Doc. No. 1486 ("Coudert's Supp. Brief") at 4 n.4 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)), it has not identified a single allegation in Statek's amended complaint that fails to meet the standard.

## DISCUSSION

1.    **Coudert's Invitation to Ignore the Second Circuit's Instruction and Apply New York's Choice of Law Rules Approaches Contempt**

Coudert begins its most recent brief with the sophistical argument that this Court can ignore the Second Circuit's clear instruction to apply Connecticut's choice of law rules rather than New York's, because what the Second Circuit really had in mind was that "this Court [should] consider what choice of law decision a Connecticut court would make in this case on the statute of limitations issue." Coudert's Supp. Brief at 7. Coudert then goes on to suggest that it is still open for it to argue that "the Connecticut Court would decline to reach the choice of law question and would dismiss the case" for "want of jurisdiction." *Id.* The Court of Appeals did not leave open the question of what choice of law rules apply. **It could not have been more direct in remanding the case to this Court "with instructions to apply Connecticut's choice of law rules in deciding Statek's motion to reconsider."** ***In re Coudert Bros. LLP***, **673 F.3d 180, 191 (2d Cir. 2012).**

Coudert is now repeating the same groundless argument that it already made to the Second Circuit, which rejected it: that Connecticut's choice of law rules should not apply because Connecticut lacks personal jurisdiction over Coudert. Coudert's Supp. Brief at 7-8. Coudert clearly made the same argument to the Second Circuit on the initial appeal. *See* Ex. A (Coudert's Brief on Appeal) at 32 ("[w]here the putative transferor court lacks personal jurisdiction over the defendant, the transferee court is not obligated to apply the transferor's law"). The Second Circuit rejected the argument in ruling that Connecticut's choice of law rules apply in this case. *In re Coudert*, 673 F.3d at 191. It left no room for Coudert to ask this Court to defy its instruction to apply Connecticut law.

If that were not clear enough, it became even more so after Coudert tried to change the Second Circuit's mind by filing a petition for rehearing and by reasserting its personal jurisdiction argument. It argued that "the direction that the bankruptcy court must apply the choice of law rules of Connecticut was incorrect or at least premature," and it asked the Court "that the Decision be modified so as to remand the case in part to the bankruptcy court with instructions that it should first determine whether there was personal jurisdiction over Coudert in Connecticut . . . ." *See* Ex. B (Coudert's Petition for Rehearing) at 3. The Second Circuit took the petition seriously, and it requested a response from Statek. Ex. C (Order entered Mar. 20, 2012). Statek responded and set forth in detail its reasons why the argument about personal jurisdiction should not change the Court's decision. Ex. D (Statek's Opposition to Petition for Rehearing). The Second Circuit obviously considered the parties' briefs, and it denied Coudert's petition. Ex. E (Order Denying Petition for Rehearing).

It is virtually a contempt of the Second Circuit's original order and its later denial of the rehearing petition for Coudert to repeat its argument about personal jurisdiction in Point I of its Supplemental Brief. That issue is dead, and it is incredible that Coudert has the presumption to try to mislead this Court into ignoring the Second Circuit's instruction. "Under the doctrine of law of the case, a district court generally may not deviate from a mandate issued by an appellate court." *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir. 1992) (citation omitted). Instead, the terms of the Second Circuit's mandate must be "'scrupulously and fully carried out.'" *Id.* (quoting *United States v. E.I. Du Pont De Nemours & Co.*, 366 U.S. 316, 325 (1961)). A lower court's actions on remand "should not be inconsistent with either the express terms or the spirit of the mandate." *Id.* (citation omitted). Coudert is attempting to lure the Court into violating the express terms of the Second Circuit's mandate when there is no question

that the Second Circuit considered Coudert's diversionary argument and rejected it, not once but twice.

The Court should also reject Coudert's invitation to "decide the fully briefed motion to dismiss for lack of personal jurisdiction." Coudert's Supp. Brief at 7. There is no such motion pending against the Amended Complaint. In February 2006, Coudert and its co-defendants filed a motion *in the Connecticut District Court* to dismiss *Statek's original complaint* for lack of personal jurisdiction. There is simply no legal basis for Coudert's request that this Court "decide the fully briefed motion to dismiss," a motion that was filed in a different case more than six years ago against a pleading that was superseded with an amended complaint.

In any event, Coudert forfeited that jurisdiction defense by failing to pursue it for years (as Statek argued, evidently persuasively, to the Second Circuit). *See* Ex. D (Statek's Opposition to Petition for Rehearing) at 2-6. The Court of Appeals obviously accepted Statek's argument in denying Coudert's motion for rehearing. The suggestion that it did not consider the issue on the merits, after it requested responsive briefing from Statek, is an insult to the Court.

Finally, even if the jurisdiction argument had any place in the current round of motion practice — which it does not, for all the reasons just stated — Statek is well prepared to demonstrate the multiple reasons why Coudert had every reason to anticipate being sued in the Connecticut courts, and why Coudert is subject to personal jurisdiction in Connecticut (including, but not limited to, the accurate concession of Coudert's counsel that the attorney-client relationship at issue here "was really centered in Connecticut," *infra* note 4). Coudert can say all it wants that there was no jurisdiction over it in Connecticut, but saying it does not make it so, and the record relating to the jurisdictional motion practice in the District of Connecticut reveals just how compelling the factual record for jurisdiction was. But that issue is not properly

S-403

before this Court, given the clear instruction of the Second Circuit and its denial of Coudert's

Petition for rehearing.

  **2.**  **Connecticut's Choice of Law Rules Require Application of
Connecticut's Statute of Limitations Law**

    Under Connecticut choice of law rules, where a plaintiff asserts a claim under the

common law, the statute of limitations is deemed "procedural" rather than "substantive," and the

court is to apply Connecticut law as the law of the forum to determine timeliness. Statek's Supp.

Brief at 3-4. Coudert does not dispute the fact that the Connecticut Supreme Court has

repeatedly held that this is the rule that governs. *See, e.g., Baxter v. Sturm, Ruger & Co., Inc.*,

644 A.2d 1297, 1299-1300 (Conn. 1994); *Thomas Iron Co. v. Ensign-Bickford Co.*, 42 A.2d 145,

146 (Conn. 1945); *Morris Plan Ind. Bank v. Richards*, 42 A.2d 147, 148-49 (Conn. 1945).

Neither does it dispute the fact that Statek's claim for legal malpractice is a common law claim,

and that the law of the forum would be applied under cases decided by the Connecticut Supreme

Court (rendering Coudert's five-page discussion of English law irrelevant). What Coudert

instead argues is that this Court should ignore the Connecticut Supreme Court's consistent

rulings in *Baxter*, *Thomas Iron* and *Morris Plan*, decide that they are no longer good law, and

announce that the Restatement (Second) of Conflict of Laws (the "Restatement") now controls

Connecticut choice of law rules on the statute of limitations. That is simply not so.

    Coudert's argument confuses the choice of law rules dictating the *substantive law*

that applies to a plaintiff's claim with the rules dictating the *procedural law and the statute of

limitations*. While they both involve choice of law, they are different, and the present dispute is

over which state's law supplies the statute of limitations for Statek's claim, not what substantive

law governs the claim.

