(2) the Connecticut Action was dismissed at its earliest stages, before an answer was filed, on forum *non conveniens* grounds (A-193; A-1172-1214);

(3) the Connecticut District Court held that "Connecticut has very little connection to the claims raised in the present complaint. . . there is very little connection to Connecticut" (A-1203);

(4) that Court, while holding in abeyance Coudert's motion to dismiss for lack of personal jurisdiction, further held: "it's not at all clear . . . that there is personal jurisdiction... and it's not apparent to me . . . why Connecticut has much, if any, connection to this dispute." (A-1180);

(5) Statek intentionally, deliberately and unequivocally chose to have its Claim mediated and then determined in the Bankruptcy Court (pp. 6-10, *infra*); and

(6) Statek cannot demonstrate that even a Connecticut court would have applied Connecticut's statute of limitations, or that its complaint was timely thereunder.

Thus, contrary to the theme underlying Statek's papers, it is neither surprising nor unfair, but rather, entirely correct, that Statek's Claim was disallowed by the Bankruptcy Court which properly followed this Court's holding in *Gaston*.

4

S-439

On November 5, 2005, Statek and its alleged parent, Technicorp Interna-
tional II, Inc. ("TCI II"), commenced a Connecticut state court action against
Coudert (and other defendants) alleging, *inter alia*, that Coudert breached its pro-
fessional duty of care by allegedly failing to turn over all files to the plaintiff more
than nine years earlier in July, 1996.[4]  Statek further alleged that this damaged
Statek and TCI II by allegedly delaying and hampering their ability to collect
assets misappropriated by their officers and directors, Hans Frederick Johnston and
Sandra Spillane, who had solely and exclusively operated TCI II.  (A-10, ¶ 13.)
The complaint also alleged that Coudert was a New York partnership which was
already in dissolution.  (A-9, ¶ 4.)

Although Statek now asserts that it filed its complaint in reliance on
Connecticut law (Brief for Appellant Statek Corporation ("Statek Br."), p. 4), its
complaint referred to only New York law (A-36-41) and Statek subsequently
asserted that its claims were based on English law.  (A-340.)

On or about February 3, 2006, Coudert filed a pre-answer motion to dismiss
Statek's complaint on the grounds of lack of personal jurisdiction and forum *non
conveniens*.  On September 22, 2006, while that motion was pending, Coudert,
which had been headquartered in New York for over 150 years, and which had

---

[4] The complaint alleged numerous types of wrongdoing by Coudert, including that
it was complicit with Johnston and Spillane; those (baseless) allegations were all
abandoned when Statek amended its complaint.

5

S-440

been in dissolution for some time, filed a bankruptcy petition in the Bankruptcy
Court.  On or about January 30, 2007, Statek and TCI II filed their Claim in the
approximate amount of $85,000,000, expressly incorporating the Connecticut
Action's complaint.

Coudert's motion to dismiss the Connecticut Action was also still pending
when, on or about March 23, 2007, Coudert removed it to the Connecticut District
Court pursuant to 28 U.S.C. §§1452 and 1334 and Fed. R. Bankr. P. 9027.  (A-47.)

Although Statek sought relief from the automatic stay, it voluntarily agreed
to resolve its motion for relief by stipulation, dated September 5, 2007, which
allowed for discovery only regarding, and decision by the Connecticut District
Court on, Coudert's pending dispositive motion to dismiss.  (A. 188-192.)[5]

On February 21, 2008, the Connecticut District Court issued its decision on
Coudert's motion, stating it would hold the jurisdictional motion in abeyance and
granting Coudert's motion to dismiss the action on the grounds that the forum was
inconvenient.  As noted above, the Court held: "I think the plaintiff's choice of
forum should not be given significant weight in part because Connecticut has very
little connection to the claims raised in the present complaint. . . there is very little
connection to Connecticut."  (A-1203.)

---

[5] The stipulation also provided for the classification of Statek's Claim in the
Bankruptcy.

S-441

In explaining its decision, the Court further held that either New York or

England would be "preferable to Connecticut as alternatives..." and that "either of

those courts would be a more convenient place in terms of traditional factors than

would Connecticut."  (A-1205-06.)

The Connecticut District Court further found:

> ... there is not any great interest on the part of
> Connecticut to have this case heard here, it seems to me,
> neither plaintiff having, either in one case or in the other
> case, any significant connection to the state.... [B]oth
> England and New York have a greater public interest in
> having this matter heard than does the State of
> Connecticut.

(A-1206-07.)  The Connecticut District Court also <u>expressly declined</u> Statek's

request to transfer the action to New York pursuant to 28 U.S.C. §1404.  (A-1192,

1207.)

Finally, although the Connecticut District Court did not reach the issue of

personal jurisdiction, it noted:

> <u>it's not at all clear . . . that there is personal jurisdiction</u>
> over either the firm or the remaining individual partner
> in that firm. . . There's a fairly strong showing that the
> matter arises out of activities that occurred principally
> abroad, and <u>it's not apparent to me . . . why Connecticut</u>
> <u>has much, if any, connection to this dispute.</u>

(A-1180; emphasis supplied.)

On Statek's motion, the Connecticut District Court issued an Order dated

March 5, 2008, superseding its original decision by making the dismissal

S-442

contingent upon Coudert waiving any defense based upon the running of the

statute of limitations during the period from the commencement of the Connecticut

Action to the refiling of the case by Statek and stipulating to relief from the

automatic stay to allow the plaintiffs to re-file the case. (A-215.)

Coudert declined to agree to these conditions and, although the Connecticut

District Court had judicially determined that Connecticut was not a proper forum,

the action was not dismissed. It remained stayed by Coudert's bankruptcy.[6]

On or about June 2, 2008, Statek moved again in the Bankruptcy Court for

relief from the automatic stay. However, it is <u>absolutely untrue</u> to state, as Statek

does, that the stay was "lifted …to permit the parties to continue with the

Connecticut action." (Statek Br., p. 3.) Rather, perhaps to avoid the renewal of the

motion to dismiss the Connecticut Action on jurisdictional grounds – which the

Connecticut District Court had indicated a likelihood of granting – Statek once

more agreed to settle its application for less than the relief sought. The resulting

stipulation of the parties, so ordered by the Bankruptcy Court on or about August

21, 2008 (A-350-357), provided that:

_____

[6] The Connecticut Action was dismissed on August 31, 2009, without prejudice to
its pursuit in the Bankruptcy Court and without prejudice to Statek moving to
reopen the case. (A-1229.) Statek argues that the District Court below erred in
describing this dismissal. (Statek Br., p 17.) Even if this is so, it is irrelevant to
the decisions below.

S-443

(a) Statek could file an amended complaint in the Connecticut Action to be incorporated in its Claim and to which Coudert would not be required to respond (*id.*, ¶¶2, 3);

(b) the parties would mediate Statek's Claim before Bankruptcy Judge Cecelia Morris pursuant to the Bankruptcy Court's General Mediation Order, and not before a magistrate of the Connecticut District Court as Statek originally requested (*id.*, ¶¶ 4, 5, 9 and p. 4);

(c) the parties would engage in limited discovery and the Bankruptcy Court retained jurisdiction over any discovery disputes (*id.*, ¶ 6); and

(d) Judge Morris would report the results of the mediation to the Bankruptcy Court (and not the Connecticut District Court), which, in the absence of a settlement, would then decide how to proceed  (*id.*, ¶¶11, 12).

Following limited discovery and after a number of mediation sessions, the parties agreed to present Coudert's motion to disallow the Claim to the Bankruptcy Court. (SPA-10.)  Coudert moved to disallow Statek's Claim on the grounds that it was time barred and on the grounds that it did not state a claim.  Statek, fully participating in the resolution of these issues by the Bankruptcy Court, opposed the motion on the merits and purported to cross-move for summary judgment on liability. (SPA-10.)

9

Judge Drain advised the parties that he would not entertain a summary judgment motion and that, "given the nature of the claim and the objections to it," and with the consent of the parties (SPA-7), he would incorporate in the claims disallowance motion the rules applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 9014. (SPA-9.) After substantial briefing and lengthy oral argument, in accordance with this Court's clear holding in *Gaston,* the Bankruptcy Court issued the Disallowance Order disallowing Statek's Claim as time barred by operation of New York's borrowing statute.

Statek moved for reconsideration arguing, as it had <u>not</u> done in opposing the disallowance motion, that Connecticut's statute of limitations should apply. The Bankruptcy Court properly exercised its plenary discretion to deny that motion as Statek had provided no basis for reconsideration. (SPA-43-50.) Although Statek purports to take this appeal from the Reconsideration Order, it provides no argument or grounds for overturning that entirely proper and correct decision.

