### POINT V

### CONNECTICUT'S STATUTE OF LIMITATIONS WOULD NOT BE APPLIED BY THE CONNECTICUT DISTRICT COURT AND STATEK'S CLAIM WOULD NOT BE TIMELY THEREUNDER

Statek's appeal is also defeated by its failure to demonstrate that Connecticut's statute of limitations would have been applied by even the Connecticut District Court. In fact, the emerging trend of the law in Connecticut, recognized by *Phillips v. Scott*, 446 F. Supp. 2d 70 (D. Conn. 2006), is that the law of the forum is not automatically applied but, rather,

> is for courts to "select the state whose law will be applied to the issue of limitations by a process essentially similar to that used in the case of other issues of choice of law." Connecticut courts have turned to § 142 of the Restatement (Second) of Conflicts of Law which outlines a test similar to the most significant relationship test...

446 F. Supp. 2d at 83, n. 25 (citations omitted). In *Phillips*, the Connecticut District Court determined, based on the Restatement factors, that the California, and not the Connecticut, statute of limitations should apply. These very factors were considered by the Court below which determined that the principles embodied in those provisions would call for the application of New York's statute of limitations which would bar Statek's claim. (SPA-26-28.)[35]

---

[35] In opposing the motion to disallow its Claim, Statek characterized the approach by which a court applies its state's statute of limitations merely because it is

(Continued)

54

In any event, Statek's Claim would be barred even under Connecticut law. Connecticut General Statutes § 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." The three year limitation period "begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." *DeCorso v. Watchtower Bible and Tract Soc'y*, 46 Conn. Super. 386, 394, 752 A.2d 102, 108 (Conn. Super. Ct. 2000) (emphasis supplied); *Piteo v. Gottier*, 112 Conn. App. 441, 445 (Conn. App. Ct. 2009); *Collum v. Chapin*, 40 Conn. App. 449, 451-52 (Conn. App. Ct. 1996). Here, Statek's cause of action against Coudert began to run in 1996 when it is alleged to have failed to turn over all relevant documents. The Connecticut statute of limitations (like New York's) expired in 1999, six years before Statek brought suit, and this is so even if Statek did not have actual knowledge of the alleged wrongful acts which, in any event, it did. *See, Sanborn v. Greenwald*, 664 A.2d 803, 812 (Conn. App. Ct. 1995); *Dixon v. Evans*, 2008 WL 1948071 *2, n. 2 (Conn. Super. Ct. Apr. 22, 2008).

Statek argues that Coudert's alleged "continuing course of conduct" tolled the statute. This doctrine is available if there is later wrongful conduct relating to

---

(Continued)
deemed procedural, as a "rigid and long-outdated characterization of the nature of statutes of limitations." (A-494.)

S-490

the original wrong or a continuing special relationship between the parties. Neither was present here.

Statek states that the later wrongful conduct can be found in Coudert's subsequent <u>production</u> of documents to Statek in 2002, 2004, 2008 and 2009. In other words, Statek argues that when Coudert acted <u>in conformity</u> with its alleged obligations to Statek it was engaged in "wrongful conduct." This is not and cannot be the law.

Further, Coudert's alleged failure to provide all files in 1996, was not part of a continuing course of conduct, but was a "single omission and not an ongoing or recurring wrongful act." *Bellemare v. Wachovia Mortgage Corp.*, 94 Conn. App. 593, 609, 894 A.2d 335, 345 (Conn. App. Ct. 2006), *aff'd*, 284 Conn. 193, 198 (2007).[36]

Nor can Statek demonstrate that there was a continuing "special relationship" between the parties sufficient to toll the statute. This relationship would have to have lasted until at least November 5, 2002 (three years before Statek commenced suit) in order to save Statek's Claim. In light of the history between

---

[36] The rules of professional conduct which Statek cites for the proposition that Coudert had a continuing obligation to produce files do not have any bearing on the statute of limitations issue. *See also Long Island Sav. Bank, FSB v. Aaron*, 225 A.D.2d 776, 777, 639 N.Y.S.2d 850 (2d Dep't 1996) (no breach of duty where attorney failed to timely turn over files after it was terminated).

S-491

the parties, it seems almost impossible to accept that Statek truly believes that the

relationship lasted as late as November 5, 2002.

Clearly, the January 15, 1996 letter terminated the attorney client

relationship and if it didn't, the subsequent patent distrust demonstrates that at the

very least, there was a *de facto* termination of the relationship precluding the

tolling of the statute. *See, L.F. Pace Constr., Inc. v. Simko*, 2007 WL 4686485 at

*6 (Conn. Super. Ct. Dec. 7, 2007).  Certainly, Statek would be entirely unable to

meet its burden to demonstrate that the attorney-client relationship lasted into

2002. *Id.*

This is borne out by reference to the policy behind the continuing course of

conduct doctrine, which is similar to the continuing representation doctrine, on

which Statek notably does not seek to rely.  In *Rosenfield v. Rogin, Nassau,*

*Caplan, Lassman & Hirtle, LLC*, 795 A.2d 572, 581 (Conn. App. Ct. 2002), the

court explained that the continuing representation doctrine was adopted to avoid

the "illogical requirement of the occurrence rule which compels clients to sue their

attorneys although the relationship continues and there has not been and may never

be any injury…The attorney-client relationship is maintained and speculative

malpractice litigation is avoided."

In other words, the tolling doctrine seeks to protect the parties' special

relationship and let it work its way out to see if any "wrong" could be corrected to

S-492

avoid injury. This policy is absolutely not implicated here. There was no on-going relationship between Statek and Coudert to protect and the alleged wrong had already been done in 1996. The entire theory of Statek's case is that it needed the files in 1996 when it asked for them and by the time it got them in 2002 it was allegedly too late. The alleged "wrong," which Statek was well aware of, could not be corrected. There was no reason why Statek could not, or could not have reasonably been expected to, bring suit long before 2005. It had nothing to "wait for." In truth, it was "busy elsewhere" chasing Johnston and Spillane. That, however, provides no basis for tolling the statute of limitations. Even under Connecticut law, Statek's claim would have been time barred. [37]

---

[37] Coudert denies emphatically that it breached any duty or obligation to Statek. *Jones v. Comm'r*, 129 T.C. 146 (2007), relied on by Statek, is an entirely inapt tax court case dealing with the issue of whether an attorney may make a charitable donation of his case files. In *Vanliner Ins. Co. v. Fay*, 98 Conn. App. 125, 140 (Conn. App. Ct. 2006), the Court found a continuing wrong where the agent continued to represent the plaintiff. It is irrelevant here and Statek cannot rely on it to collapse the separate criteria of a continuing relationship and later wrongful conduct.

S-493

## Conclusion

For all the foregoing reasons it is respectfully submitted that the decisions

below should all be affirmed.

Dated:  New York, New York
        January 28, 2011


                        STERN TANNENBAUM & BELL LLP


                        By:/s/ David S. Tannenbaum
                            David S. Tannenbaum
                            Karen S. Frieman
                        380 Lexington Avenue
                        New York, New York 10168
                        (212) 792-8484
                        *Attorneys for Appellee Development
                        Specialists, Inc.*


/32312


59


S-494

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate

Procedure, the foregoing brief is in 14-Point Times Roman proportional font

and contains 13,999 words and thus is in compliance with the type-volume

limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate

Procedure.

Dated: New York, New York
      January 28, 2011

                  STERN TANNENBAUM & BELL
                  LLP

                  By: _/s/ David S. Tannenbaum_____
                       David S. Tannenbaum
                       Karen S. Frieman
                  380 Lexington Avenue
                  New York, New York 10168
                  (212) 792-8484
                  *Attorneys for Appellee Development*
                  *Specialists, Inc.*

{00032775.DOC v}

| | | | |
|---|---|---|---|
| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
| | ) | ss.: | **BY OVERNIGHT EXPRESS** |
| COUNTY OF NEW YORK | ) | | **MAIL** |

I, Antoina Coston, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

**On January 28, 2011**

deponent served the within: **Brief for Appellee Development Specialists, Inc., Plan Administrator for Coudert Brothers LLP**

upon:

**Edward J.M. Little**
**Lisa A. Cahill**
**Hughes Hubbard & Reed LLP**
**Attorneys for Appellant Slatek Corporation**
**One Battery Park Plaza**
**New York, New York 10004**
**(212) 837-6000**

the address(es) designated by said attorney(s) for that purpose by depositing **2** true copy(ies) of same, enclosed in a postpaid properly addressed wrapper in a Post Office Official Overnight Express Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

This document was also submitted via the CM/ECF Case Filing System. All counsel of record in this case are registered CM/ECF users. Filing and service were performed by direction of counsel.

