No. 10-2723-cv

---

UNITED STATES COURT OF APPEALS
for the
SECOND CIRCUIT

---

In Re:

COUDERT BROTHERS LLP,

*Debtor,*

---

STATEK CORPORATION,

*Appellant,*

-against-

DEVELOPMENT SPECIALISTS, INC.,

*Appellee.*

---

ON APPEAL FROM THE UNITED STATES COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

OPPOSITION TO PETITION FOR REHEARING OF
APPELLEE DEVELOPMENT SPECIALISTS, INC., PLAN
ADMINISTRATOR FOR COUDERT BROTHERS LLP

---

Edward J.M. Little
Lisa A. Cahill
Hughes Hubbard & Reed LLP
*Attorneys for Appellant Statek Corp.*
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

S-539

## TABLE OF CONTENTS

**Page**

Preliminary Statement ............................................................................................1

Argument..............................................................................................................2

    I.    COUDERT ABANDONED ITS PERSONAL JURISDICTION
        DEFENSE FOUR YEARS AGO AND SHOULD NOT BE
        PERMITTED TO CAUSE YET FURTHER DELAY BY
        ATTEMPTING TO RESUSCITATE IT NOW ....................................2

    II.   THE DECISION SHOULD BE REVISED TO EXPLICITLY
        PERMIT STATEK TO SEEK RETURN OF THIS DISPUTE
        TO THE CONNECTICUT COURT WHERE IT BELONGS ............6

Conclusion ............................................................................................................8

i

## TABLE OF AUTHORITIES

Page(s)

CASES

*Credle-Brown v. Connecticut*, 502 F. Supp. 2d 292 (D. Conn. 2007)........................6

*Gilmore v. Shearson/Am. Express Inc.*, 811 F.2d 108 (2d Cir. 1987),
    *overruled on other grounds, McDonnell Douglas Fin. Corp. v.
    Pennsylvania Power & Light Co.*, 849 F.2d 761 (2d Cir. 1988)......................5, 6

*Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58 (2d Cir. 1999)......................................4

*In re UNI-MARTS, LLC*, 404 B.R. 767 (Bankr. D. Del. 2009) ..................................7

STATUTES AND RULES

Fed. R. Bankr. P. 7004 ............................................................................................7

TREATISES AND PERIODICAL MATERIALS

2 James Wm. Moore et al., Moore's Federal Practice § 12.21 (Matthew
    Bender 3d ed.)......................................................................................................6

S-541

### Preliminary Statement

Appellant Statek Corporation ("Statek") respectfully opposes the petition for rehearing filed by appellee Development Specialists, Inc., Plan Administrator for Coudert Brothers LLP ("Coudert"), because Coudert abandoned and thereby forfeited its personal jurisdiction defense four years ago. Having abandoned that challenge and having spent the last three years avoiding Statek's malpractice claims with a dubious and inequitable argument about statute of limitations, Coudert should not be rewarded with yet another opportunity for delay.

In any event, Statek respectfully requests that the Court's decision on remand explicitly permit the Bankruptcy Court to consider a motion from Statek to lift the automatic stay and allow the parties to litigate Statek's claims in their entirety, including any procedural issues, through trial and final judgment before the District Court in Connecticut (the "Connecticut Court"). The Connecticut Court is much better situated, both generally and specifically with regard to this case since it has already heard motions and had discovery conducted before it, to rule on questions of Connecticut law and resolve the parties' dispute on the merits.

## Argument

### I.

### COUDERT ABANDONED ITS PERSONAL JURISDICTION DEFENSE FOUR YEARS AGO AND SHOULD NOT BE PERMITTED TO CAUSE YET FURTHER DELAY BY ATTEMPTING TO RESUSCITATE IT NOW

Coudert's petition glosses over the history of its personal jurisdiction defense in the Connecticut Action.[1]  It makes the bland but misleading statement that its "challenge to the exercise of personal jurisdiction over it by the court in Connecticut has not yet been determined."  Petition at 2; *id.* at 6 ("Coudert's motion to dismiss the Connecticut Action for lack of personal jurisdiction has yet to be determined"); *id.* at 10 (referring to "Coudert's pending challenge to the exercise of personal jurisdiction over it by the court in Connecticut").  Coudert

---

1.  Coudert makes the conclusory assertion that "here, the transferor court lacks personal jurisdiction over the defendant."  Petition at 7; *see also id.* at 12.  Statek does not concede the point -- in fact, the record establishes that it is Coudert who conceded the jurisdiction of the Connecticut Court.  *To quote Coudert's counsel's argument to the Bankruptcy Court:* "the attorney-client relationship itself between Statek and Coudert was really centered in Connecticut. . . .  Statek during the time that it was represented by Coudert maintained a place of business in Connecticut.  All communications were between Connecticut and London, bills were sent to Connecticut.  As I said, communications were made -- and paid from Connecticut, and communications were made between England and Connecticut."  A-1043.

As Coudert's counsel's comments indicate, Statek was more than justified in suing Coudert in Connecticut, where the company's corrupt principals were based and where they employed the services of Coudert.  This negates Coudert's claim that Statek forum shopped "Connecticut, the only place that Statek believed its claim might be timely."  Petition at 12 (footnote omitted).

2

S-543

leaves out the fact that although the Bankruptcy Court permitted it to litigate that motion in the Connecticut Action in 2007, Coudert abandoned it four years ago.

As the Court will recall from the parties' original briefing, the Bankruptcy Court lifted the automatic stay in September 2007 by so-ordering a stipulation "to allow the parties to proceed to a *final determination/resolution* on the pending Motions to Dismiss [in the Connecticut Court]." A-191 (emphasis added). When the Connecticut Court granted Coudert's motion to dismiss on the grounds of *forum non conveniens*, it did so conditionally, while denying as *moot* Coudert's motion to dismiss for lack of personal jurisdiction. A-215-17 (March 5, 2008 Order). The condition that Judge Underhill placed on his decision to dismiss was that Coudert agree, in any subsequent suit brought by Statek, that the statute of limitations be tolled from the date Statek first filed its suit in Connecticut. The judge obviously did not want Statek prejudiced by the delay caused by motion practice in that court. A-216. Predictably, Coudert refused. Petition at 6 ("Coudert declined to agree to this condition . . . .").

Because of Coudert's refusal, the District Court ordered the file reopened and reinstated Statek's claim against Coudert. A-349 (May 8, 2008 Order directing the clerk to "reopen the file" and noting that "Statek's claims against Coudert Brothers, LLP, remain pending"); Petition at 6 (" . . . on or about

3

S-544

May 8, 2008, the Connecticut District Court formally reinstated the Connecticut Action as against Coudert") (internal citation omitted).

At the time the Court ordered the file reopened, Coudert's motion to dismiss for lack of personal jurisdiction was no longer moot as a result of Coudert's own action. More importantly, there had been no "final determination/ resolution" of that motion as directed by the Bankruptcy Court in lifting the automatic stay and referring the parties to the Connecticut Court. A-191. It was incumbent on Coudert to pursue it then. Enormous effort had already been expended in conducting discovery on jurisdiction (A-1177-78), briefing the jurisdiction issues and arguing the motion before the Connecticut Court, and the issue was ripe for decision.[2] There was nothing to prevent Coudert from pressing that challenge after the Connecticut Court reinstated the case because of Coudert's own action in refusing the condition imposed by the court. By failing to do so, Coudert forfeited that defense. *See Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58 (2d Cir. 1999) (Newman, J.) (defense of lack of personal jurisdiction deemed forfeited where, although raised in an answer, defendant waited four years to move to dismiss, ignoring distinct opportunities to do so).

