# **EXHIBIT C**

**(Order on Remand)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| COUDERT BROTHERS LLP, | Case No. 06-12226 (RDD) |
| Debtor. | |

## ORDER ON REMAND DENYING STATEK CORPORATION'S MOTION FOR RECONSIDERATION

Upon remand by the United States District Court for the Southern District of New York, dated August 4, 2012 (the "Remand"), for determination of the motion for reconsideration (the "Reconsideration Motion") by Statek Corporation ("Statek") of this Court's July 21, 2009 order disallowing its Claim 239 (the "Disallowance Order"), which Remand was pursuant to the decision and order of the United States Court of Appeals for the Second Circuit, dated February 28, 2012 (the "Second Circuit Order"); and upon the record of the non-evidentiary hearing held by the Court on October 22, 2012 following the Remand; and the Court having reviewed the parties' post-Remand briefs and their post-hearing supplemental briefs; and the Court having reviewed all the prior proceedings herein, including but not limited to the parties' submissions on Coudert's motion to disallow Claim 239, the Disallowance Order, the parties' submissions on the Reconsideration Motion, the Court's decision and order, dated September 8, 2009, denying the Reconsideration Motion for (the "Reconsideration Order"), the parties' submissions on Statek's appeal to the District Court from the Disallowance Order and the Reconsideration Order, the decision and order of the District Court affirming the Disallowance Order and

the Reconsideration Order, 2010 US Dist LEXIS 58467 (S.D.N.Y. June 11, 2010), the

parties' submissions on Statek's appeal to the United States Court of Appeals for the

Second Circuit from the District Court's affirmance of the Disallowance Order and

Reconsideration Order, the recording of the parties' oral argument of said appeals before

the Second Circuit, the Second Circuit Order, and the Remand; and the Court having set

forth its decision and reasoning in the Memorandum of Decision on Remand on Statek's

Motion for Reconsideration of Claim Disallowance Order, dated August 19, 2013, which is

attached hereto as Exhibit A (the "Decision"); and the Decision being in accordance with

and pursuant to the Remand; and good and sufficient cause existing for the relief set forth

herein; now, therefore, for the reasons set forth in the Decision, it is hereby

     ORDERED THAT:

1.      On remand, Statek's Motion for Reconsideration is denied; and

2.      This Court retains jurisdiction with respect to all matters arising from or

     related to the implementation of this Order.


Dated: White Plains, New York       /s/Robert D. Drain
      August 23, 2013       THE HONORABLE ROBERT D. DRAIN
      UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re:

Coudert Brothers LLP,                              Chapter 11

                          Debtor.                 Case No. 06-12226 (RDD)

-----------------------------------------------------------x

Appearances:

STERN TANNENBAUM & BELL LLP, by David S. Tannenbaum and Karen S. Frieman for
Development Specialists, Inc.

HUGHES HUBBARD & REED LLP by Edward J.M. Little and Lisa A. Cahill for Statek
Corporation.

### MEMORANDUM OF DECISION ON REMAND ON STATEK'S MOTION FOR RECONSIDERATION OF CLAIM DISALLOWANCE ORDER

Robert D. Drain, United States Bankruptcy Judge

#### Procedural History

Statek Corporation ("Statek") filed a proof of claim in this case, Claim 239 (the "Claim"),

to which the debtor, Coudert Brothers LLP ("Coudert") objected.[1]  After briefing and a hearing,

this Court issued an order on July 21, 2009 disallowing the Claim (the "Claim Disallowance

Order"), holding that New York's choice of law rules and New York's borrowing statute, NY

CPLR § 202, barred the Claim under New York's statute of limitations.  The Court also

concluded that, even if federal or English law governed, as Statek had argued, the Claim was

time barred.

---

[1] Coudert has been succeeded by Development Specialists, Inc. in its capacity as Plan
Administrator under Coudert's confirmed chapter 11 plan.

1

Statek moved for reconsideration of the Claim Disallowance Order under 11 U.S.C. § 502(j), and, applying the standard under Fed. R. Civ. P. 59,[2] the Court denied that motion in an order dated September 8, 2009 (the "Reconsideration Order").  In its reconsideration motion, Statek argued that this Court, as the "transferee court" of Statek's prepetition action against Coudert, should follow the law of the "transferor court," Connecticut, including Connecticut's choice of law and timeliness rules, citing Van Dusen v. Barrack, 376 U.S. 612 (1964), and, in its reply brief, Ferens v. John Deere Co., 494 U.S. 516 (1990).  Statek had not previously made this argument in its response to the Plan Administrator's claim objection; Statek's reconsideration motion was the first time Statek contended that Connecticut's choice of law rules should apply.  Previously, the parties had argued that New York, California, federal, or English law should govern the issue of the timeliness of the Claim.  As Statek acknowledged in its reply brief on the reconsideration motion, "Statek did not argue for the application of Connecticut's statute of limitations, much less that the Erie doctrine required that result.  On the contrary, Statek argued that this Court should apply a federal choice-of-law rule to the statute of limitations question and that the result of the analysis should be the application of English law."  Statek Reply 4, Aug. 20, 2009.

The Court denied Statek's reconsideration motion on two grounds:  first, because Statek had not raised the argument upon which the motion was based before the Court issued the Claim Disallowance Order from which Statek now sought relief, In re Coudert Bros. LLP, 2009 Bankr. LEXIS 2602, at *8-*9 (Bankr. S.D.N.Y. Sept. 8, 2009), and, alternatively, because the Court

---

[2] See In re Enron Corp., 352 B.R. 363, 367-68 (Bankr. S.D.N.Y. 2006) (a motion under 11 U.S.C. § 502(j) that is filed within the time to appeal the order on the claim is analogous to and should be governed by the same principles as a motion under Fed. R. Civ. P. 59); see also In re Pt-1 Communs. Inc., 412 B.R. 85, 89 (Bankr. E.D.N.Y. 2009); In re Best Payphones, Inc., 2008 Bankr. LEXIS 2555, at *6-*8 (Bankr. S.D.N.Y. July 3, 2008); In re Wyatt, Inc., 168 B.R. 520, 522 n.2 (Bankr. D. Conn. 1994) (accord).

concluded that it was not the "transferee" court of Statek's prepetition Connecticut tort action but, instead, was determining the Claim that Statek had filed in this case, which required application of New York's choice of law rules and borrowing statute under Bianco v. Erkins (In re Gaston & Snow), 243 F.3d 599 (2d Cir. 2001), cert. denied, 534 U.S. 1042 (2001). In re Coudert Bros. LLP, 2009 Bankr. LEXIS 2602 at *10-*13.

Statek appealed the Claim Disallowance Order and the Reconsideration Order to the District Court, which affirmed both orders in one ruling. In re Coudert Bros. LLP, 2010 U.S. Dist. LEXIS 58467, at *10 (S.D.N.Y. June 11, 2010). The District Court did not, however, address this Court's first alternative basis for the Reconsideration Order, that it was improper to premise a motion to be decided under the Rule 59 standard on a new argument that could have been made before the Court issued the original order. Instead, it affirmed on the basis of this Court's choice of law analysis. Id. at *5-*10. Indeed, Statek does not appear to have addressed the first basis for the Reconsideration Order in its appeal.