**S-404**

Only four of the cases cited by Coudert deal with the choice of law for the purpose of determining the statute of limitations: the Connecticut Supreme Court decision in *Advest v. Wachtel*, 668 A.2d 367 (Conn. 1995); two unpublished lower court decisions in *Howe v. Stuart Amusement Parks*, No. 343407, 1991 WL 273637 (Conn. Super. Ct. Dec. 11, 1991) and *Hyek v. Field Supply Servs., Inc.*, No. CV105014085, 2011 WL 3930225 (Conn. Super. Ct. Aug. 9, 2011); and the federal court decision in *Phillips v. Scott*, 446 F. Supp. 2d 70 (D. Conn. 2006). None of these overrules the settled law of Connecticut as established by the Connecticut Supreme Court in *Baxter*, *Thomas Iron* and *Morris Plan*.

Obviously only one court can overrule the Connecticut Supreme Court's decisions interpreting Connecticut law — the Connecticut Supreme Court itself. *See, e.g.*, *Stuart v. Stuart*, 996 A.2d 259, 271 (Conn. 2010) ("[I]t is manifest to our hierarchical judicial system that this court has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by our precedent.").[2]  And yet the Connecticut Supreme Court has never questioned, let alone overruled, its holdings in *Baxter*, *Thomas Iron* and *Morris Plan* regarding the choice of law rules for determining the applicable statute of limitations.

The only decision of the Connecticut Supreme Court cited by Coudert on the choice of law rule for the statute of limitations is *Advest*.  Tellingly, Coudert does not cite *Advest* for its assertion that Connecticut has abandoned the "law of the forum" rule for determining the statute of limitations, because it did not.  Instead, Coudert misleadingly cites *Advest* for the proposition that in applying Section 142 of the Restatement (Second) of Conflicts of Laws

---

2.   *See also Coyle Crete, LLC v. Nevins*, 49 A.3d 770, 782 (Conn. App. Ct. 2012) ("It is axiomatic that this court, as an intermediate body, is bound by Supreme Court precedent and [is] unable to modify it. . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions.") (citation and internal quotation marks omitted).

(which sets out the Restatement's choice of law rule for determining the statute of limitations), "the courts" use the principles stated in Section 6 of the Restatement (which employs an "interests" analysis). *See* Coudert's Supp. Brief at 14 (citing *Advest*, 668 A.2d at 372). The obvious problem with the citation of that case is that, if one actually reads it, one quickly discovers that the Connecticut Supreme Court was not referring to the courts of Connecticut, but the courts of New York. *Advest* did not address Connecticut's choice of law rules at all; it discussed New York's choice of law rules in the context of deciding whether a Connecticut trial court should have enjoined a party from pursuing arbitration in New York after related claims had been dismissed as untimely in Connecticut. *Advest*, 668 A.2d at 368. The *Advest* decision had nothing to do with the principle settled in the Connecticut Supreme Court decisions in *Baxter, Thomas Iron, Morris Plan* and related cases that Connecticut uses the law of the forum for the statute of limitations. If the Connecticut Supreme Court wanted to change its own rule for Connecticut cases, it could easily have announced it in *Advest*. But it did not.

In *Howe*, an unpublished case that was not decided by the Connecticut Supreme Court, the trial court recognized the prior precedent establishing the "procedural" versus "substantive" test used for deciding on the statute of limitations, but it opined that it was "not clear" whether that principle survived the Connecticut Supreme Court's decision in *O'Connor v. O'Connor*, 519 A.2d 13 (Conn. 1986), where it limited the traditional rule of *lex loci delicti* for deciding on the *substantive law* governing a plaintiff's claims. *Howe*, 1991 WL 273637, at *3. After noting that the *O'Connor* decision "adopted in full [the] applicable sections of the Restatement," the lower court in *Howe* wrote that Section 143 of the Restatement "will be used to determine the applicable statute of limitations." *Id.* The first problem with the lower court's

*Howe* opinion is that the court was apparently not aware, at the time of its decision in 1991, that

Section 143 of the Restatement had been deleted in 1988.

There are even more compelling reasons for rejecting the lower court's reasoning

in *Howe*. First, *Howe* was an unpublished opinion and, as such, has no precedential value.

Second, the lower court's decision in *Howe* is actually *dictum* since the plaintiffs in that case

were asserting statutory claims, not common law claims, where procedural issues are governed

by the law of the forum as the Connecticut Supreme Court has repeatedly and consistently held.

*See Howe*, 1991 WL 273637, at *5. Third, as indicated above, neither a trial court nor even an

intermediate appellate can overrule decisions of the Connecticut Supreme Court. *Stuart*, 996

A.2d at 271. Finally, and most obviously, while the lower court thought it was "not clear" in

1991 that the Connecticut Supreme Court's would still follow its "law of the forum" rule after its

decision in the *O'Connor* case in 1986, it became painfully clear that the Connecticut Supreme

Court still did when it decided the *Baxter* case in 1994 — three years after *Howe*. In Baxter, the

Connecticut Supreme Court expressly reaffirmed its prior decisions in the *Morris Plan*/*Thomas

Iron* line of cases. *Baxter*, 644 A.2d at 1299-1300. For all these reasons, Coudert cannot cite

*Howe* as overruling the settled law in Connecticut on this issue.

The other lower court decision cited by Coudert is no more helpful. The court

there only dealt with the issue in a footnote, where it assumed without discussion that the

Restatement rule applied. *Hyek*, 2011 WL 3930225, at *3 n.2. The court did not even mention

the controlling precedent of the Connecticut Supreme Court in *Baxter*, *Thomas Iron* and *Morris

Plan*. The summary treatment of the law in a footnote was in the context of the court's granting

summary judgment on numerous grounds, including the significant ground that the plaintiff's

claims were untimely under the law of either state whose statute of limitations might have

applied, *id.* at *4.  The passing discussion in that footnote of a lower court decision cannot be

read to overrule *Baxter*, *Thomas Iron* and *Morris Plan*.

              Finally, the same is true of the federal district court's decision in *Phillips*.  There,

in discussing a conflicts issue, the court referred to a case in which the Connecticut Supreme

Court recited the general rule that statutes of limitations are deemed procedural.  *Phillips*, 446 F.

Supp. 2d at 83, citing *Moore v. McNamara*, 513 A.2d 660 (Conn. 1986).  The court in *Phillips*

went on to say that "[t]his, however, is not the end of the inquiry," because it felt that the

Restatement provided for a different approach to choice of law questions regarding the statute of

limitations.  *Id.* at 83.  The court then asserted that "Connecticut courts have turned to § 142 of

the Restatement" to address that issue, and it cited *Advest* for support.  *Id.*  (Remarkably, the

court did not even refer to the controlling decisions of the Connecticut Supreme Court in *Baxter*,

*Thomas Iron* and *Morris Plan*.)  The *Phillips* court made an obvious mistake: it failed to

recognize that the Connecticut Supreme Court was dealing in *Advest* with New York's choice of

law rules, not Connecticut's.  A later decision by another federal judge in Connecticut picked up

on this error, ruling that *Phillips* is "not persuasive" because of its reliance on *Advest*, a case that

is "not on point."  *Bilodeau v. Vlack*, No. 07-CV-1178(JCH), 2009 WL 1505571, at *4 (D. Conn.

May 20, 2009).  Unlike the court in *Phillips*, the district court in *Bilodeau* considered all the

applicable case law and correctly concluded that it must follow the "law of the forum" rule that

was still good law in Connecticut based on the recent decisions of the Connecticut Supreme

Court.  As the court held:  "Until the Connecticut Supreme Court declares otherwise, it is this court's conclusion that it should follow the traditional rule."[3]  *Id.*

It is remarkable — but not surprising, given the way Coudert has attempted to avoid governing Connecticut law — that Coudert has cited *Phillips* to support its position without bringing *Bilodeau* to this Court's attention.