By Order and Opinion of Judge Alvin K. Hellerstein, entered June 14, 2010, the District Court affirmed the Bankruptcy Court's Disallowance Order and Reconsideration Order in all respects and this appeal followed. (SPA-1-6.)

Statek acknowledges that in *Gaston* this Court clearly held that "in a case based on bankruptcy jurisdiction and without a countervailing federal interest, the court applies the choice of law rules of the state in which it sits." (Statek Br., p. 4.)

10

Statek does not assert there is any countervailing federal interest here, but complains that the Courts below applied *Gaston* "mechanically." However, there is nothing "mechanical" – or reversible – about the proper application of binding precedent.

Nonetheless, Statek argues that rather than follow *Gaston*, the Courts below should have followed the rulings of two earlier bankruptcy court decisions, *In re Segre's Iron Works, Inc.*, 258 B.R. 547 (Bankr. D. Conn. 2001), and *In re Ovetsky*, 100 B.R. 115 (Bankr. N.D. Ga. 1989). However, as will be developed below, *Segre's* reflects a line of cases expressly rejected by this Court in *Gaston*, and nothing in the out-of-circuit *Ovetsky* supports limiting this Court's clear holding in *Gaston*.

Similarly, Statek's reliance on *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156 (1946), is misplaced. This Court expressly distinguished *Vanston* in its ruling in *Gaston* and nothing in *Vanston* supports Statek's apparent notion that the Bankruptcy Court was free to ignore all legal principles to come to what Statek would view as a "just" result. Moreover, the Supreme Court in *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 24 (2000), clearly held that *Vanston* does not apply, as Statek here asserts, to the validity of claims in the first instance.

S-446

Finally, and in any event, since Statek: (a) waited years to pursue Coudert; (b) elected to do so in Connecticut, a jurisdiction with no connection to its Claim, where Coudert was likely not subject to personal jurisdiction, and where the case was dismissed in its earliest stages; and (c) eventually chose to have its Claim determined in the Bankruptcy Court, there is simply nothing unjust about the result here.

The orders below were each correct and should be affirmed.

### STATEMENT OF FACTS

As set forth in full below, the gravamen of Statek's Claim against Coudert is that Coudert failed in 1996 – nine years before Statek commenced the Connecticut Action – to provide all documents to Statek relating to work Coudert had done while Statek and its parent were controlled by two individuals later found liable for defrauding the companies. As a result, Statek alleges, it was hampered in its ability to collect on the judgments it obtained against those individuals.

Coudert submits that Statek's Claim is without merit. In fact, should the Claim survive, which it should not, the evidence will demonstrate that Coudert did not act improperly. Moreover, because any information provided by Coudert was available to Statek from many other sources, regardless of when Coudert provided

12

S-447

it, Statek would be entirely unable to prove any compensable damages flowing from any actions by Coudert.[7]

Statek spends nearly one-third of its brief setting forth its version of the facts which is entirely irrelevant to the legal issue presented by the instant appeal and which is offered with virtually no record support.

Moreover, despite its lengthy submission, Statek fails to acknowledge two facts which are ultimately fatal to its appeal for reasons described below. First, it is clear that Statek for reasons of its own delayed pursuing Coudert for years while it pursued the wrongdoers who had injured it. Second, Statek repeatedly and voluntarily chose to place its Claim squarely in the Bankruptcy Court for decision.

Further, while Statek claims that all its allegations must be accepted as true, Statek's alleged "support" for its version of the facts is largely found, not in its pleading, but in the "Fact Statement" in Statek's papers below and the Evidentiary Appendix submitted by Statek in support of its "cross-motion" for summary judgment before the Bankruptcy Court. The Bankruptcy Court below never considered those factual assertions because it declined to consider the summary

---

[7] For example, Statek asserts that Coudert failed to produce documents to it in 1996 relating to the involvement of David Alford in Statek and relating to real estate in the Bahamas which may have been purchased with Statek funds. (Statek Br., p. 11.) However, Statek previously conceded that it knew Alford was involved in the company from other sources and knew enough to inquire about Bahamas real estate in 1996. (A-745-747.)

13

S-448

judgment motion and Coudert did not have the opportunity or need to respond to them. For this reason too, these "facts" too should be disregarded.[8]

For its appellate review, it is enough for this Court to take note that Statek's Amended Complaint (A-389) alleges that since 1984, Statek and TCI II were, with the consent of Miklos Vendel (the alleged equitable owner of TCI II, which in turn allegedly owns Statek), under the control of Johnston and Spillane, both officers and directors of TCI II and Statek. In 1993, Mr. Vendel commenced an action in Delaware for access to the books and records of the companies. In 1994, Vendel commenced another action and obtained a determination in January, 1996, from the Delaware Chancery Court, that he, and not Johnston or Spillane, was the lawful director of TCI II. In the course of that proceeding, or from the records obtained following the earlier suit, Statek learned that Coudert's U.K. affiliate had been retained by Johnston and Spillane to perform certain legal services. (A-747-749.)[9]

Thus, by January, 1996 – <u>over nine years before Statek commenced suit against Coudert</u> – Statek was aware of Johnston's and Spillane's wrongdoing and

---

[8] In addition, the allegations of Statek's complaint are not entitled to blind deference on a motion to dismiss. The factual allegations of the pleading must "be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct 1937, 1945-50 (2009); *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

[9] In the interest of simplicity, this affiliate too is referred to herein as "Coudert."

S-449

of the fact that Coudert had been advising them while they controlled Statek and TCI II, a fact the Bankruptcy Court found most compelling.  (SPA-40-41.)

Indeed, on January 15, 1996, almost immediately following the change in control of TCI II, Statek wrote to Coudert inquiring about any credit balance being held for Statek and directing Coudert not to transfer any funds belonging to Statek without authorization. (*See*, SPA-15-16; A-9; A-383.) [10]

In June, 1996, Statek and TCI II brought suit against Johnston and Spillane in Delaware alleging fraud, breach of fiduciary duty and corporate waste (the "Fraud and Waste Action").  In July, 1996, Statek and TCI II notified Coudert of the suit and asked Coudert to provide additional information.  Coudert provided information and certain files to Statek on or about September 17, 1996, again over 9 years before Statek commenced the Connecticut Action. (*See*, SPA-15-16; A-384.)  Statek alleges that Coudert failed at that time to produce all relevant files. (Statek Br., p. 8.)

---

[10] In its brief (Statek Br., p. 10), Statek implies it learned about Coudert's involvement in mid 1996.  However, the fact that Statek's attorney wrote to Coudert in January, 1996 belies this statement.  Indeed, Statek's Ms. Werren had admitted that she knew Coudert had done work for Statek earlier.  (A-747-49.)

S-450

In May, 2000, the Delaware Court issued its decision in the Fraud and Waste

Action, in favor of Statek and TCI II and against Johnston and Spillane.[11]  Statek

then allegedly undertook to collect on the judgment against Johnston and Spillane,

who the Delaware Court noted "moved money…with an élan and skill of a drug

cartel consigliore." *Technicorp Int'l. II, Inc. v. Johnston*, 2000 WL 713750, ** 1-2

(Del. Ch. May 31, 2000); *see also* SPA-9-10.[12]

Among Statek's attempts at collection was filing an involuntary bankruptcy

proceeding against Johnston in England.  (A-100, ¶ 12.)  A trustee was appointed

on October 2, 2002, and underlined almost immediately, on October 22, 2002, contacted

Coudert asking for additional files, thus demonstrating that, no later than October,

2002, Statek believed it had not received all information from Coudert – the

gravamen of Statek's claim here.  (A-620; SPA-41.)  Statek still did not sue

Coudert for over three more years.

On November 4, 2002, three years before Statek commenced suit against it,

Coudert provided additional information apparently received by the English trustee

on or about November 7, 2002.  (A-621.)  Since the trustee was appointed at the

---

[11] While Statek refers to a judgment in excess of $30 million, the judgment found
Johnston and Spillane liable to Statek in the amount of $19,812,942, and liable to
TCI II, in the amount of $10,501,329.  Although its Amended Complaint
eliminated TCI II as a plaintiff, Statek did not reduce its proof of claim to eliminate
the over $10 million in damages TCI II, and not Statek, had been awarded.
[12] Plainly, Statek's alleged injury was caused by these fraudsters and not by any
alleged record keeping errors by Coudert.

16

S-451

behest of Statek, it is reasonable to attribute his knowledge and information to Statek.[13]

On July 26, 2004 – <u>over a year before Statek commenced suit against Coudert</u>, the trustee <u>again</u> wrote to Coudert stating that his purpose was "to clarify whether or not you have provided full disclosure of your files to Statek <u>as we think that may not be the case</u>." (A-626.)  Nonetheless, Statek and TCI II waited <u>16 additional months</u> (on top of the eight years which had already passed since it first contacted Coudert) before commencing suit.