**Sworn to before me on January 28, 2011**

_Maryna Sapyelkina_
Notary Public State of New York
No. 01SA6177490
Qualified in Kings County
Commission Expires Nov. 13, 2011

**Job # 234014**

**S-496**

# EXHIBIT B

S-497

# 10-2723-cv

## United States Court of Appeals
### *for the*
### Second Circuit

In Re:
COUDERT BROTHERS LLP,

*Debtor.*

STATEK CORPORATION,

*Appellant,*

- against -

DEVELOPMENT SPECIALISTS, INC.,

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**PETITION FOR REHEARING OF
APPELLEE DEVELOPMENT SPECIALISTS, INC.,
PLAN ADMINISTRATOR FOR COUDERT BROTHERS LLP**

DAVID S. TANNENBAUM
KAREN S. FRIEMAN
STERN TANNENBAUM & BELL LLP
*Attorneys for Appellee Development
 Specialist, Inc., Plan Administrator
 for Coudert Brothers LLP*
380 Lexington Avenue
New York, New York 10168
(212) 792-8484

## TABLE OF CONTENTS

<u>PAGE NO.</u>

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT......................................................................... 2

STATEMENT OF FACTS ............................................................................... 3

ARGUMENT ................................................................................................... 7

    THE DECISION SHOULD BE MODIFIED TO REFLECT
    THAT THE CHOICE OF LAW DETERMINATION
    MUST AWAIT A RULING ON COUDERT'S MOTION TO
    DISMISS THE CONNECTICUT ACTION FOR LACK OF
    PERSONAL JURISDICTION...................................................................... 7

CONCLUSION .............................................................................................. 14

i

S-499

## TABLE OF AUTHORITIES

PAGE NO.

### Cases

Bianco v. Erkins (In re Gaston & Snow),
    243 F.3d 599 (2d Cir. 2001), *cert. denied*, 534 U.S. 1042 (2001)........................ 7

Caribbean Wholesales & Serv. Corp. v. US JVC Corp.,
    855 F. Supp. 627 (S.D.N.Y. 1994) ....................................................................... 8

Chaiken v. VV Publ'g. Corp..,
    119 F.3d 1018 (2d Cir. 1997) ............................................................................ 11

Davis v. Costa-Gravas,
    580 F. Supp. 1082 (S.D.N.Y 1984) .................................................................... 11

Ferens v. John Deere Co.,
    494 U.S. 516 (1990).................................................................................... passim

Gerena v. Korb,
    617 F.3d 197 (2d Cir. 2010) ......................................................................... 9, 10

In re Kaiser Group Int'l Inc.,
    2010 WL 3271198  (D. Del. Aug. 17, 2010)...................................................... 13

Levy v. Pyramid Co. of Ithaca,
    871 F.2d 9 (2d Cir. 1989) .................................................................................. 11

Liberty Synergistics, Inc. v. Microflo Ltd.,
    2011 WL 4974832 (E.D.N.Y. Oct. 26, 2011) ..................................................... 11

McTyre v. Broward Gen. Med. Ctr.,
    749 F. Supp. 102 (D.N.J. 1990).......................................................................... 11

Mopex, Inc. v. Am. Stock Exch.,
    2002 WL 342522 (S.D.N.Y. Mar. 5, 2002).......................................................... 8

S-500

<u>Norwood v. Kirkpatrick,</u>
  349 U.S. 29 (1955) ........................................................................ 8

<u>Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman,</u>
  306 B.R. 746 (S.D.N.Y. 2004) ...................................................... 13

<u>Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.,</u>
  434 F. Supp.2d 203 (S.D.N.Y. 2006) ........................................... 11

<u>SongByrd, Inc. v. Estate of Grossman,</u>
  206 F.3d 172 (2d Cir. 2000) ......................................................... 10

<u>Van Dusen v. Barrack,</u>
  376 U.S. 612 (1964) ............................................................... passim

## <u>Statutes</u>

28 U.S.C. § 157(2)(b) ....................................................................... 13

28 U.S.C. § 1334 ................................................................................ 4

28 U.S.C. § 1404 ...................................................................... passim

28 U.S.C. § 1412 .............................................................................. 13

28 U.S.C. § 1452 ................................................................................ 4

## <u>Rules</u>

Fed. R. App. P. 40 .............................................................................. 1

Fed. R. Bankr. P. 9027 ....................................................................... 4

## <u>Treatises</u>

Wright & Miller, <u>45 Fed. Prac. & Proc. Juris.</u> § 3846 (3d ed. 2009) ...................... 11

S-501

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

-----------------------------------------------------------x
                             :

IN RE:  COUDERT BROTHERS LLP,     :

                      *Debtor.*     :       10-2723-CV

                             :

-----------------------------------------------------------x
                             :

STATEK CORPORATION,     :

                    *Appellant,*     :

        -*v.*-                       :

DEVELOPMENT SPECIALISTS, INC.,     :
PLAN ADMINISTRATOR FOR     :
COUDERT BROTHERS LLP,     :

                    *Appellee.*     :

-----------------------------------------------------------x

## PETITION OF APPELLEE DEVELOPMENT
## SPECIALISTS, INC. FOR REHEARING

      Pursuant to Fed. R. App. P. 40, Appellee Development Specialists, Inc., as

plan administrator for Debtor Coudert Brothers LLP ("Coudert"), respectfully

submits this petition for rehearing of *Statek Corporation v. Development*

*Specialists, Inc., Plan Administrator for Coudert Brothers LLP (In re Coudert*

*Brothers LLP)*, No. 10-2723-bk (2d Cir. Feb. 28, 2012) ("Decision").[1]

---------------------------------

[1] A copy of the Decision is attached.  It is also reported at 2012 WL 615281.
Citations herein to "A-____" or "SPA-____" are to the Joint Appendix or Special
Appendix, respectively, filed in the appeal.

{00036227.DOC v)

## PRELIMINARY STATEMENT

In the Decision, the Court extended the holdings of the United States

Supreme Court in *Van Dusen v. Barrack*, 376 U.S. 612 (1964), and *Ferens v. John*

*Deere Co.,* 494 U.S. 516 (1990), and held that "where (1) the claim before a

bankruptcy court is wholly derived from another legal claim already pending in a

parallel, out-of-state, non-bankruptcy proceeding; and (2) the pending original, or

'source,' claim was filed in a court prior to the commencement of the bankruptcy

case, bankruptcy courts should apply the choice of law rules of the state where the

underlying prepetition claim was filed." (Decision, p. 3.)

The Court further ordered, in pertinent part, that "the case is REMANDED

to the district court with instructions to REMAND IN PART to the bankruptcy

court with instructions to apply Connecticut's choice of law rules in deciding

Statek's motion to reconsider" the disallowance of Claim No. 239 filed by Statek

in Coudert's bankruptcy case (the "Claim"). (Decision, p. 19.)

Coudert seeks a rehearing of the Decision on the grounds that the Court

overlooked that Coudert's challenge to the exercise of personal jurisdiction over it

by the court in Connecticut has not yet been determined and that, under *Van Dusen*

and *Ferens* and the decisions of this Court, the law of the "transferor" forum is not

applied where the "transferor" could not exercise jurisdiction over the defendant.

2

S-503

Coudert therefore respectfully submits that the direction that the bankruptcy court must apply the choice of law rules of Connecticut was incorrect or at least premature. Coudert requests that the Decision be modified so as to remand the case in part to the bankruptcy court with instructions that it should first determine whether there was personal jurisdiction over Coudert in Connecticut and then: (a) if it determines that there was jurisdiction over Coudert, the bankruptcy court should apply Connecticut's choice of law rules in deciding Statek's motion to reconsider, but (b) if it determines that there was no basis for the exercise of jurisdiction over Coudert, the bankruptcy court should apply New York's choice of law rules and adhere to its prior ruling disallowing the Claim.

## STATEMENT OF FACTS

On November 5, 2005, Statek and its alleged parent, Technicorp International II, Inc. ("TCI II") (not a claimant in the bankruptcy), commenced a Connecticut state court action against Coudert (and other defendants) alleging, *inter alia*, that Coudert breached its professional duty of care by allegedly failing to turn over all files to the plaintiff more than nine years earlier in July, 1996 (the "Connecticut Action"). Statek further claimed that this alleged failure damaged Statek and TCI II by delaying and hampering their ability to collect assets misappropriated by their officers and directors. (A-387-88.)