---

2. The Connecticut Court indicated at the February 21, 2008 hearing on the motion to dismiss that it had "read the papers and ha[d] thought about the issues some before coming out here, looked at a number of the cases . . . " A-1173. The parties addressed the personal jurisdiction issues at some length over the course of the argument. A-1172-1213.

S-545

Instead Coudert made the tactical choice to return to the Bankruptcy Court and move to disallow Statek's claim on another ground -- an inequitable ground, as this Court has held -- that the shorter, New York statute of limitations applied. That tactic has needlessly stalled Statek's case for years and cost the parties an enormous amount of legal fees with appeals to the District Court and this Court. It would be manifestly unfair now to permit Coudert to go back to asserting its personal jurisdiction challenge after it walked away from it when it had been fully briefed before the Connecticut Court. Indeed, but for the tactical decision that Coudert made over four years ago to refuse to agree to the Connecticut Court's condition for dismissing the case on *forum non conveniens* grounds, this case would have been moved far along by now, if not actually decided on the merits. Coudert is the one who chose to forfeit its personal jurisdiction defense and instead move to dismiss Statek's claims on technical statute of limitations grounds. It should be held to its choice.

It does not matter that Statek was later permitted to amend its complaint in the Connecticut Action, and that Coudert has not yet answered or moved with respect to it. Petition at 6 n.2. While an amended complaint ordinarily supersedes the original pleading, it does not revive all of the defenses and objections that a defendant failed to pursue in response to the original complaint. *Gilmore v. Shearson/Am. Express Inc.*, 811 F.2d 108, 112 (2d Cir.

5

1987), *overruled on other grounds, McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 849 F.2d 761 (2d Cir. 1988). Where a defendant neglects to pursue a defense that goes to "the core issue of a party's willingness to submit a dispute to judicial resolution," such as a lack of personal jurisdiction, that defense "is not automatically revived by the submission of an amended complaint." *See id. See also Credle-Brown v. Connecticut*, 502 F. Supp. 2d 292, 297 (D. Conn. 2007) (failure to assert a personal jurisdiction defense "is not obviated by virtue of an answer to an amended complaint" because once such a defense is waived, it "may not be renewed merely because a plaintiff has amended the complaint") (citing *Gilmore*, 811 F.2d at 112); 2 James Wm. Moore et al., Moore's Federal Practice § 12.21 (Matthew Bender 3d ed.) ("amending a complaint does not revive omitted defenses or objections that the defendant could have raised in response to the original complaint").

## II.

### THE DECISION SHOULD BE REVISED TO EXPLICITLY PERMIT STATEK TO SEEK RETURN OF THIS DISPUTE TO THE CONNECTICUT COURT WHERE IT BELONGS

Even if this Court were to agree with Coudert's petition for reargument, the Bankruptcy Court is not the logical arbiter of "whether there was personal jurisdiction over Coudert in Connecticut." Petition at 3. There is no reason to expect that the Bankruptcy Court, sitting in the Southern District of New

S-547

York, would have any familiarity, let alone expertise, with Connecticut law on personal jurisdiction or its long arm statute, let alone its choice of law and statute of limitations. Indeed, no bankruptcy court could be expected to be familiar with state personal jurisdiction issues or the analysis applied by the federal courts in deciding those issues in line with due process considerations set out in *International Shoe* and its progeny. The obvious explanation for the fact that bankruptcy courts do not usually deal with personal jurisdiction questions is that they almost always have personal jurisdiction over parties that have been served under Bankruptcy Rule 7004 and have minimum contacts with the United States. *See In re UNI-MARTS, LLC*, 404 B.R. 767, 775-76 (Bankr. D. Del. 2009). They are simply and understandably not used to dealing with the personal jurisdiction challenges asserted in state and federal district courts.

Here the Connecticut Court would plainly have such expertise. And even more importantly, the Connecticut Court in this case is in a perfect position to deal with all these issues since the parties have already conducted discovery and briefed and argued the motion before it. As evident from the transcript of the argument, the Court had already "read the papers," "looked at a number of the cases," and "thought about the issues . . . ." A-1173.

Moreover, if this Court decides to deny Coudert's motion for a rehearing on the ground that it did, in fact, abandon and forfeit its personal

7

S-548

jurisdiction challenge, we respectfully request that the Court should still revise its prior order to permit the Bankruptcy Court explicitly to refer this case to the Connecticut Court for further proceedings.

### Conclusion

Statek respectfully requests that the Court deny Coudert's petition for rehearing on the ground that it did, in fact, abandon and forfeit its personal jurisdiction challenge and that it revise its prior order to explicitly permit the Bankruptcy Court to refer this case to the Connecticut Court for further proceedings.

Dated:   New York, New York
April 3, 2012

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By: /s/ Edward J.M. Little
Edward J.M. Little
Lisa A. Cahill
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000

*Counsel for Statek Corporation*

8

S-549

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of April, 2012, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of

electronic filing to all counsel of record.

By: /s/ Edward J.M. Little
Edward J.M. Little
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000

*Counsel for Statek Corporation*

9

S-550

06-12226-rdd   Doc 1489-5   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit E
Pg 1 of 2

# EXHIBIT E

S-551

## UNITED STATES COURT OF APPEALS
### FOR THE
### SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 21st day of June, two thousand and twelve,

Before:

JON O. NEWMAN,
GUIDO CALABRESI,
PETER W. HALL,
*Circuit Judges.*

In Re: Coudert Brothers LLP,

Debtor.

**ORDER**
Docket Number: 10-2723

-------------------------------------------

Statek Corporation,

Appellant,

v.

Development Specialists, Inc., Plan Administrator for Coudert Brothers LLP,

Appellee.

Appellee Development Specialists, Inc having filed a petition for panel rehearing and the panel that determined the appeal having considered the request,

IT IS HEREBY ORDERED that the petition is DENIED.

For The Court:

Catherine O'Hagan Wolfe,
Clerk of Court



06-12226-rdd   Doc 1489-6   Filed 10/17/12   Entered 10/17/12 11:50:59   Exhibit F
Pg 1 of 2

# EXHIBIT F

S-553

SKADDEN, ARPS, SLATE, MEAGHER & FLOM

ONE RODNEY SQUARE
BOX 636
WILMINGTON, DELAWARE 19899-0636

(302) 651-3000

FAX (302) 651-3001
DIRECT DIAL
(302) 651-
3079

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.

BEIJING
BRUSSELS
BUDAPEST
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
PRAGUE
SYDNEY
TOKYO
TORONTO

January 15, 1996

BY FACSIMILE

Coudert Brothers
20 Old Bailey
London EC4M 7JP
England

Dear Sirs:

      Herewith is an opinion of the Court of Chancery
of the State of Delaware finding that our clients, Miklos
Vendel and Arbitrium (Cayman Islands) Handels, AG, are
the majority owners of Technicorp International II, Inc.
("TCI II"), the 100% owner of Statek Corporation
("Statek"). We have begun the process of reviewing the
financial records of TCI II and Statek, and we understand
from certain of these documents (a sample of which is
attached) that you are holding funds for Statek. Please
confirm by facsimile to the number listed above the
credit balance you are holding for Statek as of 31 Decem-
ber 1995, and as of today. Also, please be advised that
no transfers of funds should be effected from any account
held by you for the benefit of Statek without authoriza-
tion from Miklos Vendel or the undersigned.