On appeal, the Second Circuit found that Statek's appeal of the Claim Disallowance Order was untimely, depriving it and the District Court of appellate jurisdiction, and, therefore, remanded to the District Court with instructions to dismiss. Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP), 673 F.3d 180, 185-86, 191 (2d Cir. 2012). With regard to the Reconsideration Order, the Second Circuit concluded that this Court and the District Court "should not have applied the choice of law rules of New York, the state in which it sits, but instead the choice of law rules of Connecticut, where Statek filed its pre-bankruptcy action seeking damages that later constituted its claim against the bankruptcy estate." Id. at 182 (citing Van Dusen, 376 U.S. at 638; Ferens, 494 U.S. at 524).

Thus the Second Circuit reversed that portion of the District Court's order affirming this Court's Reconsideration Order and remanded the case to the District Court "with instructions to REMAND IN PART to the bankruptcy court with instructions to apply Connecticut's choice of law rules in deciding Statek's motion for reconsideration." Id. at 191.  On August 4, 2012, District Judge Hellerstein entered an order consistent with the Second Circuit's ruling, in relevant part remanding Statek's reconsideration motion to this Court with instructions to apply Connecticut's choice of law rules in deciding the motion.  Case 09 Civ. 9561, Dkt. No. 25.

This Court held a non-evidentiary hearing on the remand, after briefing, and requested supplemental briefs, which the parties submitted.  Having reviewed the Second Circuit's opinion and remand, the District Court's remand, the parties' briefs, including those filed in the District Court and the Second Circuit, and also having listened to the recording of the parties' oral argument before the Second Circuit, the Court concludes that (a) Statek never raised on appeal to either the District Court or the Second Circuit that portion of the Reconsideration Order denying Statek's motion on the basis that its new argument could have been, but was not, raised before the Court entered the Claim Disallowance Order, and (b) the Second Circuit did not explicitly or implicitly decide that alternative ground for the Reconsideration Order.  Having applied Connecticut's choice of law rules as required by the remand, the Court therefore continues to conclude that Statek's reconsideration motion should be denied.  To do otherwise would negate well established precedent strictly construing reconsideration motions to prohibit a litigant from raising new legal theories that it could have raised but did not until after it lost on its original theories.

**DISCUSSION**

**1.  Statek's Claim.**

4

Statek's amended complaint, upon which the Claim against Coudert is based, states that,

having obtained a favorable decision on January 5, 1996 from the Delaware Court of Chancery

determining that Hans Frederick Johnston ("Johnston") and Sandra Spillane ("Spillane") were

not lawful directors of Statek's parent, Technicorp International II, Inc. ("TCI II"), and had

concealed payments to themselves of almost $6 million in undocumented and interest free loans

between 1984 and 1992, TCI II caused Johnston and Spillane to be removed as directors and

officers of Statek.  Amended Complaint ¶¶ 11-13.  Then, on June 26, 1996, Statek and TCI II

commenced an action against Johnston, Spillane and entities controlled by them for fraud, breach

of fiduciary duty and corporate waste, id. ¶ 14; and on May 31, 2000 the Delaware Chancery

Court issued an opinion in that action finding that Johnston and Spillane had wrongfully diverted

$10,501,329 from TCI II and $19,812,942 from Statek, which was implemented in a joint and

several judgment dated September 7, 2000 against Johnston and Spillane in the aggregate

amount of $30,314, 271.  Id. ¶¶ 18, 23.

Statek's sole claim against Coudert, for breach of professional and fiduciary duties, id. ¶

¶ 60-62, is premised on Coudert's failure to provide Statek with complete files and an accounting

arising out of services Coudert rendered to Statek or to Johnston and Spillane that were billed to

Statek.  More specifically, Statek asserts that on July 12, 1996 it requested information from

Coudert, including "a complete copy of the files arising out of and relating to the services

Coudert had rendered."  Id. ¶¶ 27, 28.[3]  Coudert provided some information and files in response,

id. ¶ 29, but, although "Coudert confirmed that it had no other Statek Files or information about

other Statek services it had rendered," id. ¶ 30, Coudert failed to provide additional Statek Files

and information about other services that it had rendered related to Statek, id. ¶¶ 31, 32, and did

---

[3] The amended complaint does not specify whether the services rendered by Coudert were to
Statek or to other persons or entities, including, for example, Johnston, but defines the information and
files as the "Statek Files".

5

not account to Statek for all Statek's funds that it had disbursed out of a London account.  Id. ¶
37.  The amended complaint does not say when Statek learned of this failure, but it states that as
a result of investigations between 2002 and 2004 by the trustee appointed in Johnston's English
bankruptcy case under the United Kingdom's Insolvency Act of 1986, the trustee learned that
Coudert had additional files and other information related to Statek.  Id. ¶¶ 38-56.  Statek also
asserts that Coudert continues to fail to provide Statek with all of the Statek Files and other
Statek-related information and fails to account for Statek's funds that it disbursed from its
accounts.  Id.  ¶ 61.

The amended complaint states that Coudert's incomplete responses to the information
demands hindered, delayed and frustrated Statek's ability to discover and recover
misappropriated Statek assets from Johnston, Spillane and others and deprived it of capital that it
could have used profitably, giving rise to the Claim of approximately $85,000,000, id. ¶¶ 5, 62-
63, a figure that Statek reconfirmed in footnote 2 in its Memorandum of Law in reply to
Coudert's objection to its Claim.

**2. Connecticut's choice of law rules do not lead to a clear answer on the timeliness of the
Claim.**

It is clear that, under Connecticut choice of law rules, Connecticut would apply its own
statute of limitations to Statek's Claim for breach of professional and fiduciary duties.  Unlike
New York, Connecticut does not have a borrowing statute.  Instead, if a limitations statute is
"procedural," Connecticut law (the *lex fori*) will govern – that is, Connecticut's limitations
statutes will apply – while "if the limitation is so interwoven with the cause of action as to
become one of the congeries of elements necessary to establish the right, the limitation goes with
the cause of action wherever brought."  Baxter v. Sturm, Ruger & Co., Inc., 644 A.2d 1297, 1299
(Conn. 1994) (citations and internal quotation marks omitted).  See also State v. Lombardo Bros.

Mason Contrs., Inc., 54 A.3d 1005, 1025 (Conn. 2012); Cameron v. Olin Corp., 838 F. Supp. 2d 59, 62-65 (D. Conn. 2012).  Statek's Claim is not based on a statute with its own substantive limitations period; it is a common law tort claim.  Sanborn v. Greenwald, 664 A.2d 803, 810 (Conn. App. Ct. 1995) ("Actions for legal malpractice based on negligence are subject to § 52-577, the tort statute of limitations.").  Accordingly, Connecticut's general limitations period for common law torts, Conn. Gen. Stat. §  52-577, applies to it.  Baxter, 644 A.2d at 1299-1300; Cameron, 838 F. Supp. 2d at 64-65.