The Connecticut Supreme Court's holdings in *Baxter*, *Thomas Iron* and *Morris Plan* are still good law, and they control here.  Moreover, notwithstanding the scattered and irrelevant cases on which Coudert relies, there are numerous recent decisions by both federal and state courts that have correctly followed *Baxter* and the previous decisions of the Connecticut Supreme Court.  *See, e.g., Cameron v. Olin Corp.*, No. 3:10cv1521 (JBA), 2012 WL 171312, at *2 (D. Conn. Jan. 20, 2012) (following *Baxter*); *Midwest Media Grp., Inc. v. Benistar Employer Svc Trust Co.*, No. 3:10—CV—843 (JCH), 2011 WL 4348134, at *6 (D. Conn. Sept. 16, 2011) (same); *Costellanos v. Home Depot, USA, Inc.*, No. FSTCV106006274S, 2011 WL 5120684, at *2 (Conn. Super. Ct. Oct. 18, 2011) (same).  These cases were all decided in the past two years.

Again, Coudert has conspicuously failed to bring any of these cases to this Court's attention.

Finally, even if the Restatement were the law in Connecticut on this issue — and it is not — Coudert cannot satisfy an essential requirement in the Restatement for departing from the law of the forum.  Under Section 142 of the Restatement, a forum will depart from its own statute of limitations only where maintenance of the claim would serve no substantial interest of the forum.  Restatement (Second) of Conflicts of Laws, § 142(2)(a).  Coudert has never even

---

3.   In addition, the cursory discussion of the issue in *Phillips* can be regarded as *dictum*, given that the court concluded that the plaintiff's claim was untimely under either of the potentially applicable statutes of limitations.  *See Phillips*, 446 F. Supp. 2d at 83.

contended that maintenance of Statek's claim would serve no substantial interest of Connecticut.

It could not be more obvious that Connecticut would have a substantial interest in Statek's claim

where the whole attorney-client relationship between Statek and Coudert was centered in

Connecticut as Coudert's counsel has conceded in court.[4]  Coudert is now silent, as it has to be,

on this point.  Thus, even though the Restatement does not represent settled Connecticut law,

Coudert cannot assert that it would dictate a different result.

### 3.  Statek's Claim is Timely Under Connecticut Law

Under Connecticut law, the statute of limitations does not bar a claim arising from

acts or omissions that would otherwise fall outside the applicable limitations period where those

acts or omissions were part of a defendant's "continuing course of conduct" that extended into

the relevant time period.  *See, e.g., Vanliner Ins. Co. v. Fay*, 907 A.2d 1220, 1230-31 (Conn.

App. Ct. 2006).  As set forth in Statek's supplemental brief, this doctrine tolls the statute of

limitations in cases where the defendant's wrong is ongoing, and "the situation keeps evolving

after the act complained of is complete."  *Sanborn v. Greenwald*, 664 A.2d 803, 808 (Conn. App.

Ct. 1995).  A defendant's breach of a continuing duty can be demonstrated with proof of "later

wrongful conduct . . . related to the prior act," or where a "special relationship between the

parties" gives rise to a continuing duty.  *Vanliner*, 907 A.2d at 1231.  Whether a party engaged in

---

4.  Although Coudert now finds it convenient to argue that England has the most significant relationship with
this case, it took exactly the opposite position during prior proceedings on the Motion to Dismiss.  During
oral argument, its counsel emphasized that the parties' attorney-client relationship was centered in the
United States, not England.  *See* Statek's Supp. Brief, Ex. A (Transcript of May 18, 2009 Oral Argument)
at 12.  When this Court asked why that was so, counsel replied that "the relationship itself, the attorney-
client relationship itself between Statek and Coudert was really centered in Connecticut . . . . Statek during
the time that it was represented by Coudert maintained a place of business in Connecticut.  All
communications were between Connecticut and London, bills were sent to Connecticut.  As I said,
communications were made — and paid from Connecticut, and communications were between England
and Connecticut."  *Id.*  For Coudert now to argue that it is beyond doubt, from the face of the complaint,
that English limitations law controls because the parties' relationship was centered in England, is false.

S-410

a "continuing course of conduct" for statute of limitations purposes "is a mixed question of law
and fact." *Id.* (quotation omitted).

Coudert has not met the exacting legal standard that applies to its motion to
dismiss: establishing that "it appears beyond doubt that the non-moving party could prove no set
of facts that would entitle it to relief." *Calcutti*, 224 F. Supp. 2d at 696.  Instead, Coudert lays
out a self-serving and demonstrably false version of the facts and raises legally invalid arguments
in an attempt to circumvent the "continuing course of conduct" doctrine.  That is not a valid basis
for a motion to dismiss, where the allegations in the complaint must be accepted as true and all
inferences drawn in favor of Statek.  *See Montreal Pension Plan*, 568 F.3d at 377 (citing
*Wojchowski v. Daines*, 498 F.3d 99, 104 (2d Cir. 2007)).  The facts pled in the amended
complaint, together with inferences drawn in Statek's favor, demonstrate *both* Coudert's
continuing course of conduct *and* the existence of a special relationship between Coudert and
Statek.

As the Appellate Court of Connecticut stated in *Sanborn*, the determination of
whether the "continuing course of conduct" doctrine applies to toll the statute of limitations is
"conspicuously fact-bound." 664 A.2d at 807 (citation omitted).  *See also Allen v. Egan*, 303 F.
Supp. 71, 79 (D. Conn. 2004) ("Determining whether the events comprising the basis for [the
plaintiff]'s claim are part of a single, continuing course of conduct is fact-intensive, and therefore
inappropriate at this [motion to dismiss] stage of the proceedings.").  Coudert nevertheless
argues that Statek's supposed failure to "meet its burden of proving a continuous course of
conduct" provides "proper grounds for [its] motion to dismiss."  Coudert's Supp. Brief at 23.  In
support, Coudert cites *Partitions, Inc. v. Blumberg Associates, Inc.*, No. CV980576664S, 2001
WL 1332174, at *7 (Conn. Super. Ct. Oct. 9, 2011).  That case definitely does not support

Coudert's argument for the obvious reason that it was a decision rendered after a bench trial on

the merits. *Id.* at *1. The court in *Partition* noted the "fact bound" nature of the continuing

course of conduct inquiry before explaining the grounds for its conclusions on that issue *based*

*on the evidence presented at trial. Id.* at *7.

Coudert also miscites another case, *International Strategies Group, Ltd. v. Ness*,

645 F.3d 178, 183 (2d Cir. 2011), in support of its attempt to argue the facts at this preliminary

stage. There the Second Circuit affirmed the dismissal of claims as time-barred after rejecting

the plaintiff's invocation of the "continuing course of conduct" doctrine. But there the plaintiff

did not even *allege* — never mind prove — a "special relationship" (because the parties only had

a business relationship), and it did not allege that there was later wrongful conduct related to

prior conduct (because the plaintiff's interactions with the defendant over time were

"miscellaneous" and "discontinuous"). *Id.* at 184. There is no resemblance to this case, where

(1) the parties admittedly had a "special relationship" — the attorney-client relationship — as

well as an associated fiduciary relationship based on Coudert's possession of Statek's property,

*i.e.*, its client files and funds, and (2) there was a continuous course of conduct with Coudert's

tortious failure to produce documents and information for an extended period of time.