On November 5, 2005, Statek and TCI II commenced the Connecticut Action alleging that Coudert's alleged failure to turn over all of its files <u>nine years</u> earlier in July, 1996, constituted a breach of the professional duty of care. (A-32, ¶139.)  The subsequent procedural history is set forth above in the Statement of the Case and will not be repeated herein.  However, the foregoing demonstrates that Statek had ample opportunities to pursue Coudert <u>since 1996</u>.  It chose to wait nine years to do so while it was pursuing the real wrongdoers, Johnston and Spillane.

Having set its priorities and then, when it finally turned to Coudert, chosen to chart its course in the Bankruptcy Court, Statek may not now complain that its Claim was properly time barred by the lower court's proper application of the

---

[13] For the first time in its brief, Statek unbelievably asserts that Coudert's provision of documents to the trustee who Statek had appointed and on whom it relied to locate assets (A-100, ¶ 12; A-486-87) was wrongful. (Statek Br., p 50.)

S-452

choice of law principles of New York, which in any event has been judicially found to have a more significant relationship to the Claim than Connecticut (A-1206-07.)

Statek has offered no grounds for disregarding the clear, applicable and binding holding of this Court in *Gaston*. The District Court Affirmance must be affirmed.

## STANDARD OF REVIEW

Statek correctly states that the Court of Appeals reviews the Bankruptcy Court's conclusions of law *de novo* and that findings of fact are disturbed only when clearly erroneous. However, Statek also appears to argue that the Bankruptcy Court improperly exercised its discretion. To the extent that the Court below exercised or failed to exercise its discretion or equitable authority, the review of the District Court is for abuse of discretion. *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010); *In re Wireless Data, Inc.*, 547 F.3d 484, 492 (2d Cir. 2008) ("We accord deferential review to a bankruptcy court's exercise of its equitable authority...and we will reverse only for abuse of discretion"); *In re Flanagan*, 503 F. 3d 171, 179 (2d Cir. 2007).

Under these standards, the Disallowance Order, the Reconsideration Order and the District Court Affirmance were all correct and should be affirmed.

S-453

## SUMMARY OF ARGUMENT

Statek's hope for success here hinges entirely on its ability to demonstrate that Connecticut's statute of limitations should apply and that its Claim would be timely thereunder. It cannot make this showing because the Bankruptcy Court properly followed this Court's direction in *Gaston* and applied the law choice of rules of the forum, New York, as embodied in its borrowing statute, CPLR 202. Statek conceded that the Claim would be barred under New York's three year statute of limitations. Pursuant to the borrowing statute, no longer period could save Statek's Claim and Statek's claim therefore was time barred. (SPA-23.)[14]

Statek therefore attempts to distinguish or limit *Gaston*. However, its efforts to rely on earlier and/or out of circuit decisions that relied on law the Court rejected in *Gaston*, are unpersuasive and unavailing. Similarly, its effort to limit *Gaston* to adversary proceedings is without support in *Gaston* or elsewhere. Indeed, in deciding *Gaston*, this Court relied on the reasoning of *In re Merritt Dredging Co.*, 839 F. 2d 203, 206 (4th Cir. 1988), where the court held that the forum's choice of law rules applied to the bankruptcy trustee's objection to the creditor's claim.

---

[14] Statek's cause of action accrued no later than on September 17, 1996 when Coudert (allegedly) failed to turn over all files to it. (The Bankruptcy Court indicated it might have accrued earlier in 1996 or before (SPA- 40-41.)) It ran, under New York's applicable three year statute of limitations (CPLR 214), on September 17, 1999, six years before Statek filed suit.

S-454

Moreover, *Gaston* has uniformly been followed in this Circuit, and also followed elsewhere, in cases, such as this, involving the disallowance of claims. *See, In re Worldcom, Inc.*, 2006 WL 3782712 at * 8, n. 3 (Bankr. S.D.N.Y. Dec. 21, 2006); *In re Rolling Thunder Gas Gathering, L.L.C.*, 348 B.R. 803, 809 (Bankr. D. Kansas 2006); *In re Dow Corning*, 419 F.3d 543, 548 (6th Cir. 2005), and in myriad other areas.

Nor may Statek avoid *Gaston*'s holding by relying on, or analogizing to, cases under 28 U.S.C. § 1404, which hold that, in the event of transfer under that statute, the transferee Court should apply the law of the transferor Court. This is so for the simple reason that Statek's Connecticut Action was not transferred to the Bankruptcy Court. Indeed, the Connecticut District Court expressly declined to transfer the case to New York as Statek requested. (see, A-196, A-197, A-198, ¶15; A-1192, A-1207.)

Indeed, far more analogous is *In re Kaiser Group Int'l Inc.*, 2010 WL 3271198 *5 (D. Del. Aug. 17, 2010), where the Court held that when a case is transferred from one district to another by virtue of the pendency of a bankruptcy case, the law of the transferee applies. There, as here, the bankruptcy court applied the choice of law rules of the forum to bar the claim (this time the Debtor's) which had originally been asserted in state court elsewhere and then removed to the federal district court.

20

S-455

In a desperate after-the-fact effort to save its Claim from the summary dismissal it deserves, Statek argues that by following the clear holding of *Gaston*, the Courts below unfairly deprived Statek of an action which it alleges was properly sited and had a robust existence in Connecticut. However, even if this was a relevant concern – which it is not – both of these claims are demonstrably false.

Far from being properly venued in Connecticut, the Connecticut District Court dismissed the Connecticut Action on the grounds of forum *non conveniens* stating in the clearest language that: "Connecticut has very little connection to the claims raised in the present complaint. . . there is very little connection to Connecticut" (A-1203) and "… there is not any great interest on the part of Connecticut to have this case heard here, it seems to me, neither plaintiff having, either in one case or in the other case, any significant connection to the state." (A-1206-07.)[15]

Additionally, while the Connecticut District Court did not reach Coudert's motion challenging personal jurisdiction, it expressly noted that "it's not at all clear . . . that there is personal jurisdiction over either the firm or the remaining individual partner in that firm. . ." (A-1180.)

---

[15] The subsequent modifying decision of the Connecticut District Court is discussed above at pp. 7-8. That modification in no way detracts from the court's finding that Connecticut had very little interest in, or connection to, the action.

S-456

Further, far from being "robust," although some discovery was had, the Connecticut Action was dismissed at its earliest stages before an answer was filed.

In any event, even if the Courts below incorrectly applied *Gaston* – and they emphatically did not – Connecticut's limitations period would not apply. In the absence of *Gaston*, the Bankruptcy Court would have been bound to apply a federal choice of law analysis. Statek insisted below that this analysis should be done pursuant to §142 of the Restatement (Second) of Conflicts (the "Restatement). The Bankruptcy Court properly held that §142 required the application of New York's three year statute of limitations, which Statek conceded would bar its claim.

Statek now asserts that the Courts below should have applied the law of the jurisdiction with the most significant contacts with the Claim. However, it is clear that such an analysis would not call for the application of Connecticut's statute of limitations. Indeed, the Connecticut District Court already determined that Connecticut had little, if any, connection with Statek's claim. (See also, SPA-36-37, 40-41.)

Finally, even if for some reason the Bankruptcy Court determined to simply apply the law which the Connecticut District Court would have applied – and there is no basis in law for this – Statek has not demonstrated that such an exercise

22

would result in the application of Connecticut's statute of limitations or a finding

that Statek's claim was timely thereunder, which it was not.

In short, Statek offers no basis for limiting this Court's plain holding in

*Gaston* or for disturbing the correct orders below.

**ARGUMENT**

**POINT I**

**THE BANKRUPTCY COURT PROPERLY APPLIED
THE CLEAR HOLDING OF GASTON WHICH IS APT
AND BINDING HERE**

This Court's holding in *Gaston* could not be more clear or less equivocal:

> In deciding this appeal, we are required to resolve an
> issue that has divided the federal courts.  The issue is
> whether a bankruptcy court hearing claims that are based
> upon state law and do not implicate federal policy should
> apply federal choice of law rules or whether the rule of
> *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313
> U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), that
> federal courts exercising diversity jurisdiction must apply
> the choice of law rules of the forum state, should be
> extended.  Because federal choice of law rules are a type
> of federal common law, which federal courts have only a
> narrow power to create, we decide that bankruptcy courts
> confronting state law claims that do not implicate federal
> policy concerns should apply the choice of law rules of
> the forum state.