3

S-504

On or about February 3, 2006, Coudert filed a pre-answer motion to dismiss
Statek's complaint on the grounds of lack of personal jurisdiction and forum *non
conveniens*.  On September 22, 2006, while that motion was pending, Coudert,
which had been headquartered in New York for over 150 years, and which had
been in dissolution for some time (including at the time Statek commenced the
Connecticut Action), filed a bankruptcy petition in the Bankruptcy Court for the
Southern District of New York.  (A-189.)  On or about January 30, 2007, Statek
and TCI II filed Claim No. 239 in the approximate amount of $85,000,000,
expressly incorporating the complaint in the Connecticut Action.  (A-6-46.)

Coudert's motion to dismiss the Connecticut Action was also still pending
when, on or about March 23, 2007, Coudert removed the action to the Connecticut
District Court pursuant to 28 U.S.C. §§ 1452 and 1334 and Fed. R. Bankr. P. 9027.
(A-47.)

Although Statek sought relief from the automatic stay which followed
Coudert's bankruptcy filing, it voluntarily agreed to resolve its motion for relief by
stipulation, dated September 5, 2007, which, *inter alia*, allowed for discovery
regarding, and decision by the Connecticut District Court on, Coudert's pending
dispositive motions to dismiss.  (A-188-192.)

On February 21, 2008, the Connecticut District Court granted Coudert's
motion to dismiss the Connecticut Action on forum *non conveniens* grounds,

4

S-505

holding, "plaintiff's choice of forum should not be given significant weight in part

because Connecticut has very little connection to the claims raised in the present

complaint. . . there is very little connection to Connecticut." (A-1203.)  The

Connecticut District Court further found:

> … there is not any great interest on the part of
> Connecticut to have this case heard here, it seems to me,
> neither plaintiff having, either in one case or in the other
> case, any significant connection to the state . . . [B]oth
> England and New York have a greater public interest in
> having this matter heard than does the State of
> Connecticut.

(A-1206-07.)  The Connecticut District Court also declined Statek's request to

transfer the action to New York pursuant to 28 U.S.C. § 1404.  (A-1192, 1209.)

Significantly, the Connecticut District Court expressly stated that it would

hold Coudert's jurisdictional motion in abeyance, noting:

> it's not at all clear . . . that there is personal jurisdiction
> over either the firm or the remaining individual partner in
> that firm. . . There's a fairly strong showing that the
> matter rises [sic] out of activities that occurred
> principally abroad, and it's not apparent to me, especially
> given the position taken in the brief's about Statek's
> presence in Connecticut, why Connecticut has much, if
> any, connection to this dispute.

(A-1180 (emphasis supplied); *see also* A-1204.)

On or about March 5, 2008, the Connecticut District Court modified its

decision to make the forum *non conveniens* dismissal conditional on Coudert's

agreement that the statute of limitations would not be deemed to have run between

S-506

the time Statek served the Connecticut Action complaint and the time in which it

would refile any action. (A-215.) Coudert declined to agree to this condition or to

the lifting of the automatic stay to allow Statek to refile its action elsewhere and on

or about May 8, 2008, the Connecticut District Court formally reinstated the

Connecticut Action as against Coudert. (A-348.)

On or about June 2, 2008, Statek again moved for relief from the automatic

stay.  The parties resolved that motion by entering into a stipulation, so ordered by

the bankruptcy court on August 21, 2008, providing, *inter alia*, for the Claim to be

mediated under the auspices of the bankruptcy court. (A.350.)  There were no

further proceedings in the Connecticut District Court.[2]

However, Coudert's motion to dismiss the Connecticut Action for lack of

personal jurisdiction has yet to be determined.  If, as Coudert asserts, there was no

basis for the exercise of personal jurisdiction over it in Connecticut, the law is clear

that Connecticut's choice of law rules should not be applied.  Rather, the

bankruptcy court would be bound to apply New York's choice of law rules

---

[2] The stipulation did allow Statek to file an amended complaint in the Connecticut
Action which would be deemed incorporated in the Claim.  It expressly provided
that Coudert would not have to respond to same. (A-354.)  The Connecticut
Action was subsequently dismissed on August 31, 2009, without prejudice to its
pursuit in the bankruptcy court and without prejudice to Statek moving to reopen
the case. (A-1229.)

6

pursuant to which it properly held, as Statek concedes, that the Claim would be

disallowed as time barred.[3]

In short, the decision as to whether Connecticut's choice of law rules or New

York's choice of law rules should apply must await a determination of Coudert's

pending motion to dismiss for lack of personal jurisdiction.

## ARGUMENT

### THE DECISION SHOULD BE MODIFIED TO REFLECT THAT THE CHOICE OF LAW DETERMINATION MUST AWAIT A RULING ON COUDERT'S MOTION TO DISMISS THE CONNECTICUT ACTION FOR LACK OF PERSONAL JURISDICTION

In the Decision, this Court held that "the practical effect of [Statek] filing a

proof a claim in the bankruptcy court was to transfer the case from Connecticut

federal court to New York federal court" and that, by extension of the rule in *Van

Dusen* and *Ferens*, the bankruptcy court should apply the choice of law rules of

Connecticut, the putative transferor forum, where the pre-petition claim was filed.

(Decision, pp. 2-3.)

However, the law is clear that where, as here, the transferor court lacks

personal jurisdiction over the defendant, the transferee court applies its own choice

of law rules and not those of the transferor.

---

[3] The Decision leaves intact the holding in *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599 (2d Cir. 2001), *cert. denied*, 534 U.S. 1042 (2001), that state law choice of law rules, rather than a federal choice of law analysis, should be applied.

S-508

In *Van Dusen, supra*, 376 U.S. 612, the Supreme Court established the rule that following transfer of an action at defendant's request to a more convenient forum under 28 U.S.C. § 1404(a) the law of the transferor court applies so as to preserve the plaintiff's privilege to select the forum.  The *Van Dusen* Court held: "[t]his purpose [to protect the plaintiff's venue privilege] would be defeated in cases such as the present if nonresident defendants, properly subjected to suit in the transferor State…, could invoke § 1404(a) to gain the benefits of the law of another jurisdiction…" *Id.* (Emphasis supplied.)  Plainly, *Van Dusen*'s holding is predicated on a finding that the action was properly brought in the transferor forum.[4]

In *Ferens, supra*, 494 U.S. 516, the Supreme Court addressed whether the law of the transferor court should apply to plaintiff initiated transfers.  In holding that it should and that this would not result in forum shopping beyond that permitted by plaintiff's venue privilege, the Court noted that "[a]pplying the

---

[4] Notably, the *Van Dusen* Court expressly left open the issue of whether the transferor law would apply where the transferor court dismissed an action under §1404 rather than transferring same, which is what occurred here, albeit conditionally. *Id.*  The Courts in this Circuit have held that in such a situation, the law of the transferee forum should apply. *Mopex, Inc. v. Am. Stock Exch.*, 2002 WL 342522 at **5, 6 (S.D.N.Y. Mar. 5, 2002); *Caribbean Wholesales & Serv. Corp. v. US JVC Corp.*, 855 F. Supp. 627, 632 (S.D.N.Y. 1994); *see also, Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955).

S-509

transferor law would not give a plaintiff an opportunity to use a transfer to obtain a law that he could not obtain through his initial forum selection." *Id.* at 527.

In contrast, applying the transferor's choice of law rules where there was no jurisdiction in the transferor court, that is, where plaintiff's forum choice was not permissible, does invite forum shopping, is not mandated by, and indeed is contrary to, the reasoning of both *Van Dusen* and *Ferens*. For this reason, the Second Circuit has consistently held that where there is no jurisdiction in the transferor court, the choice of law rules of the transferee court must be applied.

*Gerena v. Korb*, 617 F.3d 197 (2d Cir. 2010), is directly on point. There, the plaintiff commenced suit in New York state court against Yale University and Korb arising from Korb's alleged assault of one of the plaintiffs at Yale. Yale removed the action to the Southern District of New York which court then granted Yale's motion to transfer the action to Connecticut District Court. Korb moved to dismiss the action against him for lack of personal jurisdiction over him in New York and later on the grounds that the action was untimely. The Connecticut District Court applied Connecticut's statute of limitations (the transferee's law) and held that the action against Korb was untimely.