                              Very truly yours,

                              Thomas J. Allingham II

/kr
Enclosure

STA 00076

**S-554**

```
 1                    UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2

 3

 4      ------------------------------X
        In Re:                        :   06-12226 (RDD)
 5
            COUDERT BROTHERS, LLP      :   300 Quarropas Street
 6                                     :   White Plains, New York
                         Debtor.       :
 7      ------------------------------X   October 22, 2012
                                       :
 8      DEVELOPMENT SPECIALISTS, INC., :
                                       :
 9                       Plaintiff,    :
                                       :   Adv. 08-01430
10               v.                    :
                                       :
11      MICHAEL J. CALVEY,             :
                                       :
12                       Defendant.    :
        ------------------------------X
13                                     :
        DEVELOPMENT SPECIALISTS, INC., :
14                                     :
                         Plaintiff,    :
15                                     :   Adv. 08-01434
                 v.                    :
16                                     :
        RICHARD A. DE PALMA,           :
17                                     :
                         Defendant.    :
18      ------------------------------X
                                       :
19      DEVELOPMENT SPECIALISTS, INC., :
                                       :
20                       Plaintiff,    :
                                       :   Adv. 08-01462
21               v.                    :
                                       :
22      DAVID SCHNAPF,                 :
                                       :
23                       Defendant.    :
        ------------------------------X
24

25                              (Caption continues on next page.)


        Proceedings recorded by electronic sound recording,
        transcript produced by transcription service
```

```
 1                                                                        2

 2

 3    -----------------------------------X
                                         :
 4    DEVELOPMENT SPECIALISTS, INC.,      :
                                         :
 5                       Plaintiff,       :
                                         :   Adv. 08-01479
 6                 v.                     :
                                         :
 7    ERNST & YOUNG,                      :
                                         :
 8                       Defendant.       :
      -----------------------------------X
 9
                        TRANSCRIPT OF HEARING RE:
10         MOTION TO RECONSIDER DISALLOWED STATEK'S CLAIM #239
        PRETRIAL CONFERENCE; NOTICE OF HEARING (NOTICE OF TRIAL)
11             BEFORE THE HONORABLE ROBERT D. DRAIN
                  UNITED STATES BANKRUPTCY JUDGE
12

13    The Plan Administrator:      WILLIAM A. BRANDT, JR.
                                   Development Specialists, Inc.
14                                 110 East 42nd Street, Suite 1818
                                   New York, New York  10017
15
      For Development             JOHN G. McCARTHY, ESQ.
16      Specialists, Inc.:        Smith, Gambrell & Russell, LLP
                                   250 Park Avenue, Suite 1900
17                                 New York, New York  10177

18    For Richard De Palma:       RICHARD DE PALMA, Pro Se
                                   Thompson Hine, LLP
19                                 335 Madison Avenue, 12th Floor
                                   New York, New York  10017-4611
20
      For Mr. Calvey:             MR. CALVEY, Pro Se
21
22    For David Schnapf:          DAVID SCHNAPF, Pro Se
      (Via Telephone)
23

24    Court Transcriber:          RUTH ANN HAGER, C.E.T.**D-641
                                   TypeWrite Word Processing Service
25                                 211 N. Milton Road
                                   Saratoga Springs, New York  12866
```

**S-556**

3

1    (Proceedings began at 10:28 a.m.)

2            THE COURT:  All right.  I have several matters on in

3    Coudert.  I'm going to take the Statek one last and do the

4    pretrials so -- for Coudert Brothers.

5            MR. SCHNAPF:  Your Honor, this is David Schnapf.  Is

6    that the case you're talking about?

7            THE COURT:  Yes, I'm sorry, this is Mr. Schnapf?

8            MR. SCHNAPF:  Yes, Your Honor.  Good morning.

9            THE COURT:  Okay, yes, you're one of the -- you're

10   the defendant in one of the adversaries that we're going to do

11   the pre-trials on.  But let me do, because I'm just going by

12   the order of the calendar here, Development Specialists v.

13   0Calvey.

14           MR. McCARTHY:  Your Honor, I got an Email from my

15   office that Mister -- I'm sorry, Your Honor, John McCarthy from

16   Smith, Gambrell & Russell, LLP for the Plan Administrator.  I

17   received an email from my office that they were contacted this

18   morning by Mr. Calvey, who is on his way who said he was going

19   to be late, so --

20           THE COURT:  All right.  Well, we'll put him at the

21   end of the calendar.  Okay.

22           And then Development Specialists v. De Palma.

23           MR. DE PALMA:   Good morning, Your Honor, Richard De

24   Palma, pro se.

25           THE COURT:  Good morning, okay.

4

1      MR. McCARTHY:  And John McCarthy for the plan

2   administrator.

3      THE COURT:  All right.  This adversary was filed a

4   while ago, but there have been a number of extensions and

5   adjournments I guess hoping that the parties would settle, but

6   I'm assuming it's on now because the parties are going to be

7   moving ahead on the merits?

8      MR. McCARTHY:  Yes.  That's the purpose, Your Honor.

9   We've had some settlement discussions.  They haven't worked out

10  to date.  We're always hopeful, of course but, as you noted,

11  it's been on for a while and we need to move these forward.

12     THE COURT:  Okay.  Have you two talked about a

13  discovery schedule?

14     MR. DE PALMA:  Your Honor, Richard De Palma.  Two

15  things.  One, I did speak to the Trustee and other people

16  associated with the Development Specialists and Coudert and we

17  are going to give it another shot at settlement, so I don't

18  want to leave it as though we're not trying to deal with the

19  issue.  We certainly are.

20     THE COURT:  That's fine, and people could settle all

21  the way up to the middle of a trial so I have not problem with

22  that.

23     MR. DE PALMA:  Absolutely, Judge, and certainly we'll

24  continue to talk.  We're trying to schedule something in the

25  next week or so.

5

 1          With respect to the remainder if we have to proceed,

 2   Judge, I've not engaged in any discovery to date purposely

 3   because I've raised as a defense the arbitration clause.

 4          THE COURT:  Right, I got that.

 5          MR. DE PALMA:  And I did not want to be deemed to

 6   have waived that.

 7          THE COURT:  Okay.

 8          MR. DE PALMA:  And so to the extent we do need to

 9   move forward -- and certainly, I hope that that's not the

10   case -- but if we do, in the first instance, Your Honor, I'd

11   like to make a motion with respect to that.

12          THE COURT:  Okay.  I mean, Mr. De Palma did raise

13   arbitration as an issue.  There is an arbitration provision I

14   think in the partnership agreement.  I guess I could imagine

15   DSI's arguments and response, but it seems to me that we should

16   probably deal with that issue first before getting into

17   anything else.

18          MR. McCARTHY:  We agree.

19          THE COURT:  Okay.

20          MR. McCARTHY:  So if we just set a deadline for him

21   to file his motion and it can be early next year, that will be

22   fine, Your Honor, I mean, or -- you know, or December.  I

23   just -- I know your calendar is --

24          THE COURT:  Right.

25          MR. McCARTHY:  I mean for the hearing date.

S-559

6

 1           THE COURT:  Oh, the hearing date, yeah.

 2           MR. McCARTHY:  Right, for the hearing.

 3           THE COURT:  Yeah, the hearing date would probably be

 4   in January, but if you could file the motion say mid-December.