The Plan Administrator cites authority for the proposition that "the 'emerging trend' is for courts to 'select the state whose law will be applied to the issue of limitations by a process essentially similar to that used in the case of other issues of choice of law,'" Phillips v. Scott, 446 F. Supp. 2d 70, 83 n.25 (D. Conn. 2006) (quoting cmt. e to § 122 of the Restatement (Second) Conflict of Laws) -- that is, in Connecticut, the "most significant relationship" test found in the Restatement (Second) of Conflicts of Law § 142.  However, Connecticut's Supreme Court has not reversed Baxter, 644 A.2d at 1299, and recently cited it positively in State v. Lombardo Bros., 54 A.3d at 1025.  Moreover, several courts have reaffirmed Baxter's holding as applied to statutes of limitations, notwithstanding the analysis in Phillips, see, e.g., Doe v. Knights of Columbus, 2013 U.S. Dist. LEXIS 34235, at *36-*44 (D. Conn. Mar. 12, 2013); Bilodeau v. Vlack, 2009 U.S. Dist. LEXIS 45851, at *8-*10 (D. Conn. May 20, 2009), or simply continued to follow Baxter without discussing a contrary approach. See, e.g., Cameron v. Olin Corp., 838 F. Supp. 2d at 62-65; Chien v. Skystar Bio Pharm. Co., 623 F. Supp. 2d 255, 264 n.8 (D. Conn. 2009); Hartford Fin. Servs. Grp., Inc., 256 F.R.D. 284, 300 (D. Conn. 2009); Moore v. Arvin Indus. Inc., 2011 Conn. Super. LEXIS 3054, at *5-*6 (Conn. Super. Ct. Dec. 2, 2011);

<u>Vertefeuille v. Noller</u>, 2008 Conn. Super. LEXIS 70, at *2-*4 (Conn. Super. Ct. Jan. 14, 2008).

<u>Baxter</u>'s approach, therefore, continues to govern.

Connecticut's limitation period for common law torts, like the Claim based on Statek's

amended complaint, is three years from the commission of the tort.  Connecticut Gen. Stat. § 52-

577.  This period "begins with the date of the act or omission complained of, not the date when

the plaintiff first discovers an injury."  <u>Piteo v. Gottier</u>, 963 A.2d 83, 86 (Conn. App. Ct. 2009);

<u>DeCorso v. Watchtower Bible & Tract Soc'y of N.Y.</u>, 752 A.2d 102, 108 (Conn. Super. Ct.

2000).  <u>See also</u> <u>Watts v. Chittenden</u>, 22 A.3d 1214, 1219 (Conn. 2011) ("In construing our

general tort statute of limitations . . . we have concluded that the history of that legislative choice

of language precludes any construction thereof delaying the start of the limitation period until the

cause of action has accrued or the injury has occurred . . . .  The date of the act or omission

complained of is the date when the . . . conduct of the defendant occurs.") (citations and internal

quotation marks omitted).

Connecticut choice of law principles thus present a significant hurdle for Statek, because

Statek commenced its Connecticut action against Coudert on November 5, 2005, over nine years

after Coudert's failure to honor its requests in July, 1996.  Consequently, Statek must carry the

burden[4] to toll the limitations period under Connecticut law for several years beyond the three

year period prescribed by Connecticut Gen. Stat. § 52-577.

---

[4] Statek has the burden of establishing a basis for tolling the statute of limitations.  <u>Haas
v. Haas</u>, 48 A.3d 713, 720 (Conn. App. Ct. 2012); <u>Collum v. Chapin</u>, 671 A.2d 1329, 1332
(Conn. App. Ct. 1996); <u>Sean O'Kane AIA Architect, P.C. v. Puljic</u>, 2012 Conn. Super. LEXIS
2950, at *29-*30 (Conn. Super. Ct. Nov. 28, 2012).

The only basis Statek asserts to toll the limitations period between July of 1999 and

November 5, 2005 is Connecticut's "continuing course of conduct" doctrine.[5]  As most recently

reiterated by Connecticut's Supreme Court in Watts v. Chittenden, 22 A.3d 1214 (Conn. 2011),

> [T]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto.  That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . .  Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act.

Id. at 1220.  That is, there must be a continuing duty and either a special relationship between the

parties or some later wrongful conduct of the defendant related to the prior act.  See also Haas v.

Haas, 48 A.3d at 719-20.

As noted by the Seventh Circuit in Taylor v. Meirick, 712 F.2d 1112, 1119 (7th Cir.

1983) (Posner, C.J.) (citation omitted), quoted favorably by the Watts court:

> The principle strikes a balance between the plaintiff's interest in being spared having to bring successive suits, and the two distinct interests that statutes of

---

[5] Statek does not contend that the limitations period should be tolled based on fraudulent concealment.  See Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP, 912 A.2d 1019, 1032-33 (Conn. 2007).  Nor does it assert that Connecticut's "continuous representation" doctrine applies.  A plaintiff may invoke that doctrine "and thus toll the statute of limitations, when the plaintiff can show:  (1) that the defendant continued to represent him with regard to the same underlying matter; and (2) either that the plaintiff did not know of the alleged malpractice or that the attorney could still mitigate the harm allegedly caused by that malpractice during the continued representation period."  DeLeo v. Nusbaum, 821 A.2d 744, 749-50 (Conn. 2003).  However, "the holding of DeLeo is quite limited.  In a footnote, the court explicitly limited its holding to 'cases in which an attorney is alleged to have committed malpractice during the course of litigation.'"  Rosato v. Mascardo, 844 A.2d 893, 407 (Conn. App. Ct. 2004) (emphasis added) (quoting DeLeo, 263 Conn. 597 n.4); see also Piteo v. Gottier, 963 A.2d 83, 87 n.3 (Conn. App. Ct. 2009).  Statek does not allege that Coudert ever represented it in litigation.  Moreover, as discussed below, there is no allegation that Statek asked Coudert to do any legal work after the ouster of Johnston and Spillane; it merely requested files and accounting.  Therefore, even if the "continuous representation" doctrine were extended beyond malpractice committed during the course of litigation, it would not apply here.  Sin Hang Lee v. Brenner, Saltzman & Wallman, LLP, 15 A.3d 1215, 1218-19 (Conn. App. Ct. 2011).

> limitations serve.  One is evidentiary – to reduce the error rate in legal
> proceedings by barring litigation over claims relating to the distant past.  The
> other is repose – to give people the assurance that after a fixed time they can go
> about their business without fear of having their liberty or property taken through
> the legal process. . . .  When the final act of an unlawful course of conduct occurs
> within the statutory period, these purposes are adequately served . . . by requiring
> the plaintiff to sue within the statutory period but letting him reach back and get
> damages for the entire duration of the alleged violation.

Watts, 22 A.3d at 1222-23.

Thus, "the concerns that have driven the application of the doctrine have been the following:  the relative difficulty of identifying the cause of action, the possibility that the wrong may be remedied before the course of conduct is completed, and the general concern of avoiding premature litigation."  Id. at 1230.  See also Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC, 795 A.2d 572, 579 (Conn. App. Ct. 2002) ("The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. The doctrine is generally applicable under circumstances where it may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of action to terminate before allowing the repose section of the statute of limitations to run.") (citation and internal quotation marks omitted).  See also Targonski v. Clebowicz, 63 A.3d 1001, 1008 (Conn. App. Ct. 2013) ("The doctrine . . . is better suited to claims where the situation keeps evolving after the act complained of is complete.") (internal quotation marks omitted).[6]

---

[6] The Watts court also favorably quoted Chief Judge Posner in Knight v. Columbus, 19 F.3d 579, 581-82 (7th Cir. 1994):

> A violation is called 'continuing,' signifying that a plaintiff can reach back
> to its beginning even if that beginning lies outside the statutory limitations period,
> when it would be unreasonable to require or even permit him to sue separately

Connecticut recognizes the importance of the countervailing policies supporting its statutes of limitations.  It is often noted, therefore, that "[p]erhaps because the continuous course of conduct doctrine contravenes, or at least qualifies, the legislatively mandated policies favoring repose as found in the statutes of limitations, the doctrine has been applied narrowly and somewhat sparingly."  Partitions, Inc. v. Blumberg Assocs., 2001 Conn. Super. LEXIS 2960, at *10 (Conn. Super. Ct. Oct. 9, 2001); see also Komoroski v. Corso, 2013 Conn. Super. LEXIS 400, at * 11 (Conn. Super. Ct. Feb. 6, 2013); Rimcha v. Rimcha, 2005 Conn. Super. LEXIS 1409, at *9 (Conn. Super. Ct. June 2, 2005); Nosik v. Mastronardi, 2002 Conn. Super. LEXIS 798, at *5 (Conn. Super. Ct. Mar. 11, 2002).