Coudert next argues that "Statek's knowledge of Coudert's alleged wrongdoing in

1996, and certainly by 2000 . . . which was sufficient to trigger the starting date under the

English statute of limitations, also forecloses Statek's reliance on the continuous course of

conduct doctrine." Coudert's Supp. Brief at 24. Coudert's bald assertion that Statek had

"knowledge of Coudert's alleged wrongdoing in 1996," or even 2000, is false and finds no

support in the amended complaint or inferences to be drawn from it. *See id.* 24. In addition,

Coudert makes no distinction between Statek's knowledge of facts relating to the conduct of the

two corrupt Statek officers, Johnston and Spillane, and facts relating to Coudert's breaches of its

duties to Statek. It is nonsense to suggest that just because Statek learned about the wrongful

activities of Johnston and Spillane, it was supposedly "put on notice" that Coudert, a reputable

international law firm, was withholding files from Statek. Indeed, Coudert's correspondence

with Statek in August and September of 1996, including a cover letter enclosing six client files,

indicated that they were the sum total of all the material Coudert had. It was not until finally

receiving from Johnston's trustee in bankruptcy some of the wrongfully withheld files and

information that Statek learned that Coudert had failed to make a complete production of

documents in September of 1996. Blaming Statek for allegedly taking "its time asking Coudert

for additional documents," Coudert's Supp. Brief at 30, when Coudert represented that it had

delivered all of its files, is outrageous — coming as it does from the representative of a law firm.

As for Coudert's desperate attempt to assert that its attorney-client relationship

with Statek ended long ago, it cites to a paragraph in the amended complaint describing a letter

sent from Skadden Arps, who were attorneys for the owners of Statek's parent company, to

Coudert in early 1996 after the decision of the Delaware Chancery Court affirming their clients'

ownership and control of Statek. Coudert's Supp. Brief at 24-26.[5] In that short, one-paragraph

letter (Ex. F), the lawyers were simply inquiring about funds that Coudert was holding for Statek,

asking about any credit balance Coudert had for Statek, and directing that no funds should be

transferred without authorization. Apart from the obvious fact that a client can have more than

one lawyer at a time, and that a lawyer's duties to his or her client do not end just because the

client has another lawyer representing it, Skadden explicitly stated in the letter that it was

---

5.   For the record, the letter was dated January 15, 1996, not dated September 17, 1996 as cited by Coudert.

representing "Miklos Vendel and Arbitrium (Cayman Islands) Handels, AG," the majority

owners of Statek's holding company — *not Statek itself.* Coudert's declaration that the letter

"effectively terminated the attorney-client relationship between Coudert and Statek" (Coudert's

Supp. Brief at 26) is preposterous. The letter says nothing of the kind, as Coudert understands

full well.[6] In any event, counsel for Coudert actually admitted during oral argument on the

Motion to Dismiss that the alleged termination of the parties' attorney-client relationship

"wouldn't be a 12(b)(6) type of . . . matter" and was "moving more to the factual determination

[than] might be appropriate" at the motion to dismiss stage. *See* Statek's Supp. Brief, Ex. A

(Transcript of May 18, 2009 Oral Argument) at 9-11.

Coudert's argument that it owed Statek no further duties simply makes no sense,

and the rest of the discussion on this point is meritless. For example, Coudert touts the fact that

the Second Circuit made a passing reference — not a finding or holding — to Coudert as

Statek's "old law firm." Coudert's Supp. Brief at 26. That sort of argument is frivolous, and it is

not based on the facts set forth in the amended complaint. In any event, as Statek has already

demonstrated in its initial Supplemental Brief, under Connecticut law, the special relationship

between attorneys and clients, and the duties attorneys owe their clients, including duties

regarding clients' property, survive the termination of formal representation. *See* Statek's Supp.

Brief at 5-6.

Coudert questions whether Connecticut's professional conduct rules applied to

Coudert's relationship with Statek, although it stops short of arguing that those rules did *not*

apply. *See* Coudert's Supp. Brief at 26. However, the rules *did* apply to Coudert because any

---

6.   This argument ignores two other bases for the continuing "special relationship between Coudert: its
     continuing possession of Statek's property, and the ethical obligations it owed to even an allegedly
     "former" client.

lawyer who provides (or offers to provide) legal services in Connecticut is subject to the state's

professional conduct rules. *See* Conn. Rule Prof. Conduct 8.5. The Coudert firm provided legal

services to Statek in Connecticut. *See* Note 6, *supra* (quoting Transcript of May 18, 2009 Oral

Argument (Statek's Supp. Brief, Ex. A) at 12) ("the attorney-client relationship itself between

Statek and Coudert was really centered in Connecticut . . . . Statek during the time that it was

represented by Coudert maintained a place of business in Connecticut. All communications were

between Connecticut and London, bills were sent to Connecticut. As I said, communications

were made — and paid from Connecticut, and communications were between England and

Connecticut."). Coudert's acts and omissions would also breach the firm's professional duties

under California[7] and English law.[8]

Next, in what can only be described as nonsense, Coudert suggests that its actual

productions of documents in 2002, 2004, 2008 and 2009 constituted the wrongful conduct on

which Statek bases its claim. Coudert's Supp. Brief at 27. Statek is obviously not claiming that

Coudert breached its duties to Statek by *disclosing* documents. Statek recounted the history of

---

7. California's Rules of Professional Conduct, like Connecticut's, impose duties on attorneys regarding the preservation and distribution of client files and other property, duties that survive termination of the representation. Rule 3-700(D)(1) provides that an attorney whose employment has terminated must "promptly release to the client, at the request of the client, all the client papers and property," defined as including "correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation, whether the client has paid for them or not." Courts in California have similarly noted that the documents in an attorney's file are the property of the client. *See, e.g., Eddy v. Fields*, 18 Cal. Rptr. 3d 487, 490-91 (Cal. App. Ct., 2004). Attorneys must also "keep a client reasonably informed about significant developments relating to the employment or representation, including promptly complying with reasonable requests for information and copies of significant documents when necessary to keep the client so informed." Cal. Rule Prof. Conduct 3-500.

8. English law imposes similar duties on legal practitioners in handling their clients' (and former clients') files and property. For example, a client generally is entitled, upon termination of the representation, to the return of files and papers in counsel's possession since they are the property of the client. *See, e.g.,* HALSBURY'S LAWS OF ENGLAND (5th ed.), ¶ 785; *Cookson v. Ingham Clegg & Crowther*, [2001] EWCA Civ 417 at ¶¶ 31-32, 37, 53.

S-415

Coudert's piecemeal disclosures to show that each successive disclosure highlights the information that Coudert had previously *failed to disclose*. For years Coudert continued to disclose information in piecemeal fashion while it failed to disclose the rest of the information it had, all to the detriment of Statek. Thus, Coudert's suggestion that Statek's claims would be time-barred if Coudert had made no effort at all to disclose information is scandalous. Coudert cannot in good conscience argue, as it appears to, that it can withhold documents and information it has a duty to provide, in order to conceal its own wrongdoing. This behavior is very far removed from the exacting ethical standards expected from lawyers and law firms. Coudert is responsible for the massive harm done to Statek in giving its former executives the time and opportunity to conceal the property stolen from it. It should be answerable on the merits of Statek's claim without further obfuscation.

The remainder of Coudert's argument regarding the "continuing course of conduct" doctrine ignores the fact that Coudert's legal malpractice, resulting from that firm's failure to supply files and information over the course of years, is an ongoing wrong, not an isolated event. One cannot seriously compare that situation with the facts involved in *Bellemare v. Wachovia Mortgage Corp.*, 894 A.2d 335 (Conn. App. Ct. 2006), a case Coudert calls "instructive." Coudert's Supp. Brief at 28. The plaintiff there sued a mortgagee for failing to issue a release after receiving full payment in satisfaction of the loan. 894 A.2d at 338. That single failure is altogether different from Coudert's failure to turn over the files and information in its possession, to which Statek was entitled but which it did not know even existed. The plaintiff in *Bellemare* obviously knew that he had made final payment on his mortgage and was in a position to know that the bank had failed to issue a release. Statek was in the opposite position: it could not have known that it was being harmed by Coudert's omissions until files and

information that Coudert had failed to disclose to Statek were produced.[9]  In any event, much of

Coudert's argument on this issue relies on facts that appear nowhere in the amended complaint.