243 F.3d at 601-602 (emphasis supplied).

This holding has consistently been adhered to in bankruptcy cases in this

Circuit that have cited it.  *See, e.g., In re Michael G. Tyson*, 433 B.R. 68, 97

(S.D.N.Y. 2010); *In re Hydrogen, LLC*, 431 B.R. 337, 346 (Bankr. S.D.N.Y.

23

**S-458**

2010); *In re Saba Enters., Inc*, 421 B.R. 626, 648 (Bankr. S.D.N.Y. 2009); *In re Enron Corp.*, 357 B.R. 32, 51 n. 22  (Bankr. S.D.N.Y. 2006); *In re Payroll Express Corp.*, 2005 WL 3789326 \*2 (Bankr. S.D.N.Y. July 28, 2005); *Am Equities Group, Inc. v. Ahava Dairy Prods. Corp.*, 2004 U.S. Dist. LEXIS 6970 (S.D.N.Y. Apr. 23, 2004).   Indeed, less than a year ago, in *Hydrogen*, *supra*, 431 B.R. at 346, Chief Judge Gonzalez of the Bankruptcy Court clearly stated the expansive holding of *Gaston:* "<u>Bankruptcy courts adjudicating a state law claim should apply the choice of law rules of the forum state in the absence of federal policy concerns</u>." (Emphasis supplied.)

Moreover, the general and expansive import of *Gaston* has been recognized in myriad areas in the over 40 cases in this Circuit that have cited it. *See, e.g., Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 549 F. 3d 137, 142 (2d Cir. 2008); *Empire HealthChoice Assur., Inc. v. McVeigh*, 396 F. 3d  136, 140 (2d Cir. 2005); *Bush v. MONY Life Ins. Co. of Am.*, 2008 WL 4874137 \*4 (D. Conn. Nov. 10, 2008); *Ely Lily Do Brasil, Ltda. v. Federal Exp. Corp.*, 2005 WL 2312547 \*3  (S.D.N.Y. Sept. 21, 2005); *Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*,  239 F. Supp. 2d 322, 326 (S.D.N.Y. 2002); *In re PSINet Inc.*, 268 B.R. 358, 376 (Bankr. S.D.N.Y. 2001).[16]

---

[16] Additionally, *Gaston* was not a radical change in the law. *See e.g.  In re Overmyer Co., Inc.*, 12 B.R. 777, 784 (Bankr. S.D.N.Y. 1981.)

S-459

Notwithstanding this overwhelming authority, and contrary to its position below that *Gaston* in fact applied (A-483-484), Statek asks this Court to ignore *Gaston*'s plain holding. Statek makes four attempts to distinguish *Gaston*. None has merit.

### A.  *Gaston* Is Not Limited to Adversary Proceedings.

<u>First</u>, Statek argues that *Gaston* should be limited to cases involving adversary proceedings brought by the debtor and not applied to proofs of claim filed against the debtor by creditors. However, there is nothing in *Gaston* which supports this distinction. On the contrary, in deciding *Gaston*, this Court expressly relied on the reasoning of *Merritt, supra*, 839 F. 2d at 206, where the Fourth Circuit held that the bankruptcy court should apply the forum's choice of law rules to the state law questions before it <u>relating to the trustee's objection to the creditor's claim</u>. By applying the reasoning of this "claims allowance" authority to the adversary proceeding before it, *Gaston* rejected the very distinction Statek tries to make.

Statek seeks to rely on *In re Teligent Inc.*, 324 B.R. 479, 489 (S.D.N.Y. 2005), where the Court referred to *Gaston* in a parenthetical as "discussing choice of law in an adversary proceeding." However, *Teligent*'s dicta does not reflect any

25

S-460

common understanding that *Gaston* is limited to adversary proceedings.[17]  Indeed,

*Gaston* has been applied in the context of claims disallowance proceedings. *See*

*e.g. Worldcom, supra*, 2006 WL 3782712 at * 8, n. 3; *Rolling Thunder, supra*, 348

B.R. 803, 809; *In re Dow Corning, supra*, 419 F.3d at 548 (citing *Gaston* in case

involving objection to a claim originally brought as plenary action).

Significantly, in *In re Hess*, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009); *In

re Brill* 318 B.R. 49, 53 (Bankr. S.D.N.Y. 2004); and *In re Greig* 2005 WL

3783836 at *3 (Bankr. S.D.N.Y. 2005), the courts applied New York's statute of

limitations to disallow claims filed against the estate, precisely the situation here.[18]

Statek also asserts that neither party here has identified a case in this circuit

where *Gaston* was followed where the creditor had already filed a case in another

forum prior to the Bankruptcy.  This too is entirely irrelevant because there is

nothing in *Gaston* or in the many decisions in the last nearly 10 years citing it

which supports applying a different rule in such a situation.  It is more to the point

---

[17] In *Teligent,* the Court held that the result before it would be the same whether a
federal or state choice of law analysis would apply to the preference action before
it, a creature of the Bankruptcy Code.  Its parenthetical statement about *Gaston,*
therefore, was only dicta.

[18] Further, the difference between adversary proceedings and claim objections on
which Statek relies is without substantive significance. Coudert's objection to
Statek's claim could have been commenced as an adversary proceeding. Fed. R.
Bankr. P. 7001.  Further, the Court below, treated this matter by the same rules as
would apply to an adversary proceeding.  (SPA-79.)

26

S-461

that Statek has failed to produce a single case in this Circuit where *Gaston* was <u>not</u>

followed in the situation posited.

And, in fact, *Gaston* <u>has</u> been applied by other courts to claims allowance

proceedings where the creditor had a pre-existing plenary action. *See In re Global*

*Indus. Techs Inc.*, 333 B.R. 251, 260 (W.D. Pa. 2005) (applying the conflict of

laws principles of the forum state of the bankruptcy court, Pennsylvania, including

its borrowing statute, where debtor objected to a claim originally asserted in

Kentucky state court and removed to the Eastern District of Kentucky.); *In re*

*Jafari*, 378 B.R. 575 (Bankr. W.D. Wis. 2007) (applying the choice of law rules of

the bankruptcy court's forum, Wisconsin, to disallow the claims first asserted in

Nevada); *In re Dow Corning, supra*, 419 F.3d at 548.[19]

Statek cannot overcome all these authorities and argue that *Gaston* should

not apply based only on its allegation that its Connecticut Action "had a life" prior

to the Bankruptcy and "involved extensive motion practice and discovery."

(Statek Br., p. 24)  Even if this were a relevant concern, it is clear that, despite any

limited discovery that might have occurred there, Statek's Connecticut action did

not "have a life," but was on life support from virtually the moment it was filed.

---

[19] *Jafari* was reversed, 385 B.R. 262 (W.D.Wis. 2008), *aff'd* 569 F.3d 644 (7th Cir.
2009), on the ground that the Bankruptcy Court erred in not finding that Wiscon-
sin's <u>substantive</u> law applied.  Neither appeals court held that the choice of law
rules of Nevada, where the casinos' claim had originally been filed, should apply,
as Statek insists should be done in this case.

27

S-462

Indeed, three months after it was commenced, Coudert filed a pre-answer motion to dismiss which was (conditionally) granted. In deciding that motion, the Connecticut Court made clear that far from "having a life" in Connecticut, the action had little connection to the state and was still vulnerable to a jurisdictional motion. (*See*, p.7, *supra*.)

**B.**     **Statek's Baseless Claim of Prejudice Does Not Support Limiting Gaston.**

    1.     Statek cannot distinguish *Gaston* on its facts.

Second, Statek argues that *Gaston* is distinguishable because Statek, it claims, unlike the Erkins in *Gaston*, was a pre-petition creditor who was disadvantaged by the bankruptcy filing and the application of the forum's choice of law rules.

Statek again offers no authority supporting its effort to distinguish *Gaston* on this basis and its argument ignores the reality that choice of law decisions often disadvantage one party or the other. The fact that Coudert's bankruptcy filing may have impacted on Statek's Claim is not unique and provides no basis for the rejection of *Gaston*. As Statek's own authority, *Jafari*, *supra*, fully recognized while applying *Gaston*:

> Many creditors find the validity or enforceability of their claims adversely impacted by the timing of a debtor's bankruptcy petition, and the creditors' failure to reduce their claims to judgment... is not a far cry from the plight of other creditors whose claims are judged by their status as of the petition date.

28

*Id.* at 591, n. 17.[20]

In any event, Statek's claim to have been "more prejudiced" than the Erkins is simply incorrect.