The Second Circuit, relying on *Van Dusen* and prior Second Circuit authority, reversed the Connecticut District Court's dismissal of the complaint

9

S-510

against Korb and remanded the action for a determination as to whether there was

personal jurisdiction over Korb in New York.[5]   The Court held:

> If a district court receives a case pursuant to a transfer
> under 28 U.S.C. § 1406(a), for improper venue, or 28
> U.S.C. § 1631, for want of jurisdiction, it logically
> applies the law of the state in which it sits, since the
> original venue, with its governing laws, was never a
> proper option… In contrast, when a case is transferred
> for convenience under 28 U.S.C. § 1404(a), the law of
> the transferor state is to be applied <u>so long as the
> transferor state could properly have exercised
> jurisdiction</u>. *See Van Dusen v. Barrack, 376 U.S. 612,
> 635-3; Fin. One Public Co. Ltd, v. Lehman Bros. Special
> Fin. Inc., 414 F.3d 325, 333-34 (2d Cir. 2005);
> SongByrd, Inc. v. Estate of Grossman, 206 F.3d 172,
> 179-80 (2d Cir. 2000).*

*Id.* at 204 (emphasis supplied; citations omitted).

In short, the *Gerena* Court held that New York law, as the governing law of

the transferor court, should have been applied by the District of Connecticut, <u>as</u>

<u>long as jurisdiction in New York would have been proper</u>, but that if jurisdiction

was not proper in New York, the district court properly applied Connecticut choice

of law. *Id.*

This holding reflects the well established law in this Circuit. *See SongByrd,*

*Inc. v. Estate of Grossman*, 206 F.3d 172, 179-80 (2d Cir. 2000) ("[I]n a

transferred action the law of the transferor jurisdiction applies…only if the

---

[5] The Second Circuit affirmed the dismissal of the case against Yale for untimely
service.

S-511

transferor court has personal jurisdiction"); *Levy v. Pyramid Co. of Ithaca*, 871

F.2d 9 (2d Cir. 1989); *Liberty Synergistics, Inc. v. Microflo Ltd.*, 2011 WL

4974832 *4 (E.D.N.Y. Oct. 26, 2011); *Shaw Family Archives, Ltd. v. CMG

Worldwide, Inc.*, 434 F. Supp.2d 203, 208 (S.D.N.Y. 2006) ("where the defendant

in the transferred action was not subject to personal jurisdiction in the original

forum, then the transferee court must apply its own choice of law rules"); *Davis v.

Costa-Gravas*, 580 F. Supp. 1082, 1086 (S.D.N.Y 1984); *see also* Wright &

Miller, *45 Fed. Prac. & Proc. Juris.* § 3846 (3d ed. 2009) ("... if venue was

improper or personal jurisdiction was lacking over the defendant in the transferor

court, the transferee court will apply the law that would have been applied if the

action had been commenced in the transferee court").

These authorities equitably protect plaintiff's venue privilege but only where

that privilege is properly exercised.  As this Court explained in *Chaiken v. VV

Publ'g. Corp.*, 119 F.3d 1018 (2d Cir. 1997), in affirming the application of the

transferee forum's statute of limitations:

> ...this rule seeks to prevent plaintiffs from bringing suit
> in courts that have favorable statutes of limitations but
> lack personal jurisdiction, "then transferring the action to
> the forum where personal jurisdiction can be exercised
> and attempting to carry with the action the more
> favorable statute of limitations."

*Id.* at 119 F.3d at 1030; *see also, McTyre v. Broward Gen. Med. Ctr.*, 749 F. Supp.

102, 108 (D.N.J. 1990) (applying transferor's statute of limitations where there was

11

no basis for jurisdiction would impermissibly "…allow plaintiffs to bootstrap an otherwise defeated claim by selecting the most favorable law from any of the fifty states and transfer it to a federal court in which jurisdiction can be maintained").

The Decision's direction that the choice of law rules of the "transferor," Connecticut, should apply without regard to whether or not there was jurisdiction over Coudert there, is contrary to these authorities and would impermissibly encourage forum shopping beyond the plaintiff's protected right to select the forum in the first instance.  This is precisely the advantage Statek sought when it commenced its suit nine years after the events in question, not in England where Coudert's actions occurred, not in California where Statek was incorporated, and not in New York where Coudert was headquartered, but in Connecticut, the only place that Statek believed its claim might be timely.[6]  In contrast, there has been and can be no challenge to the bankruptcy court's finding that Coudert was not "guilty" of forum shopping in filing its bankruptcy in New York where it had been headquartered in New York for 150 years.  (SPA-32.)  In any event, because there is no jurisdiction over Coudert in Connecticut, Statek is not entitled to the benefit of that forum's choice of law rules.

---

[6] Statek's pleading concedes that it did not maintain a principal place of business in Connecticut after 1996.  (A-8.)  In fact, it apparently conceded that Connecticut "was not a place where Statek transacted any real business."  (A-1204-05.)

S-513

It is respectfully submitted, that this Court's authorities require that the remand in the Decision be modified to require the bankruptcy court to make a determination of whether there was jurisdiction over Coudert before the choice of law issue is resolved. If there was jurisdiction over Coudert there, Connecticut's choice of law rules would apply under this Court's Decision. If not, under well-settled law, the bankruptcy court should adhere to its ruling that Statek's Claim should be disallowed as untimely under New York law.[7]

---

[7] In relying on *Ferens* and *Van Dusen*, the Court deemed Statek's action "effectively transferred" pursuant to 28 U.S.C. § 1404(a). However, transfer of Statek's claim, which is a core proceeding under 28 U.S.C. § 157(2)(b), should be analyzed under 28 U.S.C. § 1412 and not § 1404(a). *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 306 B.R. 746, 749 (S.D.N.Y. 2004). In such a case, at least one court has held that the law of the transferee forum should apply. *In re Kaiser Group Int'l Inc.*, 2010 WL 3271198 *5 (D. Del. Aug. 17, 2010). Requiring the law of the transferee court to apply to cases transferred under § 1412 insures that all claimants in a bankruptcy are treated equally. It is therefore respectfully submitted that for this reason as well, the Decision should be modified.

13

S-514

## Conclusion

For all the foregoing reasons it is respectfully submitted that in rendering the Decision, the Court overlooked Coudert's pending challenge to the exercise of personal jurisdiction over it by the court in Connecticut and that the Court should rehear the Decision and modify it to the extent of making express that the choice of law determination must await the bankruptcy court's ruling on whether the District Court for the District of Connecticut had jurisdiction over Coudert.

Dated:  New York, New York
         March 13, 2012

STERN TANNENBAUM & BELL LLP

By: _____
         David S. Tannenbaum
         Karen S. Frieman
         380 Lexington Avenue
         New York, New York 10168
         (212) 792-8484
         *Attorneys for Appellee Development
         Specialists, Inc.*

14

S-515

# ADDENDUM

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 29 of 50

06-12226-rdd   Doc 1489-2   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit B
Pg 21 of 39
Case: 10-2723   Document: 87   Page: 1   02/28/2012   536900   19

10-2723-bk
Statek Corp. v Development Specialists, Inc. (In re Coudert Bros. LLP)

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

------------

August Term, 2010

(Argued: April 29, 2011                    Decided: February 28, 2012)

Docket No. 10-2723-bk

------------

IN RE COUDERT BROTHERS LLP,

*Debtor.*

------------

STATEK CORPORATION,

*Appellant,*

-v.-

DEVELOPMENT SPECIALISTS, INC., PLAN ADMINISTRATOR FOR COUDERT BROTHERS LLP,

*Appellee.*

------------

Before:

NEWMAN, CALABRESI, HALL, *Circuit Judges.*

------------

Appellant Statek Corporation ("Statek") appeals from an order of the United States

District Court for the Southern District of New York (Hellerstein, *J.*), affirming the order of the

United States Bankruptcy Court for the Southern District of New York (Drain, *J.*) disallowing its

claim against the bankruptcy estate of Coudert Brothers LLP ("Coudert") and affirming the

1

CERTIFIED COPY ISSUED ON 02/28/2012

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 30 of 50

06-12226-rdd    Doc 1489-2    Filed 10/17/12   Entered 10/17/12 11:50:59    Exhibit B
Pg 22 of 39
Case: 10-2723    Document: 87   Page: 2    02/28/2012    536900    19

denial of Statek's motion to reconsider the bankruptcy court's order. The bankruptcy court

should have applied the choice of law rules of the State of Connecticut, where Statek's pre-

bankruptcy action against Coudert had been commenced, and not the choice of law rules of New

York State, where the bankruptcy court is located.