 5           MR. DE PALMA:  That would be fine, Your Honor.

 6           THE COURT:  And that would give you another good

 7   month and a half to negotiate.

 8           MR. DE PALMA:  Yes, Your Honor.  Thank you.

 9           THE COURT:  Okay.  And we'll have the adjourned

10   pre-trial conference at the hearing on the motion on

11   arbitration, so I'll consider a discovery schedule if I deny

12   the motion; and if I grant it, then the arbitrator will decide

13   the discovery schedule.

14           MR. McCARTHY:  Sounds good.  Thank you, Your Honor.

15           THE COURT:  Okay.  So, you know, the record reflects

16   that if you want to memorialize it in a letter to chambers just

17   file it with the docket setting out the date, that's fine too.

18           MR. DE PALMA:  Thank you, Your Honor.

19           THE COURT:  All right.  Okay.  Are you Mr. Calvey?

20           MR. CALVEY:   I am indeed, Your Honor.

21           THE COURT:  Perfect timing.

22           MR. CALVEY:   I doubt that you mean that seriously.

23           THE COURT:  No, actually I do.  We're just about to

24   get to your pre-trial conference.

25           MR. CALVEY:   Yes.

7

 1          THE COURT:  Okay.  So this is the pre-trial

 2   conference in this adversary proceeding.  Again, this is a long

 3   running adversary proceeding and there have been a number of

 4   extensions and adjournments of the pre-trial conference, as

 5   well as extensions to the time to answer but there is an

 6   answer.  And I gather that although the parties have tried

 7   maybe to work this out, at this point it's moving ahead on the

 8   merits.

 9          MR. McCARTHY:  We're trying to get -- there's a lot

10   of them that have been stalled.  We're trying to move ahead.

11          THE COURT:  Okay.

12          MR. McCARTHY:  I don't think we've had any specific

13   discussions with Mr. Calvey on the settlement front.  Maybe

14   while he's here today we can do that.

15          MR. CALVEY:   There haven been no discussions with

16   me, Your Honor.

17          THE COURT:  There haven't okay.  It's just been

18   sitting there.

19          MR. CALVEY:  Right.

20          THE COURT:  Well, have there been any discussions

21   about a discovery schedule?

22          MR. CALVEY:  There have been -- when I say no

23   discussions, I mean --

24          THE COURT:  No discussion at all.

25          MR. CALVEY:  No discussions.

8

1          THE COURT:  All right, well, have you given any

2     thought to a discovery schedule?

3          MR. McCARTHY:  Your Honor, I was thinking we haven't

4     received initial disclosures.  We sent a letter to Mr. Calvey a

5     long time ago suggesting exchange of initial disclosures so I

6     would suggest, you know, maybe we get those due within a month

7     of today, and then six months for discovery, and then a

8     conference the middle of next year.

9          THE COURT:  Okay.  But, I mean, as far as I could

10     see, the issues here are -- well, you correct me, Mr. Calvey,

11     but you contend you weren't a partner during the relevant

12     period?

13          MR. CALVEY:  I have no idea what the issues are, Your

14     Honor.

15          THE COURT:  Okay.  Well, I mean you filed an answer.

16          MR. CALVEY:  I have not been a partner in Coudert

17     Brothers for many years.

18          THE COURT:  All right, so that's one issue.  The

19     other issue is, you're not sure about solvency or the capital

20     condition of the --

21          MR. CALVEY:  I don't know the issues at all in the

22     case.  I've received sporadic documentation.  So far as I'm

23     concerned, I was long gone.  I've been gone from Coudert

24     Brothers since 1991 --

25          THE COURT:  Right.

9

1          MR. CALVEY:  -- I think it is.

2          THE COURT:  I mean, the reason I'm asking this is it

3    seemed to be that seven months total is probably a little long

4    for this.  I would think more like four months.

5          MR. McCARTHY:  All right.

6          THE COURT:  A month for initial disclosures and then

7    three months for discovery because I mean the solvency issue

8    and the capital issue that's, I guess, your witness.

9          MR. McCARTHY:  Right.

10          THE COURT:  And Mr. Calvey's partnership status

11    that's probably pretty easy to figure out, so let's make it

12    four months from today with the initial disclosure within a

13    month under Rule 26.

14          MR. CALVEY:  All acceptable to me.

15          THE COURT:  Okay.  You can memorialize that in a

16    pre-trial order and use the form that I have on the website,

17    and then get a pre-trial conference date, a true -- you know, a

18    final pre-trial conference date from Ms. Li, which again will

19    be, not mid-next year but will be January or February, probably

20    February.

21          MR. McCARTHY:  Okay.

22          THE COURT:  Okay.  Just as a heads up, my normal

23    practice with trials, so you could be thinking about this as

24    you're going through your discovery, is that I take direct

25    testimony by witnesses under -- up-rise control by declaration

10

1   or affidavit submitted before the trial and that witness needs

2   to be here for cross and redirect.

3          I also have the parties meet and agree to the

4   admissibility of as many exhibits as possible and, again,

5   submitted through an exhibit book before the trial.

6          MR. CALVEY:  Fine, Your Honor.

7          THE COURT:  And if there's a disagreement about some

8   piece of evidence, I normally will rule on that during the

9   trial, but if the issue -- the evidentiary issue is so

10  important that it really affects your trial conduct or

11  preparation, then I'll hear the motion *in limine* before the

12  trial starts.  So I guess counsel for DSI should prepare that

13  order and send a copy to Mr. Calvey.  Do you have his contact

14  information so you can --

15         MR. McCARTHY:  I have an address.  I don't have an

16  email.  That would be helpful.

17         THE COURT:  Maybe can you give him your email?

18         MR. CALVEY:  Certainly, Your Honor.

19         THE COURT:  Okay.  All right.  Anything else?

20         MR. CALVEY:  Not that I can think of.

21         MR. McCARTHY:  That's it on this one.

22         THE COURT:  Okay.

23         MR. CALVEY:  Thank you.

24         MR. McCARTHY:  Thank you, Your Honor.

25         THE COURT:  All right.  And then the last one -- no,

11

```
 1   I'm sorry.  The last pre-trial is DSI v. Schnapf.  And,

 2   Mr. Schnapf, you're on the phone still?

 3             MR. SCHNAPF:  Yes, I am, Your Honor.

 4             THE COURT:  Okay.  Now, again, this is a fairly old

 5   complaint and answer.  I don't know.  Have you discussed a

 6   discovery schedule?

 7             MR. McCARTHY:  No, but I would suggest the same

 8   thing.  We provided initial disclosures to Mr. Schnapf.  We

 9   need disclosures from him and basically, if it's --

10             THE COURT:  All right.

11             MR. McCARTHY:  -- all right with Your Honor, I'd

12   propose to do the exact same thing with Mr. Schnapf that we

13   just did with Mr. Calvey.

14             THE COURT:  Okay.  The one issue I see here,

15   Mr. Schnapf claims that there's a lack of in personam

16   jurisdiction here.  I'm not sure what the basis for that is.

17   Did you serve the summons and complaint?

18             MR. McCARTHY:  Yes.

19             THE COURT:  Okay.  Mr. Schnapf, what is the basis for

20   the contention of lack of personal jurisdiction?

21             MR. SCHNAPF:  I didn't recall asserting that.  I

22   think the -- there are a number of preliminary motions that I

23   would like the Court to address before we get this case really

24   going.  The cause of action and I believe the lack of

25   jurisdiction issue is because they have alleged in their
```

12

 1  complaint, and I pointed this out to them at the very outset of

 2  this, that I'm in breach of a partnership agreement that was

 3  not created until after I had been long gone from the firm.   In

 4  other words, their cause of action for breach of contract is

 5  based on a partnership agreement that I didn't sign and was

 6  entered into after I left the firm.