Unlike the general applicability of a statute of limitations defense, which is a question of law, whether the continuing course of conduct doctrine applies to toll a statute of limitations is a mixed question of law and fact.  Haas v. Haas, 48 A.3d 713, 719 (Conn. App. Ct. 2012); Giulietti v. Giulietti, 784 A.2d 905, 925 (Conn. App. Ct. 2001), cert. denied, 788 A.2d 95 (2001).  Indeed, it is often noted that the doctrine is "conspicuously fact-bound."  Haas v. Haas, 48 A.3d at 720 (citation omitted); Sanborn v. Greenwald, 664 A.2d at 807; see also Allen v. Egan, 303 F. Supp. 2d 71, 79 (D. Conn. 2004).

---

over every incident of the defendant's unlawful conduct.  The injuries about which the plaintiff is complaining in these cases are the consequences of a numerous and continuous series of events. . . . In between the case in which a single event gives rise to continuing injuries and the case in which a continuous series of events gives rise to a cumulative injury is the case in which repeated events give rise to discrete injuries, as in suits for lost wages.  If our plaintiff were seeking backpay for repeated acts of wage discrimination (suppose that every pay day for five years he had received $100 less than he was entitled to), he would not be permitted to reach back to the first by suing within the limitations period for the last.

Watts, 22 A.2d at 1222.

In its motion for reconsideration, Statek did not address how the period set forth in Conn. Stat. Ann. § 52-577 would be tolled from 1996 to November 5, 2002, three years before the commencement of its Connecticut Action.[7]  On remand, based on the amended complaint and documents referred to therein several significant questions remain as to whether § 52-577 should be tolled.

Statek has established one of the continuing course of conduct doctrine's elements.  It is clear that Coudert, to the extent that it served as Statek's counsel, at least for a time had the type of fiduciary relationship to Statek that, under the right circumstances, is a necessary element of the doctrine.  Several cases applying the continuous course of conduct doctrine involve legal malpractice claims.  See, e.g., Vanliner Ins. Co. v. Fay, 907 A.2d 1220, 1230 (Conn. App. Ct. 2006); Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC, 795 A.2d 572, 578 (Conn. App. Ct. 2002); Peterson v. Bornhorst, 2012 Conn. Super. LEXIS 1674, at *9-*11 (Conn. Super. Ct. June 26, 2012).

A closer question is whether, although Statek paid the bills, Coudert can be said to have had the type of special relationship to Statek required for the doctrine to apply to requests for files and information arising from Coudert's representation of Johnston, or others, rather than of Statek.  Stuart v. Snyder, 2009 Conn. Super. LEXIS 3602, at *17-*28 (Conn. Super. Ct. Aug. 25, 2009) (attorney to father's estate and trust had no duty to or "special relationship" with plaintiffs; therefore, continuing course of conduct doctrine inapplicable), aff'd, 8 A.3d 1126 (Conn. App. Ct. 2010); see also Shiffrin v. Bergman, 2000 Conn. Super. LEXIS 3474, at *7-*9 (Conn. Super.

---

[7] There is some discussion of the tolling issue in the parties' memoranda in connection with the objection to Statek's Claim, but, as noted, Statek contended that federal choice of law and English law controlled, including on the limitations issue:  "Statek maintains that, on the limitations issue, this Court should apply the federal choice-of-law rule, which points to the application of English limitation law, as England is the jurisdiction with the most significant relationship to the action," Statek's Memorandum of Law in Opposition to Coudert's Motion to Disallow Claim 44, April 13, 2009, and argued for the possibility of tolling under Connecticut law in response to Coudert's argument that under the New York borrowing statute the period would have expired under Connecticut law.  Id. at 46.

Ct. Dec. 12, 2000).  In this regard, it is not clear whether the information provided by Coudert to

Johnston's trustee in 2002 and 2004 pertained solely to services rendered to Statek or also to

Johnston and a crony of Johnston's, Alford.  Amended Complaint ¶¶ 32-33, 52.

Additionally, Statek must establish that Coudert's fiduciary relationship to it did not

terminate more than three years before the commencement of the Connecticut action on

November 5, 2005.  As noted above, a continuing duty is insufficient to toll the statute; it must

be accompanied by either a special relationship or a continuing, evolving wrong.  The basis for

tolling would be clearest if Coudert continued to represent Statek at least through November 5,

2002, because once an attorney's representation ends, the prior attorney-client relationship

generally does not give rise to a continuing duty sufficient to establish a continuing course of

conduct.  Targonski v. Clebowicz, 63 A.3d at 1008-09; Sin Hang Lee v. Brenner, Saltzman &

Wallman, LLP, 15 A.3d 1215, 1219-20 (Conn. App. Ct. 2011), cert. denied, 22 A.3d 1277

(2011); Sanborn v. Greenwald, 664 A.2d at 808; Nosik v. Mastronardi, 2002 Conn. Super.

LEXIS 798, at *5-*6.  After the attorney-client relationship ends, the attorney owes a duty to the

former client that will toll the limitations period only "if he later learns of the negligence at a

time when he has the power to remedy the problems arising from it."  Targonski, 63 A.3d at

1009; Partitions, Inc. v. Blumberg Assocs., 2001 Conn. Super. LEXIS 2960, at *20 ("There is a

consistent theme in our jurisprudence, then, that the duty ends at the specific time that the

relationship ends, and there is no ongoing duty to revisit past problems in relationships unless the

prior malfeasance becomes known.") (citations omitted).[8]

---

[8] Statek's amended complaint does not state that Coudert knowingly withheld "Statek Files" or
other information; instead, it asserts that when Coudert was asked by Johnston's bankruptcy trustee in
2002 and 2004 for information pertaining to Johnston it produced additional "Statek Files" and
information.  Amended Complaint ¶¶ 42-43, 48-49, 51-52. Moreover, the reason Statek demanded the
information was to track down its assets.  Id. ¶ 62(a) ("Statek has been hindered, delayed and frustrated in
its ability to discover and recover assets that Johnston and Spillane had misappropriated from Statek and
hidden throughout the world.").  Without an ongoing fiduciary relationship, there is no evolving wrong; the

Here, it appears that, although there is no express termination of Coudert's services in the record, Statek did not retain Coudert to do anything after the 1996 Delaware Chancery Court decision that wrested corporate control from Johnston and Spillane, and it may have had ample reason, given the work that Coudert did for Johnston and Spillane, to distrust the firm. Thus, Statek's relationship with Coudert does not appear to fit the pattern of the ongoing fiduciary or confidential relationships discussed in the case law as supporting the conclusion that the wrong is continuing and difficult to identify and that it therefore was premature to commence a lawsuit before the expiration of the limitations period. See, e.g., Haas v. Haas, 48 A.3d at 721; Giuletti v. Giuletti, 784 A.2d at 925-26.