Thus Coudert cannot satisfy the necessary standard that "it appears beyond doubt," from the face

of the amended complaint, "that [Statek] could prove no set of facts that would entitle it to relief"

under the "continuing course of conduct" doctrine.  *Calcutti*, 224 F. Supp. 2d at 696.

### 4.   Statek's Claim Would Definitely Be Timely Under English Law

The Second Circuit directed that choice of law rules of Connecticut govern, and

they require the application of the Connecticut statute of limitations.  However, even if the Court

were to apply English law, as Coudert now urges, Statek's claim certainly would be timely.

Section 14A of the English Limitation Act 1980 provides a special time limit for negligence

actions, like the instant case, where the facts relevant to the cause of action are not known at the

date of accrual.  Section 14A states in pertinent part:

> (1) This section applies to any action for damages for negligence . . . where the
> starting date for reckoning the period of limitation under subsection (4)(b) below
> falls after the date on which the cause of action accrued.

> \*   \*   \*

> (3) An action to which this section applies shall not be brought after the
> expiration of the period applicable in accordance with subsection (4) below.

> (4) That period is either —

>> (a) six years from the date on which the cause of action accrued; or

>> (b) three years from the starting date as defined by subsection (5) below,
>> if that period expires later than the period mentioned in paragraph (a)
>> above.

---

9.   Coudert's failure to produce the entirety of Statek's files continues *to this date*.  For example, Coudert's
counsel, Ms. Frieman, sent an e-mail to Statek's counsel on December 8, 2008, disclosing still more
documents.  One of these referenced a "deed packet."  This was the first time Statek was aware such a thing
existed and, despite repeated requests, it has yet to receive it or to receive information about the real estate
concerned.

(5)  For the purposes of this section, the starting date for reckoning the period of limitation under subsection (4 )(b) above is the earliest date on which the plaintiff or any person in whom the cause of action was vested before him first had both the knowledge required for bringing an action for damages in respect of the relevant damage and a right to bring such an action.

(6)  In subsection (5) above "the knowledge required for bringing an action for damages in respect of the relevant damage" means knowledge both —

> (a)  of the material facts about the damage in respect of which damages are claimed; and

> (b)  of the other facts relevant to the current action mentioned in subsection (8) below.

(7)  For the purposes of subsection (6)(a) above, the material facts about the damage are such facts about the damage as would lead a reasonable person who had suffered such damage to consider it sufficiently serious to justify his instituting proceedings for damages against a defendant who did not dispute liability and was able to satisfy a judgment.

(8)  The other facts referred to in subsection (6)(b) above are —

> (a)  that the damage was attributable in whole or in part to the act or omission which is alleged to constitute negligence; . . . .

Limitation Act, 1980, c. 58, § 14A (Eng.).

The applicable limitation period in this case would be three years after the starting date.  The earliest possible starting date was the date on which Statek "first had the knowledge required for bringing an action for damages in respect of the relevant damage" – *i.e.*, knowledge that Statek's inability to find, freeze and execute on assets fully to satisfy its judgments against Johnston and Spillane was attributable, in whole or in part, to Coudert's failure to provide Statek with helpful documents and information.  Statek did not know that Coudert even had any such documents and information until sometime after November 7, 2002, when the law firm first produced documents to the trustee of Johnston's bankruptcy estate, and the trustee gave copies to Statek at an even later time.  This action was commenced less than three years after that event.

As such, Statek's claim is not barred under the English statute of limitations. *See, e.g., Haward v. Fawcetts*, [2006] 3 A.L.L. E.R. 497 at ¶¶ 8-11 (discussing the knowledge required to start the running of Section 14A).

Moreover, under Section 32(1)(c) of the Limitation Act, where the plaintiff's action "is for relief from the consequences of a mistake," the limitations period does not begin to run "until the plaintiff has discovered the . . . mistake . . . or could with reasonable diligence have discovered it." Section 32(1), which also applies in cases of fraud or where a defendant has concealed relevant facts, tolls the limitations period otherwise applicable to the claim until the plaintiff has discovered (or should have discovered) the mistake, fraud, or concealment. Courts interpreting Section 32(1) have observed that the tolling provision is necessary to prevent the anomalous result that an action could become time-barred before the plaintiff learns of the facts underlying its claim. *See, e.g., Sheldon v. R.H.M. Outhwaite (Underwriting Agencies) Ltd.* [1995] 2 All ER 558, HL, at 9 (reversing the lower court and criticizing an interpretation of Section 32(1) "under which a plaintiff's right of action can become time barred before he even becomes aware of the relevant facts").

This is an action "for relief from the consequences of a mistake" — the mistake being the Coudert firm's negligent misrepresentation that it had turned over to Statek all of its client files, when in fact it had not. Under Section 32(1), the statute of limitations could not have begun to run until Statek learned of that mistake, *i.e.*, when Statek first learned that Coudert had not provided Statek with all its client files. As noted above, the earliest that date could have been was sometime after November 7, 2002, when Coudert first produced additional documents to the Johnston bankruptcy trustee. For this reason as well, Statek's claim is timely under English law. Moreover, Statek remains convinced that there has not been a full production of documents and

information (see footnote 9 above), and this raises the possibility that the commencement of the

limitation period under English law will be reset to the date when full production of documents

and information is confirmed.

### 5.    Coudert's Brief Grossly Misstates the Facts

Although Coudert's motion to dismiss must fail for the simple reasons that it

misconstrues the law governing the statute of limitations and relies heavily on inaccurately stated

facts outside the complaint, we cannot allow certain factual misstatements to go unanswered —

irrelevant as they are.   We address the most glaring misstatements in Coudert's Supplemental

Brief:

- On page 2, Coudert asserts that "Coudert had a pending motion to dismiss [for personal jurisdiction reasons] the action Statek commenced in Connecticut." There is no such pending motion with respect to the amended complaint. And, for reasons explained in Statek's Supplemental Brief and apparently accepted by the Second Circuit, Coudert forfeited that defense.

- On page 3, Coudert suggests that this Court "has already held" that the English statute of limitations would apply under the Restatement, and that Statek's failure to seek reconsideration of that "finding" somehow binds Statek. First, the Court's statement was not a "holding." The Court was explicit in ruling that "the only basis in this procedural posture for dismissing [Statek's] negligence claim . . . would be based upon the applicability of the New York borrowing statute." *See* Statek's Supp. Brief, Ex. A (Transcript of May 18, 2009 Oral Argument) at 101. Regarding the English statute of limitations, the Court noted that Coudert's argument raised numerous factual issues and "on a motion to dismiss that inquiry is precluded." *Id.* Second, and more importantly, the Second Circuit's decision and instruction to apply Connecticut choice of law also precludes the invocation of the Restatement.

- On page 6, Coudert alleges that "Statek's amended complaint limited the Claim to one based on the alleged negligent failure of Coudert's London office *in 1996* to provide documents to Statek" (emphasis added). This allegation is repeated on Pages 9 and 27-28. The amended complaint is not so limited because

it also alleges continuous tortious conduct that continued on past 1996. *See* Doc. No. 1153-8 (Amended Complaint) at ¶¶ 36 ("Coudert did not provide Statek with complete and inaccurate information about the Statek services or the contents of all of its Statek files either when first requested in 1996 *or at any time since.*"); 61 ("Coudert breached *and continues to breach* its professional and fiduciary duties to its client Statek . . . .") (emphasis added).