The Erkins, the law firm clients in *Gaston*, were Idaho citizens, who mistakenly did not challenge the exercise of jurisdiction over them by the New York Bankruptcy Court presiding over the bankruptcy of the law firm, Gaston & Snow, in the belief that bankruptcy jurisdiction over them was based on minimum contacts with the United States, rather than with New York. 243 F. 3d at 602. It seems clear that they would never have consented to jurisdiction over them by a New York state or federal court absent the bankruptcy. Indeed, the Erkins actively sought, albeit unsuccessfully, to have the debtor's adversary proceeding against them and their counterclaim, which surely related to pre-petition claims, transferred to the federal court in Idaho whose substantive law both parties agreed would apply and where the nearly $4 million claim against them for fees and pre-judgment interest would have been time barred under Idaho's limitations period.

Nonetheless, this Court applied the logic of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938), and held that the forum's choice of law principles must be applied pursuant to which the substantial claim against the Erkins was

---

[20] Of Course, *Gaston* has been applied so as to prejudice debtors as well as creditors. *Kaiser*, *supra*, 2010 WL 3271198 at * 5.

29

S-464

timely.  Thus, the Erkins were every bit as disadvantaged as Statek by the application of forum law.

Statek's further attempt to distinguish *Gaston* by painting the Erkins as having more voluntarily participated in the Bankruptcy Court proceedings is not only irrelevant as a matter of law, it is nonsense.  The Erkins were before the Bankruptcy Court and prejudiced because of a mistake they made; here as set forth at length above (pp. 6-10, *supra*), Statek agreed to have its Claim first mediated in, and then determined by motion, in the Bankruptcy Court.

2.    Transfer cases under 28 U.S.C. §1404 are entirely inapt.

Unable to distinguish *Gaston,* Statek argues that, to avoid prejudicing it, the Courts below should have disregarded *Gaston* and followed the cases which hold that the law of the transferor state should be applied following a transfer under 28 U.S.C. §1404.

This argument, too, must be rejected.  Indeed, the fundamental flaw in this argument is obvious: the Connecticut District Court dismissed the Connecticut Action and expressly declined to transfer it to New York.  (A-1192, 1207.)[21]  *Van Dusen v. Barack*, 376 U.S. 612 (1964) and *Ferens v. John Deere Co.*, 494 U.S. 516 (1990), on which Statek relies, simply do not apply where, as here, the action is

---

[21] Statek's argument is also defeated by the fact that the Bankruptcy Court ruled on Statek's Claim and not on its plenary action.  (*See SPA-5; SPA-48.*)

S-465

dismissed rather than transferred on forum *non conveniens* grounds. *Mopex, Inc. v. Am. Stock Exch.*, 2002 WL 342522 at * 5, 6 (S.D.N.Y. Mar. 5, 2002); *Caribbean Wholesales & Serv. Corp. v. US JVC Corp.*, 855 F. Supp. 627, 632 (S.D.N.Y. 1994). This is so because the rationale of *Van Dusen* and *Ferens,* to protect the plaintiff's choice of forum does not apply where, as here, venue is improper in the "transferor" court. *Forlastro v. Collins,* 2007 WL 2325865 at *2 (S.D.N.Y. Aug. 14, 2007).

Notwithstanding that it ultimately modified its ruling, the Connecticut District Court's dismissal of Statek's complaint clearly reflects how inappropriate Statek's choice of forum was and how the cases under §1404 therefore simply do not apply. In *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955), the Supreme Court distinguished between cases transferred under §1404(a) and cases dismissed on forum *non conveniens* grounds as here:

> The forum non conveniens doctrine is quite different from Section 1404(a). That doctrine involves the dismissal of a case because the forum chosen by the plaintiff is <u>so completely inappropriate and inconvenient that it is better to stop the litigation in the place where it was brought</u> and let it start all over again somewhere else. (Emphasis supplied.)

This action is not analogous to the cases under 28 U.S.C. §1404 for the additional reason that, as noted above, the Connecticut District Court did not reach Coudert's meritorious jurisdictional motion which the court stated raised

31

substantial issues for decision. (A-1180.)  Where the putative transferor court

lacks personal jurisdiction over the defendant, the transferee court is not obligated

to apply the transferor's law. *Poe v. Budget Rent-a-Car Sys., Inc.*, 2008 WL

2725803 at * 3 (D. Virgin Islands July 11, 2008); *Mopex, supra*, 2002 WL 342522

at *5; *McTyre v. Broward Gen. Med. Ctr.*, 749 F. Supp. 102, 108 (D. N.J. 1990).

Further, *Ferens* and *Van Dusen* do not apply because any transfer of Statek's

Connecticut Action would likely have been pursuant to 28 U.S.C. § 1412, which

provides for the transfer from one district court to another of a case involving a

bankruptcy debtor and not under 28 U.S.C. § 1404.  In such a case, the New York

federal court would have been bound to apply the law of the transferee, New York,

and not Connecticut law.

In *Kaiser, supra*, debtor's plenary state court malpractice action was

transferred from the District of Columbia, where its claim was timely, to the

Delaware Bankruptcy Court, where it was not timely, under 28 U.S.C. §1412, and

the debtor/plaintiff, like Statek here, asserted that, under *Van Dusen*, the law of the

transferor court should apply.[22]  The Court rejected this argument holding:

---

[22] The Debtor's malpractice case against its attorney in *Kaiser* was originally filed
in the Superior Court for the District of Columbia, then removed to the District
Court there, and finally transferred to the Bankruptcy Court pursuant to 28 U.S.C.
§1412. *In re Kaiser Group Int'l, Inc.*, 421 B.R. 1 (Bankr. D.D.C. 2009). *Kaiser*,
of course, refutes Statek's supposition (Statek Br., p. 42, n. 16) that *Van Dusen v.*
(Continued)

S-467

> The Court concludes that *Van Dusen* is not applicable
> here because this case is not a diversity case and its
> presence in federal court is not an 'accident.' As the D.C
> Bankruptcy Court found, the proceeding here fits within
> this Court's "arising in" jurisdiction and by extension
> within federal question jurisdiction... Accordingly,
> because the Court has federal bankruptcy as well as
> federal question jurisdiction over the instant action, the
> Court concludes that the choice of law rule of the
> transferee state, Delaware, apply.

2010 WL 3271198, at *5. Thus, debtor's action was dismissed as untimely. The

same result would apply here. Requiring the law of the transferee to apply to cases

transferred under §1412 insures that all claimants in a bankruptcy are treated

equally. This policy is fully apt here and supported by applying *Gaston*.

Acknowledging that the doctrine of *Van Dusen and Ferens* does not apply

here, as it must, Statek nonetheless argues that its action was "effectively

transferred as a result of the Bankruptcy Court's decision to rule on the proof of

claim." (Statek Br., p. 28.) However, there is <u>no</u> authority for this new doctrine of

"effective transfer" and nothing in those cases supports the wholesale rejection of

precedent sought by Statek.

Nor do the policies underlying *Van Dusen* and *Ferens* support Statek's

argument. Those cases stand for the proposition that the actions of the <u>transferor</u>

---

(Continued)
*Barack*, 376 U.S. 612 (1964) and *Ferens v. John Deere Co.*, 494 U.S. 516 (1990)
apply to transfers under 28 U.S.C. §1412.

33

court in transferring the case before it for reasons of convenience and economy

requires the <u>transferee</u> court to apply the transferor's law to protect the plaintiff's

venue choice.  Here, Statek argues that <u>its</u> own actions in placing its Claim before

the purported <u>transferee</u> court (i.e. the Bankruptcy Court) requires the transferee

court to apply the law of the putative <u>transferor</u> court, Connecticut, which refused

to transfer the action.  Applying the rationale of *Van Dusen* and *Ferens* in this way

is nothing more than an invitation to impermissible forum shopping.

     *McTyre*, *supra*, is on point.  There, plaintiff commenced suit in New Jersey,

where its claim would be timely, against defendants, who were not subject to

personal jurisdiction there.  Defendants sought dismissal of the case and plaintiff

sought to have it transferred to Florida, where there was personal jurisdiction over

defendants.  Because the claims would have been untimely there, plaintiff further

asserted that upon transfer, New Jersey's statute of limitations should continue to

apply.  The court rejected this argument, dismissed the action, and held that the

policy of *Ferens*, which would protect the plaintiff's forum choice was not

applicable.  The court noted that following *Ferens* to require Florida – where the

claim would be barred – to apply the statute of limitations of New Jersey – where

there was no basis for jurisdiction – would be inappropriate because it would

"…<u>allow plaintiffs to bootstrap an otherwise defeated claim by selecting the most</u>

34

favorable law from any of the fifty states and transfer it to a federal court in which jurisdiction can be maintained." 749 F. Supp. at 108 (emphasis supplied).