VACATED AND REMANDED.

---

EDWARD J.M. LITTLE, (Lisa A. Cahill, *on the brief*), Hughes Hubbard & Reed
LLP, New York, New York, *for Appellant.*

KAREN S. FRIEMAN, (David S. Tannenbaum, *on the brief*), Stern Tannenbaum &
Bell LLP, New York, New York, *for Appellee.*

---

HALL, *Circuit Judge*:

Appellant Statek Corporation appeals from an order of the United States District Court

for the Southern District of New York (Hellerstein, *J.*), affirming the order of the United States

Bankruptcy Court for the Southern District of New York (Drain, *J.*) disallowing its claim against

the estate of Coudert in *In re Coudert Brothers LLP*, Case No. 06-12226 (Bankr. S.D.N.Y.) and

affirming the denial of Statek's motion to reconsider the bankruptcy court's order.

The bankruptcy court should not have applied the choice of law rules of New York, the

state in which it sits, but instead the choice of law rules of Connecticut, where Statek filed its

pre-bankruptcy action seeking damages that later constituted its claim against the bankruptcy

estate. Although the case was not technically transferred under 28 U.S.C. § 1404(a), the

practical effect of filing a proof of claim in the bankruptcy court was to transfer the case from

Connecticut federal court to New York federal court. Extending the well-established rule of *Van

Dusen v. Barrack*, 376 U.S. 612 (1964), and *Ferens v. John Deere Co.*, 494 U.S. 516 (1990), we

2

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 31 of 50

06-12226-rdd   Doc 1489-2   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit B
Pg 23 of 39
Case: 10-2723   Document: 87   Page: 3   02/28/2012   536900   19

hold that in a case such as this one, where: (1) the claim before the bankruptcy court is wholly

derived from another legal claim already pending in a parallel, out-of-state, non-bankruptcy

proceeding; and (2) the pending original, or "source," claim was filed in a court prior to the

commencement of the bankruptcy case, bankruptcy courts should apply the choice of law rules

of the state where the underlying prepetition claim was filed.

 We therefore VACATE the district court's order and REMAND the case to the district

court with instructions to remand the case to the bankruptcy court and, in so doing, instructing

the bankruptcy court to apply the choice of law rules of Connecticut to decide Statek's motion

for reconsideration.

## I. Background

 Coudert, the debtor in this case, was for over a century one of the world's leading

international law firms. The claimant is one of Coudert's former clients, Statek Corporation.[1]

Statek's claim is based on an asserted tort, legal malpractice, committed by Coudert against

Statek during the course of their attorney-client relationship. Statek's allegations are roughly as

follows.

 From 1984 until 1996, Statek was controlled by Hans Frederick Johnston. Johnston, who

had obtained control of the company by fraud, devoted most of his tenure with Statek to looting

the corporate treasury and traveling lavishly at the company's expense. In furtherance of his

schemes, Johnston caused Statek to retain Coudert in 1990. Although Coudert's fees were paid

---

[1] Statek originally filed the proof of claim on behalf of itself and its parent corporation,
Technicorp International II, Inc. ("TCI-II"). TCI-II was subsequently dropped from the
complaint underlying the proof of claim, however, and Statek proceeded through the claim
objection proceeding as the only claimant.

3

S-519

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 32 of 50

06-12226-rdd   Doc 1489-2   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit B
Pg 24 of 39
Case: 10-2723   Document: 87   Page: 4   02/28/2012   536900   19

by Statek, the firm counseled Johnston personally, helping him to hide and launder various assets
stolen from Statek. Among other things, lawyers in Coudert's London office created secret shell
corporations, established offshore asset protection trusts, procured safe deposit boxes in the
name of those trusts, assisted with West Indian real estate purchases, and coordinated the
removal from the United States of a multi-million dollar art and stamp collection.

Eventually, Johnston's crimes were discovered. He was removed from power and was
sued by Statek for fraud and waste. While the fraud and waste lawsuit was ongoing, Statek
strove to locate company funds that Johnston and his associate Sandra Spillane misappropriated.
The search only intensified after Statek obtained a judgment against Johnston and Spillane for
over $30 million. Progress was slow because Johnston had spread his ill-gotten gains widely,
moving money into and out of shell corporations, offshore trusts, art and collectibles, and a
variety of other laundering devices. Many of the assets were believed to be in the hands of third
parties.

For assistance, Statek turned to its old law firm, Coudert. As the fraud and waste lawsuit
got underway in 1996, Statek sent a request to Coudert for any information and all files relating
to its representation of Statek during the Johnston years. Coudert responded with six files
pertaining mostly to the creation of a Statek subsidiary. After Statek secured a large money
judgment against Johnston, it and two other judgment creditors forced Johnston into involuntary
bankruptcy in the United Kingdom. At that point, a trustee was appointed for Johnston's estate
and charged with collecting its assets. In 2002, the trustee approached Coudert for information
about its representation of Statek and learned about Courdert's work for Johnston moving art to
Europe. More inquires led to more revelations. By 2004, the trustee had learned of Coudert's

4

S-520

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 33 of 50

06-12226-rdd   Doc 1489-2   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit B
Pg 25 of 39
Case: 10-2723   Document: 87   Page: 5   02/28/2012   536900   19

role in setting up Johnston's offshore asset protection trusts, obtaining secret safe deposit boxes, and facilitating the West Indian property deal.

Statek believes that Coudert's delay turning over files and information, to which as a former client it was entitled, allowed Johnston to irretrievably dispose of millions of dollars. Statek also asserts that if Coudert had been forthcoming about its representation during Johnston's reign, Statek would have saved the time and money it was forced to expend recovering assets hidden around the world. All told, Statek claims that Coudert's inaction has cost it in the neighborhood of $85 million.

In October 2005, Statek filed a malpractice lawsuit against Coudert in state court in Connecticut where Johnston had allegedly lived, run Statek, and received many of Coudert's services.[2] Several months later, Coudert—which was already in dissolution—filed a motion to dismiss Statek's action on the basis of lack of personal jurisdiction and *forum non conveniens*. On September 22, 2006, while that motion was pending, Coudert filed a petition for Chapter 11 bankruptcy in the Southern District of New York. This filing triggered an automatic stay of Statek's Connecticut action pursuant to 11 U.S.C. § 362. In the bankruptcy court, Statek thereafter filed a proof a claim based on its pending malpractice action, and it attached to its claim as an exhibit the complaint it had filed in state court almost a year earlier. In March 2007, Coudert removed the Connecticut action to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1452, which allows for removal of any state court action

---

[2] The state action also named several individual partners at Coudert, but none of those parties are involved with the bankruptcy claim at issue here.

5

S-521

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 34 of 50

06-12226-rdd    Doc 1489-2    Filed 10/17/12    Entered 10/17/12 11:50:59    Exhibit B
Pg 26 of 39
Case: 10-2723    Document: 87    Page: 6    02/28/2012    536900    19

over which there is bankruptcy jurisdiction.[3]  Once the Connecticut action was removed, Statek

moved the bankruptcy court in New York for relief from the automatic stay so that it could

proceed with the malpractice action in federal district court in the District of Connecticut.

Coudert objected, and the two sides ultimately compromised:  the stay was lifted only as to

conducting discovery on and resolving Coudert's motion to dismiss in the Connecticut action.  In

February 2008, the district court in Connecticut (Underhill, *J.*) conditionally dismissed Statek's

complaint on *forum non conveniens* grounds, but Coudert would not consent to the conditions.[4]

The case thus remained pending in Connecticut and the stay was automatically reimposed.  In

June 2008, Statek again moved the bankruptcy court for relief from the stay, and the parties

again settled on less than a full relief from the stay.  In August 2008, the stay was partially lifted

so that Statek could file an amended complaint in the District of Connecticut, which was also

incorporated into its proof of claim pending in the bankruptcy court.  Additionally, the

bankruptcy court granted relief from the stay to allow for mediation between the parties and

Coudert's malpractice insurer with the hopes of liquidating the claim.  As might be inferred, the

mediation failed and, in March 2009, the Plan Administrator (Coudert's Chapter 11 Plan for

Liquidation having been confirmed) filed a motion in bankruptcy court to disallow the claim.

Although motions to disallow claims are "core proceedings" for the purposes of 28 U.S.C. § 157,

the validity of Statek's claim turned on a finding of tort liability against Coudert.  Under these

---

[3] Because Statek sought damages from Coudert, the Connecticut action was certainly "related to" Coudert's bankruptcy case, and the bankruptcy court thus had original, though not exclusive, jurisdiction over it pursuant to 28 U.S.C. § 1334(b).