 7          They are in default in regard to the counterclaim

 8  that I filed and I would like to bring a motion for default.

 9  Because of the inadequacy of their pleading on the partnership

10  agreement, I would bring a motion -- like to bring a motion to

11  dismiss at least the causes of action that are tied to the

12  partnership agreement.  And the real essence of my concern is,

13  of course, the inconvenience of the forum.  And I would like to

14  consider, although I recognize this is probably a longer shot,

15  consider filing a motion to transfer the case out here to

16  California.

17          THE COURT:  Okay.  Well ...

18          MR. SCHNAPF:  I would also mention, Your Honor, if I

19  may interrupt, that I would like to file a motion for failure

20  to prosecute which would be essentially identical to the motion

21  that the Court granted in the McCubbrey case, also a former

22  partner.

23          THE COURT:  I'm sorry, in the what case?

24          MR. SCHNAPF:  McCubbrey v. -- it's the same -- Bruce

25  McCubbrey was a partner of mine at Coudert and actually we were

13

1    partners prior to Coudert.  And in a -- on a complaint that was

2    filed on the same day as the complaint against me, Bruce

3    McCubbrey filed a motion for failure to prosecute, which this

4    court granted and that -- this court granted I think it was

5    like almost two years ago and nothing has really happened over

6    the last two years.  So, I mean, I resigned from Coudert almost

7    ten years ago.

8              THE COURT:  Okay.  I don't recall that motion or the

9    basis for it.

10             MR. McCARTHY:  I don't either, Your Honor.

11             THE COURT:  On the counter-claim, did you file --

12             MR. SCHNAPF:  I have the court's order in front of

13    me.

14             THE COURT:  On the counter-claim, did you file a

15    proof of claim in the bankruptcy case?

16             MR. SCHNAPF:  No, I didn't.

17             THE COURT:  Okay.  Well, that may negate the

18    counter-claim.

19             MR. SCHNAPF:  Well, it may negate it -- pardon me,

20    Your Honor.  It seems to me they still have some obligation to

21    answer or explain what their position is.

22             THE COURT:  Well, I'm happy to give you a month to

23    make a motion to dismiss or some other procedural motion that

24    doesn't require further factual development and then we'll

25    start the four months running after that.

14

 1          MR. McCARTHY:  That's fine, Your Honor.

 2          THE COURT:  Okay.

 3          MR. SCHNAPF:  Your Honor, if I may, the four month --

 4   since I am in California and since I'll have to be scheduling

 5   travel to New York, the four months -- I mean, do we have to

 6   address the four months at this stage, I guess is my question.

 7          THE COURT:  Well, let's make it four months subject

 8   to my considering it again at the subsequent pre-trial

 9   conference if in fact there is a motion made either to dismiss

10   or to transfer venue.  And I'll the next pre-trial conference

11   at that same date and decide whether I want to amend the

12   discovery order at that time.

13          MR. SCHNAPF:  And the four months would start after

14   the decision on the motion or when the motion is filed or how

15   would that work?

16          THE COURT:  No, the four months will start after the

17   decision on the motion.  So you have 30 days from today to file

18   a motion to dismiss and/or to change venue.  And you should --

19   before you file it, you need to get a hearing date from Ms. Li

20   in the clerk's office, L-I, Dorothy Li, and obviously, put a

21   notice of motion along with your motion with that hearing date

22   on it, and in all likelihood I'll give you a ruling on the

23   motion that same day.  And if I grant it, obviously the

24   pre-trial order is going to be moot; if I deny it, you can try

25   to persuade me then that I should extent the four months that

15

1    would start running from that day.

2           MR. SCHNAPF:  Your Honor, also you mentioned that the

3    motion didn't require factual development.  Would the -- I

4    don't -- I think this is a matter of record.  I hope it is, but

5    is the date that I resigned from Coudert likely to be -- I

6    mean, there's no factual issue.

7           THE COURT:  I don't know.  I mean I don't know if the

8    complaint sets it forth.  It may be a factual issue.

9           MR. SCHNAPF:  My answer does and they haven't

10   responded.

11          THE COURT:  Well, that doesn't -- the answer doesn't

12   count for a motion to dismiss, but there may be no dis -- you

13   may be able to stipulate to that.  If you don't and the

14   complaint doesn't state it and there is a true factual issue,

15   then that, you know, needs to be something that could be done

16   on summary judgment as opposed to motion to dismiss.

17          MR. SCHNAPF:  Well, there's no real factual issue

18   there.

19          THE COURT:  I don't know.  I have dealt with several

20   law firm bankruptcies both as a practitioner and as a judge.

21   You would be surprised how many times partners say, I wasn't a

22   partner, particularly when firms are going down hill so it may

23   be a factual issue; it may not.

24          MR. SCHNAPF:  No, Coudert was not going downhill when

25   I resigned.  It was perfectly amicable and there was no issue.

16

1    I understand, but no problem.

2            THE COURT:  Okay.  All right, so are we clear then?

3            MR. McCARTHY:  Yes, Your Honor.

4            THE COURT:  The key deadline is the 30 days.  I'm

5    going to ask you to submit a pre-trial order, but the four

6    months will start running from the ruling on the dispositive

7    motion.  And obviously, Mr. Schnapf needs to get a hearing date

8    for that motion, and that will also be the adjourned pre-trial

9    conference that you could put in the order.

10           MR. McCARTHY:  Okay.  Thanks.

11           THE COURT:  Then there will be a final pre-trial

12   conference, you know, basically, four and a half months after

13   that day.

14           MR. McCARTHY:  Okay.

15           MR. SCHNAPF:  Your Honor, can I ask a question or

16   two?

17           THE COURT:  Okay.

18           MR. SCHNAPF:  I understand the rule -- I've read the

19   rules that this court issued in April of this year.  Are those

20   the rules that apply to this proceeding?  Are they

21   retroactively effective to the proceeding?

22           THE COURT:  What rules are you talking about?

23           MR. SCHNAPF:  The Local Rules of the Bankruptcy

24   Court --

25           THE COURT:  Well, generally speaking --

17

1          MR. SCHNAPF:  -- the Southern District of New York.

2          THE COURT:  I'm not sure what rule you're focusing

3   on.  I mean yes, but the main rules to focus on are the

4   Bankruptcy Rules.  The local rules are -- I think as far as an

5   adversary proceeding is concerned, other than Local Rule

6   7056-1, which is not applicable at this point and hasn't

7   changed in any event, I can't think of a particular one that

8   we've changed that would affect this.  Maybe I'm missing

9   something.

10          MR. SCHNAPF:  I don't want to -- my prob -- my -- I'm

11   happy to have the new rules apply.  I just want to make sure

12   I'm following the right ones and I don't want to go back and

13   try to compare each rule.

14          THE COURT:  Well, I mean I think the new rules say

15   when they apply as of.

16          MR. SCHNAPF:  Actually, what they say is that they

17   apply to all proceedings in this court so --

18          THE COURT:  All right.

19          MR. SCHNAPF:  -- I'm interpreting that to mean that

20   they apply retroactively.