Statek nonetheless argues that, even if the attorney-client relationship ended after 1996, Coudert had an ongoing duty to return its files upon request, citing Conn. R. Prof'l Conduct 1.16(d) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled."). However, while such a failure may give rise to a claim for malpractice, or negligence, see Tuccio v. Garamella, 2008 Conn. Super. LEXIS 2999, at *14-*17 (Conn. Super. Ct. Nov. 18, 2008); Coffee v. United States, 906 F. Supp. 2d 1114, 1175-76 (D.N.M. 2012), and, as Statek originally argued in its opposition to the Claim objection,[9] might give rise to a duty of care under English law, as well, such a failure has been held not to give rise to a breach of fiduciary duty claim, the fiduciary relationship having terminated with the attorney-client relationship. Nacholi v. Paul, 2007 Conn. Super. LEXIS 3417, at *4-*6 (Conn. Super. Ct. Dec. 21, 2007); see also Brown v. Yale-New Haven Health Servs., 2011 Conn. Super. LEXIS

_____

harm cannot be remedied – the wrong is the failure, in 1996, to provide information that would have given Statek a starting point for tracking down assets.

[9] Statek Memorandum of Law in Opposition to Coudert's Motion to Disallow Claim, 42-3.

231, at *24-*27 (Conn. Super. Ct. Feb. 3, 2011). Thus, unless Statek can show that Coudert continued as its counsel after Johnston and Spillane were ousted in 1996 or that Coudert knew it had not provided all the client files and their belated disclosure would still have assisted Statek in tracking down assets,[10] it will most likely not be able to show that, despite any ongoing actionable duty to comply fully with the request to provide the client files, Coudert had the type of fiduciary duty or other special relationship that would toll the limitations period.  See Sin Han Lee v. Brenner, Saltzman & Wallman, LLP, 15 A.3d at 1220; Sanborn v. Greenwald, 664 A.2d at 808; Shiffrin v. Bergman, 2000 Conn. Super. LEXIS 3474, at *9-*13.

Finally, there is a question whether Statek discovered Coudert's failure to provide the information at least three years before the commencement of the Connecticut Action.  As discussed by the Second Circuit, "knowledge of the injury may well deny a plaintiff (with a claim subject to [Conn. Gen. Stat. § 52-577]) the benefit of the continuous course of conduct doctrine." Int'l Strategies Grp., Ltd. v. Ness, 645 F.3d 178, 183 (2d Cir. 2011) (citation omitted); see also, Guilani v. Bak (In re Bak), 2013 Bankr. LEXIS 713, at *28-*29 (Bankr. D. Conn. Feb. 20, 2013) (citing Rivera v. Fairbank Mgmt. Props., 703 A.2d 808, 811-12 (Conn. Super. Ct. 1997) ("Cases applying the continuing course of conduct doctrine have all involved the conduct of the defendant prior to the discovery of the injury. . . .  Cases rejecting the doctrine have done so on the basis that the defendant's duty ends when the cause of action accrues.") (internal citations omitted).[11]  Statek's amended complaint does not assert that it first learned of Coudert's failure to provide all of the requested information less than three years before the

_____

[10] And, as noted, Statek has not alleged tolling based on fraudulent concealment.

[11] The foregoing principle may not appear to apply, however, where the defendant continued to represent the plaintiff on the same matter or could effectively remedy its mistake. Sanborn v. Greenwald, 664 A.2d at 808; Targonski v. Clebowicz, 63 A.3d at 1009.

commencement of the Connecticut action.  Nothing else in the record establishes that Statek did

not learn of Coudert's incomplete response to its 1996 requests before November 5, 2002, either.

### 3.  The alternative basis for the Reconsideration Order continues to apply.

Statek asserts that as long as the application of Connecticut choice of law principles

would force a determination, on the facts, of the tolling issue, the Court must vacate the

Reconsideration Order.  This argument, however, ignores the limited and extraordinary nature of

reconsideration under Fed. R. Civ. P. 59.  In light the constraints on obtaining relief under Rule

59, the fact that the foregoing issues that Statek originally did not seek to have decided would

still be far from resolved if the Court vacated the Reconsideration Order thus highlights why the

Order should not be vacated.  There is no manifest answer to whether the Claim should be

allowed after applying Connecticut's choice of law rules, certainly no answer overriding the

limits on Rule 59 relief.[12]

Statek sought reconsideration of the Claim Disallowance Order under section 502(j) of

the Bankruptcy Code, which states in relevant part, "A claim that has been allowed or disallowed

may be reconsidered for cause.  A reconsidered claim may be allowed or disallowed according to

the equities of the case."  11 U.S.C. § 502(j).  Determining "cause" and the "equities of the case"

under section 502(j) "falls upon the equitable judgment of the court and is within the sound

discretion of the court."  In re Flagstaff Foodservice Corp., 56 B.R. 910, 913 (S.D.N.Y. 1986);

see also Advisory Committee Note to Fed. R. Bankr. P. 3008.  The "the bankruptcy court's

discretion in deciding whether to reconsider a claim is virtually plenary."  In re Enron Corp, 352

B.R. 363, 367 (Bankr. S.D.N.Y. 2006) (quoting In re Colley, 814 F.2d 1008, 1010 (5th Cir.

1987)); see also In re Best Payphones, Inc., 2008 Bankr. LEXIS 2555, at *5 (Bankr. S.D.N.Y.

---

[12] Accordingly, the Court does not additionally address the Plan Administrator's argument that the
Connecticut court lacked personal jurisdiction over Coudert, or Statek's contentions to the contrary,
including that the Second Circuit implicitly decided this issue.

July 3, 2008); In re Dana Corp, 2008 Bankr. LEXIS 803, at *4-*5 (Bankr. S.D.N.Y. Mar. 17, 2008).

As noted above, when deciding a motion for reconsideration of an order disallowing or allowing a claim under 11 U.S.C. § 502(j), courts follow the analysis that would apply to a motion under Fed. R. Civ. P. 59 (assuming the reconsideration motion was made within the time to appeal, as here) or Fed. R. Civ. P. 60 (assuming the reconsideration motion was made later). See supra note 1. The Court did so in reaching its initial alternative basis for the Reconsideration Order. Stating, first, that Statek had the burden to show that the Court overlooked controlling decisions or factual matters that might have materially influenced the earlier decision, or the need to correct a clear error or prevent manifest injustice,[13] the Court held,

> 'The rule permitting reargument is strictly construed to avoid repetitive arguments on issues that the court has already fully considered. In addition, parties cannot advance new facts or arguments because a motion for reargument is not a mechanism for presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.' In re Vargas Realty Enters., 2009 Bankr. LEXIS 2040, at *7-8 [(Bankr. S.D.N.Y. Jul. 23, 2009)] (internal citations and quotation omitted). See also In re Adelphia Bus. Solutions, Inc., 2002 Bankr. LEXIS 1604, at *3-4 (Bankr. S.D.N.Y. Oct. 15, 2002); 12 Moore's Federal Practice ¶ 59.30[6] (3d ed. 2008), at 59-116 ('Further, a motion to alter or amend generally may not be used to raise arguments, or to present evidence, that could reasonably have been raised or presented before the entry of judgment.').