- On page 8, Coudert contends that the Connecticut District Court "had grave reservations" about whether personal jurisdiction over Coudert existed, that the District Court "found" that Connecticut had "very little" connection to Statek's claim, and that it "found" that Coudert's alleged actions "were centered in England." In reality, the District Court took note of the "legitimate claims" concerning a personal jurisdiction defense that would "increase the expense and reduce the efficiency of litigation in Connecticut." Doc. No. 1212 (Coudert's Opp. to Reconsideration Motion, Appendix (Transcript of Feb. 21, 2008 Motion Hearing in Connecticut District Court), at 33. The District Court did not rule on the merits of the personal jurisdiction question — as it explicitly stated — rather, the court was considering the different legal question of how much deference it should give to the plaintiff's choice of forum, a factor in deciding the motion it was considering, the motion to dismiss on the ground of *forum non conveniens. Id.*

- On page 15, Coudert states that Statek "had no place of business in Connecticut during the time relevant to Statek's claim. . . ." That argument ignores the conceded fact that Johnston and Spillane operated Statek's business out of Connecticut and dealt with Coudert from their base of operations in Connecticut.

- On page 19, Coudert baldly asserts that it is "undisputed" that this action is untimely under English law. As already explained, even if English law governed, the action is timely under the plain language of the English statute.

- On page 19, Coudert purports to set forth "undisputed" facts that are not. It states that "[i]n 1994 Statek commenced suit under § 255 of the Delaware General Corporation Law to determine that Johnston and Spillane were not the lawful directors of TCI II, Statek's parent." The proceeding in the Delaware Chancery Court was commenced under § 225 by Miklos Vendel and Arbitrium (Cayman Islands) Handels A.G., owners of Statek's holding company.

- On page 19, Coudert writes that this Court "concluded, in 1996, Statek <u>knew</u> that Johnston and Spillane were fraudsters and that Coudert had been advising it, including in connection with setting up a subsidiary *and buying an apartment*." *Id.* (citing Doc. No. 1208-1 (Ruling filed July 22, 2009) at 32) (underscoring in original; italics added). It is correct that the transcript indicated that the Court believed Coudert provided advice about buying an apartment. Most respectfully, we believe this was a misstatement, however; as the Court had indicated earlier, the apartment had been leased, not bought. *See* Statek's Supp. Brief, Ex. A (Transcript of May 18, 2009 Oral Argument) at 62, 78.

- On page 24, Coudert argues that it is "indisputable" that once Johnston and Spillane were ousted from the company, the relationship between Statek and Coudert ended. To the contrary, Statek continued to have contacts with Coudert that were part of an ongoing attorney-client relationship. Again, Coudert is going beyond the facts of the amended complaint and reasonable inferences drawn from those facts, as it is not permitted to do in a motion to dismiss.

- On page 26, Coudert asserts that "Statek has repeatedly stated in its papers in this matter that Coudert represented Statek only from 1990 to 1996." Again, notwithstanding the fact that this is not a proper basis for a motion to dismiss, Statek has said no such thing. Statek has stated that the Coudert firm performed legal work for Statek during that period, and that much is clear. But the firm's obligations to Statek continued, and its failure to produce documents and information requested by Statek, along with its inaccurate representation that it had provided everything to its client at the latter's request, also continued.

In sum, Coudert's assertions of "fact" are no better than its attempts to distort the relevant legal precedent and convince this Court to ignore the clear and unconditional instruction of the Second Circuit on remand. Perhaps it plans on creating further delay in the unlikely event that this Court would be convinced to do that and necessitate yet another expensive and time-consuming appeal.

## CONCLUSION

As held by the Court of Appeals for the Second Circuit, the Motion to Reconsider has to be decided under Connecticut's choice of law rules, and those rules require the application of Connecticut's limitations law to the pending motion since it raises a question of procedure. While the accusation of contempt should not be lightly made, Coudert's attempt to mislead this Court into committing error and defying the mandate of the Court of Appeals is, if not actual contempt, contemptuous in attitude. Statek's claim was filed in a timely fashion under Connecticut law because it arose from a continuing course of conduct whereby Coudert repeatedly breached its duties to Statek by failing to provide the requested documents and information well into the three-year period that governed. Coudert cannot demonstrate, based on the face of the complaint, that Statek can prove no set of facts that would entitle it to relief, and the Motion to Dismiss must be denied.

Statek respectfully submits that Coudert's Motion to Disallow Claim No. 239 filed by Statek should be denied.

Dated:  October 17, 2012

HUGHES HUBBARD & REED LLP

By: _____
    Edward J.M. Little
    Lisa A. Cahill
    David B. Shanies
    One Battery Park Plaza
    New York, New York 10004
    212-837-6400
    212-299-6400 (fax)

*Attorneys for Statek Corporation*

S-423

06-12226-rdd    Doc 1489-1    Filed 10/17/12    Entered 10/17/12 11:50:59    Exhibit A
Pg 1 of 73

# EXHIBIT A

S-424

# 10-2723-CV

## United States Court of Appeals

*for the*

## Second Circuit

In Re:

COUDERT BROTHERS LLP,

*Debtor.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLEE
## DEVELOPMENT SPECIALISTS, INC.,
## PLAN ADMINISTRATOR FOR COUDERT BROTHERS LLP

DAVID S. TANNENBAUM
KAREN S. FRIEMAN
STERN TANNENBAUM & BELL LLP
*Attorneys for Appellee Development*
*Specialists, Inc., Plan Administrator*
*for Coudert Brothers LLP*
380 Lexington Avenue
New York, New York 10168
(212) 792-8484

06-12226-rdd    Doc 1489-1    Filed 10/17/12    Entered 10/17/12 11:50:59    Exhibit A
Pg 3 of 73

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Development

Specialists, Inc, Plan Administrator for Coudert Brothers LLP, certifies that it has

no parent corporation and no publicly held corporation owns 10% or more of its

stock.

S-426

## TABLE OF CONTENTS

PAGE NO.

PRELIMINARY STATEMENT .................................................................................. 1

JURISDICTIONAL STATEMENT ............................................................................ 2

STATEMENT OF ISSUES ......................................................................................... 2

STATEMENT OF THE CASE .................................................................................... 3

STATEMENT OF FACTS .......................................................................................... 12

STANDARD OF REVIEW ......................................................................................... 18

SUMMARY OF ARGUMENT ................................................................................... 19

ARGUMENT ............................................................................................................... 23

POINT I - THE BANKRUPTCY COURT PROPERLY APPLIED THE CLEAR
HOLDING OF *GASTON* WHICH IS APT AND BINDING HERE ...................... 23

    A.    *Gaston* Is Not Limited to Adversary Proceedings. ............................ 25

    B.    Statek's Baseless Claim of Prejudice Does Not Support Limiting
    *Gaston*. ..................................................................................................... 28

        1.    Statek cannot distinguish *Gaston* on its facts. ........................... 28

        2.    Transfer cases under 28 U.S.C. §1404 are entirely inapt. ........... 30

        3.    Statek voluntarily participated in the Bankruptcy. ...................... 35

        4.    Statek cannot distinguish Gaston on policy grounds. ................. 36

POINT II - STATEK'S RELIANCE ON OTHER COURT'S RULINGS
PROVIDES NO BASIS FOR DISREGARDING *GASTON* .................................... 38

POINT III - THE BANKRUPTCY COURT DID NOT ABUSE ITS
DISCRETION .............................................................................................................. 45

S-427

POINT IV - NEW YORK LAW WOULD APPLY UNDER A FEDERAL
CHOICE OF LAW ANALYSIS.......................................................................... 52

POINT V - CONNECTICUT'S STATUTE OF LIMITATIONS WOULD
NOT BE APPLIED BY THE CONNECTICUT DISTRICT COURT
AND STATEK'S CLAIM WOULD NOT BE TIMELY THEREUNDER........... 54

CONCLUSION ................................................................................................. 59

S-428

## TABLE OF AUTHORITIES

PAGE NO.