This is precisely the case here. In a blatant attempt at forum shopping, after waiting nine years to pursue Coudert, Statek commenced suit in Connecticut, the one place where it (allegedly) hoped its case still might be timely, even though the forum was entirely inconvenient, had little connection with the claims raised, and there was likely no jurisdiction over Coudert. Statek now wants its case to be treated as if it had been transferred to New York and wants the Court to be instructed to apply Connecticut law. The interests identified in the "transfer" cases, do not advance Statek's position and the above authorities instruct that Statek cannot succeed. Rather, the policy underlying *Kaiser* to treat all claimants in bankruptcy the same by applying the law of the transferee state is far more apt and is fostered by the holding in *Gaston*.[23]

3.    Statek voluntarily participated in the Bankruptcy.

Third, Statek attempts to distinguish *Gaston* by arguing that the Erkins voluntarily participated in the Bankruptcy and Statek was forced to do so. Even if this had legal significance, which it does not, as set forth above at length, this is

---

[23] The Bankruptcy Court properly found that there was absolutely no indication whatsoever that Coudert's choice of New York for its filing – where it had been headquartered for over 150 years – was improperly motivated in any way. (SPA-32; *see also* SPA-6.)

35

simply not so. The Erkins were in the Bankruptcy Court by mistake; Statek

intentionally charted its course there. For example, Statek settled both its motions

for relief from the automatic stay by accepting less than the relief it sought, agreed

to mediate its Claim in New York, and agreed to have Coudert's motion (and its

aborted cross-motion) heard there. Thus, Statek chose to place this dispute firmly

in the hands of the Bankruptcy Court.

> 4.    Statek cannot distinguish Gaston on policy grounds.

Fourth, Statek states that the "most important" distinction is that in *Gaston*

the Court preserved a claim. However, Statek offers no authority for its apparent

argument that choice of law issues should be determined based on which side will

prevail. Of course, they should not. While Statek complains that the Disallowance

Order resulted in a decision not on the merits, it is absolutely not correct that such

a ruling is against public policy. Rather, it is well settled that motions to dismiss

stale claims are entirely appropriate and serve a salutary purpose of repose. *See,*

*e.g., Brill, supra*, 318 B.R. at 53, 59 ("A challenged claim will not be allowed by

the bankruptcy court if the claim is barred by the applicable statute of limitations"

and recognizing that "[i]t is true that the application of a statute of limitations can

have rigid and sometimes harsh results. The need for finality necessitates this

rigidity."); *Greig, supra*, 2005 WL 3783836 *3; *see also* SPA-6 (Statek's argument

"would do away with motions based on the running of limitations").

S-471

Statek also claims that the application of *Gaston* by the Courts below is contrary to the public policy in favor of predictability. This claim is based on a misunderstanding of that policy. The issue is not whether Statek was surprised that Coudert would file for bankruptcy and as a result Statek's Claim would be subject to the law of a different jurisdiction. (Statek Br., p. 31.) (And it is dubious to say the least that after waiting nine years to pursue Coudert and doing so at a time when it knew the <u>New York based firm was already in dissolution</u> (A-9, ¶4), and then agreeing to have its Claim determined by the Bankruptcy Court, that Statek truly was surprised that the timeliness of its Claim would be considered under New York law.) Rather, the issue is whether, as a whole, predictability is served by a uniform rule applying the principles of *Erie* to state law based issues heard under the bankruptcy jurisdiction of the federal courts. Plainly that policy is served by the uniform application of *Gaston* regardless of its result in any given case. *See also Ins. Co. of N. Am. v. ABB Power Generation*, 91 N.Y.2d 180, 668 N.Y.S.2d 143 (1997) (application of New York's borrowing statute enhances the interest in predictability since it treats all defendants the same).[24]

---

[24] Also entirely irrelevant is Statek's repeated claim that the Court should take note of the fact that its Claim <u>might</u> be covered by Coudert's insurer. There is no support in the law for the proposition that the presence of a non-party insurance carrier provides a basis for disregarding *Gaston*. Indeed, it is well settled that the existence of insurance is irrelevant to the merits of a claim. *See, e.g.*, Fed. R.

(Continued)

37

S-472

*Gaston* is clear, applicable and binding here. Statek has failed to distinguish it or provide any basis for ignoring its holding. The Courts below properly relied on it and disallowed Statek's Claim.

## POINT II

### STATEK'S RELIANCE ON OTHER COURT'S RULINGS PROVIDES NO BASIS FOR DISREGARDING *GASTON*

Although it is unable to distinguish *Gaston,* Statek nonetheless argues that there are "more relevant" cases dealing with motions to disallow claims which the Court should have adhered to rather than applying the clear holding in *Gaston.* Statek further asserts that those cases allow the Bankruptcy Court to "use its equitable powers to achieve" a just result. (Statek Br., p. 32.) This argument, essentially a rehash of the arguments refuted above, must be rejected for at least three reasons.

First, Statek's argument merely reiterates it prior meritless contention, disposed of above, that *Gaston* should be limited to adversary proceedings.

Second, the cases on which Statek seeks to rely pre-date *Gaston,* were expressly distinguished by *Gaston,* and/or are from out-of-circuit courts that take a

---

(Continued)
Evidence 411. It seems that Statek is arguing that it is appropriate to "stick the carrier." Of course, it is not.

38

S-473

different approach to choice of law issues than the one adopted by this Court in *Gaston*.

Third, even if this Court were to find that the Bankruptcy Court erred in following the plain holding of *Gaston* and should not have applied New York's choice of law rules as expressed in its borrowing statute, Statek is incorrect in asserting that the alternative empowers the Bankruptcy Court to make a freewheeling choice of law determination based on a conclusion as to what is fair. Indeed, far from creating the predictability which Statek claims it seeks, it is difficult to imagine a rule of law that would inject more uncertainty into the legal system.

In essence, Statek argues that under *Vanston, supra*, 329 U.S. 156, 162-63, the Bankruptcy Court had the power to determine the motion to disallow Statek's Claim under equitable principles. Statek's analysis of *Vanston*, however, was expressly rejected by the Supreme Court in *Raleigh, supra*, 530 U.S. 15, a case mentioned only in a footnote and a parenthetical by Statek. There the Supreme Court explained that its statement in *Vanston*, relied on by Statek, that the court determines what claims are to be allowed under equitable principles, refers to the ordering of valid claims and the distribution of assets and not to the validity of claims in the first instance, which is at issue here. 530 U.S. at 24, 120 S. Ct.

S-474

1957. The *Raleigh* Court's decision also disposes of Statek's assertion that

equitable considerations should prevail:

> But the scope of a bankruptcy court's equitable power
> must be understood in the light of the principle of
> bankruptcy law discussed already, that the validity of a
> claim is generally a function of underlying substantive
> law.  Bankruptcy courts are not authorized in the name of
> equity to make wholesale substitution of underlying law
> controlling the validity of creditors' entitlements, but are
> limited to what the Bankruptcy Code itself provides.

530 U.S. at 24-25; 120 S. Ct. at 1957 (emphasis supplied).  In short, *Raleigh* not

only reiterates that state law, and not federal law, applies to issues underlying

claims in bankruptcy, but it additionally recognizes that that law cannot simply be

disregarded in the name of equity as Statek proposes.  *See also* 11 U.S.C.

§502(b)(1) (Court shall allow a claim unless it is "unenforceable ... under

applicable law").[25]

Just as Statek's reliance on its discredited analysis of *Vanston* must

ultimately fail, so must its efforts to rely on other cases which it claims interpreted

*Vanston* to "free them from *Erie* handcuffs." (Statek Br., p. 33.) These cases pre-

date *Gaston* or were decided in Circuits that have taken a different approach.

---

[25] *Vanston* is also distinguishable on its facts.  The inequity the Court found there
was that, as a result of the order of the Bankruptcy Court prohibiting the Debtor
from making mortgage payments, the Debtor became liable under the mortgage for
interest on interest.  The Court held that under those circumstances, as a matter of
federal law, allowing the mortgagee to collect double interest would be unfair to
the remaining creditors.

S-475

Thus, while Statek correctly quotes the Wisconsin Bankruptcy Court in
*Jafari, supra*, 378 B.R. 575, as in turn quoting *Vanston*, it misleadingly states that
the quote reflects the Court's holding.  It does not; the *Jafari* court reached the
same result as this Court in *Gaston* and only one page after the language cited by
Statek, stated:

> While *Vanston* notes that a bankruptcy court's claims
> process is not definitively controlled by the *Erie* doctrine,
> the Supreme Court did not mandate the wholesale
> creation of federal conflict rules.  Instead, *Vanston*
> appears to illuminate a simple principle:  namely, that in
> instances where a significant federal policy dictates a
> result, the bankruptcy court is not bound to adopt a
> contradictory state law.  However, to the extent no such
> federal policy exists, determining which claims are "valid
> and subsisting obligations against the bankrupt at the
> time a petition is filed" is handled by reference to state
> law... In those cases where state law provides the rule of
> decision, the *Erie* doctrine – and by extension, the
> *Klaxon* rule regarding the application of state conflict of
> laws provisions – should apply.