[4] The district court made dismissal contingent on Coudert (1) agreeing to lift the automatic stay, which would permit Statek to file in another forum, and (2) waiving any statute of limitations defense in the new forum.

6

S-522

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 35 of 50

06-12226-rdd    Doc 1489-2    Filed 10/17/12    Entered 10/17/12 11:50:59    Exhibit B
Pg 27 of 39
Case: 10-2723    Document: 87    Page: 7    02/28/2012    536900    19

circumstances, the bankruptcy court—with the consent of the parties—applied the procedural

rules of an "adversary proceeding" to the dispute, treating the Plan Administrator's motion to

disallow as a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

In July 2009, the bankruptcy court, relying on our decision in *Bianco v. Erkins (In re*

*Gaston & Snow)*, 243 F.3d 599, 601-02 (2d Cir. 2001), applied New York choice of law rules to

Statek's claim.  Under New York's anti-forum shopping "borrowing statute," N.Y. C.P.L.R. §

202, the bankruptcy court determined that because Statek was a non-resident, its claim must be

judged by the shorter of either New York's statute of limitations or the statute of limitations of

the jurisdiction where the claim accrued (presumably Connecticut or the United Kingdom).  As

Statek had already conceded that its claim was untimely under the New York statute of

limitations, the bankruptcy court determined that provision to be as short as or shorter than any

other possibilities, applied it, and disallowed the claim.

Statek filed an unsuccessful motion for reconsideration and then sought to have its claim

reinstated on appeal to the United States District Court for the Southern District of New York

(Hellerstein, *J.*).  That district court affirmed the bankruptcy court's two orders.  Statek now

appeals that decision.

## II.    Discussion

### A.    The District Court's Appellate Jurisdiction

At the time Statek appealed to the district court, a party seeking review of a bankruptcy

judge's decision had ten days from "the date of the entry of the judgment, order, or decree" to

file a notice of appeal to a district court or bankruptcy appellate panel.  Fed. R. Bankr. P. 8002(a)

S-523

Case 1:13-cv-08578-LTS Document 16-10 Filed 12/17/13 Page 36 of 50

06-12226-rdd    Doc 1489-2    Filed 10/17/12    Entered 10/17/12 11:50:59    Exhibit B
Pg 28 of 39
Case: 10-2723    Document: 87    Page: 8    02/28/2012    536900    19

(2009).[5] The ten-day deadline is tolled if one of a specified list of motions is filed in the

bankruptcy court. *See* Fed. R. Bankr. P. 8002(b) (2009). But once the time to appeal runs, a

district court or bankruptcy appellate panel has no jurisdiction to consider an untimely appeal.

"[T]he time limit contained in Rule 8002(a) is jurisdictional, and . . . in the absence of a timely

notice of appeal in the district court, the district court is without jurisdiction to consider the

appeal, regardless of whether the appellant can demonstrate 'excusable neglect.'" *Siemon v.*

*Emigrant Sav. Bank (In re Siemon)*, 421 F.3d 167, 169 (2d Cir. 2005).

    Appellee Plan Administrator challenges the timeliness of Statek's appeal to the district

court from the bankruptcy court's initial order disallowing the claim.[6] (Appellee's Br. 2 n.2.).

Its argument is based on the following timeline:

| | |
|---|---|
| 7/21/2009 | Bankruptcy court order disallowing Statek's claim. |
| 7/31/2009 | Statek's motion for reconsideration filed. |
| 9/8/2009 | Bankruptcy court denies motion for reconsideration. |
| 9/16/2009 | Statek appeals both orders to the district court. |

---

    [5] Effective December 1, 2009, Rule 8002 now provides a fourteen-day window to file a notice of appeal.

    [6] We may (and indeed must) consider the timeliness of the notice of appeal, even though the Plan Administrator apparently failed to present the issue to the district court. Rule 8002 is jurisdictional. *See In re Siemon*, 421 F.3d at 169. A circuit court has an "independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*." *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 287 (2d Cir. 2011) (quotation marks omitted). "For that reason, every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review . . . ." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quotation marks omitted). "And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it." *Id.* "When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *Id.* (alterations omitted).

S-524

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 37 of 50

06-12226-rdd   Doc 1489-2   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit B
Pg 29 of 39
Case: 10-2723   Document: 87   Page: 9   02/28/2012   536900   19

Accordingly, regardless of whether the motion for reconsideration tolled the time to appeal the bankruptcy court's initial order, Statek's appeal of that order disallowing its claim was untimely. Its appeal of the denial of the motion for reconsideration, however, was timely. The district court's review—and, by extension, our review as well—is thus limited to the bankruptcy court's denial of Statek's motion to reconsider.

B.    Standard of Review

When reviewing a bankruptcy court decision that was subsequently appealed to a district court, we review the bankruptcy court's decision independent of the district court's review. *U.S. Lines v. United States (In re McLean Indus., Inc.)*, 30 F.3d 385, 387 (2d Cir. 1994); *see also DISH Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 634 F.3d 79, 94 (2d Cir. 2011) ("We look through the district court to the bankruptcy court's decision . . . ."). A bankruptcy court's denial of a motion to reconsider a disallowed claim is a discretionary decision, reviewed under the familiar and deferential abuse-of-discretion standard. *See Univ. Church v. Geltzer*, 463 F.3d 218, 228 (2d Cir. 2006); *see also Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc.)*, 324 F.3d 197, 202 (3d Cir. 2003) (appeals court "review[s] the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercises of discretion for abuse thereof" (quotation marks omitted)). Although this standard affords a bankruptcy judge substantial latitude, "we nonetheless remain mindful that a bankruptcy court would *necessarily* abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.)*, 279 F.3d 148, 152 (2d Cir. 2002) (alteration and quotation marks omitted, emphasis added).

9

S-525

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 38 of 50

06-12226-rdd   Doc 1489-2   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit B
Pg 30 of 39
Case: 10-2723   Document: 87   Page: 10   02/28/2012   536900   19

C.    Choice of Law

We are faced in this case with apparently conflicting rules on choice of law in federal

cases.  It is well established that a federal court sitting in diversity must generally apply the

choice of law rules of the state in which it sits.  And it is now well established that a bankruptcy

court must also apply state choice of law rules.  But it is also clear that when a case is

transferred, the choice of law rules of the state in which the case was initially filed transfer with

it.  This case presents a hybrid situation, and requires us to decide which state's choice of law

rules should apply when a bankruptcy court sitting in one state is resolving a bankruptcy claim

arising from a state-law action previously filed in another state.

1.    *Choice of Law Rules in Diversity Cases*

When a federal district court sits in diversity, it generally applies the law of the state in

which its sits, including that state's choice of law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*,

313 U.S. 487, 496 (1941).[7]  "There is no federal general common law."  *Erie R.R. Co. v.*

*Tompkins*, 304 U.S. 64, 78 (1938).  Applying *Erie*, *Klaxon* held that state choice of law rules are

substantive state law. 313 U.S. at 496.  *Klaxon*'s logic provides important foundational

principles for our analysis in this case.  "Once it is recognized that federal choice of law rules are

a species of federal common law, the . . . ability of the federal courts to create federal common

law and displace state created rules is severely limited."  *In re Gaston*, 243 F.3d at 606.  The

federal courts are not powerless to displace state choice of law rules,[8] but, without express

---

[7] When a district court exercises federal question jurisdiction, federal law provides the
substantive rules of decision and there is generally no need to consider choice of law.

[8] This would be in contrast to any substantive state laws that relate exclusively to matters
outside the purview of the federal courts—perhaps, for example, certain elements of state family

10

S-526

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 39 of 50

06-12226-rdd   Doc 1489-2   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit B
Pg 31 of 39
Case: 10-2723   Document: 87   Page: 11   02/28/2012   536900   19

authorization from Congress, we can do so only by making federal common law. Given the

separation of powers as between Congress and the judiciary, this is not the preferred method of

displacing state substantive law. Indeed, as the Supreme Court recently stated:

> Recognition that a subject is meet for federal law governance, however, does not
> necessarily mean that federal *courts* should create the controlling law. Absent a
> demonstrated need for a federal rule of decision, the Court has taken the prudent
> course of adopting the readymade body of state law as the federal rule of decision
> until Congress strikes a different accommodation.