21          THE COURT:  Okay.  That's fine.

22          MR. SCHNAPF:  And then the other question is -- and

23   of course, this case involves payment that was made --

24   essentially involves a payment that was made to me that was a

25   refund of my capital amount after I -- after I left the firm

18

1    and the refund was made on July 1.  The examiner's report says

2    that the firm may have been bankrupt a couple of weeks or a few

3    weeks prior to that date.  It left open the question.  I'm just

4    asking if the Court has adjudicated the date of insolvency of

5    Coudert Brothers?

6              THE COURT:  Not that I can recall.  I don't think I

7    have so far.

8              MR. SCHNAPF:  And then -- well, thank you, Your

9    Honor.  And then my final question would be, you know, I have

10   diligently been interested in settling this matter but, you

11   know, I've just run up against the wall there and have had no

12   settlement conference in quite some time.

13             THE COURT:  Okay.  Well --

14             MR. SCHNAPF:  Is this a case that can go to ADR?

15             THE COURT:  What I'm going to suggest, I mean, DSI is

16   activating obviously at least three of these.  And consistent

17   with that is that if there's an interest on the defendant's

18   part in settling it, I think DSI will follow up on that.  And

19   they're nodding their heads.  You can't see them, but they're

20   agreeing here in court.  So let me make sure.  Do you have

21   Mr. Schnapf's contact information?

22             MR. McCARTHY:  Yes, I do, Your Honor.

23             THE COURT:  You do, okay.  Well, I suggest that you

24   all get together.  I mean, I think generally speaking, I'm in

25   favor of mediation, but I'd like to have the parties have a go

19

 1   at it first before they incur the expense of a mediation and

 2   see if that will work.  So I encourage the parties to use the

 3   next month in particular to see if they can't resolve this.

 4           I know every dollar counts, but it's a relatively

 5   small sum of money and something that I think probably both

 6   sides would be interested in resolving, not just you.

 7           MR. McCARTHY:  Your Honor, can the plan administrator

 8   say something on the topic?

 9           THE COURT:  Sure.

10           MR. BRANDT:  Good morning, Your Honor, William

11   Brandt, plan administrator.  Your Honor, we, as you may have

12   noticed, have filed a number of settlements just recently on

13   these.  We having turned our attention from all the District

14   Court litigation are trying to clean up just the last few

15   remaining of the several of them of -- as with Mr. Calvey, we

16   only had mailing addresses for, so we've settled a bunch.

17   We're happy to settle the rest, and I would agree with you

18   wholeheartedly from my perspective that the delta of numbers

19   involved would probably make it easier just to sit down and

20   talk to people like Mr. Schnapf rather than take up a

21   mediator's time.

22           THE COURT:  Okay.  And he is in California so -- but

23   you travel all over the country I gather so --

24           MR. BRANDT:  I woke up in California Saturday

25   morning, Your Honor, and I'll be back there tomorrow.

20

```
 1              THE COURT:  All right.  So maybe you all can schedule
 2    something.
 3              MR. BRANDT:  Where in California is Mr. Schnapf?
 4              MR. SCHNAPF:  I'm in the San Francisco Bay area.
 5              MR. BRANDT:  I was there, woke up there Saturday
 6    morning.  I'll be back there later this week.  Be happy to talk
 7    to you anytime, sir.
 8              MR. SCHNAPF:  I'm happy to talk to you.  I haven't
 9    heard anything from you guys in quite -- quite a long time.
10              MR. BRANDT:  I understand.
11              THE COURT:  Okay, all right.  Very well.  So in the
12    meantime, those deadlines that I've set.  The latter one is a
13    little more flexible.  We'll see how we are after I hear the
14    dispositive motion if -- unless this is settled obviously.  So
15    if you can submit that pre-trial order.
16              MR. McCARTHY:  Thank you.  I will, Your Honor.
17              THE COURT:  Thank you.  There's something else on the
18    calendar, too, involving Ernst & Young.
19              MR. McCARTHY:  Yes, Your Honor.
20              THE COURT:  And that's resolved?
21              MR. McCARTHY:  That has been resolved.  On Friday we
22    resolved it.  They've agreed to pay the -- to return the
23    preference amount.
24              THE COURT:  Okay.
25              MR. McCARTHY:  And they'll file their claim so --
```

21

 1          THE COURT:  Their final 2H claim?

 2          MR. McCARTHY:  Yes, their final 2H claim.

 3          THE COURT:  Okay.

 4          MR. McCARTHY:  So I guess we'll be submitting that

 5  Rule 9019 motion on that one shortly.

 6          THE COURT:  That's fine.  And, again, I'm happy for

 7  you to do those by notice of presentment.  We don't have to

 8  have a hearing on them unless you want to have a hearing.

 9          MR. McCARTHY:  Okay.

10          THE COURT:  So you can do it that way, too.

11          MR. McCARTHY:  Thank you, Your Honor.

12          MR. BRANDT:  Thank you, Your Honor.

13          THE COURT:  Okay, I think that just leaves the Statek

14  matter.

15          MR. SCHNAPF:  Your Honor, I'm going to leave the

16  phone.

17          THE COURT:  Right, you don't need to stay on the line

18  for this one.

19          MR. SCHNAPF:  Thank you, Your Honor.

20          THE COURT:  Thank you.

21          (Mr. Schnapf disconnects from the hearing.)

22          Okay, good morning.

23          MR. LITTLE:  Good morning, Your Honor.

24          MS. CAHILL:  Good morning, Your Honor.

25          THE COURT:  All right.  So this is the remand on

22

```
 1   Statek's motion for reconsideration under Rule 59 as
 2   incorporated by Bankruptcy Rule 9023.
 3           So I guess I should hear from Statek first.
 4           MR. LITTLE:  Sure.  Good morning, Your Honor.  I'm --
 5   for the record, I'm Edward Little from Hughes Hubbard for
 6   Statek.  And with me is Lisa Cahill, also from Hughes Hubbard,
 7   and David Pasey [Ph.]. who is our U.K. solicitor on the matter.
 8           THE COURT:  I'm sorry, David Pasey, who?
 9           MR. LITTLE:  Is our U.K. solicitor on the matter.
10           THE COURT:  Oh.
11           MR. LITTLE:  May I use the lectern, Your Honor?
12           THE COURT:  Wherever you're comfortable.
13           MR. LITTLE:  Sure.
14           I know the Court is very familiar with the case and
15   there's been extensive briefing, both the original briefing and
16   the reconsideration briefing, supplemental briefing.  And we
17   submitted a binder to the court of a lot of the prior
18   proceedings, so obviously the Court is well aware.  So if I'm
19   going into an area that the Court doesn't need to hear more
20   about, just stop me and I know you will.
21           THE COURT:  Well, could I -- and clearly don't take
22   this the wrong way.  I'm happy to hear from you in full, but I
23   just wanted to give you a preliminary take on this and that
24   will perhaps enable the parties to focus their arguments.
25           I'm troubled by the lack of briefing on one issue.
```

23

1   Other than that, I think I have a pretty good sense of where

2   the motion should go, but that one issue is in some sense a

3   gatekeeper, so I want to raise that one first and maybe I'm

4   just missing something, but don't think I am.

5           When I issued my order and decision denying the

6   motion for reconsideration, I did it on alternative grounds.   I

7   denied the motion first because it raised arguments and legal

8   theory that had not been raised before.   In addition, as

9   court's often do, I said even if I were to consider it, it

10  wouldn't be meritorious.