> Under the foregoing principles, Statek's motion should be denied. The motion is premised on the argument that this Court, 'as the transferee court' of Statek's original tort action against Coudert, among others, which was brought in the Connecticut Superior Court and then removed under 28 U.S.C. §§ 1334(b) and 1452 to the District Court for the District of Connecticut, must follow the law of the 'transferor court,' Connecticut, including Connecticut's choice of law and timeliness rules. Ferens v. John Deere Co., 494 U.S. 516, 524-26, 110 S. Ct. 1274, 108 L. Ed. 2d 443; Van Dusen v. Barrack, 376 U.S. 612, 629-30, 632-33, 639, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964). This 'transferee court' argument was never

---

[13] The grounds for reconsideration under Rule 59 are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1990 (internal citations and quotation marks omitted).

raised in the parties' briefs or during oral argument on the Plan Administrator's objection to the Claim and, therefore, should not be considered now.[14]  In re Vargas Realty Enters., 2009 Bankr. LEXIS 2040, at *7-8; In re Adelphia Bus. Solutions, 2002 Bankr. LEXIS 1604, at *3-4; see also FDIC v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992) (Rule 59 motion may not be used to argue new legal theory); Bennett v. Genoa Ag. Ctr., Inc. (In re Bennett), 154 B.R. 140, 155 (Bankr. N.D.N.Y. 1998).  The Court cannot be said to have 'overlooked' authority that was never brought to its attention and that was not inherent in the arguments that were brought to its attention.  In re Vargas Realty Enters., 2009 Bankr. LEXIS 2040, at *8-9; Salsberg v. Trico Marine Servs., Inc. (In re Trico Marine Servs., Inc.), 360 B.R. 53, 63 (Bankr. S.D.N.Y. 2007) ('If the plaintiffs did not cite these decisions, they are hard-pressed to show that I overlooked them.').

In re Coudert Bros. LLP, 2009 Bankr. LEXIS 2602, at *7-*9.

That holding clearly complies with well-established precedent.  See, e.g., Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008) (Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment.") (internal citation and quotation marks omitted); Smith v. New York City Dep't of Educ., 2013 U.S. App. LEXIS 8944, at *7 (2d Cir. May 2, 2013) ("A motion for reconsideration is not the appropriate mechanism for a party to relitigate an issue already decided or to advance new facts, issues, or arguments not previously presented to the court.") (citing Nat'l Union Fire Ins. Co. v. Stroh Cos. Inc., 265 F.3d 97, 115 (2d Cir. 2001), and Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)); Mahadeo v. N.Y. City Campaign Fin. Bd., 2013 U.S. App. LEXIS 5287, at *5 (2d Cir. Mar. 18, 2013) ("A party may not use a motion for reconsideration to advance new issues or theories of relief that were not previously presented to the court.") (citation omitted); Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) ("It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at

---

[14] Indeed, both Coudert and Statek originally argued that Bianco v. Erkins (In re Gaston & Snow), 234 F.3d at 599, governed. See Statek's Memorandum of Law in Opposition to Coudert's Motion to Disallow Claim 39, 51.

the apple. . . .' 'The standard for granting a Rule 59 motion for reconsideration is strict.'")

(quoting <u>Sequa Corp. v. GBJ Corp.</u>, 156 F.3d 136, 144 (2d Cir. 1998), <u>cert. denied</u>, 133 S. Ct.

1805 (2013), and <u>Shrader v. CSX Transp. Inc.</u>, 70 F.3d at 257).  <u>See also</u> <u>McGee v. Dunn</u>, 2013

U.S. Dist. LEXIS 55732, at *9 (S.D.N.Y. Apr. 16, 2013) (parties may not use a motion under

Local Rule 6.3, entitled "Motions for Reconsideration or Reargument," to "advance new facts,

issues or arguments not previously presented to the court"); <u>Bace v. Babitt</u>, 2012 U.S. Dist.

LEXIS 92441, at *35-*36 (S.D.N.Y. May 10, 2012) ("[A] motion to reconsider should not give

the moving party another bite at the apple by permitting argument on issues that could have been

or should have been raised prior to the original motion.") (citations and internal quotation marks

omitted); <u>Cobalt Multifamily Investors I v. Shapiro</u>, 2011 U.S. Dist. LEXIS 119346, at *27

(S.D.N.Y. Sept. 9, 2011) ("A motion for reconsideration is not appropriately filed as a vehicle

for a party dissatisfied with the Court's ruling to advance new theories.") (citation and internal

quotation marks omitted); <u>Associated Press v. U.S. Dept. of Defense</u>, 395 F. Supp. 2d 17, 19

(S.D.N.Y. 2005) ("It is settled law in this District that a motion for reconsideration is neither an

occasion for repeating old arguments previously rejected nor an opportunity for making new

arguments that could have been previously advanced[.]") (citations omitted); <u>Richard Feiner &</u>

<u>Co. v. BMG Music Spain</u>, 2003 WL 21496812, at *1 (S.D.N.Y. June 27, 2003) ("[P]laintiff is

advancing new arguments without excuse as to why these arguments were not raised previously,

and these arguments are therefore not cognizable on a motion for reconsideration.");

<u>Novomoskovsk Joint Stock Co. "AZOT" v. Revson</u>, 1999 U.S. Dist. LEXIS 15022, at *2-*3

(S.D.N.Y. Sept. 27, 1999) ("New arguments . . . are not to be considered [on a motion for

reconsideration] unless there is some valid reason they could not have been previously advanced

when the motion was originally argued."); <u>In re Lamberti</u>, 2006 Bankr. LEXIS 2140, at *5

(Bankr. S.D.N.Y. Aug. 16, 2006) ("A party who fails to present their strongest case in the first

instance generally has no right to raise new theories or arguments in a motion to reconsider.")

(citation and internal quotation marks omitted).

The rule prevents litigants from unduly prolonging the trial stage of litigation, limited

only by the number of theories they might assert after their initial arguments prove unavailing, or

requiring courts to anticipate the parties' potential legal theories even if not raised.  Associated

Press v. U.S. Dep't of Defense, 410 F. Supp. 2d 147, 152 (S.D.N.Y. 2006) ("Otherwise,

disappointed litigants would be forever raising new arguments and there would be no end to

litigation.") (citation omitted); Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y.

1988) ("The purpose of the rule is to ensure the finality of decisions and to prevent the practice

of a losing party examining a decision and then plugging the gaps of a lost motion with

additional matters.") (citation and internal quotation marks omitted); Parrish v. Sollecito, 253 F.

Supp. 2d 713, 715 (S.D.N.Y. 2003) ("Reconsideration of a court's previous order is an

extraordinary remedy to be imployed sparingly in the interests of finality and conservation of

scarce judicial resources.") (citation and internal quotation marks omitted).

Because of its adverse effect on the litigation process, therefore, courts rarely grant a

motion for reconsideration, even if it is based on alleged manifest injustice, when the movant

could have advanced the legal argument before its motion for reconsideration.  See Women's

Integrated Network, Inc. v. United States Specialty Ins. Co., 495 Fed. Appx. 129, 131 (2d Cir.