### Cases

Am Equities Group, Inc. v. Ahava Dairy Prods. Corp.
    2004 U.S. Dist. LEXIS 6970 (S.D.N.Y. Apr. 23, 2004) ...................................... 24

Ashcroft v. Iqbal,
    129 S. Ct 1937 (2009) ........................................................................ 14

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ........................................................................... 14

Bellemare v. Wachovia Mortgage Corp.,
    94 Conn. App. 593, 894 A.2d 335 (Conn. App. Ct. 2006), ................................ 56

Bianco v. Erkins (In re Gaston & Snow,
    243 F.3d 599 (2d Cir. 2001), ...................................................... passim

Bush v. MONY Life Ins. Co. of Am.,
    2008 WL 4874137  (D. Conn. Nov. 10, 2008) .................................... 24

Butner v. United States, 440 U.S. 48, 99 S. Ct. 914 (1979) .................................. 50

Caribbean Wholesales & Serv. Corp. v. US JVC Corp.,
    855 F. Supp. 627 (S.D.N.Y. 1994) ....................................................... 31

Collum v. Chapin,
    40 Conn. App. 449 (Conn. App. Ct. 1996) ............................................ 55

DeCorso v. Watchtower Bible and Tract,Soc'y
    46 Conn. Super. 386, 394, 752 A.2d 102 (Conn. Super. Ct. 2000) .................... 55

Dixon v. Evans,
    2008 WL 1948071 (Conn. Super. Ct. Apr. 22, 2008) .......................... 55

S-429

Ely Lily Do Brasil, Ltda. v. Federal Exp. Corp.,
   2005 WL 2312547 (S.D.N.Y. Sept. 21, 2005) ................................................... 24

Empire HealthChoice Assur., Inc. v. McVeigh,
   396 F. 3d 136 (2d Cir. 2005) ......................................................................... 24

Erickson v. Pardus, 551 U.S. 89 (2007) .............................................................. 14

Erie R.R. Co. v. Tompkins,
   304 U.S. 64, 58 S. Ct. 817 (1938) .................................................................. 29

Ferens v. John Deere Co.,
   494 U.S. 516 (1990)................................................................................ passim

Forlastro v. Collins,
   2007 WL 2325865 (S.D.N.Y. Aug. 14, 2007) .................................................. 31

In re Brill,
   318 B.R. 49 (Bankr. S.D.N.Y. 2004)........................................................ 26, 36

In re Cutler-Owens Int'l Ltd.,
   55 B.R. 291 (S.D.N.Y. 1985) ........................................................................ 50

In re Delphi Corp.,
   2009 WL 803598 (S.D.N.Y. Mar. 24, 2009)................................................... 46

In re Dow Corning,
   419 F.3d 543 (6th Cir. 2005) ............................................................ 20, 26, 27

In re Enron Corp.,
   357 B.R. 32 n. 22 (Bankr. S.D.N.Y. 2006) ...................................................... 24

In re F. Elliot Siemon,
   421 F.3d 167 (2d Cir. 2005) ............................................................................ 2

In re Flanagan,
   503 F. 3d 171 (2d Cir. 2007) ................................................................... 18, 46

In re Friedlander Capital Mgmt. Corp.,
   411 B.R. 434 (Bankr. S.D.Fla. 2009) ............................................................. 45

S-430

In re Global Indus. Techs Inc.,
 333 B.R. 251 (W.D. Pa. 2005).............................................................. 27, 43

In re Global Vision Prods., Inc.,
 2009 WL 2170253 (S.D.N.Y. July 14, 2009)......................................... 46

In re Greig,
 2005 WL 3783836  (Bankr. S.D.N.Y. 2005)........................................ 26, 36

In re Hess,
 404 B.R. 747 (Bankr. S.D.N.Y. 2009)................................................... 26

In re Hydrogen, LLC,
 431 B.R. 337 (Bankr. S.D.N.Y. 2010)................................................ 23, 24

In re Jafari,
 378 B.R. 575 (Bankr. W.D. Wis. 2007) ............................... 27, 28, 41, 50

In re Kaiser Group Int'l, Inc.,
 421 B.R. 1 (Bankr. D.D.C. 2009) ......................................................... 32

In re Kaiser Group Int'l Inc.,
 2010 WL 3271198  (D. Del. Aug. 17, 2010).................................. 20, 29, 33, 47

In re Kalikow,
 602 F.3d 82 (2d Cir. 2010) ............................................................. 18, 46

In re Merritt Dredging Co.,
 839 F. 2d 203 (4th Cir. 1988) .......................................................... 19, 25

In re Michael G. Tyson,
 433 B.R. 68 (S.D.N.Y. 2010) ............................................................... 23

In re Overmyer Co., Inc.,
 12 B.R. 777 (Bankr. S.D.N.Y. 1981.).................................................... 24

In re Ovetsky,
 100 B.R. 115 (Bankr. N.D. Ga. 1989) ........................................... 11, 42, 44

v

In re Payroll Ex press Corp.,
  2005 WL 3789326 (Bankr. S.D.N.Y. July 28, 2005)..........................................24

In re Prof'l Investors Ins. Group., Inc.,
  232 B.R. 870 (Bankr. N.D. Tex. 1999) ...............................................................42

In re PSINet Inc.,
  268 B.R. 358 (Bankr. S.D.N.Y. 2001)................................................................24

In re Rolling Thunder Gas Gathering, L.L.C.,
  348 B.R. 803 (Bankr. D. Kansas 2006).........................................................20, 26

In re Saba Enters., Inc,
  421 B.R. 626 (Bankr. S.D.N.Y. 2009)................................................................24

In re Segre's Iron Works, Inc.,
  258 B.R. 547 (Bankr. D. Conn. 2001).....................................................11, 43, 44

In re SMEC, Inc.,
  160 B.R. 86 (M.D. Tenn. 1993)..........................................................................43

In re Stanwich Fin. Servs. Corp.,
  317 B.R. 224 n. 5 (Bankr. D. Conn. 2004).........................................................44

In re Teligent Inc.,
  324 B.R. 479 (S.D.N.Y. 2005) .....................................................................25, 26

In re Wireless Data, Inc.,
  547 F.3d 484 (2d Cir. 2008) .........................................................................18, 46

In re Worldcom, Inc.,
  2006 WL 3782712 , n. 3 (Bankr. S.D.N.Y. Dec. 21, 2006).........................20, 26

Ins. Co. of N. Am. v. ABB Power Generation,
  91 N.Y.2d 180, 668 N.Y.S.2d 143 (1997)..........................................................37

Iragorri v. United Techs. Corp.,
  274 F.3d 65 (2d Cir. 2001) ................................................................................47

S-432

Jones v. Comm'r,
    129 T.C. 146 (2007)................................................................. 58

L.F. Pace Constr., Inc. v. Simko,
    2007 WL 4686485  (Conn. Super. Ct. Dec. 7, 2007)........................................ 57

Lewis Tree Serv., Inc. v. Lucent Techs., Inc.,
    239 F. Supp. 2d 322 (S.D.N.Y. 2002) ................................................... 24