378 B.R. at 588 (emphasis supplied).

The *Jafari* Court also noted the Supreme Court's clarification of *Vanston* in

*Raleigh, supra*:

> Indeed, in *Raleigh* the Supreme Court itself seemed to
> approve a limited reading of *Vanston* when it rejected the
> notion that the allowance of claims is automatically a
> federal matter, observing that "*Vanston*, in fact,
> concerned distribution of assets, not the validity of claims
> in the first instance.... *Erie*...must be applicable in the
> claims process as well, at least whenever a claim is
> predicated upon state law rather than federal law, or

41

S-476

> where no overriding federal policy dictates a different
> result. *Gaston & Snow*, 243 F.3d at 607.

*Id.* at 589, n. 15 (emphasis supplied).

Nor may Statek rely on *In re Prof'l Investors Ins. Group., Inc.*, 232 B.R. 870

(Bankr. N.D. Tex. 1999), or *Ovetsky, supra,* 100 B. R. 115. Both are out-of-circuit

decision that pre-date *Gaston*. In addition, contrary to Statek's assertion that both

cases are more applicable because they involve the issue of claims allowance

*Prof'l Investors* involved <u>both</u> an objection to a claim <u>and</u> an adversary

proceeding.[26] Similarly, in *Ovetsky*, the Court was faced with both a claims

disallowance and an adversary proceeding and chose to address the statute of

limitations defense in the context of the objection to the proof of claim only to ease

the appeal process from its ruling. 100 B.R. at 116. Thus, the procedural posture

in which the issue was presented in *Ovetsky* was without substantive import.[27]

In addition, and in any event, *Ovetsky* is entirely irrelevant on the facts.

There, the court found that the forum of the bankruptcy court had no relation to the

claim. Here, New York has such a connection to Statek's claim that Statek itself

sought to have its Connecticut action transferred here and stated that the Southern

---

[26] In addition, the choice of law discussion in *Prof'l Investors*, 232 B.R. at 883,
was only dicta and its interpretation of *Vanston* is put into question by the Supreme
Court's subsequent decision in *Raleigh, supra*.

[27] In any event, as set forth above, there is no basis for limiting *Gaston* to adversary
proceedings. (*See* Point IA, *supra*.)

42

District of New York was an appropriate alternative forum. (A-1192; A-1207; A-196-97, ¶¶ 8,9.). Indeed, the Bankruptcy Court properly found that it was neither extraordinary nor unjust for New York law to apply, given, among other things that Coudert had been headquartered in New York for 150 years and the lead attorney representing Statek worked out of the New York office for some period of time. (SPA-35-36.)

Similarly, while Statek accurately quotes the court in *Global Indus., supra,* 333 B.R. 251, as noted above (p. 27), it entirely misses the crux of the court's decision there. While the court spoke of *Vanston* and cases that rely on its dicta in determining to apply a federal choice of law analysis, it also spoke of *Gaston* and its clear holding that the bankruptcy court applies the conflict of law principles of the forum state. 333 B.R. at 256. Significantly, in a fact pattern nearly identical to that presented here, the *Global Indus.* court <u>applied the choice of law principles of the forum.</u>

It is also difficult to understand Statek's reliance on *In re SMEC, Inc.,* 160 B.R. 86, 89-91 (M.D. Tenn. 1993), whose reasoning this Court <u>expressly rejected</u> in *Gaston,* 243 F.3d at 606. Indeed, while Statek seeks to rely on *Segre's, supra,* 258 B.R. 547, that case, not only <u>pre-dates</u> *Gaston,* but is based on an adoption of the reasoning in *SMEC,* rejected by *Gaston,* and on *Vanston,* distinguished by this Court in *Gaston,* and limited by the Supreme Court in *Raleigh.*

43

Moreover, the decision in *Segre's* was based on that court's determination that following the law of the forum would somehow be "subversive of uniformity." *Id.* at 552.  However, *Gaston* expressly held that this supposed interest in uniformity is insufficient to support the creation of federal common law to displace state law choice of law principles.  243 F.3d at 606.[28]

Statek concludes that *Vanston, Segre's* and *Ovetsky* are good law and have not been interpreted as overruled by *Gaston*.  However, *Vanston* was properly explained by the Supreme Court in *Raleigh* and provides no support for reversing any of the orders below.  *Ovestky* is an out of circuit decision which is distinguishable in any event.

As for the alleged continued vitality of *Segre's,* in the nine years since its decision, it has not been cited by any court in this Circuit other than the Connecticut Bankruptcy Court in *In re Stanwich Fin. Servs. Corp.*, 317 B.R. 224, 228 n. 5 (Bankr. D. Conn. 2004), where the Court <u>followed</u> *Gaston,* and <u>expressly</u>

---

[28] The court in *Segre's* also was concerned about the possibility of forum shopping by the debtor.  As noted above, there is no basis for any such concern here. Statek's assertion that the District Court did not address its arguments based on *Vanston, Segre's* and *Ovetsky* (Statek Br., pp. 20, 32), is in error as the Court expressly noted and rejected Statek's argument, based on those cases, that *Gaston* was distinguishable.  (SPA-5-6.)

44

**S-479**

declined to follow *Segre's*. Plainly, *Segre's* has <u>no</u> vitality after this Court's

decision in *Gaston*.[29]

Statek has failed to demonstrate that *Gaston* should have been abandoned by

the Courts below.

## POINT III

### THE BANKRUPTCY COURT DID
### NOT ABUSE ITS DISCRETION

Statek next argues that the Bankruptcy Court should have ignored the plain

and dispositive holding of this Court in *Gaston* and instead exercised its equitable

power to preserve Statek's claim by applying the Connecticut statute of limitation

either because it was the "original law of the forum" or under a federal choice of

law analysis. (Statek Br., p. 38).

Initially, Statek overstates the Bankruptcy Court's equitable authority.

Because *Gaston* is controlling, the Court is "not authorized in the name of equity to

make wholesale substitution of underlying law." *Raleigh, supra*, 530 U.S. at 24-

25.

---

[29] As noted above, there is no basis for following any distinction the court in
*Stanwich* may have been attempting to draw between adversary proceedings and
claims disallowance proceedings. Further Statek's cannot rely on the <u>out-of-circuit</u>
decision in *In re Friedlander Capital Mgmt. Corp.*, 411 B.R. 434, 442-43 (Bankr.
S.D.Fla. 2009), to argue that *Segre's* is still good law in this Circuit.

45

Further, Statek cannot meet its heavy burden to demonstrate that the Bankruptcy Court's alleged failure to exercise any equitable power to apply Connecticut law was reversible. In order to prevail, as noted above, Statek must demonstrate that the Bankruptcy Court abused its discretion. *Kalikow, supra*, 602 F.3d 82, 91; *Wireless Data, supra*, 547 F.3d 484, 492; *Flanagan, supra*, 503 F. 3d at 179. It cannot.

"[A]buse-of-discretion review . . . is a second, more complicated, species of deferential appellate review. When a district court is vested with discretion as to a certain matter, it is not required by law to make a particular decision. Rather, the district court is empowered to make a decision-of its choosing-that falls within a range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001); *see also In re Global Vision Prods., Inc.*, 2009 WL 2170253, *3 (S.D.N.Y. July 14, 2009) ("[t]he bankruptcy court will have abused its discretion if no reasonable man could agree with [its] decision."); *In re Delphi Corp.*, 2009 WL 803598, *2 (S.D.N.Y. Mar. 24, 2009).

There is no basis for even alleging that the Bankruptcy Court's decision was outside the range of permissible decisions or was one with which no reasonable

S-481

man could agree. In fact, the Bankruptcy Court did not abuse its discretion in any way and its decisions were entirely correct.[30]

Statek asserts that the Bankruptcy Court should have deferred to Statek's venue choice and applied the "original law of the forum."[31] However, as this Court noted in *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001), the degree of deference to be afforded the plaintiff's choice of forum varies depending on whether the plaintiff sued in the forum where it resides and on the degree of connection between the forum and the claim.

Here Statek, a California corporation with its principal place of business in California (A-9-10, A-389; A-403-406), did not commence suit where it resided. Further, as demonstrated above, its action had so little connection with the forum that the Connecticut District Court dismissed the action on forum *non conveniens* grounds and stated that "plaintiff's choice of forum should not be given significant weight in part because Connecticut has very little connection to the claims raised in the present complaint." (A-1203.)