*Am. Elec. Power Co., Inc. v. Connecticut*, 131 S. Ct. 2527, 2536 (2011) (emphasis added)

(citations and citation marks omitted); *see also Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63,

68 (1966) ("Whether latent federal power should be exercised to displace state law is primarily a

decision for Congress."). In most situations this "demonstrated need for a federal rule of

decision," *see American Electric Power*, 131 S. Ct. at 2536, arises because application of state

law would conflict with a federal policy or interest, *see Atherton v. FDIC*, 519 U.S. 213, 219

(1997).

### 2.   *Choice of Law Rules in Bankruptcy Cases*

*Klaxon* and its progeny set forth clear rules for federal courts sitting in diversity. But the

rules for bankruptcy courts are more difficult to discern. 28 U.S.C. § 1334(b) vests the district

courts with original jurisdiction over civil proceedings "arising under," "arising in," or "related

---

law. From a federalism perspective, the limits on the federal courts' power to create common
law track those of Congress's legislative power. *See Erie*, 304 U.S. at 78-79; *cf. Paul M. Bator
et al., Hart & Wechsler's The Federal Courts and the Federal System* 713-14 (2d ed. 1973)
(federally-created choice of law rules applicable in the federal courts do not create federalism
problems because Congress has the power to create, or delegate authority to create, rules for the
courts that are "necessary and proper" to the exercise of federal court jurisdiction).

11

S-527

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 40 of 50

06-12226-rdd   Doc 1489-2   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit B
Pg 32 of 39
Case: 10-2723   Document: 87   Page: 12   02/28/2012   536900   19

to" cases under the Bankruptcy Code. Such jurisdiction extends not only to questions of federal law, but also to many state law disputes. *Erie* made clear that state law provides the rules of decision for the *merits* of state law claims in bankruptcy court. 304 U.S. at 77. Until recently, however, there was controversy about whether state or federal law should provide the means for choosing the state law that is ultimately applied to decide a state law claim in bankruptcy court—the choice of law. We partially resolved this issue in *In re Gaston*, 243 F.3d 601, where we held that state, not federal, choice of law rules must control.

In re Gaston concerned an adversary proceeding filed by the trustee of a bankrupt law firm's estate to collect unpaid legal fees from a former client. The bankruptcy proceedings were held in the Southern District of New York, and it was there that the trustee initiated the adversary proceeding. The client who owed the fees, however, lived in Idaho, and it was in Idaho where the law firm's services had been rendered. The district court[9]—without discussion—followed *Klaxon*, applied New York choice of law rules, and determined that New York's borrowing statute required application of the New York statute of limitations. 243 F.3d at 604, 609.

On appeal we held that, although the source of the district court's jurisdiction was bankruptcy, not diversity, *Klaxon* nevertheless provided guidance. *Id.* at 601-02. We recognized that because bankruptcy is a form of federal question jurisdiction, bankruptcy courts in some of our sister circuits apply federal choice of law principles rather than state choice of law rules, *see id.* at 605 & n.6 (citing cases), but we rejected this approach. We noted that after *Klaxon* federal

---

[9] At some point, pursuant to 28 U.S.C. § 157, the district court withdrew its referral of this proceeding and conducted a jury trial itself. *See In re Gaston*, 243 F.3d at 605 n.5.

12

S-528

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 41 of 50

06-12226-rdd   Doc 1489-2   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit B
Pg 33 of 39
Case: 10-2723   Document: 87   Page: 13   02/28/2012   536900   19

choice of law rules must be regarded as "a species of federal common law." *Id.* at 606. And

because federal common law should be applied only where there is "a significant conflict

between some federal policy or interest and the use of state law," *id.* at 606 (quoting *Atherton*,

519 U.S. at 218), we were loath to use it. We concluded, therefore, that unless there was an

important federal interest or policy concern that would justify application of federal choice of

law rules in place of state choice of law, the district court's decision should stand. Finding no

such interest or concern, we affirmed the district court's decision to use state rather than federal

choice of law rules. *Id.* at 607.

> 3.    *Choice of Law Rules when Bankruptcy Claim Consists of a Previously-
>        Filed State-Law Action*

The bankruptcy court read *In re Gaston* as requiring it to apply the choice of law rules of

its forum state, New York, which thereby caused it to disallow Statek's claim. On appeal Statek

disagrees that New York's choice of law rules control. It argues that the applicable choice of

law rules are those of Connecticut, where Statek filed its original malpractice action. *In re*

*Gaston*, although adopting the general rule that bankruptcy courts must apply state choice of law

rules, provides no guidance as to *which* state's choice of law rules apply. That is a question of

first impression, to which *Klaxon* provides the answer.

As noted above, *Klaxon* partly concerned whether state or federal choice of law should

apply in diversity cases. But *Klaxon* also addressed *which* state's choice of law controls,

requiring district courts to apply the state choice of law rules of the state in which they sit. 313

U.S. at 496. Practically, this rule prevents forum shopping between the state and federal court

systems ("intra-state forum shopping"), which was apparently a serious problem in the pre-*Erie*

days of general federal common law. Back then, if the law applied by the federal district court

13

S-529

of a state was more favorable to plaintiffs than the law of that state's own courts, prospective

plaintiffs had an incentive to create diversity jurisdiction (often by reincorporating out of state)

and file in federal court. Indeed, the *Erie* Court's decision to eliminate general federal common

law was in part justified by intra-state forum shopping concerns. *See Erie*, 304 U.S. at 74.

*Klaxon* echoes *Erie*'s hostility toward intra-state forum shopping. By requiring federal

courts to treat a claim exactly the same as would the courts of the state in which they sit, *Klaxon*

ensures that a plaintiff's choice of forum within a given state will not be influenced by choice of

law considerations. According to the Court in *Klaxon*, any other result would allow "the

accident of diversity of citizenship [to] constantly disturb equal administration of justice in

coordinate state and federal courts sitting side by side." 313 U.S. at 496.

This effective bar on intra-state forum shopping comes, of course, at the expense of

permitting forum shopping between states ("inter-state forum shopping"), which *Klaxon* regards

as an unavoidable consequence of the federal system. *See* 313 U.S. at 496. Over time, however,

inter-state forum shopping has come to be perceived less as a necessary evil of federalism and

more as a right to be enjoyed by plaintiffs and protected for their benefit. Thus, in *Van Dusen*,

376 U.S. 612, the Supreme Court held that when a defendant obtains a change of venue under 28

U.S.C. § 1404(a), the choice of law rules of the state where the plaintiff originally filed the claim

"follow" the action to the new forum. In deciding the issue, the Court described the prerogative

federal law affords plaintiffs to choose among federal forums as a "venue privilege," and the

Court cautioned against construing § 1404(a) in a way that would "defeat the state-law

advantages that might accrue from the exercise of this venue privilege." *Van Dusen*, 376 U.S. at

635. When applying *Klaxon*, "the critical identity to be maintained is between the federal

14

S-530

Case 1:13-cv-08578-LTS  Document 16-10  Filed 12/17/13  Page 43 of 50

06-12226-rdd    Doc 1489-2    Filed 10/17/12    Entered 10/17/12 11:50:59    Exhibit B
Pg 35 of 39
Case: 10-2723    Document: 87    Page: 15    02/28/2012    536900    19

district court which decides the case and the courts of the State in which the action was filed."
*Id.* at 639.

*Van Dusen*, in other words, is far less concerned about the fact that plaintiffs may engage in inter-state forum shopping on the basis of competing choice of law doctrines than it is with making sure that *only* plaintiffs engage in forum shopping. In deciding where to file a claim, plaintiffs are permitted to forum-shop among state courts. But once that claim is filed, defendants in state courts are generally locked into the forum unless removal is possible. If a *defendant* could forum-shop using § 1404(a) to transfer venue and obtain different choice of law rules, the defendant would "achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed," the main evil *Klaxon* sought to avoid. *See Van Dusen*, 376 U.S. at at 638.

Any remaining doubt about the Supreme Court's tolerance for inter-state forum shopping by plaintiffs was put to rest in *Ferens*, 494 U.S. 516. There, the Court extended *Van Dusen*'s rule to cover *plaintiff-initiated* transfers under § 1404(a). *Ferens*, 494 U.S. at 519. While recognizing its rule would allow plaintiffs to separate their shopping for favorable choice of law rules from their ultimate choice of forum, *id.* at 531, the Court believed a plaintiff's right to shop for favorable choice of law rules is so important that it should not be compromised "by being put to a choice between a choice of law versus forum," *id.* at 529. Under *Ferens*, a plaintiff may "have his cake and eat it too." *Id.* at 537 (Scalia, *J.*, dissenting).