11          That aspect of the ruling got reversed.   The Second

12  Circuit reversed me and reversed Judge Hellerstein and said

13  that the transferor court venue rule trumped the general

14  applicability of the Gaston Stone case.   But it reversed and

15  remanded; it didn't just say the whole Rule 59 motion is

16  reversed and I should hear this on the merits.

17          So I'm still grappling with the issue, which is that

18  the original motion that I decided didn't have this argument in

19  it.   It was a post-decision ruling.   And the case law is pretty

20  clear that -- I think, but again, no one's briefed this -- that

21  Rule 59 motion should be determined narrowly and it shouldn't

22  be an excuse to raise new issues either factual or legal and I

23  could give you the cites that I have on it, but no one's

24  addressed this I think in their briefs.   So that's sort of a

25  gatekeeper issue for me.

24

 1          Going beyond that, it appears to me that if I were to

 2   in fact reconsider and vacate my ruling on the merits -- I'm

 3   sorry, on the merits of the motion to dismiss -- now that I'm

 4   instructed to apply Connecticut Choice of Law principles I

 5   would conclude that under Connecticut law, I would apply the

 6   Connecticut limitations law, not some other jurisdiction's

 7   limitation law.  And further, I would conclude that there is

 8   insufficient or are insufficient grounds to grant the motion to

 9   dismiss because of the facts necessary to decide the tolling

10   for continuing conduct.

11          I also believe that the issue of whether the

12   Connecticut Court had *in personam* jurisdiction is also a live

13   issue but one that also I can't decide and frankly shouldn't

14   decide on this motion to dismiss.  Again, it wasn't raised

15   because the underlying argument wasn't raised about the

16   transfer basis for venue and, as importantly, that whole issue

17   was not teed up before me.  It was teed up before the

18   Connecticut District Court.  And particularly given the ruling

19   that Connecticut District Court has already given, which that

20   court understands fully and I don't, *i.e.* the ruling that

21   condition dismissal on certain waivers, I would be extremely

22   adversed to stepping into that issue.

23          So my inclination would be if we do get beyond the

24   gatekeeping issue to deny the motion, permit discovery on the

25   limitations issue and at the same time lift the stay to permit

S-578

1    the District Court to decide the *in personam* jurisdiction

2    issue.

3              MR. LITTLE:  That's very helpful, Your Honor.

4              THE COURT:  Okay.

5              MR. LITTLE:  First of all, on the issue of the

6    gatekeeping issue of whether or not on a motion for

7    reconsideration the court could or should reconsider based on

8    our argument on new grounds, the -- I never frankly understood

9    why Dave Pitney thought that Gaston case was relevant in this

10   case.  And I thought that on the motion for reconsideration,

11   especially in the reply motion -- the reply brief we filed,

12   that we made clear that we thought that this was an issue that

13   was before the Court before but was misinterpreted and I don't

14   have -- it's been a few years.

15             THE COURT:  Well, I'm going to quote a paragraph from

16   that reply brief because I looked at this over the weekend

17   because I wanted to make -- I mean, this is from Statek.

18             MR. LITTLE:  Is this the reply on the motion for

19   reconsideration?

20             THE COURT:  Yes.

21             MR. LITTLE:  Yeah.

22             THE COURT:  It's dated August 20th from Dave Pitney

23   and it says on page 4:

24             "Statek did not argue for the application of

25   Connecticut statute of limitations much less that the Eerie

26

1   doctrine required that result.  On the contrary, Statek argued

2   that this court should apply federal choice of law rule to the

3   statute of limitations question and that the result of the

4   analysis should be the application of English law."

5        So -- and that did -- I mean, that certainly was my

6   recollection of it and I appreciate that I have some leeway now

7   having been instructed by the Second Circuit that Connecticut

8   choice of law principles do govern, but there is this

9   counterveiling strong policy that litigants shouldn't use

10  Rule 59 to let them raise new issues.

11       Now, that's I think important here because the Second

12  Circuit did not permit an appeal.  I mean, usually what the

13  courts say is, you know, those issues should come up on appeal.

14  The Second Circuit didn't permit an appeal here.  And in

15  addition to that, I don't know for sure, of course, but the --

16  one could at least see a scenario, and I think this is why the

17  cases come out the way they do following Rule 59 motions where

18  your predecessor counsel decided that ultimately the best case

19  you could make here would be under English law and not

20  Connecticut law and so they consciously chose not to argue the

21  transferor thing.  I don't know if that's true or not, but I

22  mean it just highlights the notion that you shouldn't use 59 to

23  raise a new issue.

24       MR. LITTLE:  Well, I'll pass on commenting why they

25  were replaced.

27

```
 1          THE COURT:  I'm just saying that is a -- where you do
 2   have -- actually, here you had four choices because California
 3   was a choice also and two of them were clearly bad and two
 4   might work.  You know, there was a choice for one of those two
 5   and not both of those two.  I mean, certainly it was possible
 6   to argue as the papers do in many other ways here all the
 7   alternatives.  But I don't -- I really don't think that the
 8   Connecticut alternative was argued and certainly, it's belied
 9   by that statement.  So anyway, I don't -- I am always reluctant
10   to rule on an issue like this that the parties haven't briefed.
11          They did brief it the first time but they haven't
12   briefed it now and there is certainly a change, which is we
13   have the Second Circuit ruling, so my inclination is to give
14   you my preliminary view on it, but to take some briefing on it.
15   But, you know, there are -- this rule doesn't apply just to new
16   factual arguments.  It does apply to new legal arguments.  You
17   know, there's -- I'm sure -- well, you're probably familiar
18   with Judge Sweet's opinion in Carolco Pictures Inc. v. Sirota,
19   700 F. Supp. 169, which a lot of the cases flow from just from
20   1988.  Also, Range Road Music, Inc. v. Music Sales Corp., 90 F.
21   Supp.2d 390 (S.D.N.Y. 2000).  I mean. they go up to this year,
22   to 2012, as well as the Vargas Realty case that I cited in my
23   ruling from September 2009, 2009 Bankruptcy Lexis 2040,
24   (Bankruptcy S.D.N.Y. July 23, 2009).
25          Now, offsetting that is that, you know, one of the
```

28

1   other grounds is clear error; but, I mean, the cases seem to

2   say that it's trumped by the notion that you shouldn't be

3   raising the issue after the fact. I mean. there's -- the

4   Supreme Court's weighed in on this, too, in footnote in <u>Exxon</u>

5   <u>Shipping v. Baker</u>, 554 U.S. 471 (2008) at Note 5.

6           So anyway, I mean, on the other points --

7           MR. LITTLE:  I have --

8           THE COURT:  On the second point, you guys win so I

9   don't think you're particularly unhappy about that.

10          MR. LITTLE:  No, no.

11          THE COURT:  Although --

12          MR. LITTLE:  I'd like to win on both though, Your

13  Honor.

14          THE COURT:  And then you also have argued that the

15  fact that the Second Circuit denied DSI's motion for a hearing

16  is law of the case and therefore, they can't raise the

17  jurisdictional issue -- the *in personam* jurisdiction issue at

18  this point, but it seems to me they're right that it is the law

19  of the case, that it's under the case law.  It's not necessary

20  to their ruling.  It's something I should consider as part of

21  the remand and it doesn't appear to me that they waived

22  anything.  I mean, the stay was in place.  They were focusing

23  on this motion to dismiss and the response.  I guess if the

24  response had raised the borrowing concept -- or not the

25  borrowing, the transfer concept, arguably they should have

29

1   raised it, but that came in in the motion for reconsideration.