2012) ("Even if we were to assume, without deciding, that the district court misconstrued the

insurance policy or misapplied governing law in granting dismissal, we would not conclude that

this is a case presenting 'exceptional circumstances' warranting relief.  The proper recourse for

[appellant] was to file a timely appeal to this court[.]") (citation and internal quotation marks

omitted); <u>Som Nath Chitkara v. N.Y. Tel. Co.</u>, 45 Fed. Appx. 53, 55 (2d Cir. 2002); <u>Analytical Surveys, Inc. v. Tonga Partners, L.P.</u>, 2009 U.S. Dist. LEXIS, at *4-*5 (S.D.N.Y.  May 28, 2009), <u>aff'd</u>, 684 F.3d 36 (2d Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 1805 (2013); <u>In re PT-1 Commc'ns, Inc.</u>, 463 B.R. 599, 606 (Bankr. E.D.N.Y. 2011), <u>aff'd</u>, 486 B.R. 9 (E.D.N.Y. 2012).

     <u>Analytical Surveys</u> is instructive.  Although the movant's new legal theory could possibly have changed the outcome of the case, the District Court found that it was "not manifestly unjust" to deny the motion because the other side "should not be required to respond to new arguments now."  <u>Analytical Surveys, Inc. v. Tonga Partners, L.P.</u>, 2009 U.S. Dist. LEXIS, at *11-*12.  Indeed, to grant the motion for reconsideration "would unduly undermine [the adversary's] compelling interest in finality" and the adversary, rather than the movant, "would suffer a manifest injustice."  <u>Id.</u> (citing <u>Parrish v. Sollecito</u>, 253 F. Supp. 2d at 715).  The Second Circuit agreed, finding that the trial court had not abused its discretion given that the appellant had not called its present legal argument to the court's attention before it granted summary judgment.  684 F.3d at 52-53.  Just as a court cannot be said to have overlooked controlling facts or law that were not raised to it before the motion for reconsideration, rarely if ever will a ruling be manifestly unjust or constitute clear error if the basis for reconsideration was not manifest to the court and the other side until the losing party raised it after the ruling.

     A manifest basis to reconsider does not exist here.  First, while the decision whether to apply Connecticut choice of law rules is a pure question of law, the outcome of the choice of law question was not clear to this Court or the District Court even after the argument was raised by Statek's reconsideration motion.[15]  It clearly was not evident <u>before</u> Statek filed its

---

[15]  The Second Circuit acknowledged, further, "[W]e recognize that our opinion in <u>In re Gaston</u> employs some broad language, in dicta, that could be read as reaching every state law claim in every bankruptcy case without exception." <u>In re Coudert Bros.</u>, 673 F.3d at 191 (quoting <u>Gaston & Snow</u>, 673 F.3d at 601-02: "[W]e decide that bankruptcy courts confronting state law

reconsideration motion, when both parties argued that other choice of law regimes, not

Connecticut's, applied.  See supra note 14.  Moreover, the actual application of Connecticut

choice of law rules to the facts set forth in the Claim is, as noted above, a mixed question of law

and fact, and, as discussed above, there is no clear answer to whether the limitations period for

Statek's Claim was tolled for approximately 6 years by Connecticut's "conspicuously fact-

bound" continuing course of conduct doctrine.  Haas v. Haas A.2d at 720.  It is decidedly unclear

now, therefore, whether the application of Connecticut choice of law principles would prevent

Statek's Claim from being time barred, as of course it was unclear when Statek made its

reconsideration motion, which did not even mention the tolling issue.  Under the circumstances,

no "manifest injustice" or "clear error" requires the Court to vacate the Reconsideration Order.

### 4.  The law-of-the-case doctrine does not require granting the reconsideration motion on remand; instead, it supports its denial.

Statek has argued, however, that the Second Circuit's remand requires this Court to

vacate the Reconsideration Order.  Clearly this would be so if the Circuit had directed the

vacatur of that order or reversed the Court's first alternative holding, either expressly or

implicitly.  "[W]here issues have been explicitly or implicitly decided on appeal," the lower

court "is obliged, on remand, to follow the decision of the appellate court."  Burrell v. United

States, 467 F.3d 160, 165 (2d Cir. 2006) (citing United States v. Minicone, 994 F.2d 86, 89 (2d

Cir. 1993); United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001), cert. denied, 549 U.S. 1334

(2007)).  A lower court "generally may not deviate from a mandate issued by an appellate court"

because the lower court "has no discretion in carrying out the mandate," and "the appellate court

retains the authority to determine whether the terms of the mandate have been 'scrupulously and

fully carried out.'"  In re Ivan F. Boesky Sec. Litig., 957 F.2d 65, 69 (2d Cir. 1992) (quoting

claims that do not implicate federal policy concerns should apply the choice of law rules of the
forum state.").

United States v. E.I. Du Pont De Nemours & Co., 366 U.S. 316, 325 (1961)).  See also Am.

Hotel Int'l Grp, Inc. v. OneBeacon Ins. Co., 374 Fed. Appx. 71, 73-74 (2d Cir. 2010).

This result derives from the law-of-the-case doctrine, under which "a decision on an issue

of law made at one stage of a case becomes binding precedent to be followed in subsequent

stages of the same litigation" such that "when a court decides upon a rule of law, that decision

should continue to govern the same issues in subsequent stages in the same case."  Liona Corp.

v. PCH Assocs. (In re PCH Assocs.), 949 F.2d 585, 592 (2d Cir. 1991) (citations and internal

quotation marks omitted).  Thus, the mandate rule "forecloses relitigation of issues expressly or

impliedly decided by the appellate court."  Ben Zvi, 242 F.3d at 95 (citations omitted).

The corollary to that rule, however, consistent with its derivation in the law-of-the-case

doctrine, is that "if an issue was not part of the appellate decision," the lower court "may

consider the matter," Burrell, 467 F.3d at 165 (citing Minicone, 994 F.2d at 89 (citation and

internal quotation marks omitted)), and should generally be governed by the prior law of the case

-- that is, its prior ruling.  In re PCH Assocs., 949 F.2d at 593; Am. Hotel Int'l Grp, Inc. v.

OneBeacon Ins. Co., 611 F. Supp. 2d 373, 378-80 (S.D.N.Y. 2009), aff'd, 374 Fed. Appx. 71 (2d

Cir. 2010).  See generally United States v. Uccio, 940 F.2d 753, 757-58 (2d Cir. 1991) (where

appellate court has not ruled, law of the case governs lower court's ruling on remand, and, while

not inviolate, lower court should adhere to its prior rulings "absent cogent or compelling reasons

to deviate, such as an intervening change of controlling law, the availability of new evidence, or

the need to correct a clear error or prevent manifest injustice" and be "informed principally by

the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the

benefit of the [law-of-the-case] doctrine.") (citations and internal quotation marks omitted).  See

also United States v. Stanley, 54 F.3d 103, 107 (2d Cir. 1995), cert. denied, 516 U.S. 891 (1995);

Gowanus Indus. Park v. Arthur H. Sulzer Assocs., 2013 U.S. Dist. LEXIS 45493, at *10-*12 (E.D.N.Y. Mar. 23, 2013).

To determine whether an issue was decided on appeal, the lower court "should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'" Burrell, 467 F.3d at 165 (citing Ben Zvi, 242 F.3d at 95).