Long Island Sav. Bank, FSB v. Aaron,
    225 A.D.2d 776 , 639 N.Y.S.2d 850 (2d Dep't 1996) ......................................... 56

McKenna v. Wright,
    386 F.3d 432 (2d Cir. 2004) .......................................................... 14

McTyre v. Broward Gen. Med. Ctr.,
    749 F. Supp. 102 (D. N.J. 1990)................................................... 32, 34

Mopex, Inc. v. Am. Stock Exch.,
    2002 WL 342522  (S.D.N.Y. Mar. 5, 2002).......................................... 31, 32

Norwood v. Kirkpatrick,
    349 U.S. 29 (1955)................................................................. 31

Phillips v. Scott,
    446 F. Supp. 2d 70 (D. Conn. 2006)................................................. 54

Piteo v. Gottier,
    112 Conn. App. 441 (Conn. App. Ct. 2009)........................................... 55

Poe v. Budget Rent-a-Car Sys., Inc.,
    2008 WL 2725803  (D. Virgin Islands July 11, 2008)........................................ 32

Raleigh v. Illinois Dep't of Revenue,
    530 U.S. 15 (2000)............................................................ passim

Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC,
    795 A.2d 572 (Conn. App. Ct. 2002) ................................................. 57

vii

Sanborn v. Greenwald,
   664 A.2d 803 (Conn. App. Ct. 1995) ..................................................... 55

Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,
   549 F. 3d 137 (2d Cir. 2008) ........................................................... 24

Shipping Corp. of India LTD  v. Jaldhi Overseas PTE LTD,
   585 F.3d 58 (2d Cir. 2009) ............................................................. 3

Technicorp Int'l. II, Inc. v. Johnston,
   2000 WL 713750 (Del. Ch. May 31, 2000) ........................................ 16

Toy Biz Inc. v. Centuri Corp.,
   990 F. Supp. 328 (S.D.N.Y. 1998) .................................................. 49

Van Dusen v. Barack,
   376 U.S. 612 (1964) ................................................................ passim

Vanliner Ins. Co. v. Fay,
   98 Conn. App. 125 (Conn. App. Ct. 2006) ........................................ 58

Vanston Bondholders Protective Comm. v. Green,
   329 U.S. 156 (1946) ................................................................ passim

Zervos v. Verizon N.Y., Inc.,
   252 F.3d 163 (2d Cir. 2001) .......................................................... 46

Statutes

28 U.S.C. §1391(a)(1) ..................................................................... 48

28 U.S.C. §1391(a)(2) ..................................................................... 48

28 U.S.C §1391(a)(3) ...................................................................... 48

11 U.S.C. §502(b)(1) ...................................................................... 40

28 U.S.C. § 1412 ...................................................................... 32, 33

28 U.S.C. §§1452 ........................................................................... 6

S-434

28 U.S.C. §1334 ............................................................................ 2, 6

28 U.S.C. §1404 .......................................................................... passim

28 U.S.C. §158(a)(1) ......................................................................... 2

Connecticut General Statutes § 52-577 ............................................ 55

CPLR 202 ........................................................................................ 19

CPLR 214 ........................................................................................ 19

## Rules

Fed. R. Bankr. P.  9014 ................................................................... 10

Fed. R. Bankr. P. 7001 .................................................................... 26

Fed. R. Bankr. P. 9027 ...................................................................... 6

Fed. R. Bankr. P. 8012 ...................................................................... 2

Fed. R. Evidence 411 .................................................................. 37, 38

Restatement (2d.) of Conflicts  § 142 ............................................. 22

## Treatises

10 Collier on Bankruptcy ¶9023.03 (15th ed. 2009)...................... 2

S-435

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

-------------------------------------------------------x
                                    :

IN RE:  COUDERT BROTHERS LLP,         :

            Debtor.            :     10-2723-CV

                                      :
-------------------------------------------------------x

## BRIEF OF APPELLEE DEVELOPMENT SPECIALISTS, INC.

## PRELIMINARY STATEMENT

      Appellee Development Specialists, Inc., as plan administrator for Debtor

Coudert Brothers LLP ("Coudert"), respectfully submits this brief in opposition to

the appeal of Appellant Statek Corporation ("Statek") from the order of the

Honorable Alvin K. Hellerstein, United States District Judge for the Southern

District of New York (the "District Court"), entered on June 14, 2010 (the "District

Court Affirmance").  (SPA-1.)  That order affirmed the orders of the Honorable

Robert D. Drain, United States Bankruptcy Judge for the Southern District of New

York (the "Bankruptcy Court"), disallowing Statek's claim (the "Claim") against

Coudert's bankruptcy estate (the "Disallowance Order") and denying Statek's

motion for reconsideration (the "Reconsideration Order").  (SPA-7; SPA-43.)[1]

-------------------------

[1] Pursuant to Coudert's First Amended Plan of Liquidation, effective as of
September 8, 2008, Coudert's Plan Administrator, Development Specialists, Inc.,
succeeded to its rights.  For ease of understanding, we refer to the Debtor as
                                            (Continued)

## JURISDICTIONAL STATEMENT

The Bankruptcy Court had jurisdiction to hear Coudert's motion to disallow Statek's claim and Statek's motion for reconsideration pursuant to 28 U.S.C. §1334 and the *Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York*, dated July 14, 1984 (Ward, Acting C.J.).

Without finding it necessary to hear oral argument under Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 8012, the District Court, which had jurisdiction to do so pursuant to 28 U.S.C. §158(a)(1), properly affirmed both the Disallowance Order and the Reconsideration Order.[2]

## STATEMENT OF ISSUES

Whether this Court should overrule or, for the first time, limit its clear holding in *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599 (2d Cir. 2001), *cert. denied*, 534 U.S. 1042 (2001) ("*Gaston*"), in adherence to which the Courts below properly applied New York's borrowing statute to bar Statek's state law

_____

(Continued)
Coudert.  References herein to the Joint Appendix and the Special Appendix are "A-__" and "SPA-__", respectively.

[2]   While Statek timely filed a Notice of Appeal from the District Court Affirmance, it is not clear that Statek's initial appeal from the Disallowance Order was timely as it was not filed until after the Reconsideration Order. *See, e.g., In re F. Elliot Siemon*, 421 F.3d 167, 169 (2d Cir. 2005); 10 *Collier on Bankruptcy* ¶9023.03 (15th ed. 2009) at 9023-4; *see also* SPA-46, n 7.

2

S-437

Claim for negligence, which Claim Statek conceded was time barred under New York's applicable statute of limitations.[3]

## STATEMENT OF THE CASE

Nothing in Statek's "Statement of the Case" detracts from this Court's clear holding in *Gaston* which was properly applied by the Bankruptcy Court to disallow Statek's Claim.  As demonstrated below, Statek's efforts to distinguish or limit *Gaston* are unconvincing and unavailing.  Moreover, Statek's statement is dedicated to falsely portraying it as having been unfairly and unexpectedly deprived of an active, properly sited and timely filed case in the United States District Court for the District of Connecticut (respectively, the "Connecticut Action" and the "Connecticut District Court") by the application of *Gaston*. However, nothing could be farther from the truth than the impression Statek seeks to create.

In reality:

(1) at the time Statek filed its Connecticut Action, it was aware that Coudert, a New York partnership, was in dissolution (A-9, ¶ 4);

---

[3] Respectfully, a single panel of this Court would be without power to overrule *Gaston*.  *See, Shipping Corp. of India LTD  v. Jaldhi Overseas PTE LTD,* 585 F.3d 58, 67 (2d Cir. 2009).

S-438