---

[30] Statek's claim that a District Court in New York would have applied Connecticut law if there had been a transfer of Statek's Connecticut Action there (Brief, p. 39), is not only wholly speculative, but it is patently incorrect given the serious questions about whether there was jurisdiction over Coudert in Connecticut and the holding in *Kaiser, supra*, 2010 WL 3271198 *5.

[31] Statek's further argument that Connecticut law would apply under a federal choice of law analysis should have been conducted is refuted at Point IV, *infra*.

47

Statek's filings are also instructive.  Statek's complaint alleged that it was a
California corporation with its principal place of business there, that Coudert was a
New York partnership, and that the individual attorneys involved resided in
England.  (A-9, ¶ 2-7.)  Other papers alleged that Coudert represented Statek in
Europe (A-99, ¶¶ 8, 10) or in New York (A-196, ¶¶ 8-9); that Statek did not
transact business in Connecticut (A-481-482; A 529-531), or maintain an office
there after Mr. Vendel took over the company in 1996 (*id*.); and that "[w]hen
Statek commenced this action in 2005, almost ten years [after Mr. Vendel took
control], it certainly was not transacting business" in Connecticut.  (A-482-83.)
Indeed, Statek stated that England is "the place where the relationship between
Coudert and Statek was centered."  (A-487.)

Most significantly, Statek's Amended Complaint <u>does not</u> allege venue in
the Connecticut District Court pursuant to 28 U.S.C. §1391(a)(1), whereby venue
is based on the residence of the defendants, or to §1391(a)(2), whereby venue is
based on the allegation that "a substantial part of the events or omissions giving
rise to the claim occurred."  Statek relies only on 28 U.S.C §1391(a)(3), which
applies where defendant is subject to personal jurisdiction and there is no other
district in which the action may be brought.  (A-390, ¶ 10.)  In other words, when
filing its Amended Complaint, <u>even Statek could not allege that Connecticut had a
substantial relationship to the underlying claim.</u>

S-483

In fact, it seems clear that venue did not lie in Connecticut. Not only was

Coudert likely to be found not subject to personal jurisdiction there but

Connecticut was not the only district in which the action could be brought.

Certainly, at the very least, it is difficult to take seriously Statek's assertion that its

forum choice is entitled to any deference.[32]

Statek also reiterates its claim (without citation) that the Bankruptcy Court

abused its discretion by not abandoning *Gaston* so as to save Statek's claim and

serve the "important public policy" of having cases determined on their merits.

Even assuming *arguendo* only that Statek's claim would have been timely in

Connecticut (and it would not have been), Statek's argument simply ignores the

equally important policy of repose, of not allowing stale claims to proceed, and of

not wasting precious judicial resources.

Statek also repeats its assertion, disposed of above, that Connecticut law

should apply to insure that Statek is not prejudiced by Coudert's bankruptcy. This

claim too is based only on Statek's dubious assertion that Connecticut law should

apply to preserve its claim. (*See* p. 36 , *infra.*) In any event, as noted above,

---

[32] For all the reasons set forth above, Statek may not rely, as it seeks to again, on *Van Dusen* and *Ferens*. *Toy Biz Inc. v. Centuri Corp.*, 990 F. Supp. 328 (S.D.N.Y. 1998), relied on by Statek, involves the inapt situation of two pending plenary actions arising from the same basic facts. The *Toy Biz* Court ultimately ruled that the first filed action should proceed where commenced.

49

S-484

creditors are routinely prejudiced by bankruptcy filings.  *See, Jafari*, 378 B.R. 575,

591 n. 17.  This fact does not provide a basis for overturning *Gaston*.

Nor does *Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914 (1979), ad-

vance Statek's position.  The Court there was not dealing with choice of law

issues.  Rather, that case stands for the proposition that a creditor's claim is deter-

mined by state law: "Congress has generally left the determination of property

rights in the assets of the bankrupt's estate to state law."  440 U.S. at 54, 99 S.Ct.

at 918.  The *Butner* Court did not hold that creditors must be protected from the

impact of bankruptcy filings.  Rather, it reached a result that is not outcome

determinative but, like *Gaston*, leaves the issue to state law.[33]

Finally, Statek states: "[w]hile strictly speaking, this case was not transferred

from the District of Connecticut to the Southern District of New York, we can

think of no reason why the equitable reasons for that rule [i.e. of *Van Dusen* and

*Ferens*] should not apply in the present context." (Statek Br., p. 42.)  In fact, the

reasons, all discussed in detail above, are myriad.  For example:  (i) the Court in

*Gaston* established a clear legal rule that plainly governs this matter pursuant to

which the decisions below were correct; (ii) the Courts below ruled on Statek's

---

[33] Statek also overstates the holding in *In re Cutler-Owens Int'l Ltd.*, 55 B.R. 291,
294 (S.D.N.Y. 1985).  The language quoted by Statek was dicta.  The Court held
that the debtor was entitled to raise the door-closing statute as a defense and left it
to further proceedings to determine if the defense should be upheld.

50

Claim and not on its plenary action and did so after Statek charted its course in the Bankruptcy by settling its applications for relief from the automatic stay so as to present its Claim to the Bankruptcy Court for mediation and then decision; and (iii) Statek's Connecticut Action did not belong in Connecticut and was not properly venued there.  Moreover, it was dismissed because there was virtually no connection between the forum and the claim and the Connecticut District Court acknowledged that there was likely no jurisdiction over Coudert there.

The real potential for unfairness here is not to Statek.  Rather, it would be unfair to require Coudert to defend this action, which Statek concedes would be time barred in New York and California (Statek's state of incorporation), and which would likely, according to the Bankruptcy Court's dicta, be time barred in England (SPA-40-41), because of the possibility that Connecticut – which has no connection with the facts underlying this action, whose court dismissed the action, and where the case had barely begun – would apply its own statute of limitations in such a way as to preserve the claim against a party over whom that Connecticut court may have no personal jurisdiction.

Statek has entirely failed to meet its heavy burden to demonstrate that the Bankruptcy Court abused its discretion and committed clear error in refusing to ignore *Gaston* instead of adopting Statek's subjective (and objectively unreasonable) view of what is "equitable."

51

S-486

## POINT IV

## NEW YORK LAW WOULD APPLY UNDER A
## FEDERAL CHOICE OF LAW ANALYSIS

Statek next argues that if the Courts below performed a federal choice of law analysis, Connecticut's statute of limitations would apply. Statek argues that the Bankruptcy Court erred in stating, in dicta, its view that such an analysis would not call for the application of Connecticut law. As an initial matter, there is no basis in law requiring a federal choice of law analysis and this argument is precluded by *Gaston*. In any event, Statek is wrong. The Bankruptcy Court below properly found that Connecticut law would not apply under a federal choice of law analysis.

The Bankruptcy Court's analysis was based on §142 of the Restatement, which Statek conceded below was the appropriate analysis. (SPA-34.) In particular, the Bankruptcy Court held that under §§6 and 142 of the Restatement, the forum, New York, would apply its own statute of limitations barring the claim. (SPA-34-36.)

Further, even if a federal choice of law analysis should have been conducted, based, not on the Restatement factors, but on which jurisdiction had the most significant relationship with the action, there still was no error in failing to apply the Connecticut statute of limitations.

The Bankruptcy Court properly found that Connecticut <u>did not</u> have the most significant relationship with the action. (SPA-36.) The Court noted

52

S-487

"neither side has made a case for Connecticut law applying under an interest analysis." (*Id.*) Indeed, it is difficult to imagine how Statek could hope to sustain its argument that Connecticut had the most significant relationship with this dispute after the Connecticut District Court itself stated that Connecticut has virtually no interest in the dispute. As demonstrated above, Statek has repeatedly conceded that its action has no connection to Connecticut let alone the "most significant contacts."

At the very least, New York would have as much, if not more of an interest in this action that Connecticut. As the Bankruptcy Court recognized, Coudert was a New York headquartered law firm and the partner in charge of the Statek representation was, at least for some period of time, resident in New York. (SPA-35-36.)[34]

Statek simply has not established that, under any circumstances, Connecticut's statute of limitations should apply.

---

[34] Statek previously argued that England was the jurisdiction with the most significant relationship with the action and that a federal choice of law analysis would call for the application of the English and not the Connecticut statute of limitations. (A-450.) In Statek's own words: "Here England clearly has a far greater interest in regulating the conduct of English solicitors than Connecticut has in protecting California citizens who engage overseas lawyers." (A-485.) The Bankruptcy Court agreed. (SPA-28.) Statek may not rely on Coudert's statement that "New York has no nexus with the alleged facts underlying the claim..."(A-367.) That statement was clearly in the context of its showing that the cause of action did not accrue in New York for purposes of the borrowing statute.

S-488