Shopping for favorable choice of law rules very often comes down to shopping for favorable statutes of limitations. *See, e.g., Ferens*, 494 U.S. at 519-20; *Van Dusen*, 376 U.S. at 630-32 & n.26. To mitigate against abusive statute-of-limitations shopping, some states have

15

S-531

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 44 of 50

06-12226-rdd   Doc 1489-2   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit B
Pg 36 of 39
Case: 10-2723   Document: 87   Page: 16   02/28/2012   536900   19

created mechanisms—binding on the local federal courts via *Klaxon*—that discriminate against

claims accruing out of state. New York's borrowing statute, N.Y. C.P.L.R. § 202, guards against

forum shopping by out-of-state plaintiffs by mandating use of the *shortest* statute of limitations

available. If New York's statute of limitations is shorter than the statute of limitations of the

place where the cause of action accrued, New York courts should apply the local rule; if the

foreign statue of limitations is shorter, then that is what controls.

     Given all this, it is perhaps not surprising that the issue at the heart of this case is—as it

was in *In re Gaston*—whether New York's borrowing statute should apply in federal bankruptcy

proceedings held in the Southern District of New York. In *In re Gaston*, both principles

underlying *Klaxon* were served by applying New York law (the forum state of the bankruptcy

court in that action) to the trustee's collection action. *In re Gaston*'s holding avoided relying on

federal common law and also ensured that the trustee's claim would be treated the same in

federal court as it would have been in state court. We recognized that the facts of *In re Gaston*

were largely analogous to a *non-transfer* diversity case. The trustee for the law firm's estate

brought, for the first time, a claim in bankruptcy court in New York that, but for the bankruptcy,

could have been brought by the law firm in New York state court. If the law firm in *In re

Gaston* had attempted to collect on its unpaid fees in a New York court before bankruptcy was

filed, New York's borrowing statute would have applied. *Klaxon*'s goal of establishing equal

treatment of claims by the state and federal courts would clearly have been violated by a rule

applying a different state's law to the claim simply because the law firm filed for bankruptcy and

its interest in the fees was assigned to the trustee of its estate. In *In re Gaston*, the trustee—the

S-532

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 45 of 50

06-12226-rdd   Doc 1489-2   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit B
Pg 37 of 39
Case: 10-2723   Document: 87   Page: 17   02/28/2012   536900   19

party bringing the claim—chose the forum, and principles of state/federal uniformity compelled us to apply the law of the state of that forum.

The same cannot be said in this case. Except by the most formalistic of interpretations, Statek—the claimant here—did not choose to litigate in New York. Instead, it affirmatively chose to file its complaint against Coudert somewhere else. The record is clear that Statek exercised its venue privilege in favor of Connecticut. Only in the midst of the Connecticut proceedings—well after they were initiated, when Coudert had filed for bankruptcy—did Statek come to New York. Realistically, Statek had no other option. *Cf. Stern v. Marshall*, 131 S. Ct. 2594, 2614 (2011) (creditor-plaintiff "did not truly consent to resolution of [state-law claims] in the bankruptcy court proceedings," because by operation of the Bankruptcy Code, "[h]e had nowhere else to go if he wished to recover from [the] estate."). That Statek's participation in the bankruptcy is an extension of the Connecticut action is beyond doubt. Statek could only hold itself out as a potential creditor in the bankruptcy by virtue of the pending Connecticut action, and, accordingly, its proof of claim was nothing more than a copy of the Connecticut complaint. The two proceedings are functionally one and the same.

Under these circumstances, it would be fundamentally unfair to allow Coudert's bankruptcy, coming as it did in the midst of the Connecticut action, to deprive Statek of the state-law advantages adhering to the exercise of its venue privilege. To hold otherwise would be to allow the defendant Coudert to use a device of federal law (the bankruptcy code) to choose the forum and accompanying choice of law—a practice forbidden by *Klaxon. See Van Dusen*, 376 U.S. at 638; *see also Ferens*, 494 U.S. at 524. It would also lead to the ironic result that New

17

S-533

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 46 of 50

06-12226-rdd   Doc 1489-2   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit B
Pg 38 of 39
Case: 10-2723   Document: 87   Page: 18   02/28/2012   536900   19

York's anti-forum shopping borrowing statute would be applied to defeat the claim of a party that did not shop for New York as a forum.

We recognize that our opinion in *In re Gaston* employs some broad language, in dicta, that could be read as reaching every state law claim in every bankruptcy case without exception.[10] But *In re Gaston* did not address a claim like Statek's, which is identical to and inseparable from others pending between the parties in foreign jurisdictions. If *In re Gaston* were extended to reach such cases, we believe some of the very principles that case seeks to advance—namely harmony between state and federal courts—would be undermined.

For cases such as this one, we hold that bankruptcy courts should follow *Van Dusen* and look to the choice of law rules of the state where the underlying prepetition complaint was filed. This is the appropriate course of action where, as here: (1) the claim before the bankruptcy court is wholly derived from another claim already pending in a parallel, out-of-state, non-bankruptcy proceeding; and (2) the pending original, or "source," claim was filed in a court prior to the commencement of the bankruptcy case.

## III.   Conclusion

In denying Statek's motion to reconsider, the bankruptcy court stated it was "bound by the Second Circuit's determination in *In re Gaston*" to apply New York choice of law rules. That reading of *In re Gaston* constituted a legal error, and thus *ipso facto* was an abuse of discretion. *See In re Highgate Equities, Ltd.*, 279 F.3d at 152. Statek's proof of claim was functionally an extension of its prepetition claim pending in a lawsuit against Coudert. By filing

---

[10] For example, our opinion in *In re Gaston* includes the statement: "[W]e decide that bankruptcy courts confronting state law claims that do not implicate federal policy concerns should apply the choice of law rules of the forum state." 243 F.3d at 601-02.

18

S-534

Case 1:13-cv-08578-LTS   Document 16-10   Filed 12/17/13   Page 47 of 50

06-12226-rdd   Doc 1489-2   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit B
Pg 39 of 39
Case: 10-2723   Document: 87   Page: 19   02/28/2012   536900   19

the underlying action in Connecticut, Statek exercised its right as plaintiff to choose the venue in

which it wanted to litigate the claim, and it was entitled to take advantage of whatever choice-of-

law rules that selection entailed.  Coudert's subsequent filing for bankruptcy in New York,

which in essence approximated a defendant-initiated venue transfer, did not deprive Statek of the

state-law advantages attending its original choice of forum.

The portion of the district court's order affirming the bankruptcy court's July 21, 2009,

order disallowing claim number 239 is VACATED, and the case is REMANDED with

instructions to DISMISS IN PART for lack of subject-matter jurisdiction.  The portion of the

district court's order affirming the bankruptcy court's denial of Statek's motion for

reconsideration is REVERSED, and the case is REMANDED to the district court with

instructions to REMAND IN PART to the bankruptcy court with instructions to apply

Connecticut's choice of law rules in deciding Statek's motion to reconsider.

A True Copy
Catherine O'Hagan Wolfe, Clerk                           19
United States Court of Appeals, Second Circuit

*[signature: Catherine O'Hagan Wolfe]*

S-535

06-12226-rdd    Doc 1489-3    Filed 10/17/12    Entered 10/17/12 11:50:59    Exhibit C
Pg 1 of 2

# EXHIBIT C

S-536

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 20th day of March, two thousand and twelve.

Before:    Jon O. Newman,
           Guido Calabresi,
           Peter W. Hall,
                    *Circuit Judges.*

---

IN RE COUDERT BROTHERS LLP,
                    *Debtor.*
..............................................................

STATEK CORPORATION,

                    *Appellant,*                        **ORDER**

           v.                                   Docket No.: 10-2723

DEVELOPMENT SPECIALISTS, INC., PLAN
ADMINISTRATOR FOR COUDERT BROTHERS
LLP,

                    *Appellee.*

---

On consideration of Appellee's petition for rehearing, IT IS HEREBY ORDERED, pursuant to Fed. R. App. P. 35(e), that within fourteen days of the entry of this order, Appellant shall serve and file a response to that petition.

For the Court:

Catherine O'Hagan Wolfe,
Clerk of Court



06-12226-rdd    Doc 1489-4    Filed 10/17/12    Entered 10/17/12 11:50:59    Exhibit D
Pg 1 of 13

# EXHIBIT D

S-538