2           MR. LITTLE:  Okay, if I could from the start, Your

3   Honor --

4           THE COURT:  Sure.

5           MR. LITTLE:  -- address this gatekeeper concept.

6           THE COURT:  Right.

7           MR. LITTLE:  This is an extraordinarily complicated

8   procedural case.  We had a real workout.  I felt like I was

9   back in law school on a civil procedure exam.  However, the

10  case was so important that the Second Circuit basically -- and

11  it's extraordinary for the Second Circuit to reverse a District

12  Court, reverse a Bankruptcy Court on an issue like this.  It

13  doesn't normally happen, but it was a very important issue as

14  we've pointed out just from the equities of it that if you had

15  a transfer situation where someone files in time in another

16  district and the case gets moved to a new district that the

17  fellow doesn't lose out because he didn't anticipate it being

18  transferred.  And so the basic equitable principle, which the

19  Second Circuit obviously adopted, is that you don't lose out.

20  You did the best you could do and you filed what you thought

21  was in time.

22          THE COURT:  Right.

23          MR. LITTLE:  The -- I think all the issue -- I'll go

24  back to whether or not the Court could properly deny it only

25  because it was raising new issues.  I think it's also law of

30

1  the case that that can't be gone into at this point and I say

2  that very respectfully.  Counsel could have raised on appeal

3  as -- in their response to our appeal that very issue.  They

4  could have said, wait a minute now, the Judge ruled in the

5  alternative that this was a new ground being raised on a motion

6  for reconsideration and that's not proper and the Second

7  Circuit has ruled on that.

8           But for that to suddenly resurface again after this

9  thing has been fully litigated through the District Court and

10 the Court of Appeals with a ruling on the merits with clear

11 instruction coming back, there's a mandate here where the Court

12 is instructed to apply Connecticut choice of law.  I really

13 don't think that it's open to the Court to say, wait a minute

14 now, back then I did decide that these were new grounds and it

15 wasn't proper to raise in a motion for reconsideration.  The

16 Court is not a party on the appeal.  I fully recognize that,

17 but they are and that's --

18           THE COURT:  But it didn't --

19           MR. LITTLE:  -- something that they should have

20 raised and they didn't.

21           THE COURT:  Well, I guess I hear you on the first

22 point.  The second point, though, the Second Circuit didn't

23 simply reverse.  I mean, it didn't say that the motion for

24 reconsideration is reversed and denied -- and granted.  It

25 would seem to me that they wanted me to consider in the light

S-584

31

 1  of this ruling whether I should grant or deny it -- or deny it.

 2  Now, I mean, again --

 3          MR. LITTLE:  Well, I think that --

 4          THE COURT:  -- this has not been briefed so I

 5  understand -- I'd rather -- I'd like to hear those arguments.

 6          MR. LITTLE:  Sure.

 7          THE COURT:  I'd like to read them with some

 8  supporting cases so on this first point --

 9          MR. LITTLE:  Okay.

10          THE COURT:  -- I'm just not sure anyone is going to

11  persuade me one way or the other --

12          MR. LITTLE:  Okay.

13          THE COURT:  -- until I review that.

14          MR. LITTLE:  All right.  I just want to make one more

15  comment, not to be overly persistent.

16          THE COURT:  That's fine.

17          MR. LITTLE:  If you just give me another sentence or

18  two.  The thing is that the Second Circuit whatever it

19  technically did in terms of reversing, remanding, whatever,

20  there's a clear instruction to apply the choice of law ruled

21  Connecticut.

22          THE COURT:  Right.

23          MR. LITTLE:  And I really don't think it would

24  withstand yet another appeal that while the District Court

25  decided it was not going to follow the instruction because

32

1   thinking about it, it decided that when it originally denied

2   the motion for reconsideration, there's alternative ground that

3   it would not consider new grounds.

4          THE COURT:  Well, I mean I am following the

5   instruction.  I am considering Connecticut law and I would

6   issue a ruling that would say, at least my inclination is at

7   this point subject to reading the parties briefs on it, motion

8   denied; but if granted or if reversed or, you know, Connecticut

9   law would require the application of Connecticut's statute of

10  limitations.

11         MR. LITTLE:  But the only thing I'd add -- and again,

12  I'm not trying anticipate what we'll have to do and I will

13  accept that we will brief it, Your Honor -- but the Second

14  Circuit did determine that there was an error of law and it was

15  not -- obviously, it's a very complicated area.

16         THE COURT:  Well, that is a point that I would

17  appreciate briefing on, that the courts and commentators say

18  that one of the four grounds for granting a motion on Rule 59

19  is a clear error of law.

20         MR. LITTLE:  Right.

21         THE COURT:  At the same time they say and, you know,

22  Moore says in the next paragraph, you shouldn't be raising new

23  issues in the motion, so which trumps, which one of those wins,

24  and I would appreciate -- I mean, that's part of the briefing.

25         MR. LITTLE:  Sure, but I would hope even if it's a

33

 1   discretionary call, that the Court recognize the critical

 2   important of that issue here.  I mean, it really is critical.

 3           THE COURT:  Well, I understand that.  On the other

 4   hand, the language for the trial court is very strong on this

 5   issue because trial courts don't like doing things over again

 6   when they weren't told the issue the first time.

 7           MR. LITTLE:  Right.

 8           THE COURT:  I mean -- and it's interesting that the

 9   case law in this area is from some of the -- I'm not saying

10   this in a pejorative way at all, but some of the strongest-

11   minded District judges I think realize that if you open up this

12   field, people could constantly be raising these issues.

13           MR. LITTLE:  Right.

14           THE COURT:  So anyway, I --

15           MR. LITTLE:  My view of this --

16           THE COURT:  I apologize for raising this issue --

17           MR. LITTLE:  Right.

18           THE COURT:  -- because I normally like to rule from

19   the bench --

20           MR. LITTLE:  Sure.

21           THE COURT:  -- but I don't think I can on this

22   particular point.

23           MR. LITTLE:  And I appreciate that, Your Honor, and

24   we will brief it and do it speedily.

25           THE COURT:  Okay.

34

1          MR. LITTLE:  So I take it that the Court -- I don't

2     mean to question the Court, but I take it there's no point in

3     my going into why I think that they cannot raise the alleged

4     lack of personal jurisdiction to avoid the Second Circuit's --

5          THE COURT:  Well, no, you should do that because that

6     has been briefed and I want to make sure I understand your

7     points on that.

8          MR. LITTLE:  Okay, okay, right.  Well --

9          THE COURT:  Just as I expect to hear from DSI on

10    the --

11         MR. LITTLE:  Sure.

12         THE COURT:  -- preliminary view I formed that the --

13         MR. LITTLE:  First of all, on the point --

14         THE COURT:  -- Connecticut limitations period should

15    apply.

16         MR. LITTLE:  On the point that this wasn't

17    considered, as we indicated Coudert actually made the argument

18    in their main brief -- their main answering brief on the appeal

19    at page 32 where they stated to the court, "Where the putative

20    transferor court lacks personal jurisdiction over the defendant

21    the transferee court is not obligated to apply the transferor's

22    law."

23         THE COURT:  Right.

24         MR. LITTLE:  They made that point.  They didn't brief

25    it very well, but they made that point.