Upon review of the Second Circuit's opinion and order, as well as the argument and briefing before the Circuit, it is clear that the Circuit did not expressly reverse this Court's first alternative holding, which denied Statek's motion to reconsider because it was based on a new legal argument. The opinion does not mention that alternative holding. See In re Coudert Bros. LLP, 673 F.3d at 180.

Did the Second Circuit's mandate implicitly decide the issue? To be implicitly decided, the issue would first need to have been raised to the Circuit, because an issue cannot be implicitly decided unless it was "squarely" presented. Meacham v. Knolls Atomic Power Lab., 358 Fed. Appx. 233, 236 (2d Cir. 2009), cert. denied, 131 S. Ct. 414 (2010). Failure to raise the issue on appeal is tantamount to its waiver. Parmalat Capital Fin. Ltd. v. Bank of Am., 671 F.3d 261, 270-71 (2d Cir. 2012) (alternative holding that had not been raised either before the District Court or the Second Circuit in the initial appeal was "impliedly decided" to have been waived and should not have been entertained on remand). See also Am. Hotel Int'l Grp. Inc. v. OneBeacon Ins. Co., 374 Fed. Appx. at 74 ("[A] decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision, for '[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.'") (quoting County of Suffolk v.

24

Stone & Webster Eng'g Corp., 106 F.3d 1112, 1117 (2d Cir. 1997) (quoting Fogel v. Chestnutt,

668 F.2d 100, 109 (2d Cir. 1981)).

Here, Statek never addressed this Court's alternative holding in its briefs to the District

Court and the Second Circuit.  See Case No. 10-2723-cv, Dkt Nos. 28, 46, 63; Case No. 09 Civ.

9561, Dkt. Nos. 9, 13, 18.  Statek also did not raise the alternative holding at oral argument

before the Second Circuit.  See Oral Argument on April 29, 2011, In re Coudert Bros. LLP, 673

F.3d 180 (2d Cir. 2012) (No. 10-2723-cv).

In light of the foregoing, the Court should follow it prior alternative holding.  The

American Hotel line of cases controls.  In American Hotel, the District Court granted a motion

for summary judgment on the basis that the oral agreement at issue and an oral contract

modification were unenforceable under New York's Statute of Frauds.  Am. Hotel Int'l Grp. Inc.

v. CGU Ins. Co., 2004 U.S. Dist. LEXIS 5154, at *24-*25 (S.D.N.Y. Mar. 26, 2004).

Alternatively, the court held that, even if New York law did not apply, the oral contract

modification was unenforceable under Pennsylvania law because it was not supported by

consideration.  Id. at *25 n.7.  The court subsequently denied a motion for reconsideration, Am.

Hotel Int'l Grp. Inc. v. OneBeacon Ins. Co., 2005 U.S. Dist. LEXIS 9420 (S.D.N.Y. May 17,

2005), which was appealed.

The appellant argued that the District Court had improperly held that New York law

governed and that Pennsylvania's Statute of Frauds would have allowed enforcement of the oral

agreement.  Aramarine Brokerage, Inc. v. OneBeacon Ins. Co., 307 Fed. Appx. 562, 564 (2d Cir.

2009).  Agreeing, the Second Circuit reversed, holding that the District Court should have

applied Pennsylvania law under New York's choice of law rules.  Id. at 564-65.  However, the

Circuit did not reverse or affirm the alternative basis for the District Court's grant of summary

judgment.  Id. at 565.

   On remand, the District Court held that its alternative ruling based on the lack of

consideration under Pennsylvania law, "did not run afoul of the Second Circuit's decision" and

concluded, further, that this was "not inconsistent with" the Second Circuit's mandate to retry the

claim already invalidated under its alternative Pennsylvania law holding.  Am. Hotel Int'l Grp.,

Inc. v. OneBeacon Ins. Co., 2009 U.S. Dist. LEXIS 29638, at *4 (S.D.N.Y. Apr. 6, 2009).

Denying a second motion for reconsideration, the court held that its alternative holding, not

having been ruled on by the Circuit, remained the law of the case.  Am. Hotel Int'l Grp. Inc. v.

OneBeacon Ins. Co., 611 F. Supp. 2d 373, 378-80 (S.D.N.Y. 2009):

> In the case in which the mandate of the appellate court does not address a
> particular issue, the appellate judgment, on this issue, *does not establish the law of
> the case*, and on appeal from the judgment rendered after remand, it may be
> reviewed by the appellate court.  *It remains, however, that the issue was decided
> by the district court in an earlier case and was not disapproved by the appellate
> court. It is, therefore, the law of the case.*

Id. at 379 (emphasis in opinion) (quoting In re PCH Assocs., 949 F.2d at 593 (quoting 1B

Moore's Federal Practice ¶ 0.404[4.-3], at 131)).

   The District Court then declined to exercise its discretion on remand to reconsider and

overturn its alternative holding not decided by the Circuit, reasoning as follows,

> Although a district court on remand has the discretion to reconsider an issue that
> was not decided by the Court of Appeals, the law of the case doctrine counsels
> against doing so.  See Uccio, 940 F.2d at 758. A court's decision on whether to
> apply the law of the case doctrine turns principally on whether 'reconsideration is
> necessary to avoid injustice.' Scottish Air, 152 F.R.D. at 25 (internal quotation
> and citation omitted).  The Second Circuit has advised that a court should adhere
> to its own prior rulings, absent 'cogent' or 'compelling' reasons to deviate, such
> as an intervening change of controlling law, the availability of new evidence, or
> the need to correct a clear error or prevent manifest injustice. Uccio, 940 F.2d at
> 758 (internal quotations and citations omitted).

<u>Am. Hotel</u>, 611 F. Supp. 2d at 379.

On appeal, the appellant argued that the District Court "failed to comply with [the Second Circuit's] previous mandate" because "by vacating the district court's judgment in its entirety, [the order] impliedly rejected the district court's alternative holding." <u>Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.</u>, 374 Fed. Appx. 71, 73 (2d Cir. 2010).  The Second Circuit affirmed the District Court's decision on remand, however.  <u>Id.</u> at 73-74.  In so ruling, the Circuit recognized that it "did not speak directly to" or "address" the District Court's alternative holding in its first decision:  "[n]or did this Court address the district court's alternative finding . . . that the . . . [a]greement, even if valid under the statute of frauds, would have failed for want of consideration." <u>Id.</u> at 73.  Therefore, the District Court's alternative holding remained the law of the case because it was not "expressly or implicitly addressed on appeal," and the District Court "did not err in determining that [the Second Circuit's] order left that holding undisturbed." <u>Id.</u> at 74.

As in <u>American Hotel</u>, the Second Circuit did not address this Court's alternative basis for denying Statek's reconsideration motion -- that Statek raised its argument under <u>Van Dusen</u> and <u>Ferens</u> and requested the application of Connecticut law for the first time in its motion for reconsideration.  The reversal and remand do not implicitly overrule that holding.  As in <u>American Hotel</u>, the alternative holding therefore remains the law of the case and, as discussed above, may not be ignored absent compelling reasons to deviate from it, which do not exist here. <u>See also</u> <u>United States v. Stanley</u>, 54 F.3d at 107-08.

## Conclusion

For the foregoing reasons, Statek's motion for reconsideration, on remand, should be denied.  Counsel for the Plan Administrator should submit a proposed order to chambers consistent with this ruling.


Dated:  August 19, 2013
            White Plains, New York


_____
                              United States Bankruptcy Judge